**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

BPI SPORTS, LLC,

       Plaintiff,

vs.

THERMOLIFE INTERNATIONAL, LLC,
and RONALD L. KRAMER,

      Defendants.

CASE NO.:

## COMPLAINT

Plaintiff, BPI Sports, LLC ("BPI"), sues Defendants, ThermoLife International, LLC ("ThermoLife") and Ronald L. Kramer ("Kramer") (collectively, "Defendants"), and alleges:

## NATURE OF ACTION

1.     This is a civil action for, among other things, injunctive relief and damages in excess of $75,000.00, exclusive of interest and costs.  This civil action concerns violations of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), unfair competition, trade libel, libel per se, and tortious interference with BPI's business relations.

## PARTIES

2.     BPI is a limited liability company organized under the laws of the State of Florida, with its principal place of business located in Broward County, Florida.

3.     ThermoLife is a limited liability company organized under the laws of the State of Arizona, with its principal place of business located in Maricopa County, Arizona.

4.     Kramer resides in the State of Arizona, is over the age of eighteen, and is otherwise *sui juris*.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338 and 15 U.S.C. § 1121.

6.      Defendants have and continue to transact business in this District by committing tortious acts within this District.  Because of the acts of Defendants, *in personam* jurisdiction exists over the Defendants.

7.      Defendants have committed tortious acts in interstate commerce, which may lawfully be regulated by Congress.

8.      Defendants' tortious activities have affected and damaged BPI's interstate business located within this District.

9.      Venue is proper in this District as to Defendants pursuant to 28 U.S.C. § 1391(b)(2) and (c)(2).

## GENERAL ALLEGATIONS

*Overview*

10.      BPI is a sports nutrition company that is engaged in the business of manufacturing and selling dietary and nutritional supplements.  A number of BPI's dietary and nutritional supplements contain Creatine.

11.      ThermoLife manufactures and sells competing products it claims contain Creatine Nitrate, and, therefore, ThermoLife is a direct competitor of BPI's Creatine business.

12.      Kramer is the President, Chief Executive Officer, and sole owner of ThermoLife.

13.      Defendants have each participated in, directed, controlled, and/or caused fraudulent representations to the United States Patent and Trademark Office ("USPTO") for the purpose of fraudulently obtaining patents that purport to cover Creatine Nitrate compounds.

14.     Through their fraudulent representations and patent filings, Defendants have amassed a patent portfolio purporting to cover Creatine Nitrate compounds, compositions, their manufacture and use, including, U.S. Patent Nos. 7,777,074; 8,178,572; 8,183,288; 8,455,531; 8,466,187; 8,952,045; 8,957,101.

15.     Defendants have each participated in, directed, controlled, and caused the circulation of false, misleading, and defamatory representations concerning BPI to third parties as set forth herein.

16.     Specifically, in blog posts, Defendants have made false, misleading and defamatory representations concerning BPI.

17.     Moreover, for the purposes of decreasing BPI's sales and increasing its own sales, Defendants have made false and misleading claims about both Creatine and Creatine Nitrate.

*Creatine v. Creatine Nitrate*

18.     Creatine, also known as phospho-creatine, is a molecule that bypasses the usual energy generating pathways in cells (Krebs cycle, and glycolysis). In bypassing these energy pathways, Creatine is able to make ATP (an energy molecule) very quickly.   This, in turn, improves muscle power output, allowing consumers to lift a heavier weight or sprint a little bit longer.

19.     Creatine is a highly researched dietary supplement, and numerous studies have been conducted to show that Creatine can improve muscle power when taken orally.

20.     Creatine Nitrate, according to ThermoLife, is a form of creatine chemically bonded with a Nitrate. ThermoLife claims to have discovered useful physiological properties resulting from human intake of Creatine Nitrate and, on that basis, obtained U.S. Patent 7,777,074 ("the '074 Patent") and other patents covering the compound.

21.     According to ThermoLife's unproven statements, the Nitrate in Creatine Nitrate is intended to increase vasodilation by way of augmenting nitric oxide production.

22.     ThermoLife asserts, in its patents as well as in its public advertisements, that Creatine Nitrate raises nitric oxide levels in subjects who have consumed Creatine Nitrate.   On information and belief, no reliable scientific studies have shown that ingesting Creatine Nitrate will cause any measurable increase in the subject's nitric oxide levels. Additionally, on information and belief, there are no reliable scientific studies showing increased levels of nitric oxide in a subject taking Creatine Nitrate as compared with a subject taking Creatine Monohydrate.

23.     ThermoLife has obtained its numerous patents and created its business by falsely claiming that Creatine Nitrate improves vasodilation as compared with Creatine, Nitrates or Nitrites alone.   In furtherance of its fraudulent scheme, ThermoLife has also falsely claimed that Creatine Nitrate provides better circulation and distribution of the Creatine amino acid in the body, improves absorption of the amino acid and requires a much lower dose to produce the vasodilation effect, as compared with Creatine, Nitrates or Nitrites alone.

24.     ThermoLife falsely claims that Creatine Nitrate is superior to Creatine for the following reasons, among others:

        a.     Superior direct vasodilating effect; and,

        b.     Superior absorption of itself and all congested nutrients.

25.     Upon information and belief, there are no studies that support ThermoLife's false claims.

26.     On the contrary, researchers in 2016 performed a study giving either Creatine Monohydrate (a form of uncombined Creatine), Creatine Nitrate, or placebos to 48 healthy young men for up to 28 days.

27.    The study, ironically funded by ThermoLife's largest buyer of Creatine Nitrate, found that participants who were given 3 grams of Creatine Monohydrate showed performance improvements over the placebo that were greater than improvements in participants when compared to the performance of participants who were given 3 grams of Creatine Nitrate.  Moreover, the researchers noted that only Creatine Monohydrate significantly raised muscle creatine stores throughout the entire 28-day study.   No significant side effects were observed in either. *See* https://www.ncbi.nlm.nih.gov/pubmed/27034623.

28.    Despite its knowledge of this study, ThermoLife continues to falsely claim that Creatine Nitrate is superior to Creatine.

*ThermoLife's U.S. Patent No. 7,777,074 and NDI*

29.    ThermoLife fraudulently misrepresented facts concerning Creatine Nitrate to the USPTO when applying for and prosecuting the application that ultimately issued as the '074 Patent.  ThermoLife also fraudulently misrepresented Creatine Nitrate to the Food and Drug Administration ("FDA") during its application process for a new dietary ingredient ("NDI").

30.    The FDA initially denied ThermoLife's NDI application because the FDA had found that Creatine Nitrate was not compliant with the Dietary Supplement Health and Education Act of 1994.  Thereafter, ThermoLife had its largest customer pay for and supply product for a safety study of Creatine Nitrate.

31.    ThermoLife made claims in its patent application and its related request for an NDI that could not be substantiated at those times.  ThermoLife's claims still have not been substantiated even though ThermoLife continues to make those claims to nutritional companies and buyers nationwide. ThermoLife continues to make the same unsubstantiated claims as it continues to obtain additional, issued U.S. patents.

32.     As a specific result of its misrepresentations, ThermoLife obtained the '074 Patent for amino acid compounds, including Creatine Nitrate.   As a further specific result of its misrepresentations, ThermoLife obtained an NDI certification for Creatine Nitrate.

33.     ThermoLife's misrepresentations include ThermoLife's claim that Creatine Nitrate is one molecule.

34.     In fact, after ThermoLife submitted its application for an NDI, the FDA issued a draft guidance on NDI notifications saying, "any 'old' dietary ingredient (i.e. legal for dietary supplements) that was 'chemically altered' would require an NDI notification, except for when two 'old' ingredients are combined and then separate into their 'old' forms in the digestive tract". *See*     *https://www.naturalproductsinsider.com/sports-nutrition/fda-changes-position-creatine-nitrate*.

35.     ThermoLife falsely claims that Creatine Nitrate breaks apart into two separate molecules only when consumed by an individual and during digestion.

36.     This is the primary reason why the FDA ultimately granted an NDI to ThermoLife after having rejected the application numerous times.

37.     As a result of ThermoLife's misrepresentations, ThermoLife has dominated the world of Creatine consumers with its Creatine Nitrate ingredient by supplying to much larger competitors and by selling direct to the consumer.

38.     Having observed the significant impact that ThermoLife's unlawful acts have had on competition, BPI undertook to test a ThermoLife product claiming to contain Creatine Nitrate. The test, conducted by an independent laboratory without intervention or input from BPI, reveal that the "Creatine Nitrate" in the products is, in fact, two separate molecules.

39.     Specifically, Advanced Botanical Consulting and Testing, Inc. (ABC), located in

Tustin, CA, performed an analysis of ThermoLife's dietary supplement product Muscle Beach

CRTN-3™ (the "Product") for evidence of the presence of a unique Creatine Nitrate molecule,

i.e., a molecule in which creatine and a nitrate are covalently bonded.

40.     The test performed by ABC revealed that no such Creatine Nitrate compound was

present in the Product.

41.     Rather, the analytical data are consistent with a product formulated with a mixture

of Creatine and various ionic substances.

42.     The Product is labeled with the following supplement facts table:

### 45 Servings - Unflavored

Serving Size: 1 Scoop (7.5 G)
Servings Per Container: 45

| Amount Per Serving | | % Daily Value |
| --- | --- | --- |
| Calories | 0 | |
| Total Carbohydrate | 0 g | 0%* |
| Calcium | 122 mg | 12% |
| Magnesium | 28 mg | 7% |
| Sodium | 60 mg | 3% |
| Potassium | 95 mg | 3% |
| **HYPER INFUSED CREATINE MATRIX™** | **5000 MG** | |
| Creatine Monohydrate | 3,000 g | ** |
| Creatine Nitrate (NO3-T®) | 1,000 g | ** |
| Creatine HCL | 1,000 g | ** |
| **HYDRO-GO™ ELECTROLYTE MATRIX** | **1250 MG** | |
| Coconut Water | 250 mg | ** |
| Tripotassium Citrate | 250 mg | * |
| Tricalcium Phosphate | 250 mg | * |
| Magnesium Chloride | 250 mg | * |
| Sodium Citrate | 250 mg | * |

* Percent Daily Values are based on a 2,000 calorie diet. ** Daily Value not established.

**Other Ingredients:**
Polydextrose, Silicon Dioxide (Flow Agent).
**ALLERGENS: Contains tree nuts (coconut). This product was produced in a facility that may also process ingredients containing milk, egg, soybeans, shellfish, fish, tree nuts, wheat, and peanuts.**

43.     The following table shows the expected levels of total free creatine, chloride,

nitrate, magnesium and creatinine if the Product was formulated as shown in the label:

- if "creatine nitrate" was added as a covalently bonded molecule (i.e., without free creatine);
- if "creatine nitrate" was added as a simple salt of creatine and nitrate; and
- the actual levels of the components found through testing by ABC.

| Component | Expected from product label | | ABC results |
|---|---|---|---|
| | If "creatine nitrate" added as a bonded molecule | If "creatine nitrate" added as a salt | |
| Free Creatine | 45.60% | 54.61% | 57.95% |
| Chloride | 5.30% | 5.30% | 3.54% |
| Free Nitrate | 0.00% | 4.26% | 4.55% |
| Magnesium | 0.85% | 0.85% | 0.36% |
| Creatine | 0.00% | 0.00% | 0.82% |

44.     **These results are consistent with a product containing no covalently bonded Creatine Nitrate**.

45.     The free Creatine level observed by ABC is much higher than would be expected if the "Creatine Nitrate" was added as a unique covalently bonded molecule.

46.     The free Nitrate levels should be zero if a unique covalently bonded "Creatine Nitrate" was used in the Product but the actual level found by ABC is not zero, it is slightly more than that expected if a simple ionic mixture of Creatine and Nitrate.

47.     ThermoLife's Creatine Nitrate, as claimed in the '074 Patent and others, is a salt, i.e., an ionically bonded compound comprised of the positively charged protonated base Creatine and the negatively charged Nitrate ion.   ThermoLife explicitly describes Creatine Nitrate this way in its NDI application: "Creatine nitrate (CreN) is a white crystalline powder formed by the ionic bonding of creatine…and nitrate."

48.     Though the Product was tested in the first week of January 2019, well before its labeled expiration date, it can be seen in the results table above that the Product contains 62 mg/serving of Creatinine, a degradation product of Creatine.   This Creatinine level is equivalent

to 1.4% of total Creatine found by ABC, indicating instability of the Product during storage.

*Defendants' Patent Litigation*

49.      Kramer and ThermoLife operate their business as a patent troll.  They have, for years, sued hundreds of entities with the hope of reaching pre-trial settlements in amounts far less than the cost of litigation.  Based upon data from www.pacer.gov, over the last 10 years, ThermoLife and Kramer appear to have prevailed, without a settlement, in only one case which was brought against a bankrupt company.

50.      Moreover, as of May 2018, all Creatine-related claims of ThermoLife's seminal patent, the '074 Patent, had been either cancelled or rejected during a PTO reexamination proceeding.

51.      Given the number of lawsuits, overturned patents, and the series of misleading statements to the USPTO and the FDA, it is clear Defendants' patent litigation is a scheme used by Defendants to extort competitors into purchasing raw Creatine Nitrate to incorporate into their products, furthering ThermoLife's attempt to monopolize the market for nutritional supplements that include any form of Creatine.

## COUNT I
## VIOLATION OF LANHAM ACT § 1125(a) AGAINST THERMOLIFE AND KRAMER

52.      BPI restates and realleges paragraphs 1 through 51 above as if fully set forth herein.

53.      Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) provides as follows:

(a) Civil Action

(1) Any person who, …in connection with any goods or services, … uses in commerce any word, term, name, … or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

\*      \*      \*      \*

(B)      in commercial advertising or promotion, misrepresents the

> nature, characteristics, qualities or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believe that he or she is likely to be damages by such act.

54.     The acts complained of above constitute a clear violation of 15 U.S.C. § 1125(a) as Defendants have falsely described BPI's goods and services.

55.     Defendants' false statements have proximately caused BPI to lose customers and decreased sales of Creatine.

56.     Pursuant to 15 U.S.C. § 1116(a), BPI is entitled to an injunction to prevent the continued violation of 15 U.S.C. § 1125(a).

57.     Furthermore, as the conduct of the Defendants was and is willful and intentional, BPI is entitled to relief under 15 U.S.C. § 1117(a), which provides that:

> When … a violation under section 1125(a) … of this title … shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of 1111 and 1114 of this title …, and subject to the provisions of equity, to recover (1) the defendant's profits, (2) any damages sustained by the Plaintiff, and (3) the cost of the action. … In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount of actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.  The court in exceptional circumstances may award reasonable attorneys fees to the prevailing party.

58.     As a direct and proximate result of Defendants' conduct, BPI has retained undersigned counsel to represent BPI in this matter, and BPI is obligated to pay for counsel's services.   Pursuant to 15 U.S.C. § 1117(a), BPI is entitled to recoup its attorneys' fees and costs as Defendants' conduct was a willful and intentional violation of 15 U.S.C. § 1125(a).

WHEREFORE, BPI demands:

I.      That Defendants, their officers, agents, employees, servants, privies, successors and assigns, and all persons and organizations in active concert, participation and combination with them, be enjoined and restrained from directly or indirectly disseminating false statements concerning BPI or otherwise engaging in deceptive acts and practices in the conduct of its business;

II.     That Defendants be required to account to BPI for any and all profits derived by Defendants, and to compensate BPI for all damages sustained by BPI by reason of the acts complained of herein, and that the Court:

    a.      Award BPI compensatory damages in an amount to be proven at trial for the injuries BPI sustained as a result of Defendants' acts complained of herein;

    b.      Award punitive and exemplary damages sufficient to deter Defendants from similar conduct in the future;

    c.      Require Defendants to pay BPI the costs of this action, including BPI's attorneys' fees; and,

    d.      Require Defendants to pay BPI prejudgment and post-judgment interest at the applicable rates on all amounts awarded;

III.    That Defendants be required to disseminate corrective advertising, at Defendants' expense and upon BPI's approval, that informs the trade and the purchasing public at large of Defendants' unlawful conduct as complained of herein and of the judgment requiring Defendants to cease such unlawful conduct, and/or require Defendants to pay BPI's costs in producing and disseminating such corrective advertising;

IV.     That Defendants, within 30 days after service upon them of the judgment, file with the Court and serve upon BPI a written report, under oath, setting forth in detail the manner and

form in which Defendants have complied with the injunction provisions of said judgment; and,

V.     That BPI is awarded such other and further relief as the Court may deem just and proper.

## COUNT II
## UNFAIR COMPETITION AGAINST THERMOLIFE AND KRAMER

59.     BPI restates and realleges paragraphs 1 through 51 above as if fully set forth herein.

60.     This cause of action arises under the common law of unfair competition as Defendants have falsely described BPI's goods and services.

61.     Defendants' wrongful acts of unfair competition have proximately caused and will continue to cause BPI substantial injury to its goodwill and reputation.

62.     Defendants' wrongful acts have caused and will continue to cause BPI irreparable harm.

63.     BPI has no adequate remedy at law for Defendants' continued acts of unfair competition.

64.     BPI is entitled to a judgment restraining Defendants from engaging in further unfair competition and for all resulting damages.

WHEREFORE, BPI demands:

I.     That Defendants, their officers, agents, employees, servants, privies, successors and assigns, and all persons and organizations in active concert, participation and combination with them, be enjoined and restrained from directly or indirectly disseminating false statements concerning BPI or otherwise engaging in deceptive acts and practices in the conduct of its business;

II.     That Defendants be required to account to BPI for any and all profits derived by Defendants, and to compensate BPI for all damages sustained by BPI by reason of the acts complained of herein, and that the Court:

a.      Award BPI compensatory damages in an amount to be proven at trial for the injuries BPI sustained as a result of Defendants' acts complained of herein;

b.      Award punitive and exemplary damages sufficient to deter Defendants from similar conduct in the future;

c.      Require Defendants to pay BPI prejudgment and post-judgment interest at the applicable rates on all amounts awarded;

III.    That Defendants be required to disseminate corrective advertising, at Defendants' expense and upon BPI's approval, that informs the trade and the purchasing public at large of Defendants' unlawful conduct as complained of herein and of the judgment requiring Defendants to cease such unlawful conduct, and/or require Defendants to pay BPI's costs in producing and disseminating such corrective advertising;

IV.    That Defendants, within 30 days after service upon them of the judgment, file with the Court and serve upon BPI a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction provisions of said judgment; and,

V.     That BPI is awarded such other and further relief as the Court may deem just and proper.

## COUNT III
## VIOLATION OF LANHAM ACT § 1125(a) AGAINST THERMOLIFE

65.    BPI restates and realleges paragraphs 1 through 51 above as if fully set forth herein.

66.    Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) provides as follows:

(b) Civil Action

(2) Any person who, …in connection with any goods or services, … uses in commerce any word, term, name, … or any combination thereof, any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

*      *      *      *

(B)    in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believe that he or she is likely to be damages by such act.

67.    The acts complained of above constitute a clear violation of 15 U.S.C. § 1125(a) as ThermoLife has falsely advertised the nature and composition of its own ThermoLife-branded and ThermoLife-licensed product.

68.    ThermoLife's false advertisements have proximately caused BPI to lose customers and decreased sales of Creatine.

69.    Pursuant to 15 U.S.C. § 1116(a), BPI is entitled to an injunction to prevent the continued violation of 15 U.S.C. § 1125(a).

70.    Furthermore, as the conduct of ThermoLife was and is willful and intentional, BPI is entitled to relief under 15 U.S.C. § 1117(a), which provides that:

> When … a violation under section 1125(a) … of this title … shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of 1111 and 1114 of this title …, and subject to the provisions of equity, to recover (1) the defendant's profits, (2) any damages sustained by the Plaintiff, and (3) the cost of the action. … In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount of actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.  The court in exceptional circumstances may award reasonable attorneys fees to the prevailing party.

71.    As a direct and proximate result of ThermoLife's conduct, BPI has retained undersigned counsel to represent BPI in this matter, and BPI is obligated to pay for counsel's

services.   Pursuant to 15 U.S.C. § 1117(a), BPI is entitled to recoup its attorneys' fees and costs as Defendants' conduct was a willful and intentional violation of 15 U.S.C. § 1125(a).

WHEREFORE, BPI demands:

I.      That ThermoLife, its officers, agents, employees, servants, privies, successors and assigns, and all persons and organizations in active concert, participation and combination with them, be enjoined and restrained from directly or indirectly disseminating false statements concerning the nature and composition of its own ThermoLife-branded and ThermoLife-licensed products or otherwise engaging in deceptive acts and practices in the conduct of its business;

II.     That ThermoLife be required to account to BPI for any and all profits derived by ThermoLife, and to compensate BPI for all damages sustained by BPI by reason of the acts complained of herein, and that the Court:

a.      Award BPI compensatory damages in an amount to be proven at trial for the injuries BPI sustained as a result of ThermoLife's acts complained of herein;

b.      Award punitive and exemplary damages sufficient to deter ThermoLife from similar conduct in the future;

c.      Require ThermoLife to pay BPI the costs of this action, including BPI's attorneys' fees; and,

d.      Require ThermoLife to pay BPI prejudgment and post-judgment interest at the applicable rates on all amounts awarded;

III.    That ThermoLife be required to disseminate corrective advertising, at Defendants' expense and upon BPI's approval, that informs the trade and the purchasing public at large of ThermoLife's unlawful conduct as complained of herein and of the judgment requiring ThermoLife to cease such unlawful conduct;

IV.     That ThermoLife, within 30 days after service upon them of the judgment, file with the Court and serve upon BPI a written report, under oath, setting forth in detail the manner and form in which ThermoLife has complied with the injunction provisions of said judgment; and,

V.      That BPI is awarded such other and further relief as the Court may deem just and proper.

## COUNT IV
## UNFAIR COMPETITION AGAINST THERMOLIFE

72.     BPI restates and realleges paragraphs 1 through 51 above as if fully set forth herein.

73.     This cause of action arises under the common law of unfair competition as ThermoLife has falsely advertised the nature and composition of their own ThermoLife-branded and ThermoLife-licensed product.

74.     ThermoLife's wrongful acts have caused and will continue to cause BPI irreparable harm.

75.     BPI has no adequate remedy at law for ThermoLife's continued acts of unfair competition.

76.     BPI is entitled to a judgment restraining ThermoLife from engaging in further unfair competition and infringement and for all resulting damages.

WHEREFORE, BPI demands:

I.      That ThermoLife, its officers, agents, employees, servants, privies, successors and assigns, and all persons and organizations in active concert, participation and combination with them, be enjoined and restrained from directly or indirectly disseminating false statements concerning ThermoLife-branded and ThermoLife-licensed product or otherwise engaging in deceptive acts and practices in the conduct of its business;

II.     That ThermoLife be required to account to BPI for any and all profits derived by

ThermoLife, and to compensate BPI for all damages sustained by BPI by reason of the acts complained of herein, and that the Court:

      a.      Award BPI compensatory damages in an amount to be proven at trial for the injuries BPI sustained as a result of ThermoLife's acts complained of herein;

      b.      Award punitive and exemplary damages sufficient to deter ThermoLife from similar conduct in the future;

      c.      Require ThermoLife to pay BPI prejudgment and post-judgment interest at the applicable rates on all amounts awarded;

III.      That ThermoLife be required to disseminate corrective advertising, at ThermoLife's expense and upon BPI's approval, that informs the trade and the purchasing public at large of ThermoLife's unlawful conduct as complained of herein and of the judgment requiring ThermoLife to cease such unlawful conduct;

IV.      That ThermoLife, within 30 days after service upon them of the judgment, file with the Court and serve upon BPI a written report, under oath, setting forth in detail the manner and form in which ThermoLife has complied with the injunction provisions of said judgment; and,

V.      That BPI is awarded such other and further relief as the Court may deem just and proper.

**COUNT IV**
**TRADE LIBEL AGAINST THERMOLIFE AND KRAMER**

77.      BPI restates and realleges paragraphs 1 through 51 above as if fully set forth herein.

78.      Defendants maliciously publicized false, deceptive or misleading statements affecting the reputation and business interests of BPI.

79.      As a direct result of Defendants' actions, BPI has suffered damages including the loss of profits, customers, goodwill, and damage to its reputation.

80.     But for Defendants' false, deceptive or misleading statements, BPI would not have suffered damage to its reputation.

WHEREFORE, BPI demands judgment against Defendants for compensatory damages, and for such other additional relief as this Court deems, just, necessary, reasonable, and proper.

## COUNT V
## LIBEL PER SE AGAINST THERMOLIFE AND KRAMER

81.     BPI restates and realleges paragraphs 1 through 51 above as if fully set forth herein.

82.     Defendants maliciously publicized false, deceptive or misleading statements affecting the reputation of BPI.

83.     As a direct result of Defendants' actions, BPI has suffered damages including the loss of profits, customers, goodwill, and damage to its reputation.

84.     But for Defendants' false, deceptive or misleading statements, BPI would not have suffered damage to its reputation.

WHEREFORE, BPI demands judgment against Defendants for compensatory damages, and for such other additional relief as this Court deems, just, necessary, reasonable, and proper.

## COUNT VI
## TORTIOUS INTERFERENCE WITH BUSINESS
## RELATIONSHIPS AGAINST THERMOLIFE AND KRAMER

85.     BPI restates and realleges paragraphs 1 through 51 above as if fully set forth herein.

86.     BPI has advantageous business relationships with its customers and clients.

87.     Defendants knew of those relationships.

88.     Defendants have intentionally and without justification tortiously interfered with BPI's business relationships by making false statement about BPI.

89.     As a result of Defendants' tortious interference, BPI has incurred damages.

WHEREFORE, BPI demands judgment against Defendants for compensatory damages,

and for such other additional relief as this Court deems, just, necessary, reasonable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, BPI hereby demands a trial by jury on all issues so triable.

Dated this __26th__ day of February, 2019.

KRINZMAN, HUSS & LUBETSKY
FELDMAN & HOTTE
800 Brickell Avenue, Suite 1501
Miami, Florida 33131
Telephone:   (305) 854-9700
Facsimile:    (305) 854-0508
Primary email:      cal@khllaw.com
                          shf@khllaw.com
Secondary email: eservicemia@khllaw.com


By:   /s/ *Cary A. Lubetsky*
          Cary A. Lubetsky, Esquire
          Florida Bar No. 961360
          Salvatore H. Fasulo, Esquire
          Florida Bar No. 143952

and

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
44 Montgomery Street, 36th Floor
San Francisco, California 94104
Telephone:     (415) 696-5644
Primary email:      sakerley@mintz.com
                          pcducker@mintz.com


By:   /s/ *Stephen J. Akerley*
          Stephen J. Akerley, Esquire
          *Pro Hac Vice* motion to be filed
          Philip C. Ducker, Esquire
          *Pro Hac Vice* motion to be filed

JS 44  (Rev. 06/17) FLSD Revised 06/01/2017

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a)   PLAINTIFFS**  BPI Sports, LLC

**DEFENDANTS**  Thermolife International, LLC
Ronald L. Kramer

**(b)** County of Residence of First Listed Plaintiff  Broward
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Krinzman Huss Lubetsky, Cary A. Lubetsky, Esq.
800 Brickell Avenue, Suite 1501, Miami, FL 33131

Attorneys *(If Known)*

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

**II. BASIS OF JURISDICTION**  *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☑ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☑ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

**V. ORIGIN**  *(Place an "X" in One Box Only)*

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed *(See VI below)*  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district *(specify)*  ☐ 6 Multidistrict Litigation Transfer  ☐ 7 Appeal to District Judge from Magistrate Judgment  ☐ 8 Multidistrict Litigation – Direct File  ☐ 9 Remanded from Appellate Court

**VI. RELATED/ RE-FILED CASE(S)**  (See instructions):  a) Re-filed Case ☐ YES ☑ NO       b) Related Cases ☐ YES ☑ NO
JUDGE:       DOCKET NUMBER:

**VII. CAUSE OF ACTION**  Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. 81125(a) Violations of Section 43(o) of the Lanham Act
LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**
DATE  February 26, 2019    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #       AMOUNT       IFP       JUDGE       MAG JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

BPI SPORTS, LLC,

       Plaintiff,

vs.

THERMOLIFE  INTERNATIONAL,  LLC,
and RONALD L. KRAMER,

       Defendants.

CASE NO.:

---

## SUMMONS IN A CIVIL CASE

To:    ThermoLife International, LLC
        c/o Ronald L. Kramer, Registered Agent
        1334 E CHANDLER BLVD #5 - D76
        PHOENIX, AZ 85048

**YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff's Attorney:

        **Cary A. Lubetsky, Esq.**
        **KRINZMAN HUSS LUBETSKY FELDMAN & HOTTE**
        **800 Brickell Avenue, Suite 1501**
        **Miami, Florida 33131**
        **Telephone:   (305) 854-9700**
        **Facsimile:   (305) 854-0508**

an answer to the Complaint which is herewith served upon you, within 21 days after service of this summons upon you, exclusive of the day of service.   If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.   You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____      _____
CLERK                                                       DATE

_____
(By) Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

BPI SPORTS, LLC,

       Plaintiff,

vs.

THERMOLIFE  INTERNATIONAL,  LLC,
and RONALD L. KRAMER,

       Defendants.

CASE NO.:

### SUMMONS IN A CIVIL CASE

To:    RONALD L. KRAMER
       1334 E CHANDLER BLVD #5 - D76
       PHOENIX, AZ 85048

**YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff's Attorney:

> **Cary A. Lubetsky, Esq.**
> **KRINZMAN HUSS LUBETSKY FELDMAN & HOTTE**
> **800 Brickell Avenue, Suite 1501**
> **Miami, Florida 33131**
> **Telephone:**   **(305) 854-9700**
> **Facsimile:**    **(305) 854-0508**

an answer to the Complaint which is herewith served upon you, within 21 days after service of this
summons upon you, exclusive of the day of service.   If you fail to do so, judgment by default will
be taken against you for the relief demanded in the Complaint.   You must also file your answer
with the Clerk of this Court within a reasonable period of time after service.

_____       _____
CLERK                                DATE

_____
(By) Deputy Clerk