## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

BPI SPORTS, LLC,

       Plaintiff,

vs.

THERMOLIFE INTERNATIONAL,
LLC and RONALD L. KRAMER,

       Defendants.

**CASE NO.: 0:19-cv-60505-SMITH**

## <u>MOTION FOR LEAVE TO AMEND</u>

Plaintiff, BPI Sports, LLC ("BPI"), by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 15 and 16, Local Rule 15.1, respectfully moves this Court for entry of an Order granting BPI leave to file a Second Amended Complaint ("SAC"). Pursuant to Section 3I(1) of the CM/ECF Administrative Procedures, BPI's proposed Second Amended Complaint is attached hereto as Exhibit A. For the convenience of the Court and the parties, a redline version reflecting the proposed changes is attached as Exhibit B. In support of this Motion, BPI respectfully refers the Court to the Memorandum of Law below.

## I.     INTRODUCTION

The purposes for which BPI seeks to file the Second Amended Complaint is to (1) join Muscle Beach Nutrition, LLC as a party, (2) add greater specificity to the patent marking allegations (including those involving licensed products), and (3) confirm that another statement on the label for CRTN-3 constitutes false advertising. The new pleading also accomplishes the perfunctory task of removing Counts dismissed in the Court's Order. D.E. 37. No new Counts are added in the SAC and any additional allegations are already rooted in the operative pleading. Recent events, recent discovery responses and recent actions by the Defendants justify the need for the changes and account for any delay. BPI believes that limited future discovery, outstanding third-party subpoenas and focused depositions should be sufficient to address the allegations in the SAC, including those against new party Muscle Beach Nutrition. Given that discovery is still open and does not close until July 8, 2020, the amendment will not cause prejudice to any existing or new parties. Accordingly, BPI believes there is good cause for the amendments.

## II.     BACKGROUND

### A.     The Relevant Court Orders

On January 9, 2020, the Court issued two Orders: (1) Order (on Defendants' Motion to Dismiss) [D.E. 37]; and (2) Order Setting Civil Trial Dates, Pretrial Deadlines, and Referral to Magistrate Judge [D.E. 38] ("Scheduling Order").   The Court's Order on the Motion to Dismiss indicated that "discovery in this matter shall immediately commence."   Pursuant to both Orders, the deadline for the joinder of any additional parties and amendment of the Amended complaint [D.E. 12] was January 22, 2020.   Pursuant to the Scheduling Order, BPI's expert disclosures are due on April 8, 2020.   Defendants' expert disclosures are due on May 8, 2020.   Rebuttal expert disclosures are due on May 29, 2020.   The deadline for fact and expert discovery is July 8, 2020. The deadline for dispositive motions is August 10, 2020.

### B.     Muscle Beach Nutrition, LLC

#### 1.     ThermoLife and Kramer's Relationship to Muscle Beach Nutrition

Counts I and II of the operative Amended Complaint are directed to false advertising under 15 U.S.C. § 1125(a) and common law unfair competition, respectively.   D.E. 12, ¶¶167-180. These Counts address representations on the label of a product bearing ThermoLife's trademark "Muscle Beach Nutrition" and the product name "CRTN-3" (shown below).   D.E. 12, ¶¶70-80.



BPI named ThermoLife International, LLC ("ThermoLife") and Ronald Kramer ("Kramer") as Defendants regarding these Counts based on overwhelming public evidence that the Muscle Beach Nutrition brand is controlled by, sponsored by, or otherwise affiliated with ThermoLife and Kramer.   D.E. 12.   For example, ThermoLife owns the trademarks "Muscle Beach Nutrition" and "Muscle Beach" for dietary supplements.   D.E. 22-1.   Trademark rights can only be acquired through use in U.S. commerce and ThermoLife submitted a statement of use to the United States Patent and Trademark Office ("USPTO") under 15 U.S.C. Section 1051(d) averring that the first use was by ThermoLife on May 28, 2017.   *Id*.   This statement was made

under penalty of fine or imprisonment under 18 U.S.C. § 1001.   *Id*.   The specimens submitted by ThermoLife to evidence its use in commerce was the identical packaging featured in the Amended Complaint, albeit different products.   *Compare* D.E. 12, ¶73 and D.E. 22-1 (shown below).

 

Products bearing "Muscle Beach Nutrition" are sold on the website https://musclebeach.com/ wherein the domain name incorporates ThermoLife's trademark. Kramer is the Chief Executive Officer of Muscle Beach Nutrition and therefore controls the company and the content.   D.E. 62-1.   Marketing materials refer to both ThermoLife and Muscle Beach and/or Muscle Beach Nutrition, including t-shirts that Kramer is fond of wearing at events. D.E. 23, p. 7.   ThermoLife's Facebook page invites customers to "come down and see us on Muscle Beach, Venice California," despite the fact that ThermoLife and Kramer are both located in Arizona.   D.E. 12, ¶¶4, 5.   The building at the corporate address of Muscle Beach Nutrition, 1811 Ocean Walk, Venice, California, has featured three ThermoLife banners (shown below).



In the trademark action *ThermoLife International LLC v. Shartouni*, Case No.: 2:18-cv-01546-JJT (D. Arizona), filed by ThermoLife on May 22, 2018, ThermoLife made claims against a series of websites incorporating "muscle beach" or "muscle beach nutrition" and pled that it

owns and "***does business***" under the "Muscle Beach Nutrition" and "Muscle Beach" marks.   D.E. 22-2.   According to ThermoLife, "Kramer is widely known in the dietary supplement industry and those in the industry recognize that Mr. Kramer is affiliated with ThermoLife and the names that ThermoLife does business under, like Muscle Beach."[1]   *Id*.   ThermoLife requested that all of the muscle beach websites be transferred "to ThermoLife" (not Muscle Beach Nutrition).

On April 5, 2019, ThermoLife filed a Notice of Opposition to a third-party trademark application for "Muscle Beach South Beach" relying on its rights in Muscle Beach Nutrition and Muscle Beach.   D.E. 22-3.   In this Opposition, ThermoLife informed the USPTO that it "continually used" the marks Muscle Beach and Muscle Beach Nutrition for dietary supplements in interstate commerce since "at least as early as May, 2017."   *Id*.   ThermoLife informed the USPTO that it "expended substantial effort and resources for years to ***advertise*** and promote [the marks] and ***the products sold*** and services provided under these marks."   *Id*. (emphasis added). According to ThermoLife, this use has been "continuous, widespread and notorious interstate use." *Id*.   Thus, BPI had more than a substantial basis to name ThermoLife and Kramer as Defendants.

### 2.      Defendants Are Obstructing Discovery Of Muscle Beach Nutrition

### a.      Party Discovery Regarding Muscle Beach Nutrition

In pursuit of its claims, BPI served written discovery on Defendants on February 5, 2020, including Requests for Production to ThermoLife and Kramer and a First Set of Interrogatories to ThermoLife.   D.E. 62-2.   On February 6, 2020, BPI served Kramer with a First Set of Interrogatories.   *Id*.   Defendants responses to BPI's Requests for Production and Interrogatories were provided on March 20, 2020.   D.E. 62-3.   Simple inspection of the responses reveals that Defendants have either decided to not participate in certain discovery *at all* because they are allegedly not Muscle Beach Nutrition, or severely restrict their participation in favor of their own unilateral position.

For example, despite the fact that BPI's First Request for Production were served on *both*

---

[1]  Having made these admissions in a pleading, ThermoLife is judicially estopped from taking the position that it does not do business under the name "Muscle Beach Nutrition" and there is no affiliation between the two.   *Allapattah Services, Inc. v. Exxon Corp.*, 372 F.Supp.2d 1344, 1367) (S.D. Fla. 2005) ("The Eleventh Circuit has repeatedly held that the doctrine of judicial estoppel is applied to the calculated assertion of sworn divergent positions, and is designed to prevent parties from making a mockery of justice by inconsistent pleadings") (citing *Salomon Smith Barney, Inc. v. Harvey,* 260 F.3d 1302, 1308 (11th Cir. 2001)).

ThermoLife and Kramer, Kramer did not serve *any* objections or responses.   D.E. 62-2, p. 13. Although Kramer provided objections to BPI's Interrogatories, he refused to provide *any* substantive answers simply because they were directed to discovering facts surrounding Muscle Beach Nutrition.   D.E. 62-3.   Indeed, despite admitting that he has the information requested by BPI, he relied on the excuse that "[t]here is no claim in this lawsuit against Muscle Beach Nutrition, LLC."   *Id*., p. 46.   Each interrogatory commenced with the statement that "Kramer stands by his objections here and will not produce information in response to this interrogatory."   *Id*.   Such a position is contrary to the scope of discovery and precludes BPI from rebutting Defendants' unsupported position that they are a wholly separate entity from Muscle Beach Nutrition.

BPI received similar responses from ThermoLife.   Regarding requests for financial information regarding the product CRTN-3, ThermoLife did not deny being in possession of these documents, but rather, indicated that because "Muscle Beach Nutrition, LLC is a different company than ThermoLife International, LLC"…"[t]hese are not ThermoLife documents to produce; ***responsive documents are in the possession and control of Muscle Beach Nutrition, LLC***.   D.E. 62-4, p. 26, Request No. 20; *see also*, *Id*., p. 46, Interrogatory No. 17.   In response to questions regarding who is responsible for advertising and patent marking of CRTN-3, ThermoLife responded "***Muscle Beach Nutrition, LLC***."   D.E. 62-3.[2]

### b.    Third Party Discovery Regarding Muscle Beach Nutrition

On February 21, 2020, a subpoena was served on Muscle Beach Nutrition for documents and a deposition.   Exhibit C.   In addition to serving the ordinary purpose of retrieving information relevant to BPI's merits and damages case, the subpoena was intended to establish the identities, roles and operations of the entities involved; investigate sharing or comingling of directors, employees, facilities and assets; and explore alter ego theories.   Given that notice to ThermoLife and Kramer was necessary anyway and given that Kramer is the CEO of Muscle Beach Nutrition, on February 19, 2020, BPI's counsel provided the subpoena to counsel of record for the Defendants, Gregory Collins of the firm Kercsmar & Feltus PLLC, to ask if he would accept service, but the request was denied.   The deposition (and document production) were noticed for March 12, 2020.   On March 3, 2020, BPI was notified by another attorney at Kercsmar & Feltus that their firm does ***not*** represent Muscle Beach Nutrition.   This did not stop the firm

---

[2]   On March 27, 2020, BPI moved to compel documents and responses in those instances where Defendants refused to produce any documents or answer interrogatories at all.   D.E. 62.

from speaking on its behalf and informing BPI that Kramer was the intended witness and was travelling March 10-19. On March 5, 2020, BPI agreed to postpone the deposition due to Kramer's travel and asked to be put in touch with counsel for Muscle Beach Nutrition.

On March 6, 2020, objections were provided to BPI by Matthew Wolf of Turner Friedman Morris & Cohan LLP (in Beverly Hills, California) on behalf of Muscle Beach Nutrition. Exhibit D. Between March 13-23, 2020, emails were exchanged between counsel for BPI and Mr. Wolf regarding the subpoena and Muscle Beach Nutrition's compliance with same. Exhibit E. On March 17, 2020, due to coronavirus issues affecting California and elsewhere, BPI agreed to treat the subpoena as documents only and defer the deposition until the time of Kramer's individual deposition in this case. *Id.* After some additional delay, on March 23, 2020, Mr. Wolf indicated he would speak to his client (Mr. Kramer) about documents and revert back to BPI's counsel. *Id.*

On March 25, 2020, BPI enlisted California counsel, Dan Silverman of Venable, LLP, to attend to the local meet and confer requirements prior to filing a motion to compel (including setting up a telephonic conference to do so). Shortly thereafter, on March 25, 2020, Mr. Wolf indicated that Gregory Collins, counsel for Defendants (but not Muscle Beach Nutrition), should be present on the call and while Muscle Beach Nutrition was willing to meet and confer, it was "not agreeing to waive any objections *or produce documents*." *Id.* (email dated March 25, 2020, 10:17 a.m.). Quite obviously, this decision was made by Kramer.

The next day, Mr. Collins personally injected himself into these discussions, insisting that he be present during the meet and confer conference. *Id.* (email dated March 26, 2020, 12:36 a.m.). Ironically, after ThermoLife took the uncompromising position that "responsive documents are in the possession and control of Muscle Beach Nutrition," Mr. Collins hurled accusations that the mere service of a subpoena on Muscle Beach Nutrition constituted "a transparent effort to harass ThermoLife customers with subpoenas seeking *irrelevant information*." *Id.* According to Mr. Collins, ThermoLife has a protectable interest in ensuring that its customers are not "harassed" and "production under this subpoena would unquestionably require Muscle Beach Nutrition to produce documents that include ThermoLife's confidential business [information]."[3] *Id.* Mr. Collins did not identify any confidential information, nor is it clear why any would exist if they were indeed separate companies operating at arm's length.

---

[3] BPI is attempting to secure documents pursuant to this subpoena which may require a motion to compel in California district court. At this time of this filing, nothing has been produced.

### C.    The False Patent Marking Allegations (Count VI)

#### 1.    Discovery Informed the False Marking of Licensed Products

BPI's false marking claims under 35 U.S.C. § 292 involve the product bearing the ThermoLife's trademark Muscle Beach Nutrition, "CRTN-3."    This product also includes ThermoLife's trademark "NO3-T", corresponding to the website, http://www.no3-t.com/patents/, which lists patents that do not cover the product.   D.E. 12, ¶¶158-166, 194-199.

The Amended Complaint also alleged that "ThermoLife's licensee's products are falsely marked with the ThermoLife Patents."   D.E. 12, ¶165, *see also*, p. 33 (header).   In Count VI, BPI specifically alleged that:

> Defendants, individually or collectively, caused to be deceptively marked, affixed, or used the legend "NO3-T" in connection with product(s) of licensee(s) to convey that the creatine nitrate contained therein was encompassed under at least one claim of each ThermoLife Patent listed on http://www.no3-t.com/patents/.

*Id*., ¶197.   In the Court's Order (on the Motion to Dismiss) [D.E. 37], the Court held that BPI's allegations regarding these licensees "lacks the specificity required of Rule 9(b)."   D.E. 37, p. 16.

On March 20, 2020, in response to an interrogatory reciting: "[i]dentify every ThermoLife licensee which markets a nitrate product," ThermoLife identified the brand names: Cellucor, Dedicated USA, Purus Labs, Scivation, PEScience, Ghost, Labrada, Evolution Nutrition, VMI, BSN, Wrkethic, Stance, Vitasport, XP2, Cellshock Research, ForzaOne, Build Fast Formula, Nutrex Research, MTS Nutrition, Pump Chasers, Core Nutrition, RYSE, Arms Race, and Muscle Beach Nutrition.   D.E. 62-3, p. 5, response to Interrogatory No. 3.

In response to an interrogatory reciting "whether ThermoLife requires any licensee to mark their nitrate product(s) with the 'NO3-T' logo, and if so, what products and under what circumstances," ThermoLife referenced "patent licenses that its patent licensees have entered into with ThermoLife" which "indicated under what circumstances a product must be marked with the NO3-T trademark."   D.E. 62-3, p. 5, response to Interrogatory No. 6; *see also*, p. 6, response to Interrogatory No. 7.   These confidential licenses identified by ThermoLife were produced on the same date as the responses, March 20, 2020 (bates-stamped TLI000469-572).   In response to an interrogatory reciting "[i]dentify the person(s) who decides which ThermoLife patents are listed on the website http://www.no3-t.com/patents/, ThermoLife responded "Ron Kramer."   D.E. 62-3, p. 8, response to Interrogatory No. 13.

Since the filing of the Amended Complaint, the website http://www.no3-t.com/patents/ has undergone continuous changes.   After being accused of false marking, ThermoLife substantially modified the website in an obvious attempt to avoid liability and mitigate damages.   *Compare* D.E. 22-4 (initial marking website dated March 18, 2019), Amended Complaint (D.E. 12, dated April 19, 2019) and D.E. 22-5 (subsequent marking website dated May 27, 2019).   Although Defendants insisted that Muscle Beach Nutrition was a licensee, it was not listed on this website. D.E. 22-5.   On March 20, 2020, ThermoLife produced the current version of the website, printed March 18, 2020, which does list Muscle Beach Nutrition.[4]   Exhibit F (TLI000460-62).

The discovery provided by ThermoLife confirms that licensed products are falsely marked. For example, Woodbolt Distribution, LLC (d/b/a) Cellucor marks its products C4 Original, C4 Ultimate, C4 Extreme Energy, NO3 Chrome, NO3 Ultimate, M5 Ultimate and CN3 with ThermoLife's trademark "NO3-T," but were falsely associated with irrelevant patents on ThermoLife's website, www.no3-t.com/patents.[5]   D.E. 22-4.[6]

The current version of ThermoLife's website lists Muscle Beach Nutrition along with the products CRTN (a/k/a CRTN-3) and another amino acid nitrate product, "Pre-Train."   CRTN-3 is still being falsely marked, even after Defendants were first given notice of the false marking in the Amended Complaint on April 19, 2019.   D.E. 12.   With similar reasoning, the product "Pre-Train" bears the "NO3-T" logo and has been falsely marked on earlier website versions with the

---

[4]   Certain intervening versions of ThermoLife's website produced in discovery did not list Muscle Beach Nutrition (TLI000458) whereas others did (TLI000075, TLI000466 and TLI463).

[5]   As set forth in the proposed Second Amended Complaint ("SAC"), Cellucor's C4 Original product is not covered by at least the claims of the '836 Patent, the '921 Patent, the '368 Patent, the '369 Patent, the '045 Patent, or the '047 Patent.   Likewise, C4 Ultimate is not covered by the '836 Patent, the '921 Patent, the '368 Patent, the '369 Patent, or the '045 Patent; C4 Extreme Energy is not covered by the '836 Patent, the '921 Patent, the '368 Patent, the '369 Patent, the '045 Patent, the '047 Patent, or the '100 Patent; NO3 Chrome and NO3 Ultimate are not covered by the '074 Patent, the '836 Patent, the '921 Patent, the '368 Patent, the '369 Patent, the '045 Patent, or the '047 Patent; M5 Ultimate and CN3 are not covered by the '836 Patent, the '921 Patent, the '368 Patent, the '369 Patent, the '045 Patent, the '047 Patent, or the '100 Patent.   SAC, ¶¶108-110.   All of these patents were listed on ThermoLife's website.   D.E. 22-4.

[6]   The same reasoning can be applied to the remainder of the licensees named by ThermoLife in the above discovery response, since any patent that was listed on the previous website, that is not listed adjacent to the products on the current version of the website, was originally falsely marked with the earlier listed patents in connection with that product.   SAC, ¶111.

'074 Patent, the '836 Patent, the '921 Patent, '572 Patent, the '288 Patent, the '368 Patent, the '369 Patent and the '045 Patent.   SAC, ¶111.

### 2. A Recent Decision Has Issued From the Federal Circuit

This case involves Defendants' false marking of products based on a patent estate that matured from parent U.S. Patent No. 7,777,074 ("the '074 Patent").   D.E. 12, ¶37.   As originally issued, the compound "creatine nitrate" was covered by a claim in the '074 Patent.   *Id.*, ¶¶81-82. The '074 Patent was the subject of multiple reexaminations during which this claim was rendered invalid in view of the prior art.   *Id.*, ¶83.   In response, ThermoLife pursued claim 6 that recited:

6. A Compound having the structure of:



wherein Y is selected from the group
consisting of a Nitrate and a Nitrite

During the course of reexamination, this claim was finally rejected by the USPTO, and the rejection was affirmed by the Patent and Trial Appeal Board.   On January 10, 2020, the Court of Appeals for the Federal Circuit affirmed the Board's decision.   *In re ThermoLife International, LLC*, 2020 WL 114123 (Fed. Cir. January 10, 2020).   Thus, ThermoLife does not own a claim to the species creatine nitrate and any claims by Defendants to the contrary, either expressly or implicitly, are false, unfair and misleading.   Likewise, any product marked with the logo "NO3-T" and associated with the '074 Patent on the website, http://www.no3-t.com/patents/, based solely on the fact that the product contains creatine nitrate is falsely marked.   Yet, Defendants continued to list this patent in connection with several products, including Cellucor's products.   Exhibit F.

Immediately prior to the filing of this motion, but after Defendants received a copy of the Second Amended Complaint, a review of the marking website http://www.no3-t.com/patents/ revealed that Defendants have furiously scrubbed the '074 Patent from the webpage, at least in association with the Cellucor products, leaving only empty boxes (shown below).   This stands as another demonstration of the website control and culpability of Defendants.   Exhibit G.

| Cellucor: | |
|---|---|
| C4 Original | |
| C4 Ultimate | |
| C4 Extreme Energy | |
| NO3 Chrome | 8,178,572 |
| NO3 Ultimate | 8,178,572 |
| M5 Ultimate | |
| CN3 | |

**D.      The False Advertising Allegations (Counts I and II)**

BPI's false advertising claims under 15 U.S.C. § 1125(a), and common law unfair competition (Counts I and II), involve representations regarding the superiority and exclusivity of CRTN-3.  D.E. 12, ¶¶70-80, 167-180.  The label for the product includes the representation "hyper infused creatine matrix."  This statement is equally false, unfair and misleading and already captured by the Amended Complaint given that the product itself, the label and this "matrix" representation were all presented therein, coupled with the allegation that "[t]he acts complained of above constitute violations of 15 U.S.C. § 1125(a)."   D.E. 12, ¶73, 168. Nevertheless, out of an abundance of caution, BPI seeks to add the representation to paragraph 76 of the Amended Complaint (paragraph 86 of the SAC) which calls out other aspects of the label.

**III.      GOVERNING LAW**

A decision whether to grant or deny a motion for leave to file an amended complaint is within the sound discretion of the district court.   *Foman v. Davis*, 371 U.S. 178, 182 (1962).   A pretrial scheduling order "controls the course of the action unless the court modifies it."   Fed.R. Civ.P. 16(d).   A "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).   Once a party seeking leave to file an untimely amendment has made a showing of good cause for its delay, a court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

In deciding whether to grant leave to amend, the Court may consider the following factors: undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by previously permitted amendments, undue prejudice to the opposing party, and the futility of the amendment. *Grayson v. Kmart Corp.*, 79 F.3d 1096, 1109 (11th Cir. 1996); *see also Maynard v. Md. Of Regents of the Div. of Univers. Of the Fla. Dep't of Educ.*, 342 U.S. 1281, 1287 (11th Cir. 2003).   Even where a party has missed the deadline to amend the pleadings by several months, diligence may

be reflected in the manner in which a party sought discovery. *Horton v. Exact Software of North America*, 2012 WL 13134495, \*2 (S.D. Fla. July 20, 2012) ("Turning to the facts of this case, Plaintiff missed the March 2, 2012 deadline for the amendment of pleadings by three (3) months…However, it appears that Plaintiff has been diligent, at least as it relates to seeking discovery.").

Likewise, a party may be justified in adding a new party after the amendment deadline if the true role it plays is only revealed during discovery. *Slip-N-Slide Record, Inc. v. TYT Records, LLC*, 2006 WL 8431691, \*2 (S.D. Fla. October 27, 2006) (Under the circumstances, we are satisfied that TeeVee Toons has met its burden under Rule 16(b) and shown good cause for the delay in moving to add these individuals to the case. Although their names may have been in the public domain, TeeVee Toons did not necessarily have knowledge, sufficient to allege in a pleading, of the role each played in allegedly damaging TeeVee Toons until Waserstein's deposition. The requirements of Rule 16(b) have thus been satisfied."). The addition of a party may be effectuated without the addition of new causes of action. *Renfrow v. First Mortgage America, Inc.*, 2010 WL 11558215, \*1 (S.D. Fla. October 8, 2010) ("After careful review, the Court finds that Plaintiffs have demonstrated good cause to amend their Complaint to include JPMorgan Chase and Federal Home Loan Mortgage Corporation as additional parties…however, that Plaintiffs have not demonstrated good cause to…include the additional causes of action.").

## IV.    ARGUMENT

Application of the foregoing standards to the present situation warrants that BPI be granted leave to file the Second Amended Complaint. As the following discussion demonstrates, there is no evidence of bad faith, undue delay, dilatory motive, or repeat failures to cure deficiencies by amendments.

### A.    Muscle Beach Nutrition Should Be Added As A Defendant

Defendants are playing the corporate name game and attempting to have it at least three different ways. In order to secure a trademark, enforce it and preclude others from pursuing similar marks, Defendants informed the USPTO, the Trademark Trial and Appeal Board and the District of Arizona—through judicial admissions and statements under oath—that ThermoLife owns the trademark Muscle Beach Nutrition, continuously uses it in commerce and "*does business as*" Muscle Beach Nutrition, including "*advertising and promoting*" the products. D.E. 22-1, 2 and 3.

After being accused of false advertising, the opposite magically became true and there was nothing for BPI to discover.   ThermoLife had no advertising, no expenditures from the promotions and no revenue was generated.   D.E. 62-4.   Rather, as ThermoLife contends in its recent discovery responses, discoverable information is only *"in the possession and control of Muscle Beach Nutrition."   Id*.   When BPI attempted to secure the exact *same information* from Muscle Beach Nutrition, Defendants' attorney (who expressly indicated that he does not represent Muscle Beach Nutrition) attempted to force their way into discovery conferences under the auspice that a single subpoena to the party Defendants identified constitutes "harassment" in the pursuit of "irrelevant" information.   Exhibit E.   The obvious purpose was to obstruct discovery and steer it on behalf of the related parties, ThermoLife and Kramer.

BPI recognizes that one way to address these contrary positions and "hide the ball" tactics is to continue pressing discovery against all entities and move to compel where necessary.   BPI is currently fighting a war on both coasts in this regard (*i.e.*, California and Florida).   Exhibits C-E; D.E. 62.   BPI believes that once discovery is complete, Defendants' initial, non-litigation positions will be revealed as accurate and Muscle Beach Nutrition will be exposed as a closely held company, with few officers, directors, employees, offices, operations that serves as an alter ego and/or mere instrumentality of ThermoLife and/or Kramer.   SAC, ¶¶61-68.   Even at this stage of the litigation, Defendants have not pointed to any credible evidence to establish that Muscle Beach Nutrition is anything other than a shell corporation operated by Kramer.   This likely explains why Kramer has not produced a single piece of paper in response to BPI's document requests or answered a single interrogatory on behalf of *any entity*.   D.E. 62-2, 62-3.

The other way to address the current situation is to add Muscle Beach Nutrition as a party. BPI has been more than diligent pursuing discovery regarding this entity, particularly given the obstacles.   Following the Court's Order on Defendants' Motion to Dismiss (January 9, 2020), BPI prepared and served party discovery (February 5, 2020) and non-party discovery (February 21, 2020).   Immediately following receipt of Defendants' responses (March 20, 2020), BPI began preparing the Second Amended Complaint, meeting and conferring regarding same and preparing the instant motion for leave to amend.   Due in part to Defendants' actions, and due in part to delays caused by coronavirus (COVID-19), BPI's efforts to secure information from Muscle Beach Nutrition are still continuing.   Although BPI has missed the amendment date by slightly over two months, BPI's diligence is reflected in the manner in which it sought discovery, which can be

given due consideration.  *Horton v. Exact Software of North America*, 2012 WL 13134495, *2 (S.D. Fla. July 20, 2012) (allowing amendment three months after deadline).

Notably, in the event Muscle Beach Nutrition shares liability for BPI's false advertising and unfair competition claims (as repeatedly alleged by Defendants), BPI has a separate cause of action against this entity.  However, the most efficient way to proceed is to add Muscle Beach Nutrition as a party to this case.  Not only would this consolidate all implicated entities and address all issues, it avoids the need for BPI to file a second lawsuit.  Although Defendants have indicated that they unilaterally oppose the addition of Muscle Beach Nutrition as a party,[7] litigants who (i) take credit for advertising in order to further their pre-trial interests, including gathering all the goodwill, then (ii) deny liability and implicate the non-party and its actions in *every regard*, then (iii) attempt to deny, obstruct and interfere with discovery of that party, are hardly in a position to complain that the non-party is being added to the litigation.

Given that the decision to add Muscle Beach Nutrition is based, in part, on Defendants' recent discovery responses, and its behavior during discovery, BPI has not engaged in undue delay.[8]  Although Defendants have indicated that it will suffer undue prejudice due to the stage of the litigation, this objection lacks adequate basis and constitutes form over substance.  The product bearing ThermoLife's trademark Muscle Beach Nutrition, CRTN-3, has been in the case since the filing of the Amended Complaint.  D.E. 12, ¶73.  BPI's false advertising and unfair competition claims concern representations on the label of this product, including the supplement facts, which are already present in the Amended Complaint.  *Id*.

As further reflected in the Amended Complaint, the label falsely represents that CRTN-3 is the "First-time Fusion Of Creatine Nitrate, Creatine Hydrochloride, and Creatine Monohydrate." D.E. 12, ¶73.  BPI has also concluded that the representation that CRTN-3 includes a "hyper infused creatine matrix" is false and misleading as reflected on the product label in the Amended Complaint and referred to in existing Counts I and II.  D.E. 12, ¶¶73, 168, 175.  Under such circumstances, there are no new allegations which greatly simplifies the decision to add a party.

---

[7] On March 25, 2020, BPI provided a draft of the SAC to Defendants.  On March 27, 2020, counsel for Defendants' counsel provided a four-page letter indicating why Defendants "will not consent to the filing" of the SAC because the "late juncture will severely prejudice" the defense.

[8] Likewise, there is no credible evidence that BPI has acted in bad faith, operated under an improper motive or engaged in the repeated failure to cure deficiencies by previously permitted amendments.

*Slip-N-Slide Record, Inc. v. TYT Records, LLC*, 2006 WL 8431691, *2 (S.D. Fla. October 27, 2006) (good faith under Rule 16(b) to add parties but no new allegations).  Indeed, given the nature of Muscle Beach Nutrition, the representations of Defendants and their relationship to this entity, including the fact that Kramer is the Chief Executive Officer, there is barely a new party.

Defendants will not be prejudiced by the posture of the case.   The next deadline in the case is the expert report deadline of April 8, 2020.   However, as the party which bears the burden of proof, BPI is the only responsible for meeting this deadline.   D.E. 38.   The rebuttal reports are not due until May 8, 2020, and besides, the existing Defendants, including Kramer, would be addressing the allegations contained in BPI's expert reports anyway.   Adding Muscle Beach Nutrition (a closely held corporation of Kramer) fails to create any extra work, particularly when there are no new allegations.   Thus, the addition of this party presents no prejudice regarding expert reports.   If it does, BPI would not object to an extension of this deadline, with court permission.   Finally, there are three months left in discovery and over four months before the dispositive motion deadline, which is sufficient time for Muscle Beach Nutrition to defend itself.

Last, the Second Amended Complaint is not futile or so frivolous as to justify denying BPI's leave to amend.   An amendment is futile only when the complaint as amended would still be properly dismissed or immediately be subject to summary judgment for the defendant. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (amendment is futile if defendant would be entitled to summary judgment on the merits of the claim if the amendment were allowed). Defendants already attempted to dismiss the false advertising allegations in the Amended Complaint and failed.   D.E. 37.   Given the purported liability of Muscle Beach Nutrition, and the newly discovered evidence, it is appropriate to allow the proposed amendment to add this party.

**B.     The False Marking Allegations Should Be Updated**

**1.     The Products of ThermoLife's Licensees Are Falsely Marked**

Count VI of the Amended Complaint is currently directed to false marking claims under 35 U.S.C. § 292.   D.E. 12, ¶¶158-166, 194-199.   As noted, the Amended Complaint originally alleged that "ThermoLife's licensee's products are falsely marked with the ThermoLife Patents." D.E. 12, ¶165, 197.   Since the Court's Order (on the Motion to Dismiss), BPI has been able to secure the information from Defendants to satisfy Rule 9(b).   D.E. 37, p. 16.   Thus, BPI requests permission to update the false marking allegations to include products other than CRTN-3.

On March 20, 2020, ThermoLife provided the specific names of licensees (including Cellucor); directed BPI to the actual licenses to ascertain under what circumstances licensed products must be marked; and provided, *for the first time*, the licenses that contain this information. D.E. 62-3, p. 5, Interrogatory Nos. 3 and 6; TLI000469-572.   On this same day, ThermoLife produced the current version of the website (TLI000460) (printed March 18, 2020), listing Cellucor and other licensees.   Exhibit F.   Since then, Defendants have been modifying the marking site attempting to stay one step ahead of BPI.   Exhibit G.   Based on the circumstances, BPI is now in a position to allege false marking of the product marketed by licensee Cellucor and the other brands listed on ThermoLife's marking website.   SAC, ¶¶108-110.

With similar reasoning set forth above regarding false advertising and unfair competition, BPI has been more than diligent pursuing discovery regarding false marking.   *See*, discovery timeline, *supra*.   Given that the decision to modify the marking allegations is based, in part, on Defendants' recent discovery responses, BPI has not engaged in undue delay.   As is clear from the actions of Defendants in constantly modifying the marking website, the landscape of the false marking continues to change, and as such, BPI should be permitted to modify the allegations to account for such changes.   In the event the Court agrees that Defendants can be liable for the false marking relating to the licensed products (discussed in detail, *infra*), BPI has a separate cause of action against Defendants regarding these products.   However, the most efficient way to proceed is to add the additional marking claims to this case.   Not only would this consolidate all of the marking issues, it avoids the need for BPI to file a second lawsuit.

Defendants will not suffer any undue prejudice due to the stage of the litigation.   The false marking allegations have been in the case since the filing of the Amended Complaint.   D.E. 12, ¶¶158-166.   The entire substantive cause of action, whether under the Amended Complaint or the Second Amended Complaint, centers on the patents listed on Defendants' own websites, www.thermolife.com and http://www.no3-t.com/patents/.   These websites list ThermoLife's patents and Kramer controls the content.   D.E. 62-3, p. 8, response to Interrogatory No. 13.   The addition of the false marking of the licensed products is therefore of no moment since the only thing that appears on the various licensed products is the same ThermoLife trademark, "NO3-T".

As noted, the next deadline in the case is BPI's expert report deadline of April 8, 2020 and rebuttal reports are not due until May 8, 2020.   The existing Defendants will be addressing the existing false marking allegations and the only difference if the amendment is granted is that there

will be more instances of false marking.   This does not give Defendants' room to complain about undue prejudice, particularly given that Defendants' false marking is morphing and continuing. Finally, there are three months left in discovery and over four months before the dispositive motion deadline, which is sufficient time for Defendants to participate and prepare a defense.

Finally, updating the marking requirements to cover licensed products is not futile or frivolous.   BPI takes this opportunity to address an argument previously advanced by ThermoLife in its Motion to Dismiss, and reflected in the Court's Order, which has been misused by Defendants during the litigation.   Specifically, Defendants baldly alleged in the Motion to Dismiss that "the false marking statute is clear: liability only attaches *to the person that marked the product*."   D.E. 16, p. 8 (emphasis in original).   At best, this interpretation begs the question of what is meant by "marking," but given Defendants' claim that a patentee (licensor) could *never* be responsible for the marking associated with a licensee's product, the statute is hardly "clear" on this point. Significantly, Defendants offered no case law in support of this bizarre statutory interpretation, notwithstanding that Defendants were the only ones advancing it.   *Id.*

BPI addressed this argument in its opposition to the Motion to Dismiss by pointing out, *inter alia*, that Defendants' position makes no sense under the more recent *virtual* marking provisions of 35 U.S.C. § 287.   In response, Defendants added no more value to the discussion, but rather, provided a truncated portion of the statute again focusing on the physical act of marking the commercial embodiment ("whoever marks upon"), and again alleging that a licensor could not be liable for such "marking" by a licensee.   D.E. 30, p. 9 (citing "Section 292").[9]

In its Order, the Court noted that "BPI has cited no case law extending liability to a patent holder for markings by a licensee, when the marking statute on its face attaches liability to the person who marks the unpatented product.   *See* 35 U.S.C. § 292(a) ("*Whoever marks* upon, or *affixes to, or uses in advertising…*)."   D.E. 16 (emphasis in original).   However, under the *virtual* marking provisions, the act of "attachment" is not the touchstone Defendants have made it out to be, much less where, as here, the licensee is forced to attach Defendants' own logo which, standing alone, may identify ThermoLife, but otherwise fails to provide the public with notice of anything.

---

[9]   In the event Defendants are correct that a licensee is either wholly, or even at least partially liable for the marking of its own product (*i.e.*, affixing "NO3-T"), this further weighs in favor of adding Muscle Beach Nutrition as a party, and the product "Pre-Train," so that all of the marking issues involving this culpable entity can be resolved in the same case.

The virtual marking provisions in § 287 accomplish marking through "**a posting on the Internet**, accessible to the public without charge for accessing the address, that **associates** the patented article with the number of the patent."    *Id*.    Defendants must bear responsibility and liability for a licensed product where (1) the patentee *controls* the substantive *content* of the marking website; and (2) the patentee *contractually requires* the licensee to affix its trademark logo.    D.E. 23, p. 12-13.    This makes legal and logical sense since, absent the "association of the patented article with the number of the patent" (provided by Defendants), the licensee's mere act of "affixing" a bare logo, with zero context, does not constitute "marking" under *any interpretation* of the statute.    To remove any doubt about what entity is effectuating the marking, Defendants' own marking website, http://www.no3-t.com/patents/, states:

> *In accordance with 35 U.S.C. 287(a), the reader is hereby **placed on notice** of ThermoLife International, LLC's rights in the United States Patents and Patent Applications **listed on this site and associated with the products listed**.*

D.E. 22-5; Exhibit F.    Accordingly, what is abundantly "clear" from Defendants' own website,[10] is that "marking" is the intellectual choice of associating particular patents with particular products and providing the public notice of same.[11]    Defendants are the only entity engaging in this action.

Moreover, as the Court aptly pointed out in its Order, § 292 also contemplates "***advertising*** in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public."    Such advertising is accomplished through the dynamic discussed above whereby Defendants require licensee to use its trademark "NO3-T" and maintain the marking website, http://www.no3-t.com/patents/.    Alternatively, as expressly stated in the Amended Complaint, ThermoLife's main website http://thermolife.com/ brazenly touts "Patented Nitrate Technology," "19 Nitrate Related Patents," "More Than 450

---

[10]    Defendant Ron Kramer is responsible for the content on this website.    D.E. 62-3, p. 8, response to Interrogatory No. 13.

[11]    Prior to the amendment to § 287 permitting virtual marking, BPI would be inclined to agree that a patentee (licensor) would likely not be responsible for a licensee's marking if, for example, a license simply required to the licensee to "mark the product" and the licensee affixed the *patent numbers on a particular product* (or its label, packaging insert, or the like).    Likewise, under the virtual marking provisions, in the event the *licensee* maintained and controlled the marking website (and therefore was solely responsible for the "association" of patents to products), BPI would be inclined to agree that the patentee would likely not be liable.    However, it is untenable under the virtual making provisions to suggest that patentee escapes all liability where the patentee maintains the marking website and the licensee only does exactly what the patentee tells it to do.

Valid Claims" and "Patent Coverage in 26 Countries."   Amended Complaint, ¶31; *see also*, SAC, ¶33.   On this website, ThermoLife directly threatens anyone interested in making a dietary supplement with amino acid nitrates in an effort to convey the false and unfair impression that any third-party company must obtain a license from ThermoLife to do so.   Amended Complaint, ¶32; SAC, ¶34.   ThermoLife displays a list of specific products to create the false impression that a license is needed to market or sell them, including various amino acid nitrates, including creatine nitrate and arginine nitrate.   Amended Complaint, ¶33; SAC, ¶35.   This website contains a hyperlink which takes a user directly to ThermoLife's marking website, www.no3-t.com/patents. Amended Complaint, ¶35; SAC, ¶37.   Such activities constitute "*advertising* in connection with…unpatented articles…for the purpose of deceiving the public."   35 U.S.C. § 292.

Significantly, the discovery provided by ThermoLife has established that ThermoLife and Kramer are liable for the false marking of licensee's products (such as Cellucor) because these Defendants: (i) contractually require licensees to include ThermoLife's own trademark "NO3-T" on the licensed products; (ii) the licensed products do not independently reference any of ThermoLife's patents; (iii) the logo "NO3-T" has no intrinsic significance without the associated virtual marking; and (iv) ThermoLife and/or Kramer control the content on the virtual marking website, http://www.no3-t.com/patents/, whereas the licensees have no control over the content. Thus, all patent marking is done under the direction of ThermoLife and/or Kramer, in the manner dictated by ThermoLife and/or Kramer, while the intellectual choice of association particular products with particular patents (*i.e.*, the actual substantive aspect of "patent marking") is carried out entirely by ThermoLife and/or Kramer.[12]

---

[12]   With respect to the Court's observation that BPI had not provided "case law extending liability to a patent holder for markings by a licensee," BPI undertook a diligent search for such authority. BPI notes that the best guidance should come from cases involving virtual marking where the patent holder maintains the website.   Unfortunately, the number of false marking cases is limited overall and even more so since the advent of virtual marking under America Invents Act ("AIA") (September 16, 2011).   If this is a case of first impression, BPI was unable to identify a case denying licensor liability for false marking under these circumstances.   Although a pre-AIA case, and not factually on point, in *Troll Busters, LLC v. Roche Diagnostics GMBH*, *et al.*, 2011 WL 3859721, *7 (Fed. Cir. August 31, 2011), one of plaintiff's primary allegations against Defendant Life Technologies was that it "required licensees to mark products with specific lists of patents according to required language…"   The court granted leave on the question of licensor liability and instructed the plaintiff to "tailor its allegations regarding Defendants' offending conduct and intent to deceive to more closely track the conduct and position of the individual companies."   *Id*. According to the court, "pleading with this level of specificity with regard to one or more of the

###### 2.      False Marking Should Be Updated Regarding The '074 Patent

The Court of Appeals for the Federal Circuit has confirmed the rejection of ThermoLife's composition of matter (*i.e.*, compound) claim in the '074 Patent directed to creatine nitrate.   *In re ThermoLife International*, LLC, 2020 WL 114123 (Fed. Cir. January 10, 2020).   Based on the initial decision by the USPTO Examiner and the Patent Trial and Appeal Board, the false marking allegation was already included in the Amended Complaint addressing the false marking of CRTN-3 and licensed products.   With respect to licensed products, BPI alleged that Defendants were "conveying the false message that the specific creatine nitrate is subject to a composition of matter patent claim, which it is not."   D.E. 12, ¶197.   When the Federal Circuit confirmed that ThermoLife did not own a claim to this species, licensed products should not have been marked with this patent if the presence of creatine nitrate was the original basis for doing so.   Nonetheless, simple inspection of Defendants' website revealed that they were still marking several products containing creatine nitrate with this patent months later, including Cellucor's products C4 Original, C4 Ultimate, C4 Extreme Energy, M5 Ultimate and CN3.   Exhibit F.   Accordingly, BPI seeks to add the allegations regarding the '074 Patent by having the above quotation apply to the false marking of Cellucor's products as set forth in the Second Amended Complaint (¶133).

### V.      CONCLUSION

In light of the foregoing, the motion for leave should be granted and BPI should be given permission to file the Second Amended Complaint as a separate docket entry pursuant to Section 3I(1) of the CM/ECF Administrative Procedures.

---

alleged instances of false marking as to each Defendants would provide a factual basis for alleging…that such Defendant has engaged in similar acts of false marking.").   *Id*.   Thus, BPI believes that, under *Troll Busters*, the SAC pleads sufficient culpable behavior by Defendants to attach liability regarding the products of its licensees.   On March 26, 2020, counsel for BPI requested that counsel for Defendants provide any legal authority in their possession supporting the position that a party cannot be held liable for false *virtual* marking under this fact pattern. Counsel for Defendants have not provided any legal authority in response to this request.

Respectfully submitted,                         Dated this 31st day of March, 2020.

KRINZMAN, HUSS & LUBETSKY
FELDMAN & HOTTE
Cary A. Lubetsky
Florida Bar No. 961360
Salvatore H. Fasulo
Florida Bar No. 143952

800 Brickell Avenue, Suite 1501
Miami, Florida 33131
Telephone:   (305) 854-9700
Facsimile:   (305) 854-0508
Primary email:       cal@khllaw.com
                     shf@khllaw.com
Secondary email: eservicemia@khllaw.com

HILLYER LEGAL, PLLC

*s/ Gregory L. Hillyer*
Gregory L. Hillyer
Fla. Bar No. 682489
Email: ghillyer@hillyerlegal.com
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015-2052
Telephone: 202-686-2884
Facsimile: 202-686-2877

*Attorneys for Plaintiff BPI Sports, LLC*

## CERTIFICATE OF GOOD FAITH CONFERENCE

I certify that, in accordance with Local Rule 7.1(a)(3), on March 25, 2020, undersigned counsel for Plaintiff conferred with counsel Defendants in a good faith effort to resolve the issues, including providing a copy of a draft amended pleading in clean and redline form.   On March 27, 2020, counsel for Defendants indicated that it opposes the motion for leave to amend.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion for Leave to

Amend was filed via CM/ECF on March 31, 2020 and served on counsel of record.


<u>*s/ Gregory L. Hillyer*</u>