IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BPI SPORTS, LLC,<br><br>  Plaintiff,<br>vs.<br><br>THERMOLIFE INTERNATIONAL, LLC,<br>and RONALD L. KRAMER,<br><br>  Defendants. | **CASE NO. 0:19-cv-60505-SMITH** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Defendants ThermoLife International, Inc. ("ThermoLife") and Ron Kramer[1] ("Kramer") oppose Plaintiff's Motion to Compel Discovery ("Motion to Compel") [DE 62].

## I.   BACKGROUND

Before addressing the substance of BPI's Motion to Compel, it is important for the Court to understand the background here. After ThermoLife independently tested and exposed BPI's intentional false advertising that allowed BPI to make 10's of millions of dollars selling products that included fake ingredients, BPI filed this frivolous lawsuit in retaliation. *See* Declaration of Gregory B. Collins, attached as Exhibit 1, at ¶ 2. BPI's First Amended Complaint only identifies one product that it claims is falsely advertised and falsely patent marked: "ThermoLife's CRTN-3." (DE 12; DE 36 at 10-11, 16.) And, the Court has properly limited BPI's claims to that single product. (DE 37, discussed in Section II below.) Significantly, BPI's Motion to Compel concedes that the Court has severely narrowed its claims here, stating on the very first page of its Motion that, "For present purposes, it is sufficient to focus on the advertising and labeling of the 'Muscle Beach Nutrition' brand, including the product 'CRTN-3.'" (DE 62 at 1.)

But, CRTN-3 is not sold or marketed by ThermoLife; the product is sold by Muscle Beach Nutrition, LLC.[2] (Ex. 1 ¶ 4.) BPI should have known this when it filed its First Amended Complaint, but its lawyers failed to conduct a reasonable inquiry. Instead of withdrawing its factually baseless First Amended Complaint, as requested by ThermoLife, BPI has moved the Court for Leave to File a Second Amended Complaint, thus conceding that its First Amended Complaint is deficient. (DE 64.) With this Motion to Compel pending, along with its separately filed Motion for Leave to Amend

---

[1]   Kramer is not a signatory to the responses to the requests for production. On March 27, 2020, the day BPI filed this Motion, undersigned counsel indicated that ThermoLife's responses hold for both Defendants and stated a willingness to provide a separate response.

[2]   As Muscle Beach Nutrition just disclosed in response to a subpoena that BPI served on it, Muscle Beach Nutrition's CRTN-3 product has roughly $110,000.00 in sales over the last three-years. (Ex. 1 ¶ 7.) While Muscle Beach Nutrition's product is truthfully advertised and patent marked, there can be no dispute that this $110,000.00 in sales over three years cannot possibly have effected BPI's multi-million dollar annual market for its products.

its Complaint (DE 64), BPI is, without question, going to seek an extension to the quickly approaching April 10, 2020 expert disclosure deadline.[3] But, any extension is futile. After all, what expert report could possibly determine that BPI was damaged by ThermoLife's conduct, when the conduct at issue is not ThermoLife's conduct at all?

With this backdrop, the Court should see BPI's Motion to Compel for what it is: a litigation maneuver designed to allow BPI to eventually argue that the scheduling deadlines in this case need to be delayed because ThermoLife allegedly has not produced relevant documents in discovery. But this is simply not true. BPI's Motion fails to inform the Court that ThermoLife has produced all of its advertising and promotions and all of its patent licenses related to creatine nitrate (the ingredient that BPI alleges is falsely advertised and marked in CRTN-3). (Ex. 1 ¶ 6.) And, separately, Muscle Beach Nutrition, LLC produced, in response to a BPI subpoena, its documents. (Ex. 1 ¶ 7.)

In summary, the Motion should be denied for five separate and distinct reasons:

1. BPI failed to confer in good faith as required under Local Rule 7.1(c). BPI filed the Motion to Compel just three days after informing ThermoLife and Kramer that it deemed their discovery responses deficient, and one business day before ThermoLife's counsel had indicated that he could make himself available for a telephone conference. (Ex. 1 ¶ 3.) BPI had no interest in conferring in good-faith.

2. The majority of its First Amended Complaint was dismissed with the Court's January 9, 2020 Order. (DE 37.)  Yet, the vast majority of the discovery that BPI seeks here relates directly to already dismissed claims. With regard to the surviving claims (which BPI has now admitted are factually and legally deficient, see No. 4&5 below), ThermoLife and Kramer have produced all documents related: (1) ThermoLife's advertising in the last three years; (2) ThermoLife's patent marking; and (3) ThermoLife's patent licenses related to creatine nitrate (the only dietary supplement ingredient at issue in this case). (Ex. 1 ¶ 6.) Thus, BPI has the relevant documents.

3. Muscle Beach Nutrition, LLC, which markets and sells the only product mentioned in the First Amended Complaint and the only product that is at issue in this lawsuit, namely,

---

[3] BPI has never indicated that this is its goal here, but the intent is obvious given BPI's actions and conduct of BPI's counsel here in discovery. While litigation is often compared to chess, the situation here is more analogous to tic-tac-toe (there are only a few spaces on the board to move). The quickly approaching expert disclosure deadline is one of several reasons that the Court is unlikely to grant BPI leave to amend its deficient First Amended Complaint. ThermoLife and Kramer would both suffer extreme prejudice if BPI is allowed to amend well after the deadline for amended pleadings and on the eve of the expert report deadline.

       "CRTN-3," has been served with a subpoena by BPI. On April 2, 2020, Muscle Beach Nutrition, LLC produced documents sufficient to show: (1) its marketing of CRTN-3; (2) its revenue and profit on CRTN-3; and (3) its agreements with ThermoLife. (Ex. 1 ¶ 7.) So, BPI has obtained the relevant documents that were not in ThermoLife's or Kramer's possession.

4. With the filing of its Motion for Leave to File Second Amended Complaint (DE 64), BPI has tacitly conceded that even its claims that survived the Court's January 9, 2020 Order are legally and factually deficient.

5. And, finally, BPI also fails to inform the Court that ThermoLife has provided detailed (not boilerplate) objections, explaining exactly what documents ThermoLife is producing and what documents ThermoLife is withholding from production and, for the reasons stated above, ThermoLife's objections are entirely appropriate. (Ex. 1 ¶ 8.)

For all of the above, BPI's Motion to Compel should be denied and ThermoLife and Kramer should be awarded their fees incurred in responding to BPI's baseless Motion to Compel.

## II. PROCEDURAL BACKGROUND

BPI filed its First Amended Complaint on April 19, 2019. (DE 12.) BPI's First Amended Complaint alleged claims against ThermoLife for: Lanham Act, 15 U.S.C. § 1125(a), the Sherman Act, 15 U.S.C. § 2, 35 U.S.C. § 292 (false patent marking), common law unfair competition, trade libel, libel per se, tortious interference with business relations, and inequitable conduct.

Per the Court's January 9, 2020 Order on ThermoLife's motion to dismiss, BPI's only remaining claims are: (1) under the Lanham Act, 15 U.S.C. 1125(a); (2) common law unfair competition; and (3) false patent marking. In addition to these claims, the Court allowed BPI's alter ego claim—alleging Ron Kramer is the alter ego of ThermoLife—to move forward. (DE 16.)

With respect to BPI's Lanham Act false advertising claim, the Court's January 9, 2020 Order limited BPI's claim here to three categories of allegations:

- Category 1 relates to allegations that "Defendants' main website falsely claims, and creates a false impression to competitors and consumers, that creatine nitrate falls within the scope of ThermoLife's patents and that ThermoLife is the 'only legitimate source for patented and license[d] amino acid[] nitrates (Am. Compl. ¶¶ 31-35, 42-43, 158-160, 166)."

3

- Category 2 relates to allegations that "Defendants have made false representations in patents and 'promotions' concerning the invention, synthetization, discovery, and performance of various amino acid nitrates and related compositions (*id.* ¶¶ 58-68)."
- Category 3 relates to allegations that "ThermoLife falsely claims on the label of its Muscle Beach CRTN-3 dietary supplement that the product contains an intact creatine nitrate compound and ThermoLife's licensees make similar misrepresentations on their products (*id.* ¶¶ 72-80)."

The Court allowed the allegations, summarized above, to survive the motion to dismiss because "statements on the label of ThermoLife's Muscle Beach CRTN-3 dietary supplement qualify [as advertising under the Lanham Act and patent marking]; these statements are of a commercial nature and are made by ThermoLife – BPI's competitor – to influence consumers to buy the product." (*Id.* at 12.) While the Court specifically noted that ThermoLife contests that "Muscle Beach [CRTN-3] is a [ThermoLife] product," the Court "accept[ed] BPI's allegations as true with respect to the ownership of Muscle Beach." (*Id.*) Thus, BPI's First Amended Complaint was allowed to move forward only because BPI falsely identified the CRTN-3 product as a ThermoLife product.

But, BPI is fully aware that CRTN-3 is not a ThermoLife product. BPI has no good faith basis for continuing to advance allegations in Category 3. Likewise, as for Category 2, BPI has failed to identify any false ThermoLife "promotion." The only alleged promotions discussed in the Amended Complaint are promotions of a Muscle Beach Nutrition product CRTN-3. And, finally, claims in Category 1 fail as well; BPI has not alleged and cannot point to any falsity on ThermoLife's website. It is undisputed that ThermoLife's website does not contain any false statements about its patents, or otherwise. Regardless, prior to the Motion to Compel being filed, ThermoLife produced all of its advertising and website information in response to BPI's discovery requests. (Ex. 1 ¶ 6.)

Thereafter, on March 31, 2020, in an effort to keep litigating this frivolous retaliation lawsuit, BPI filed its Motion for Leave to File Second Amended Complaint (DE 64), now purporting to allege (without any factual support) that Muscle Beach Nutrition and ThermoLife are alter egos.

However, BPI's motion to amend has not been granted (and likely will not be granted for the reasons identified above), and the operative complaint provides no basis whatsoever to tie Muscle Beach Nutrition's conduct to ThermoLife or Kramer. As explained above, the only conduct at issue in the First Amended Complaint is Muscle Beach Nutrition's conduct.

### III.   THE DISCOVERY AT ISSUE

BPI's Motion to Compel tacitly concedes that the Court has severely narrowed its claims here, by stating on the very first page of its Motion that, "For present purposes, it is sufficient to focus on the advertising and labeling of the 'Muscle Beach Nutrition' brand, including the product 'CRTN-3.'" (DE 62 at 1.) Despite the limited scope of its claims, **related to a product with just $110,000.00 in sales over the last three years**,[4] BPI sought (and now seeks to compel) broad discovery from both ThermoLife and Kramer. The requests at issue are "Request for Production Nos. 1, 8, 11, 13 and 19-25." (DE 62 at 1.) These requests fall into two categories:

**1)   Requests That Seek Muscle Beach Nutrition Documents And Information.**

Requests for Production No. 1, 8, and 20, Interrogatory to ThermoLife No. 17, and Interrogatories to Kramer Nos. 1-8 plainly seek Muscle Beach Nutrition, LLC documents and information. For example, Request for Production No. 1 seeks: "Advertisements, promotions, or marketing materials for the Muscle Beach Nutrition product CRTN-3."

Defendants responded to these Requests by stating: "As BPI is aware, Muscle Beach Nutrition, LLC, which sells and markets CRTN-3, is a different company than ThermoLife International, LLC. ThermoLife does not possess any advertisements, promotions, or marketing materials for Muscle Beach Nutrition, LLC. In response to this request, ThermoLife has produced a copy of its website http://www.no3-t.com/patents/, which lists Muscle Beach Nutrition as a licensee

---

[4]   On April 2, 2020, Muscle Beach produced documents in response to a subpoena served on it by BPI. Those documents show roughly $110,000.00 in revenue for this product over the last three years. (Ex. 1 ¶ 7.)

of several ThermoLife patents." (Ex 1 ¶ 9.) As a result, and as further explained below, despite BPI moving to compel additional documents here, Defendants already have indicated that they have produced their relevant documents. Any additional relevant documents would be in the possession of Muscle Beach Nutrition, which produced documents in response to BPI's subpoena on April 2, 2020. (Ex. 1 ¶¶ 4, 7.) There is simply nothing to compel here.

### 2) Requests That Seek Documents Unrelated To CRTN-3 And Unrelated To ThermoLife's Advertising.

ThermoLife objected to Requests 11, 13, 19, 21, 22, 23, 24, and 25, and Interrogatories to ThermoLife No. 18-21 as overbroad, unduly burdensome, and/or having no relevance to the allegations in the operative pleading. For example, Request for Production No. 13 seeks: "Documents sufficient to identify every third party to which ThermoLife provides a nitrate product, including creatine nitrate, either directly or indirectly, as an ingredient or a finished product."

The overbreadth of this request, and BPI's other similar requests, is easily demonstrated on the face of BPI's own Motion to Compel. On the very first page, BPI states that "For present purposes, it is sufficient to focus on the advertising and labeling of the 'Muscle Beach Nutrition' brand, including the product 'CRTN-3.'" (DE 62 at 1.) None of the information sought in Request for Production No. 13 relates to CRTN-3. Defendants provided lengthy, detailed objections to each of these Requests, explaining precisely why each was an inappropriate Request given the scope of the operative pleading and the Court's January 9, 2020 Order. (Ex. 1 ¶ 8.)

## IV. ARGUMENT

### A. BPI Failed to Meet and Confer in Good Faith.

Local Rule 7.1(c) requires that prior to filing any motion in a civil case, a party is required to "make good faith effort to resolve the issues raised in the motion . . . . Failure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion and impose

on counsel an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee."

BPI was never interested in conferring in good faith on this Motion; instead, its goal was harassment and setting up an argument for delaying the Court's scheduling deadlines. On Tuesday, March 24, 2020, BPI's counsel sent Defendants' counsel a six-page letter regarding the perceived deficiencies in Defendants' production. (Ex. 1 ¶ 3.) Defendants' counsel responded the next day, March 25, 2020, stating: "I am just reviewing this letter now. I had a Special Action appeal brief (the equivalent of an interlocutory appeal) due today that kept me tied up until this evening. As you know, the rules require us to hold a personal conference prior to you filing a motion to compel. Given the breath of issues raised here, and your proposal earlier today to file an amended complaint, we will not be able to meaningfully confer on these issues until Monday. Please let me know when you are available for a call Monday or Tuesday on these issues." (*Id.*) On March 26, 2020, BPI's counsel stated his belief that simply notifying Defendants in writing was sufficient for the meet and confer. (*Id.*) On March 27, 2020, a mere three days after sending a six-page discovery dispute letter and despite a specific request to meet and confer the next business day, BPI filed the Motion.

BPI would have Rule 7.1(c) act solely as a notice requirement. It serves a more important purpose and BPI's failings to abide by it are grounds to deny the Motion and award fees.

**B.    BPI's Operative Pleading and the Court's Order Limit The Scope Of Discovery.**

In an effort to avoid the limitations of its own claims here, BPI shows a troubling lack of candor in discussing the procedural posture of the case, the operative pleading, and even the requests at issue. BPI fails to inform the Court that the "'Muscle Beach Nutrition' brand" is, in fact, a separate entity—one that is not a party to this case and one that is ignored in the operative pleading. BPI does not even mention that Muscle Beach Nutrition, LLC is a non-party that BPI served with a subpoena. And, BPI fails to mention that the Court's January 9, 2020 Order limits

7

BPI's claim to one product that is produced, marketed, and sold by Muscle Beach Nutrition—a fact that BPI tacitly concedes in its Motion for Leave to Amend (DE 64).

So, even though BPI says that "it is sufficient to focus on" the Muscle Beach Nutrition issues, more than half the requests cited in the Motion to Compel seek voluminous financial records and sensitive business information that **have nothing to do with Muscle Beach Nutrition and the issues related to the one product that survived the January 9, 2020 Order**. Worse, by proffering the Second Amended Complaint to add Muscle Beach Nutrition as a defendant here, BPI has conceded that its operative pleading only survived the January 9, 2020 Order based on its false factual allegations—a pleading BPI is under an obligation to withdraw.

BPI's lack of candor is important because, once the limiting impact of the January 9, 2020 Order is appreciated, it renders the requested discovery wildly overbroad, irrelevant, and based on admittedly erroneous allegations. ThermoLife has produced the relevant documents in its control and Muscle Beach Nutrition, in response to a subpoena, has separately produced relevant documents. (Ex. 1 ¶¶ 6-7.) There is nothing to compel here.

However, the majority of BPI's discovery requests have nothing to do with Muscle Beach Nutrition or its product CRTN-3. Instead, BPI seeks ThermoLife's detailed financial records. Considering that ThermoLife does not produce, market, or sell CRTN-3, those financial records are not possibly relevant. Indeed, the Court has already ruled as much:

> The only ThermoLife product specifically identified as being a marked unpatented article (the "what") is the Muscle Beach CRTN-3 dietary supplement. (Am. Compl. ¶¶ 73-77, 158 -166.) BPI generally alleges that ThermoLife's licensees' "product(s)" are falsely marked (*id.* ¶¶ 79, 163-165, 197), but that allegation lacks the specificity required of Rule 9(b). Moreover, BPI has cited no case law extending liability to a patent holder for markings by a licensee, when the marking statute on its face attaches liability to the person who marks the unpatented product. *See* 35 U.S.C. § 292(a) ("*Whoever marks* upon, or *affixes to*, or *uses in advertising* . . . .").

8

(DE 37.) As a result, BPI's requests for production that seek patent licenses unrelated to Muscle Beach Nutrition CRTN-3 are irrelevant, as are its requests that seek financial documents unrelated to Muscle Beach Nutrition CRTN-3.

In sum, in its Motion to Compel, BPI failed to report that ThermoLife has produced all creatine nitrate licenses currently in effect. (Ex. 1 ¶ 6.) This, along with ThermoLife's advertising, is essentially all that is relevant to BPI's surviving claims. And separately, Muscle Beach Nutrition has now disclosed its relevant documents. (*Id.* ¶ 7.)

BPI seeks to take wide-ranging discovery on licenses related to dietary supplement ingredients and technology that have nothing to do with Muscle Beach Nutrition's CRTN-3—that violates the January 9, 2020 Order. BPI cannot possibly justify such a burdensome and intrusive look into ThermoLife's business. All of these requests are an expensive and burdensome fishing expedition towards no aim whatsoever other than harassment and retaliation.

**C.  BPI's Requests Seek Documents Belonging to a Non-Party that BPI Subpoenaed.**

BPI's most brazen argument is the notion that Defendants are required to disregard the corporate form and produce documents that belong to a non-party and answer interrogatories about that non-party (all of the interrogatories to Kramer and Interrogatory No. 17 to ThermoLife essentially request answers from Muscle Beach Nutrition). In support of this novel theory, BPI claims that "there is overwhelming evidence that the Muscle Beach Nutrition brand is controlled by, sponsored by, or otherwise affiliated with these Defendants." (DE 62 at 1-2.) Even if BPI could prove this (and it cannot), there is no test for discovery of a non-party's documents based on the idea that the non-party is "controlled by, sponsored by, or otherwise affiliated with" a party. The First Amended Complaint completely ignores the existence of Muscle Beach Nutrition, but even if BPI had mentioned it, even an alter ego claim requires more than a simple "affiliation."

9

Furthermore, BPI declines to mention that it has already sought these documents directly from Muscle Beach Nutrition, and that Muscle Beach Nutrition, through separate counsel, has produced three categories of documents: 1) its agreements with ThermoLife; 2) its advertising of CRTN-3; and 3) all sales information for CRTN-3, the Muscle Beach Nutrition, LLC product actually identified in the Amended Complaint. (*Id*. ¶ 7.) As a result, BPI has all the documents it is arguably entitled to here from Muscle Beach Nutrition.

## V. CONCLUSION

While the Court need not and cannot rule here that BPI's First Amended Complaint should be dismissed because it includes materially false allegations, the Court need not reach this issue to deny BPI's Motion to Compel. As explained above, the January 9, 2020 Order properly limits BPI's claims to the marketing and sale of the CRTN-3 product. ThermoLife and Kramer have produced documents related to that product. Defendants cannot produce Muscle Beach Nutrition, LLC documents that are not theirs to produce. But, Muscle Beach Nutrition has now produced the relevant documents in its possession related to CRTN-3. As a result, BPI has the relevant documents. Furthermore, to the extent BPI wants to argue that additional documents are relevant here, ThermoLife has also produced all of its advertising and promotions and all of its patent licenses for creatine nitrate, the ingredient that BPI claims is falsely advertised in CRTN-3.

BPI's Motion to Compel should be denied and Defendants should be awarded their fees in responding. BPI is pursuing claims it knows lack a Rule 11 basis. And BPI's Motion to Compel, which was filed without a good faith effort to meet and confer, was filed in a transparent effort to allow BPI to eventually argue that it needs to push-back the Court's deadlines, which this Court should not do. Furthermore, to the extent BPI's claims had any merit at all, CRTN-3 had just $110,000 in sales in the last three years. BPI's lawyers appear willing to spend five times this amount prosecuting this frivolous suit.

| | |
|---|---|
| Respectfully submitted, | Dated this 3rd day of April, 2020. |
| | |
| | By: /s/ Edward M. Mullins |
| | Edward M. Mullins (FBN 863920) |
| | Ana M. Barton (FBN 85721) |
| | **REED SMITH LLP** |
| | 1001 Brickell Bay Drive |
| | Miami, FL 33131 |
| | 7866-747-0200 |
| | Fax: 786-747-0299 |
| | Email: emullins@reedsmith.com |
| | Email: abarton@reedsmith.com |
| | |
| | and |
| | |
| | KERCSMAR & FELTUS PLLC |
| | Gregory B. Collins |
| | E-mail: gbc@kflawaz.com |
| | 7150 E. Camelback Road |
| | Suite 285 |
| | Scottsdale, AZ 85251 |
| | Telephone: (480) 421-1001 |
| | |
| | *Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 3, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record.

By:   *Edward M. Mullins*
      Edward M. Mullins, Esq.

11