# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BPI SPORTS, LLC,<br><br>      Plaintiff,<br>vs.<br><br>THERMOLIFE INTERNATIONAL, LLC,<br>and RONALD L. KRAMER,<br><br>      Defendants. | CASE NO. 0:19-cv-60505-SMITH |

## DECLARATION OF COUNSEL IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

I, Greg Collins, hereby make the following Declaration in support of Defendants' Opposition to Plaintiff's Motion to Compel, filed in accordance with the provisions of 28 U.S.C. § 1746:

1. I am an attorney with the law firm of Kercsmar & Feltus PLLC, counsel for Plaintiff ThermoLife International, LLC ("ThermoLife") in this action. The matters stated in this Declaration are true to the best of my knowledge.

2. In September 2018, ThermoLife purchased BPI's top-selling Best BCAA product from BPI's website and Amazon.com, and without touching the products, had the products shipped directly to a third-party independent lab named Covance, Inc. ("Covance") for laboratory testing. Contrary to BPI's advertising, Covance's independent laboratory results showed that BPI's BCAA Products do not contain any Oligopeptide-bonded BCAAs (or any Oligopeptide bonded amino acids). The test results for each of the products show that each of the BCAAs (leucine, isoleucine and valine) and other alleged Oligopeptide amino acids in BPI's Products (citrulline and glutamine) are present in their unbonded form. These products all contain only

"free form" BCAAs and amino acids. This is directly contrary to BPI's advertising for these products. In December 2018, ThermoLife made the world aware of BPI's false advertising by filing a Complaint against BPI in the Federal District Court for the District of Arizona. That Complaint has since been dismissed voluntarily by ThermoLife without prejudice. Shortly after ThermoLife filed the Arizona action, BPI filed suit here.

3. BPI failed to confer in good faith as required under Local Rule 7.1(c). On Tuesday, March 24, 2020, BPI's counsel sent me a six-page letter regarding the perceived deficiencies in Defendants' production of documents and discovery responses. I responded by email the next day, March 25, 2020, stating: "I am just reviewing this letter now.  I had a Special Action appeal brief (the equivalent of an interlocutory appeal) due today that kept me tied up until this evening. As you know, the rules require us to hold a personal conference prior to you filing a motion to compel.  Given the breath of issues raised here, and your proposal earlier today to file an amended complaint, we will not be able to meaningfully confer on these issues until Monday.  Please let me know when you are available for a call Monday or Tuesday on these issues." Instead of waiting until Monday March 30, 2020 to meet and confer, just three days after BPI sent its six page discovery dispute letter, BPI filed its motion to compel.

4. CRTN-3 isn't sold or marketed by ThermoLife; the product is sold by Muscle Beach Nutrition, LLC.

5. On March 20, 2020, I informed BPI's counsel in writing regarding the deficiencies in their First Amended Complaint.

6. BPI's Motion to Compel fails to inform the Court that in response to BPI's discovery requests, ThermoLife and Ron Kramer produced: (1) all of ThermoLife's advertising and promotional materials for the three years preceding the filing of this lawsuit (including copies

2

of its websites); (2) ThermoLife's patent marking; and (3) all ThermoLife patent licenses related to creatine nitrate (the ingredient that BPI claims is falsely advertised and falsely marked in the Muscle Beach Nutrition, LLC product CRNT-3).

7.      BPI's Motion to Compel also fails to inform the Court that BPI caused a subpoena to be served on Muscle Beach Nutrition, LLC, which sells the CRNT-3 product at issue in this lawsuit.  Muscle Beach Nutrition, LLC has retained counsel to respond to BPI's subpoena. On April 2, 2020, Muscle Beach Nutrition, LLC's counsel produced documents in response to BPI's subpoena. These documents that Muscle Beach Nutrition, LLC produced in response to ThermoLife's subpoena included (1) its marketing of CRTN-3; (2) its revenue and profit on CRTN-3; and (3) its agreements with ThermoLife. The documents produced by Muscle Beach Nutrition, LLC show that the CRNT-3 product generated roughly $110,000.00 in sales over the last three years.

8.      ThermoLife has provided detailed (not boilerplate) objections, explaining exactly what documents ThermoLife is producing and what documents ThermoLife is withholding from production. Where ThermoLife objects, ThermoLife provided legal support for its objections. For example, BPI's Request for Production No. 6 sought, "All communications between ThermoLife (or Kramer) and any third party relating to the function, benefits or superiority of a nitrate product, including advertising, promotions, marketing material, text, statements or representations provided by ThermoLife (or Kramer) to be used by any third party." ThermoLife responded to this request as follows:

> ThermoLife objects to this request as seeking documents that are not relevant nor likely to lead to the discovery of admissible evidence, nor is the burden of production here justified given the limited (or complete lack of) relevance of the documents sought here. After the Court's January 9, 2020 Order, BPI's only claims that remain against ThermoLife are: (1) under the Lanham Act, 15 U.S.C. 1125(a); (2) common law unfair competition; and (3) false patent marking. In

3

>addition to these claims, the Court allowed BPI's alter ego claim, alleging Ron Kramer is the alter ego of ThermoLife, to move forward.
>
>To the extent BPI's request for production here seeks documents related to ThermoLife's "communications between ThermoLife (or Kramer) and any third party relating to the function, benefits or superiority of a nitrate product," ThermoLife objects to this request as seeking documents that are not relevant nor likely to lead to the discovery of admissible evidence; furthermore, the burden of production here is not justified given the limited (or complete lack of) relevance of the documents sought here. This is because under the Lanham Act only "commercial advertising or promotion" is actionable. *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 735 (9th Cir. 1999) (quoting *Gordon & Breach Sci. Publishers v. Am. Inst. of Physics,* 859 F. Supp. 1521, 1536 (S.D.N.Y. 1994)). Although the representations can be made in informal types of promotion, they must be "disseminated sufficiently to the relevant purchasing public to constitute advertising' or 'promotion' within that industry." *Id*. Displays at trade shows and sales presentations to buyers can constitute promotion. *Seven-Up Co. v. Coca-Cola Co.,* 86 F.3d 1379, 1385 (5th Cir. 1996). However, representations that are commercial advertising or promotion under the Lanham Act must be part of an organized campaign to penetrate the market, rather than isolated statements. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* 314 F.3d 48, 57 (2d Cir. 2002). Thus, ThermoLife or Kramer's communications with third parties are not relevant to any claim in this lawsuit.
>    Notwithstanding this objection, in response to this request, ThermoLife has produced all promotions for the patented technology and specialty ingredients it markets and sells to the dietary supplement industry.

This response clearly informs BPI what documents ThermoLife is producing and what documents it is withholding from production, along with providing detailed legal justification for ThermoLife's objections.

With regard to requests for production that sought documents and information related to Muscle Beach Nutrition, LLC products, ThermoLife and Kramer also plainly stated why such documents could not be produced. The response to Request for Production No. 20 is a good example here. This request sought, "Documents sufficient to show the units sold, gross revenue, net revenue, costs of goods sold and profits from the sale of the Muscle Beach Nutrition product CRTN-3, by customer, on a monthly basis, from inception of the product through January 2020." Defendants responded:

4

>   As BPI is aware, Muscle Beach Nutrition, LLC is a different company than ThermoLife International, LLC. ThermoLife does not own any portion or Muscle Beach Nutrition, LLC. Ron Kramer is a member of Muscle Beach Nutrition, LLC. For this reason, ThermoLife and Kramer object to producing documents related to Muscle Beach Nutrition, LLC, which are not relevant to any claim or defense in this action. These are not ThermoLife documents to produce; responsive documents are in the possession and control of Muscle Beach Nutrition, LLC.

Again, this response clearly informs BPI why documents cannot be produced in response to its request for production here.

9.  Request for Production No. 1 seeks: "Advertisements, promotions, or marketing materials for the Muscle Beach Nutrition product CRTN-3." Defendants responded to these Requests by stating: "As BPI is aware, Muscle Beach Nutrition, LLC, which sells and markets CRTN-3, is a different company than ThermoLife International, LLC. ThermoLife does not possess any advertisements, promotions, or marketing materials for Muscle Beach Nutrition, LLC. In response to this request, ThermoLife has produced a copy of its website http://www.no3-t.com/patents/, which lists Muscle Beach Nutrition as a licensee of several ThermoLife patents."

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 3rd day of April, 2020.

By: */s/ Greg Collins*
Greg Collins