## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

BPI SPORTS, LLC,

      Plaintiff,

vs.

      **CASE NO.: 0:19-cv-60505**

THERMOLIFE   INTERNATIONAL,   LLC,
and RONALD L. KRAMER,

      Defendants.

### JOINT STATUS REPORT

Plaintiff, BPI Sports, LLC ("BPI") and Defendants, ThermoLife International, LLC ("ThermoLife") and Ronald Kramer ("Kramer"), pursuant to the April 22, 2020 Order (D.E. 72) hereby submit the following Joint Status Report and respectfully state as follows.

### MEET AND CONFER EFFORTS

On April 22, 2020 the Parties held a teleconference to discuss the issues raised in the Motion to Compel as well as other issues in the case.  The following items were agreed:

      1.     BPI withdraws its Motion to Compel ("Motion") with respect to Kramer's failure to produce documents or objections based on Kramer's agreement that the objections raised and documents produced by ThermoLife were also raised and/or produced by Kramer.

      2.     BPI withdraws its Motion with respect to Document Requests 1 and 8 (advertising) based on the production of documents by Defendants and non-party Muscle Beach Nutrition, LLC ("Muscle Beach Nutrition"), in response to a subpoena from BPI.

      3.     BPI withdraws its Motion with respect to Document Request 20 and Interrogatory No. 17 (revenue on CRTN-3) based on the production by Defendants and non-party Muscle Beach Nutrition, LLC.

      4.     BPI withdraws its Motion with respect to Document Request No. 13 and 19 and agrees to limit Request 11 to licenses related to creatine nitrate.

Defendants have already produced some creatine nitrate licenses going back three (3) years that are currently active.  In the meet and confer process, Defendants have agreed to produce licenses dating back four (4) years. The only remaining dispute is whether Defendants must produce unredacted creatine nitrate license agreements dating back seven (7) years regardless of whether they are currently active.

5.      BPI withdraws its Motion with respect to Requests Nos. 21-25, Interrogatories Nos. 19-21 and limits Interrogatory No. 18 to creatine nitrate revenue dating back seven (7) years.

6.      BPI moves to compel substantive responses to the Interrogatories 1-8 to Kramer.

**JOINT STATUS REPORT**

---

**Request for Production No. 11 to Defendants**:

All licenses to the ThermoLife patents, including licenses with any of the third parties named (or the associated products listed) on http://www.no3-t.com/patents/ or docket entry number 22-5.

**Response**:

ThermoLife objects to providing documents that relate to licensees that held licenses more than three years before this action was filed. Such documents are not relevant nor likely to lead to the discovery of admissible evidence here. ThermoLife further objects to producing documents related to licenses or licensees that do not license or purchase creatine nitrate; licenses and licensees of other dietary ingredients and technology are not relevant to any claim or defense in this action. In response to this request, ThermoLife has produced a copy of its current patent licenses for creatine nitrate, which is the only dietary ingredient discussed in the Amended Complaint. ThermoLife has redacted certain highly confidential information from its patent licenses that is not relevant to any claim or dispute here; all of the redacted information relates to ingredients other than creatine nitrate and even here, ThermoLife has only redacted cost and supplier information.

---

| **Movant's Position:** | **Respondent's Position:** | |
|---|---|---|
| BPI has now limited this request to unredacted creatine nitrate license agreements going back seven (7) years. Defendants have already produced seven (7) redacted creatine nitrate license agreements that are still active going back three (3) years (TLI000469-592). Thus, Defendants have acknowledged that the license agreements are discoverable. | Defendants have produced all patent licenses related to creatine nitrate that were executed or in effect since February 2015 (four years prior to Plaintiff's filing this lawsuit). Patent licenses before this date are not relevant to any issue in dispute. | |
| Since these licenses are relevant to past damages and past licensee relationships, BPI believes the question of whether they are still "active" is irrelevant and deprives BPI of necessary historical licenses without sufficient basis. One of the major | At most, the patent licenses at issue are relevant to BPI's damages. Because BPI alleges claims for continuing torts, the damages period is determined by the applicable statute of limitations. *See Gaudreau v. American Promotional Events, Inc.,* 511 F.Supp.2d 152 (D. D.C. 2007) ("in the case of a continuing tort a plaintiff may recover only for injuries | |

licensees is Woodbolt Distribution, LLC d/b/a Cellucor. Defendants produced a 2019 and 2011 license (presumably because they are still in force). These licenses were central to BPI's expert damages report, but various financials are missing because BPI cannot appreciate the earlier or intervening years without the other Woodbolt licenses. Moreover, many licensees are listed on Defendants website, www.no3-t.com/patents for which no licenses have been produced. Since three (3) years of time led to seven (7) licenses, it is no greater burden for Defendants to produce a handful of more licenses going back four (4) more years.

The reason BPI needs to go back seven (7) years is several-fold. First, one aspect of BPI's false advertising and unfair competition claims involves Defendants' scheme whereby (i) licensees are required to affix ThermoLife's trademark "NO3-T" on their creatine nitrate products; (ii) which corresponds with Defendants' websites www.thermolife.com and www.no3-t.com/patent; (iii) which in turn advertises a monopoly on the ingredient creatine nitrate under claim 1 of issued U.S. Patent No. 7,777, 074 that was cancelled on or about November 21, 2013. *See* **Exhibit A**, BPI's Response to Interrogatories, Interrogatory No. 1 (highlight); originally issued U.S. Patent No. 7,777,074

attributable to the part of the continuing tort that was committed within the limitations period immediately preceding the date on which suit is brought.") Courts within this district have determined that Lanham Act claims in Florida are governed by a four-year statute of limitations. *Pinnacle Advertising and Marketing Group, Inc. v. Pinnacle Advertising,* 418 F.Supp. 1143 (S.D. Fla. 2019). Accordingly, at most, BPI is entitled to documents for a four-year period prior to BPI filing suit.

While ThermoLife originally objected to producing patent licenses that were more than three years old, ThermoLife has now confirmed that it has produced all patent licenses that were in effect during the four years proceeding this lawsuit (the applicable limitations and damages period). BPI offers no legal basis for its requested seven-year production period. The Court should not compel the production of additional patent licenses.

Shamelessly, BPI attempts to use Defendants' production of documents as some sort of concession that BPI has valid claims. But Defendants have produced *more* than BPI is entitled to and more than what is relevant to this case to attempt to end this dispute over unreasonably overbroad discovery;ThermoLife's good

(hyperlinked through ThermoLife website, www.no3-t.com/patents/); Amendment in Reexamination of '074 Patent dated November 21, 2013 cancelling claim 1 and adding claim 6; and Decision from the Court of Appeals for the Federal Circuit, *In re ThermoLife International, LLC*, 2020 WL 114123 (Fed. Cir. January 10, 2020). ThermoLife pursued new claim 6 directed to creatine nitrate but it was immediately rejected and deemed unpatentable by the Examiner, followed by the Patent Trial and Appeal Board and the Court of Appeals for the Federal Circuit. *Id*. Thus, as of at least 2013, ThermoLife was falsely advertising exclusive rights in the composition of matter creatine nitrate under the '074 Patent.

Second, several of the licensed products relevant to these claims that compete directly with BPI were introduced in 2017. The same situation is presented regarding the product CRTN-3 which BPI contends is affiliated with Defendants. In order to analyze the substantive and financial issues (and show declination of

deed in doing so should not be punished by compelling discovery of even more material that is further afield from the issues in this case. The fact is that ThermoLife had produced its patent licenses to Plaintiff's counsel, who represents another party in a suit with ThermoLife.[1] As a result, there was no harm in producing the licenses on an attorneys' eyes only basis. As explained in the next section regarding Defendants' objections to producing financial documents, none of the produced licenses are relevant to any claim in dispute here, and BPI's "explanation" of its purported need for even more information than what ThermoLife has produced is no explanation at all—the additional sought information has no bearing at all in the issues remaining before this Court.

Finally, the only information that ThermoLife has redacted in any of its patent licenses that have been produced is information related to the pricing of technology and ingredients that is wholly unrelated to creatine nitrate, the only

---

[1]     Plaintiff's attorney Greg Hillyer also represents Hi-Tech Pharmaceuticals, Inc. in *ThermoLife v. Hi-Tech Pharmaceuticals, Inc.,* pending in the United States District Court for the Northern District of Georgia, No. 1:15-CV-00892 , Mr. Hillyer is defending Hi-Tech against its infringement of ThermoLife's patents protecting the compositions and use or creatine nitrate, the same compound that  BPI alleges here is falsely advertised by ThermoLife. Outrageously, Hi-Tech's infringing products are labeled the exact same way as CRTN-3, with creatine nitrate listed as one ingredient on the product's label.

| | | |
|---|---|---|
| BPI's profits), BPI should be allowed access to license agreements prior to 2017. Third, BPI has a substantial false marking claim based on the use of the logo "NO3-T," coupled with Defendants' virtual patent marking website, that dates back to March 16, 2015 (dated according to Defendants' own production of archived websites, TLI00395). | ingredient at issue in this lawsuit. There is simply no reason that Defendants' counsel, who, again, represents other parties with currently pending lawsuits involving ThermoLife, should have access to this irrelevant confidential information. | |

**Interrogatory No. 18 to ThermoLife**:

Provide the units sold, gross revenue, net revenue, costs of goods sold and profits from the sale of any nitrate product (or nitrate ingredient), including creatine nitrate, by customer, on a monthly basis, for the time period from beginning August 2010 through January 2020.

**Response**:

As BPI is well-aware, ThermoLife's entire business involves the licensing and selling of "nitrate product (or nitrate ingredient)", and as a result this request would require ThermoLife to produce all of its financial documents since inception of ThermoLife. Accordingly, this request is unduly burdensome and, for this reason, ThermoLife will not produce information in response to this request.

Further responding to this request, ThermoLife objects to this request because it seeks information for a 9 and half year time period. The damages period for BPI's claims is not 9 and half years long; accordingly, this request is overly broad.

Further responding to this request, ThermoLife anticipates that BPI may argue that documents responsive to this request are relevant to its claim for false patent marking. This is incorrect. Damages for false patent marking are limited to BPI's actual damages; BPI is not entitled to disgorgement of ThermoLife's revenues or profits related to products that rely on ThermoLife's patented technology. Accordingly, ThermoLife's sales, revenue and profits are not relevant to BPI's claims here.

Moreover, documents responsive to this request are also not relevant because BPI's false marking claim has been limited by the Court to simply Muscle Beach Nutrition's CRTN-3's use of the NOT-3 trademark. As the Court's January 9, 2020 Order states, "The only ThermoLife product specifically identified as being a marked unpatented article (the 'what') is the Muscle Beach CRTN-3 dietary supplement. (Am. Compl. ¶¶ 73-77, 158 -166.) BPI generally alleges that ThermoLife's licensees' 'product(s)' are falsely marked (id. ¶¶ 79, 163-165, 197), but that allegation lacks the specificity required of Rule 9(b)." (DE 37 at 16.) In so holding, the Court went on to explain that ThermoLife could not be held responsible for the patent markings included on its licensee's products,

stating: "BPI has cited no case law extending liability to a patent holder for markings by a licensee, when the marking statute on its face attaches liability to the person who marks the unpatented product." (Id.) As a result, the sole basis that the Court found for BPI's false marking claim was BPI's false allegation that "ThermoLife's Muscle Beach CRTN-3 product is falsely marked with inapplicable patents." (Id. at 17.) But, again, Muscle Beach's CRTN-3 is not a ThermoLife product at all. For these reasons, ThermoLife further objects to this request as seeking documents that are not relevant nor likely to the lead to discovery of admissible evidence. ThermoLife's financial documents are not relevant to any claim or defense in this action. Furthermore, to the extent documents responsive to this request have minimal relevance, the burden of production here is not justified given the limited (or complete lack of) relevance of the documents sought here.

For the foregoing, ThermoLife stands by its objections here and will not produce information in response to this interrogatory.

Finally, responding to this interrogatory, ThermoLife notes that to the extent BPI's false marking claim is broader than just sales of Muscle Beach CRTN-3 (and it is not), BPI's false marking claim is certainly limited to ThermoLife's licensees and customers sales of creatine nitrate products. For these products, ThermoLife does not possess information responsive to this interrogatory.

| **Movant's Position:** | **Respondents' Position:** | |
|---|---|---|
| BPI limits this interrogatory to units sold, gross revenue, net revenue, costs of goods sold and profits from the sale of creatine nitrate going back seven (7) years. This interrogatory relates directly to Request for Production 11 (above) because it asks for financial information that flows directly from the license agreements themselves (*i.e.*, revenue generated from the sale of raw ingredients).  Since the licenses already contain minimum purchases and applicable pricing (which can be used to calculate some of the income to ThermoLife from the sales of raw material to the licensees), Defendants have already provided some of the requested revenue. The date is incomplete, | Through this Court's rulings, BPI's own concessions, and the limitations of BPI's expert disclosures, BPI's claims have narrowed to the point that eliminate the need for any response to BPI's massively overbroad Interrogatory No. 18. That interrogatory is either a pure attempt to harass ThermoLife or an improper attempt by BPI's counsel to misuse this lawsuit as a way to get information that the same counsel has not been able to obtain in other matters involving other parties and ThermoLife.<br><br>In an effort to obtain highly confidential financial documents from ThermoLife, BPI (who is represented by attorneys that are also litigating cases for | |

however, in part, because licenses are missing, and in part, because minimum purchases do not inform how much material was finally purchased. ThermoLife is certainly aware of the revenue and other metrics generated from these licenses, so it is not burdensome to access the information, for example, from accounting software, yearly financial statements, product sales figures, invoices, proof of payment or other reports.

The revenue to ThermoLife is used by BPI in connection with damages for every cause of action.  With respect to false advertising and unfair competition, there are two relevant claims.  First, there are multiple false advertising and unfair competition claims associated with the advertising of the product CRTN-3 (which is the subject of an alleged license between ThermoLife and Muscle Beach Nutrition, TLI000555-562). **Exhibit A**, Response to Interrogatory No. 1. The Lanham Act, 15 U.S.C. § 1117(a), entitled "(a) PROFITS; DAMAGES AND COSTS; ATTORNEY FEES" expressly states that for "a violation under section 1125(a)" a "plaintiff is entitled to recover, subject to principals of equity: (1) *defendant's profit*…"   To make this calculation, BPI needs to know the revenue generated by the license with Muscle Beach Nutrition.

other clients against ThermoLife where such documents have not been produced (*infra*. n. 1)), misstates the scope of its current claims and misleads the Court regarding its own disclosures. BPI's claims in this lawsuit are now limited to allegations that Muscle Beach Nutrition, LLC falsely advertised and falsely marked its CRTN-3 product (conduct that BPI wrongly attributes to ThermoLife). For this reason, the only relevant financial documents are financials related to Muscle Beach Nutrition, LLC's CRTN-3 product, which non-party Muscle Beach Nutrition, LLC, a ThermoLife licensee, already produced in response to a BPI subpoena. Those documents show just $110,000 in gross revenue on this product since it was launched.  As for ThermoLife's revenues earned from Muscle Beach Nutrition, LLC, ThermoLife has no documents showing revenues or profits earned from Muscle Beach Nutrition, LLC or related to Muscle Beach Nutrition, LLC's CRTN-3 product. Defendants are not withholding financial documents related to the sale of Muscle Beach Nutrition, LLC's CRTN-3 product.

Other than the financial documents related to Muscle Beach Nutrition, LLC's CRTN-3 product (which, again, have already been produced), no other financial documents are relevant or likely to lead to the discovery of admissible documents.

Second, as noted above, BPI has a false advertising and unfair competition claim that involves the dynamic of Defendants requiring **all licensees** to use the "NO3-T" trademark coupled with maintenance of website containing false information. **Exhibit A**, BPI's Response Interrogatory No. 1 (highlight); originally issued U.S. Patent No. 7,777,074 (linked through ThermoLife website.www.no3-t.com/patents/); Amendment in Reexamination of '074 Patent dated November 21, 2013 cancelling claim 1 and adding claim 6; and Decision from the Court of Appeals for the Federal Circuit deeming Claim 6 unpatentable. With similar reasoning, under the Lanham Act, BPI should have access to the revenue from **all of the licensees** that required the use of the logo and directed consumers to Defendants' false representations on the websites. Significantly, it is the licensees (finished product providers) against which BPI directly competes.

Similarly, with respect to false marking under 35 U.S.C. § 292, BPI is entitled to be compensated for any "competitive injury" it has suffered, which may be based on an unjust enrichment / lost profits theory. As noted in the Motion to Compel, **profits** from falsely marked products are not just discoverable, but admissible. *U.S. Rubber Recylcing, Inc. v. Ecore International, Inc.*,

BPI's claims, and discovery on its claims, are properly limited to the CRTN-3 product.

The Court first narrowed the scope of BPI's claims with its January 16, 2019 Order on Defendant's Motion to Dismiss. [DE 37.] The Court limited BPI's false advertising and false marking claims to three categories:

- Category 1 relates to allegations that "Defendants' main website falsely claims, and creates a false impression to competitors and consumers, that creatine nitrate falls within the scope of ThermoLife's patents and that ThermoLife is the 'only legitimate source for patented and license[d] amino acid[] nitrates (Am. Compl. ¶¶ 31-35, 42-43, 158-160, 166)."

- Category 2 relates to allegations that "Defendants have made false representations in patents and 'promotions' concerning the invention, synthetization, discovery, and performance of various amino acid nitrates and related compositions (*id.* ¶¶ 58-68)."

- Category 3 relates to allegations that "ThermoLife falsely claims on the label of its Muscle Beach CRTN-3 dietary supplement that the product

2011 WL 13127343, *6 (C.D. Cal. October 5, 2011) ("An evaluation of Defendant's sales and profits is relevant to proving the measure of competitive injury Plaintiff suffered.  A showing of the amount of profit Defendant was able to earn from the sale of the disputed products is relevant to the competitive injury Plaintiff suffered… Evidence of Defendant's income and profits from the disputed products is admissible.")

Moreover, although the current false marking claim presently relates to the product CRTN-3, BPI should be allowed to conduct "liberal and broad discovery" to see whether ThermoLife's contractual requirements and control of the marking website is sufficient to raise liability with respect to the licensed products (which is the subject of BPI's pending Motion for Leave to Amend, D.E. 64).

Defendants' Expedited Motion for Leave to Supplement Opposition to BPI's Motion to Compel raises no justifiable basis for denying the requested discovery. D.E. 71.  Based solely on the technical expert report of Dr. Steven Bannister, Defendants incorrectly conclude that "BPI has now acknowledged, as it must, that its false advertising claim is limited to Muscle Beach Nutrition, LLC's CRTN-3 product." D.E., p. 3.  As best understood, this

contains an intact creatine nitrate compound and ThermoLife's licensees make similar misrepresentations on their products (*id.* ¶¶ 72-80)."

While the Court's January 16, 2020 Order allowed three categories of false advertising claims to go-forward, in discovery BPI further limited its claims. BPI's Motion to Compel originally conceded this, stating on the very first page of its Motion to Compel that, "For present purposes, it is sufficient to focus on the advertising and labeling of the 'Muscle Beach Nutrition' brand, including the product 'CRTN-3.'" [DE 62.]

Consistent with the limitation of its claims to just CRTN-3, on April 8, 2020, Plaintiff provided the expert opinion of Dr. Steve Bannister. [DE 73-1.] BPI's expert report offers six opinions, five in support of BPI's false advertising claim (opinions A-E of Dr. Bannister's report) and one in support of BPI's false patent marking claim (opinion F of Dr. Bannister's report). *See* Ex 1. With respect to the false advertising claim, Dr. Bannister's report provides the following opinions (A-E), which all address advertising claims related to CRTN-3:

conclusion is based on the theory that *only* the issues raised in the technical expert report are in the lawsuit. The fatal flaw in this logic is that a technical expert report is designed to address only those issues where an expert is necessary or helpful. Thus, by definition, Dr. Bannister's report only addresses *technical issues*. Such a report does not define the scope of the *entire case*, particularly where no technical assistance is needed, such as certain false advertising and unfair competition claims. Nonetheless, Dr. Bannister's report ***does disclose*** the exact basis for BPI's false advertising and unfair competition claims (concerning falsely listing after 2013 the originally issued U.S. Patent No. 7,777,074 as covering creatine nitrate) in the marking section that refers to "advertising in connection with an unpatented article." D.E. 71-1, ¶¶94-104 ("ThermoLife's inclusion of a hyperlink to the originally issued U.S. Patent to represent that the

V.    SUMMARY OF OPINIONS ...................................................................... 8

      A.    The Representation That CRTN-3 Is A "first-time fusion of Creatine Nitrate, Creatine HCl, and Creatine Monohydrate" Is Literally false, Misleading, and Unsubstantiated ............................................................................... 8

      B.    The Representation That CRTN-3 Includes A "HYPER INFUSED CREATINE MATRIX" Is False, Misleading, And Unsubstantiated ......................................... 9

      C.    The Representation That CRTN-3 Includes A "Hydro-GO Electrolyte Matrix" Is False, Misleading, and Unsubstantiated ........................................................... 9

      D.    When Used As Directed, CRTN-3 Does Not Administer "Three Of The Most Effective Forms Of Creatine In One Cutting-Edge Formula" ................................ 9

      E.    CRTN-3 Does Not Increase Vasodilation  Increase Vasodilation To Achieve Any Effects Faster Than Ever Before ......................................................................... 10

      F.    Defendants Are Engaged In False Patent Marking .......................................... 10

As the SUMMARY OF OPINIONS makes clear, all of Dr. Bannister's opinions addressing the alleged false advertising (opinions A-E) relate to Muscle Beach Nutrition, LLC's CRTN-3 product. Thus, BPI has now acknowledged, as it must, that its false advertising claim is limited to Muscle Beach Nutrition, LLC's CRTN-3 product. As a result, Dr. Bannister's expert report demonstrates that the only relevant discovery here is related to Muscle Beach Nutrition, LLC's CRTN-3 product.[2]

While conceding that its own expert's opinions are limited to CRTN-3, BPI argues that this disclosure does not define

---

[2]     Plaintiff includes the argument above that Dr. Bannister offers an opinion that "ThermoLife's inclusion of a hyperlink to the originally issued U.S. Patent to represent that the listed creatine nitrate is covered by this patent is false and misleading." In support of this statement, Plaintiff cites paragraph 104 of Dr. Bannister's report; but this section is entitled "Defendants are Engaged in False Patent Marking." This is the basis of Plaintiff's false marking claim, not grounds for a Lanham Act false advertising claim. Indeed, false advertising related to patent rights is not actionable, because it is not related to the "nature, characteristic, and qualities" of the goods sold. As the Federal Circuit Court of Appeals explained in *Baden Sports, Inv. v. Molten*, 556 F.3d 1300, 1307 (Fed. Cir. 2009), "such a holding could create overlap between the Lanham and Patent Acts." Moreover, all of the additional grounds raised above also bar this type of a false advertising claim.

listed creatine nitrate is covered by this patent is false and misleading."). These claims are also expressly set forth in arguably the most appropriate place to identify the full scope of BPI's false advertising claims, namely, the Response to Defendants' Interrogatory No. 1, which read: "Identify each and every statement made by ThermoLife or Ron Kramer that you contend constitutes false advertising under the Lanham Act One of the proper places to appreciate the scope of BPI's contentions." **Exhibit A**, Interrogatory No. 1 and response thereto. The latter (highlighted) portion of BPI's response includes the false advertising (and unfair competition) scheme set forth above (involving the use of "NO3-T" and the false representation on Defendants' website that creatine nitrate is patented under the '074 Patent). This false advertising claim involves the activities of *all the licensees* and therefore is not limited to CRTN-3 or the actions of a single alleged licensee, Muscle Beach Nutrition. Significantly, this portion of BPI's interrogatory response cites back to the operative First Amended Complaint. Thus, this aspect of the case has been in

the scope of BPI's claims because BPI only needs to offer expert testimony on "technical" issues. BPI then refers the Court to an unverified interrogatory response, which BPI claims supports its position that it has "a false advertising and unfair competition claim that involve[] the dynamic of Defendants requiring *all licensees* to use the 'NO3-T' trademark coupled with maintenance of website containing false information."[3]

BPI's statement here is wrong for many reasons. First, the district court already ruled that BPI failed to state a claim that would allow it to hold Defendants liable for their licensees' marketing statements. (D.E. 37 n. 3.) This is exactly the claim BPI attempts to re-assert here, alleging that ThermoLife's licensees are marking **their products** with the NO3-T trademark and that trademark identifies a website with false information. The Court has already ruled that this contributory false advertising claim (holding ThermoLife responsible for its licensees use of the NO3-T trademark) is not viable. For this reason alone, the discovery should not be compelled.

---

[3]    The unverified interrogatory response identified here explains that the alleged "false information" that ThermoLife includes on its website is a link to the United States Patent Offices website, which displays the '074 Patent. How can a link to a government website that displays up to date patent information include false information?

existence since the filing of that pleading over a year ago and is contained in Dr. Bannister's expert report and elsewhere.

Defendants' Supplemental Opposition also makes incorrect assumptions relating to BPI's false marking claims. First, Defendants incorrectly assume (without citation to case law) that because the false marking statute 35 U.S.C. § 292 refers to "damages adequate to compensate for the injury," such damages cannot be measured by lost profits. Supp. Opp., p. 4. This is based on an overly restrictive reading of the statute. *U.S. Rubber Recycling, Inc. v. Ecore International, Inc.*, 2011 WL 13127343, *6 (C.D. Cal. October 5, 2011) ("Defendant's sales and profits is relevant to proving the measure of competitive injury Plaintiff suffered"). Since Defendants' premise that "the only monetary remedy available for false marking is actual damages" is incorrect, there is no basis to deny discovery that would allow BPI to pursue a lost profit analysis. With respect to BPI's preliminary indication in its Response to Request for Production No. 12 that it did not intend to rely on actual damages (*i.e.*, did not intend to rely on BPI's own business losses as a measure of damages) this is of no consequence once Defendants' statutory interpretation is debunked. Nonetheless, given Defendants' position

Second, a review of the interrogatory response that BPI references reveals that BPI is asserting that, at most, ThermoLife allegedly made two ***misleading*** statements on its websites. The first misleading statement, according to the interrogatory, is that "ThermoLife displays a list of specific products to create the false impression that a license is needed to use, manufacture, supply, market, sell or import them, including amino acid nitrates such as creatine nitrate." [Ex. A.] The second allegedly misleading statement is that ThermoLife's website "contains a hyperlink which takes a user directly to ThermoLife's marking website, www.no3-t.com/patents. The website contains hyperlinks to enumerated patents as they appear on the United States Patent and Trademark Office website, www.uspto.gov, including U.S. Patent No. 7,777,074 ("the '074 Patent")." Here, according to BPI's interrogatory response, "Under such circumstances, consumers, licensees and competitors in the creatine nitrate market (such as BPI) have been misled into believing i) the raw material creatine nitrate cannot be purchased from third parties inside or outside the United States; (ii) ThermoLife is the only valid supplier of creatine nitrate; and (iii) finished dietary supplements cannot

| | | |
|---|---|---|
| that BPI is not entitled to any financial discovery *and* cannot rely on actual damages, BPI has since withdrawn that representation (a mere four (4) business days later), supplemented the response to Request No. 12, produced financials in support (BPI_000999-100) in support thereof and updated its initial disclosures. | incorporate creatine nitrate without paying a licensee fee to ThermoLife." [Ex. A.]<br><br>At most, BPI's interrogatory response discloses a claim alleging that ThermoLife is making advertisements that are literally true but nonetheless misleading customers. The Eleventh Circuit Court of Appeals has held that "A plaintiff attempting to establish … that an advertisement is literally true but misleading, must present evidence of deception in the form of consumer surveys, market research, expert testimony, or other evidence." *Hickson Corp., v. Northern Crossam Co., Inc.,* 357 F.3d 1256 (11th Cir. 2004); *see also Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242 (11th Cir. 2002). Absent a consumer survey or market research, Lanham Act claims are limited to those alleging "literal falsity." *See Johnson & Johnson Vision Care, Inc.,* 299 F. at 1245. BPI's claim that ThermoLife creates "a false impression that a license is needed to use, manufacture, supply, market, sell or import them, including amino acid nitrates such as creatine nitrate" does not assert that ThermoLife made any literally false statement (a *false impression* is not "literally false"). Similarly, BPI's claim that "consumers have been misled" by ThermoLife including a link to the '074 Patent on its website, does not assert that | |

|  | ThermoLife made a false statement of fact. BPI does not even allege otherwise. Instead, BPI alleges merely that it believes that ThermoLife's websites are misleading. But with the expert deadline having already passed, BPI has not disclosed any expert testimony or market research establishing that its "belief" is supported by a consumer survey or market research (it isn't). Accordingly, BPI cannot proceed on this claim. The fact is though, BPI never intended to proceed on this claim, BPI is simply using the asserted claim and this frivolous lawsuit to harass ThermoLife and obtain financial documents from ThermoLife that it is not entitled to, which have not been produced in the other lawsuits that Plaintiff's counsel is handling against ThermoLife.<br><br>Third, there is a good reason that BPI doesn't allege that ThermoLife made a literally false statement by including a link to the '074 Patent on its website. The '074 Patent is still valid.  The '074 is currently undergoing re-exam in the United States Patent and Trademark Office, whose decision ThermoLife appealed to the Federal Circuit Court of Appeals. While, as BPI notes, the appellate court has rendered a decision, finding claim 6 of the '074 Patent invalid, the re-examination has not |  |
|---|---|---|

concluded.[4] The re-examination does not conclude until the patent re-examination certificate issues. 35 U.S.C. § 307. Until then, the '074 Patent (as it appears in the hyperlink to the USPTO on ThermoLife's NO3-T.com website) is valid under the law. *Bartex Research, LLC v. FedEx Corp.*, 611 F.Supp.2d 647 (E.D. Tex. 2009) (declining to stay patent infringement lawsuit pending the outcome of re-exam and noting that the "patent is presumed valid"). The very fact that the United States Patent Office's website still displays the '074 Patent is evidence in and of itself that the United States considers the patent valid. Indeed, even after the re-examination certificate issues, the '074 Patent will still be valid because the validity of the majority of the claims in the '074 Patent were not at issue before the Federal Circuit Court of Appeals.

   Fourth, although BPI's unverified interrogatory response alleges two purportedly misleading statements on ThermoLife's websites, when BPI's 30(b)(6) witness, its Chairman Derek Ettinger, was shown these websites he was unable to explain what BPI claimed was

---

[4]      The Court can take judicial notice of documents from the USPTO. The "Transaction History" for the pending re-exam is attached as Exhibit 1. The docket shows that no re-examination certificate has issued.

false.[5] Furthermore, although BPI asserts in its unverified interrogatory response that including a link on ThermoLife's website to the United States Patent Office's website that displays the '074 Patent as valid misleads consumers, BPI's 30(b)(6) witness did not know whether the '074 Patent was valid (it is, simply clicking on the link on ThermoLife's NO3-T website proves this and should end any doubt). During his testimony regarding the validity of the '074 Patent, which BPI alleges ThermoLife uses to misled consumers, BPI's 30(b)(6) witness repeatedly indicated that he would need to rely on his lawyers to answer questions about ThermoLife's patents. As a result, BPI cannot offer any testimony regarding the validity of the '074 Patent (which, as displayed on the USPTO website, is currently valid). BPI doesn't know if the patent is valid. Importantly, BPI's 30(b)(6) witness, Derek Ettinger, is also the only witness BPI has disclosed that will testify for BPI in this lawsuit, and his testimony obviously does not establish that any consumer was misled.[6] As a result, BPI has no witness that can support any of the factual statements made in BPI's

---

[5]     Derek Ettinger was deposed on April 22. The transcript is not yet available.  Defendants will supplement this filing with the relevant portions of Mr. Ettinger's transcript by Thursday, April 30, 2020.

[6]     A copy of BPI's First Supplemental Disclosure Statement is attached as Exhibit 2.

unverified interrogatory response. Again, as the Court can see, BPI never intended to pursue these claims; BPI is simply using its deficient unverified interrogatory response here to try and harass ThermoLife and obtain discovery that it isn't entitled to.

Finally, BPI argues that it is entitled to discover detailed financial data from ThermoLife related to all of its sales of creatine nitrate because BPI alleges that ThermoLife committed false marking. But, again, there are many separate and distinct reasons that BPI is not entitled to this broad discovery. First, the district court has explicitly limited this claim to just the CRTN-3 product:

> The only ThermoLife product specifically identified as being a marked unpatented article (the "what") is the Muscle Beach CRTN-3 dietary supplement. (Am. Compl. ¶¶ 73-77, 158 -166.)BPI generally alleges that ThermoLife's licensees' "product(s)" are falsely marked (*id.* ¶¶ 79, 163-165, 197), but that allegation lacks the specificity required of Rule 9(b). ***Moreover, BPI has cited no case law extending liability to a patent holder for markings by a licensee, when the marking statute on its***

18

*face attaches liability to the person who marks the unpatented product. See* 35 U.S.C. § 292(a) ("*Whoever marks* upon, or *affixes to, or uses in advertising* . . . .").

[DE 37 at 16 (emphasis added).] For this reason alone, BPI is not entitled to discovery on all of ThermoLife's financials based on its alleged false marking claim. Again, with regard to CRTN-3, non-party Muscle Beach Nutrition, LLC produced the relevant financial documents in response to a BPI subpoena. Unwilling to accept the Court's Order, BPI now asserts that it is entitled to "broad and liberal" discovery on this claim and this includes the production of all of ThermoLife's financial data for a seven-year period. As this Court well knows, no party is entitled to "broad and liberal" discovery on any claim. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Rule 26(b)(1). The Court's Order on Defendant's Motion to Dismiss sets the limits of discovery on this claim and it limits discovery to CRTN-3.

Additionally, as Defendants pointed out in their Supplemental Filing (DE 73),

damages for false patent marking are limited to "damages adequate to compensate for the injury." 35 U.S.C. § 292. And here, in BPI's responses to ThermoLife's request for production, BPI explicitly informed Defendants that it was not producing its own financial data because BPI is "not seeking an award of actual damages." [DE 73-2 at No. 12.] As Defendants' Supplemental Filing indicated, this decision meant that BPI could no longer pursue its false patent marking claim.

After Defendants called this issue to the Court's attention, BPI quickly backtracked, in an attempt to try and keep this claim alive. BPI served an amended response that indicated that BPI was now pursuing actual damages. Along with that amended response, BPI disclosed just two pages of financial spreadsheets that were created for purposes of this litigation. No other financial data was provided. Defendants intend to move the Court to strike BPI's amended response. In brief, the response should be stricken because prior to this amended response, BPI had never before disclosed that it intended to seek actual damages. Instead, its Initial Disclosure Statement,[7] served on February 5, 2020, stated, "Damages for BPI's false

---

[7]    BPI's Initial Disclosure Statement is attached as Exhibit 3.

marking claim will be computed under 35 U.S.C. § 292, including without limitation, $500 per instance."[8] Indeed, BPI's own damages expert did not calculate an actual damages number. It will severely prejudice Defendants if BPI is allowed to change course at this late juncture and seek an award of actual damages that was previously undisclosed.  For this reason, the Court should disregard the amended request for production response in ruling on BPI's motion to compel.

Furthermore, even if the Court were to consider the amended request for production response and ignore the limitations of the Court's Order on Defendants' Motion to Dismiss, there is simply no reason that BPI is entitled to discovery of ThermoLife's financials so it can determine its own damages. Contrary to BPI's argument here, there is no court anywhere that has ever held "damages adequate to compensate for the injury" under 35 U.S.C. § 292 means that the Plaintiff is allowed to disgorge the defendant's profits on a false marking claim. The damages are limited to actual damages, which, by definition, are "damages adequate to compensate for injury." As a result, ThermoLife's

---

[8]      This remedy is not available to BPI. 35 U.S.C. 292 provides, "Only the United States may sue for the penalty authorized by this subsection."

<table>
<tr><td></td><td>financials are simply irrelevant to BPI's false marking claim.<br><br>For the foregoing, the Court should deny BPI's motion to compel here.</td><td></td></tr>
</table>

**Interrogatory No. 1 to Kramer:**

Identify the manufacturer(s) of the Muscle Beach Nutrition product CRTN-3.

**Response:**

Kramer objects to this interrogatory as seeking information that is not relevant to this dispute nor is it likely to lead to the discovery of admissible evidence. There is no claim in this lawsuit against Muscle Beach Nutrition, LLC and there is no claim in this lawsuit against the manufacture of Muscle Beach Nutrition, LLC's products. Furthermore, while as a member of Muscle Beach Nutrition, LLC Kramer knows this information, this information is confidential information of Muscle Beach Nutrition, which, given its limited or complete lack of relevance to this proceeding, will not be disclosed. BPI's claim against Kramer in this lawsuit alleges that Kramer is personally liable for conduct he took while President of ThermoLife International,

LLC. Kramer is not alleged to be personally responsible for any conduct that Muscle Beach Nutrition, LLC has engaged in; indeed, Muscle Beach Nutrition, LLC is not a party to this action.

Kramer stands by his objections here and will not produce information in response to this interrogatory.

| Movant's Position: | Respondents' Position: | |
|---|---|---|
| Kramer admits he has the information requested and should be made to produce same.  He improperly objects based on relevance, confidentiality, and a unilateral belief that any action on behalf of Muscle Beach Nutrition, LLC ("Muscle Beach Nutrition") is *per se* not discoverable. | Non-party Muscle Beach Nutrition, LLC is a limited liability company, incorporated in California, that sells and markets CRTN-3.[9] Ron Kramer is a member and manager of Muscle Beach Nutrition, LLC. Plaintiff's interrogatory here seeks information that Kramer knows only because is a member and manager of | |

---

[9]     The Secretary of State Statement of Information for Muscle Beach Nutrition, LLC is attached as Exhibit 4.  The document indicates that Mr. Kramer is the member manager of Muscle Beach Nutrition, LLC.

Kramer's relevance objection is misplaced because relevance is not the standard for discovery. BPI is allowed to take "allow liberal and broad discovery" to seek any facts or information that may reasonably lead to discoverable evidence. Muscle Beach Nutrition's manufacturers have discoverable information about the materials in the products and may have information regarding who controlled the labeling and advertising.

Kramer's confidentiality objection is meritless in view of the protective order.

Finally, Kramer is a defendant in this case because of his individual actions, regardless of whether those actions were made on behalf of ThermoLife, Muscle Beach Nutrition or himself (the record supports there is no meaningful difference between them). *See*, *e.g.*, D.E. 64, 74. There mere fact that Muscle Beach Nutrition is not a named Defendant should not absolve Mr. Kramer of compliance with his obligations under the Federal Rules of Civil Procedure, particularly where, as here, discovery is designed to discover facts about Muscle Beach Nutrition and its relationship to the named Defendants (*i.e.*, alter ego issues). *See*, **Exhibit A**, Interrogatories 2, 4, 6-8, 17 and 18. Information about the identity of the

Muscle Beach Nutrition, LLC. A party may not obtain corporate information by requesting that information in discovery from a corporate officer or employee. *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001) (overturning a magistrate judge's discovery order that required a corporation's president, who was a party to the lawsuit, to produce corporate documents); *see also Schaaf v. SmithKline Beecham Corp.,* 233 F.R.D. 451, 455 (E.D. N. C. 2005) (quashing a subpoena served on a corporate employee that sought production of corporate documents); *see also Estate of Ungar v. Palestinian Authority*, 412 F.Supp.2d 328 (S.D. N.Y. 2006) (same). The proper method for obtaining corporate documents and information from a non-party corporate entity is through a Rule 45 subpoena, not a discovery request served on the corporate president. *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001). As the Second Circuit Court of Appeals explained in *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983*, 722 F.2d 981 (2d. Cir. 1983), "A corporation's records are usually available to others within the entity and may not be treated as the private confidential papers of the any one officer or employee. The officer creates or handles the records in a representative capacity, not on his own

| | | |
|---|---|---|
| manufacturer of CRTN-3 is discoverable for this purpose. | behalf. The records [] do not belong to him but to the organization."<br><br>    Because Plaintiff's interrogatory seeks to compel non-party Muscle Beach Nutrition, LLC's corporate information from Mr. Kramer, its manager and member, the Court should deny BPI's motion. Critically, Plaintiff has already served a subpoena on Muscle Beach Nutrition, LLC. Through its own counsel, Muscle Beach Nutrition, LLC has produced relevant documents in response to that subpoena.[10] Moreover, Muscle Beach Nutrition, LLC has informed the parties that it will appear for a deposition at a mutually agreeable time, even offering up several dates in early April for this deposition to take place. Thus, Plaintiff is pursuing this information through the proper mechanism, Rule 45, and non-party Muscle Beach Nutrition, LLC has offered to provide this information during a deposition. As a result, there is simply no reason to compel a corporate manager of a company that is not a party in this litigation to produce non-party corporate information here. | |
| **Interrogatory No. 2 to Kramer:** | | |

---

[10]    Email from M. Wolf (Muscle Beach Nutrition, LLC's counsel) to D. Silverman (BPI's California based attorney), April 2, 2020, attached as Exhibit 5

Identify the supplier(s) of the ingredients in the Muscle Beach Nutrition product CRTN-3.

**Response:**

Kramer objects to this interrogatory as seeking information that is not relevant to this dispute nor is it likely to lead to the discovery of admissible evidence. There is no claim in this lawsuit against Muscle Beach Nutrition, LLC and there is no claim in this lawsuit against the supplier of ingredients in Muscle Beach Nutrition, LLC's products. Furthermore, while as a member of Muscle Beach Nutrition, LLC Kramer knows this information, this information is confidential information of Muscle Beach Nutrition, which, given its limited or complete lack of relevance to this proceeding, will not be disclosed. BPI's claim against Kramer in this lawsuit alleges that Kramer is personally liable for conduct he undertook while President of ThermoLife International, LLC. Kramer is not alleged to be personally responsible for any conduct that Muscle Beach Nutrition, LLC has engaged in; indeed, Muscle Beach Nutrition, LLC is not a party to this action.

Kramer stands by his objections here and will not produce information in response to this interrogatory.

| **Movant's Position:** | **Respondents' Position:** | |
|---|---|---|
| Kramer admits he has the information requested and should be made to produce same. He improperly objects based on relevance, confidentiality, and a unilateral belief that any action on behalf of Muscle Beach Nutrition is *per se* not discoverable.<br><br>Kramer's relevance objection is misplaced because relevance is not the standard for discovery. BPI is allowed to take "allow liberal and broad discovery" to seek any facts or information that may reasonably lead to discoverable evidence. Muscle Beach Nutrition's suppliers have discoverable information about the materials in the products and may have | Non-party Muscle Beach Nutrition, LLC is a limited liability company, incorporated in California, that sells and markets CRTN-3.[11] Ron Kramer is a member and manager of Muscle Beach Nutrition, LLC. Plaintiff's interrogatory here seeks information that Kramer knows only because is a member and manager of Muscle Beach Nutrition, LLC. A party may not obtain corporate information by requesting that information in discovery from a corporate officer or employee. *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001) (overturning a magistrate judge's discovery order that required a corporation's president, who was a party to the lawsuit, to produce | |

---

[11]     Exhibit 4.

information regarding who controlled the labeling and advertising.

Kramer's confidentiality objection is meritless in view of the protective order.

Finally, Kramer is a defendant in this case because of his individual actions, regardless whether those actions were made on behalf of ThermoLife, Muscle Beach Nutrition or himself (the record supports there is no meaningful difference between them). *See*, *e.g.*, D.E. 64, 74. There mere fact that Muscle Beach Nutrition is not a named Defendant should not absolve Mr. Kramer of compliance with his obligations under the Federal Rules of Civil Procedure, particularly where, as here, discovery is designed to discover facts about Muscle Beach Nutrition and its relationship to the named Defendants (*i.e.*, alter ego issues). *See*, **Exhibit A**, Interrogatories 2, 4, 6-8, 17 and 18. Information about the identity of the suppliers of the ingredients in CRTN-3 is discoverable for this purpose.

corporate documents); *see also Schaaf v. SmithKline Beecham Corp.,* 233 F.R.D. 451, 455 (E.D. N. C. 2005) (quashing a subpoena served on a corporate employee that sought production of corporate documents); *see also Estate of Ungar v. Palestinian Authority*, 412 F.Supp.2d 328 (S.D. N.Y. 2006) (same). The proper method for obtaining corporate documents and information from a non-party corporate entity is through a Rule 45 subpoena, not a discovery request served on the corporate president. *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001). As the Second Circuit Court of Appeals explained in *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983*, 722 F.2d 981 (2d. Cir. 1983), "A corporation's records are usually available to others within the entity and may not be treated as the private confidential papers of the any one officer or employee. The officer creates or handles the records in a representative capacity, not on his own behalf. The records [] do not belong to him but to the organization."

Because Plaintiff's interrogatory seeks to compel non-party Muscle Beach Nutrition, LLC's corporate information from Mr. Kramer, its manager and member, the Court should deny BPI's motion. Critically, Plaintiff has already served a subpoena on Muscle Beach

|  | Nutrition, LLC. Through its own counsel, Muscle Beach Nutrition, LLC has produced relevant documents in response to that subpoena.[12] Moreover, Muscle Beach Nutrition, LLC has informed the parties that it will appear for a deposition at a mutually agreeable time, even offering up several dates in early April for this deposition to take place. Thus, Plaintiff is pursuing this information through the proper mechanism, Rule 45, and non-party Muscle Beach Nutrition, LLC has offered to provide this information during a deposition. As a result, there is simply no reason to compel a corporate manager of a company that is not a party in this litigation to produce non-party corporate information here. |  |
|---|---|---|

**Interrogatory No. 3 to Kramer:**

Identify the entities to which Muscle Beach Nutrition has sold the product CRTN-3, not including end consumers.

**Response:**

Kramer objects to this interrogatory as seeking information that is not relevant to this dispute nor is it likely to lead to the discovery of admissible evidence. There is no claim in this lawsuit against Muscle Beach Nutrition, LLC and there is no claim in this lawsuit against end consumers of Muscle Beach Nutrition, LLC products. Furthermore, while as a member of Muscle Beach Nutrition, LLC Kramer knows this information, this information is confidential information of Muscle Beach Nutrition, LLC which, given its limited or complete lack of relevance to this proceeding, will not be disclosed. BPI's claim against Kramer in this lawsuit alleges that Kramer is personally liable for conduct he undertook while President of ThermoLife International, LLC. Kramer is not alleged to be personally responsible for any conduct that Muscle Beach Nutrition, LLC has engaged in; indeed, Muscle Beach Nutrition, LLC is not a party to this action.

---

[12]     Exhibit 5.

Kramer stands by his objections here and will not produce information in response to this interrogatory.

| **Movant's Position:** | **Respondents' Position:** | |
| --- | --- | --- |
| Kramer admits he has the information requested and should be made to produce same.  He improperly objects based on relevance, confidentiality, and a unilateral belief that any action on behalf of Muscle Beach Nutrition is *per se* not discoverable.<br><br>Kramer's relevance objection is misplaced because relevance is not the standard for discovery.  BPI is allowed to take "allow liberal and broad discovery" to seek any facts or information that may reasonably lead to discoverable evidence. Muscle Beach Nutrition's suppliers have discoverable information about the materials in the products and may have information regarding who controlled the labeling and advertising.<br><br>Kramer's confidentiality objection is meritless in view of the protective order.<br><br>Finally, Kramer is a defendant in this case because of his individual actions, regardless whether those actions were made on behalf of ThermoLife, Muscle Beach Nutrition or himself (the record supports there is no meaningful difference between them).  *See*, *e.g.*, D.E. 64, 74. There mere fact that Muscle Beach | Non-party Muscle Beach Nutrition, LLC is a limited liability company, incorporated in California, that sells and markets CRTN-3.[13]  Ron Kramer is a member and manager of Muscle Beach Nutrition, LLC.  Plaintiff's interrogatory here seeks information that Kramer knows only because is a member and manager of Muscle Beach Nutrition, LLC.  A party may not obtain corporate information by requesting that information in discovery from a corporate officer or employee.  *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001) (overturning a magistrate judge's discovery order that required a corporation's president, who was a party to the lawsuit, to produce corporate documents); *see also Schaaf v. SmithKline Beecham Corp.,* 233 F.R.D. 451, 455 (E.D. N. C. 2005) (quashing a subpoena served on a corporate employee that sought production of corporate documents); *see also Estate of Ungar v. Palestinian Authority*, 412 F.Supp.2d 328 (S.D. N.Y. 2006) (same).  The proper method for obtaining corporate documents and information from a non-party corporate entity is through a Rule 45 | |

---

[13]     Exhibit 4.

Nutrition is not a named Defendant should not absolve Mr. Kramer of compliance with his obligations under the Federal Rules of Civil Procedure, particularly where, as here, discovery is designed to discover facts about Muscle Beach Nutrition and its relationship to the named Defendants (*i.e.*, alter ego issues). *See*, **Exhibit A**, Interrogatories 2, 4, 6-8, 17 and 18. Information about the identity of the customers of CRTN-3 is discoverable for this purpose.

subpoena, not a discovery request served on the corporate president. *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001). As the Second Circuit Court of Appeals explained in *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983,* 722 F.2d 981 (2d. Cir. 1983), "A corporation's records are usually available to others within the entity and may not be treated as the private confidential papers of the any one officer or employee. The officer creates or handles the records in a representative capacity, not on his own behalf. The records [] do not belong to him but to the organization."

Because Plaintiff's interrogatory seeks to compel non-party Muscle Beach Nutrition, LLC's corporate information from Mr. Kramer, its manager and member, the Court should deny BPI's motion. Critically, Plaintiff has already served a subpoena on Muscle Beach Nutrition, LLC. Through its own counsel, Muscle Beach Nutrition, LLC has produced relevant documents in response to that subpoena.[14] Moreover, Muscle Beach Nutrition, LLC has informed the parties that it will appear for a deposition at a mutually agreeable time, even offering up several dates in early April for this deposition to take place. Thus, Plaintiff is

---

[14] Exhibit 5.

| | | |
|---|---|---|
| | pursuing this information through the proper mechanism, Rule 45, and non-party Muscle Beach Nutrition, LLC has offered to provide this information during a deposition. As a result, there is simply no reason to compel a corporate manager of a company that is not a party in this litigation to produce non-party corporate information here. | |

**Interrogatory No. 4:**

Identify the person(s) responsible for the advertising associated with the Muscle Beach Nutrition product CRTN-3.

**Response:**

Kramer objects to this interrogatory as seeking information that is not relevant to this dispute nor is it likely to lead to the discovery of admissible evidence. There is no claim in this lawsuit against Muscle Beach Nutrition, LLC. Furthermore, while as a member of Muscle Beach Nutrition, LLC Kramer knows this information, this information is confidential information of Muscle Beach Nutrition, LLC which, given its limited or complete lack of relevance to this proceeding, will not be disclosed. BPI's claim against Kramer in this lawsuit alleges that Kramer is personally liable for conduct he undertook while President of ThermoLife International, LLC. Kramer is not alleged to be personally responsible for any conduct that Muscle Beach Nutrition, LLC has engaged in; indeed, Muscle Beach Nutrition, LLC is not a party to this action.

Kramer stands by his objections here and will not produce information in response to this interrogatory.

| **Movant's Position:** | **Respondents' Position:** | |
|---|---|---|
| Kramer admits he has the information requested and should be made to produce same. He improperly objects based on relevance, confidentiality, and a unilateral belief that any action on behalf of Muscle Beach Nutrition is *per se* not discoverable. | Non-party Muscle Beach Nutrition, LLC is a limited liability company, incorporated in California, that sells and markets CRTN-3.[15] Ron Kramer is a member and manager of Muscle Beach Nutrition, LLC. Plaintiff's interrogatory | |

---

[15] Exhibit 4.

Kramer's relevance objection is misplaced because relevance is not the standard for discovery. BPI is allowed to take "allow liberal and broad discovery" to seek any facts or information that may reasonably lead to discoverable evidence. Muscle Beach Nutrition's suppliers have discoverable information about the materials in the products and may have information regarding who controlled the labeling and advertising.

Kramer's confidentiality objection is meritless in view of the protective order.

Finally, Kramer is a defendant in this case because of his individual actions, regardless whether those actions were made on behalf of ThermoLife, Muscle Beach Nutrition or himself (the record supports there is no meaningful difference between them). *See*, *e.g.*, D.E. 64, 74. There mere fact that Muscle Beach Nutrition is not a named Defendant should not absolve Mr. Kramer of compliance with his obligations under the Federal Rules of Civil Procedure, particularly where, as here, discovery is designed to discover facts about Muscle Beach Nutrition and its relationship to the named Defendants (*i.e.*, alter ego issues). *See*, **Exhibit A**, Interrogatories 2, 4, 6-8, 17 and 18. Information about the identity of the

here seeks information that Kramer knows only because is a member and manager of Muscle Beach Nutrition, LLC. A party may not obtain corporate information by requesting that information in discovery from a corporate officer or employee. *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001) (overturning a magistrate judge's discovery order that required a corporation's president, who was a party to the lawsuit, to produce corporate documents); *see also Schaaf v. SmithKline Beecham Corp.,* 233 F.R.D. 451, 455 (E.D. N. C. 2005) (quashing a subpoena served on a corporate employee that sought production of corporate documents); *see also Estate of Ungar v. Palestinian Authority*, 412 F.Supp.2d 328 (S.D. N.Y. 2006) (same). The proper method for obtaining corporate documents and information from a non-party corporate entity is through a Rule 45 subpoena, not a discovery request served on the corporate president. *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001). As the Second Circuit Court of Appeals explained in *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983,* 722 F.2d 981 (2d. Cir. 1983), "A corporation's records are usually available to others within the entity and may not be treated as the private confidential papers of the any one officer or employee. The

| | | |
|---|---|---|
| person responsible for advertising CRTN-3 is discoverable for this purpose. | officer creates or handles the records in a representative capacity, not on his own behalf. The records [] do not belong to him but to the organization."<br><br>    Because Plaintiff's interrogatory seeks to compel non-party Muscle Beach Nutrition, LLC's corporate information from Mr. Kramer, its manager and member, the Court should deny BPI's motion.  Critically, Plaintiff has already served a subpoena on Muscle Beach Nutrition, LLC. Through its own counsel, Muscle Beach Nutrition, LLC has produced relevant documents in response to that subpoena.[16] Moreover, Muscle Beach Nutrition, LLC has informed the parties that it will appear for a deposition at a mutually agreeable time, even offering up several dates in early April for this deposition to take place. Thus, Plaintiff is pursuing this information through the proper mechanism, Rule 45, and non-party Muscle Beach Nutrition, LLC has offered to provide this information during a deposition. As a result, there is simply no reason to compel a corporate manager of a company that is not a party in this litigation to produce non-party corporate information here. | |

---

[16]    Exhibit 5.

**Interrogatory No. 5:**

Identify the person(s) responsible for the content on the labels for the Muscle Beach Nutrition products CRTN-3 and Pre-Train.

**Response:**

Kramer objects to this interrogatory as seeking information that is not relevant to this dispute nor is it likely to lead to the discovery of admissible evidence. There is no claim in this lawsuit against Muscle Beach Nutrition, LLC. Furthermore, while as a member of Muscle Beach Nutrition, LLC Kramer knows this information, this information is confidential information of Muscle Beach Nutrition, LLC which, given its limited or complete lack of relevance to this proceeding, will not be disclosed. BPI's claim against Kramer in this lawsuit alleges that Kramer is personally liable for conduct he undertook while President of ThermoLife International, LLC. Kramer is not alleged to be personally responsible for any conduct that Muscle Beach Nutrition, LLC has engaged in; indeed, Muscle Beach Nutrition, LLC is not a party to this action.

Kramer stands by his objections here and will not produce information in response to this interrogatory.

| **Movant's Position:** | **Respondents' Position:** | |
|---|---|---|
| Kramer admits he has the information requested and should be made to produce same. He improperly objects based on relevance, confidentiality, and a unilateral belief that any action on behalf of Muscle Beach Nutrition is *per se* not discoverable. | Non-party Muscle Beach Nutrition, LLC is a limited liability company, incorporated in California, that sells and markets CRTN-3.[17] Ron Kramer is a member and manager of Muscle Beach Nutrition, LLC. Plaintiff's interrogatory here seeks information that Kramer knows only because is a member and manager of Muscle Beach Nutrition, LLC. A party may not obtain corporate information by requesting that information in discovery from a corporate officer or employee. *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001) (overturning a magistrate judge's discovery order that | |
| Kramer's relevance objection is misplaced because relevance is not the standard for discovery. BPI is allowed to take "allow liberal and broad discovery" to seek any facts or information that may reasonably lead to discoverable evidence. Muscle Beach Nutrition's suppliers have discoverable information about the | | |

---

[17]     Exhibit 4.

materials in the products and may have information regarding who controlled the labeling and advertising.

Kramer's confidentiality objection is meritless in view of the protective order.

Finally, Kramer is a defendant in this case because of his individual actions, regardless whether those actions were made on behalf of ThermoLife, Muscle Beach Nutrition or himself (the record supports there is no meaningful difference between them). *See*, *e.g.*, D.E. 64, 74. There mere fact that Muscle Beach Nutrition is not a named Defendant should not absolve Mr. Kramer of compliance with his obligations under the Federal Rules of Civil Procedure, particularly where, as here, discovery is designed to discover facts about Muscle Beach Nutrition and its relationship to the named Defendants (*i.e.*, alter ego issues). *See*, **Exhibit A**, Interrogatories 2, 4, 6-8, 17 and 18. Information about the identity of the person responsible for the labels for CRTN-3 is discoverable for this purpose.

required a corporation's president, who was a party to the lawsuit, to produce corporate documents); *see also Schaaf v. SmithKline Beecham Corp.,* 233 F.R.D. 451, 455 (E.D. N. C. 2005) (quashing a subpoena served on a corporate employee that sought production of corporate documents); *see also Estate of Ungar v. Palestinian Authority*, 412 F.Supp.2d 328 (S.D. N.Y. 2006) (same). The proper method for obtaining corporate documents and information from a non-party corporate entity is through a Rule 45 subpoena, not a discovery request served on the corporate president. *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001). As the Second Circuit Court of Appeals explained in *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983*, 722 F.2d 981 (2d. Cir. 1983), "A corporation's records are usually available to others within the entity and may not be treated as the private confidential papers of the any one officer or employee. The officer creates or handles the records in a representative capacity, not on his own behalf. The records [] do not belong to him but to the organization."

Because Plaintiff's interrogatory seeks to compel non-party Muscle Beach Nutrition, LLC's corporate information from Mr. Kramer, its manager and member, the Court should deny BPI's

<table>
<tr>
<td></td>
<td>motion.  Critically, Plaintiff has already served a subpoena on Muscle Beach Nutrition, LLC. Through its own counsel, Muscle Beach Nutrition, LLC has produced relevant documents in response to that subpoena.[18] Moreover, Muscle Beach Nutrition, LLC has informed the parties that it will appear for a deposition at a mutually agreeable time, even offering up several dates in early April for this deposition to take place. Thus, Plaintiff is pursuing this information through the proper mechanism, Rule 45, and non-party Muscle Beach Nutrition, LLC has offered to provide this information during a deposition. As a result, there is simply no reason to compel a corporate manager of a company that is not a party in this litigation to produce non-party corporate information here.</td>
<td></td>
</tr>
</table>

**Interrogatory No. 6:**

   Identify the person(s) responsible for the patent marking of the Muscle Beach Nutrition products CRTN-3 and Pre-Train.

**Response:**

   Kramer objects to this interrogatory as seeking information that is not relevant to this dispute nor is it likely to lead to the discovery of admissible evidence. There is no claim in this lawsuit against Muscle Beach Nutrition, LLC. Furthermore, while as a member of Muscle Beach Nutrition, LLC Kramer knows this information, this information is confidential information of Muscle Beach Nutrition, LLC which, given its limited or complete lack of relevance to this proceeding, will not be disclosed. BPI's claim against Kramer in this lawsuit alleges that Kramer is personally liable for conduct he undertook while President of ThermoLife

---

[18]      Exhibit 5.

International, LLC. Kramer is not alleged to be personally responsible for any conduct that Muscle Beach Nutrition, LLC has engaged in; indeed, Muscle Beach Nutrition, LLC is not a party to this action.

    Kramer stands by his objections here and will not produce information in response to this interrogatory.

| **Movant's Position:** | **Respondents' Position:** | |
|---|---|---|
| Kramer admits he has the information requested and should be made to produce same.  He improperly objects based on relevance, confidentiality, and a unilateral belief that any action on behalf of Muscle Beach Nutrition is *per se* not discoverable.<br><br>Kramer's relevance objection is misplaced because relevance is not the standard for discovery. BPI is allowed to take "allow liberal and broad discovery" to seek any facts or information that may reasonably lead to discoverable evidence. Muscle Beach Nutrition's suppliers have discoverable information about the materials in the products and may have information regarding who controlled the labeling and advertising.<br><br>Kramer's confidentiality objection is meritless in view of the protective order.<br><br>Finally, Kramer is a defendant in this case because of his individual actions, regardless whether those actions were made on behalf of ThermoLife, Muscle Beach Nutrition or himself (the record | Non-party Muscle Beach Nutrition, LLC is a limited liability company, incorporated in California, that sells and markets CRTN-3.[19] Ron Kramer is a member and manager of Muscle Beach Nutrition, LLC. Plaintiff's interrogatory here seeks information that Kramer knows only because is a member and manager of Muscle Beach Nutrition, LLC. A party may not obtain corporate information by requesting that information in discovery from a corporate officer or employee. *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001) (overturning a magistrate judge's discovery order that required a corporation's president, who was a party to the lawsuit, to produce corporate documents); *see also Schaaf v. SmithKline Beecham Corp.,* 233 F.R.D. 451, 455 (E.D. N. C. 2005) (quashing a subpoena served on a corporate employee that sought production of corporate documents); *see also Estate of Ungar v. Palestinian Authority*, 412 F.Supp.2d 328 (S.D. N.Y. 2006) (same). The proper method for obtaining corporate documents | |

---

[19]    Exhibit 4.

supports there is no meaningful difference between them).  *See*, *e.g.*, D.E. 64, 74. There mere fact that Muscle Beach Nutrition is not a named Defendant should not absolve Mr. Kramer of compliance with his obligations under the Federal Rules of Civil Procedure, particularly where, as here, discovery is designed to discover facts about Muscle Beach Nutrition and its relationship to the named Defendants (*i.e.*, alter ego issues).  *See*, **Exhibit A**, Interrogatories 2, 4, 6-8, 17 and 18.  Information about the identity of the person responsible for the marking of CRTN-3 is discoverable for this purpose.

and information from a non-party corporate entity is through a Rule 45 subpoena, not a discovery request served on the corporate president.  *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001). As the Second Circuit Court of Appeals explained in *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983*, 722 F.2d 981 (2d. Cir. 1983), "A corporation's records are usually available to others within the entity and may not be treated as the private confidential papers of the any one officer or employee. The officer creates or handles the records in a representative capacity, not on his own behalf. The records [] do not belong to him but to the organization."

Because Plaintiff's interrogatory seeks to compel non-party Muscle Beach Nutrition, LLC's corporate information from Mr. Kramer, its manager and member, the Court should deny BPI's motion.  Critically, Plaintiff has already served a subpoena on Muscle Beach Nutrition, LLC. Through its own counsel, Muscle Beach Nutrition, LLC has produced relevant documents in response to that subpoena.[20] Moreover, Muscle Beach Nutrition, LLC has informed the parties that it will appear for a deposition at a mutually agreeable time, even offering

---

[20]     Exhibit 5.

| | up several dates in early April for this deposition to take place. Thus, Plaintiff is pursuing this information through the proper mechanism, Rule 45, and non-party Muscle Beach Nutrition, LLC has offered to provide this information during a deposition. As a result, there is simply no reason to compel a corporate manager of a company that is not a party in this litigation to produce non-party corporate information here. | |
|---|---|---|

**Interrogatory No. 7:**

Explain whether you provide text, statements, or representations to any entity to be used in the labelling, advertising or marketing of nitrate products, including the Muscle Beach Nutrition product CRTN-3, and if so, identify the text, statements or representations.

**Response**:

Kramer objects to this interrogatory as seeking information that is not relevant to this dispute nor is it likely to lead to the discovery of admissible evidence. There is no claim in this lawsuit against Muscle Beach Nutrition, LLC. Furthermore, while as a member of Muscle Beach Nutrition, LLC Kramer knows this information, this information is confidential information of Muscle Beach Nutrition, LLC, which given its limited or complete lack of relevance to this proceeding, will not be disclosed. BPI's claim against Kramer in this lawsuit alleges that Kramer is personally liable for conduct he undertook while President of ThermoLife International, LLC. Kramer is not alleged to be personally responsible for any conduct that Muscle Beach Nutrition, LLC has engaged in; indeed, Muscle Beach Nutrition, LLC is not a party to this action.

Kramer stands by his objections here and will not produce information in response to this interrogatory.

| **Movant's Position:** | **Respondents' Position:** | |
|---|---|---|
| Kramer admits he has the information requested and should be made to produce same. He improperly objects based on relevance, confidentiality, and a unilateral | Non-party Muscle Beach Nutrition, LLC is a limited liability company, incorporated in California, that sells and | |

belief that any action on behalf of Muscle Beach Nutrition is per se not discoverable.

Kramer's relevance objection is misplaced because relevance is not the standard for discovery. BPI is allowed to take "allow liberal and broad discovery" to seek any facts or information that may reasonably lead to discoverable evidence. The representations made in connection with the product CRTN-3 is central to this case. BPI should be permitted to know Kramer's role in same.

Kramer's confidentiality objection is meritless in view of the protective order.

Finally, Kramer is a defendant in this case because of his individual actions, regardless as to whether those actions were made on behalf of ThermoLife, Muscle Beach Nutrition or himself (the record supports there is no meaningful difference between them). See, e.g., D.E. 64, 74. There mere fact that Muscle Beach Nutrition is not a named Defendant should not absolve Mr. Kramer of compliance with his obligations under the Federal Rules of Civil Procedure, particularly where, as here, discovery is designed to discover facts about Muscle Beach Nutrition and its relationship to the named Defendants (*i.e.*, alter ego issues).

markets CRTN-3.[21] Ron Kramer is a member and manager of Muscle Beach Nutrition, LLC. Plaintiff's interrogatory here seeks information that Kramer knows only because is a member and manager of Muscle Beach Nutrition, LLC. A party may not obtain corporate information by requesting that information in discovery from a corporate officer or employee. *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001) (overturning a magistrate judge's discovery order that required a corporation's president, who was a party to the lawsuit, to produce corporate documents); *see also Schaaf v. SmithKline Beecham Corp.,* 233 F.R.D. 451, 455 (E.D. N. C. 2005) (quashing a subpoena served on a corporate employee that sought production of corporate documents); *see also Estate of Ungar v. Palestinian Authority*, 412 F.Supp.2d 328 (S.D. N.Y. 2006) (same). The proper method for obtaining corporate documents and information from a non-party corporate entity is through a Rule 45 subpoena, not a discovery request served on the corporate president. *See American Maplan Corp. v. Heilmayr,* 203 F.R.D. 499 (D. Kan. 2001). As the Second Circuit Court of Appeals explained in *In re Grand Jury Subpoenas Duces Tecum Dated June*

---

[21] Exhibit 4.

| | | |
|---|---|---|
| *See*, **Exhibit A**, Interrogatories 2, 4, 6-8, 17 and 18.  Information about whether Kramer provides representations to be used for CRTN-3 is discoverable for this purpose. | *13, 1983*, 722 F.2d 981 (2d. Cir. 1983), "A corporation's records are usually available to others within the entity and may not be treated as the private confidential papers of the any one officer or employee. The officer creates or handles the records in a representative capacity, not on his own behalf. The records [] do not belong to him but to the organization." | |
| | Because Plaintiff's interrogatory seeks to compel non-party Muscle Beach Nutrition, LLC's corporate information from Mr. Kramer, its manager and member, the Court should deny BPI's motion.  Critically, Plaintiff has already served a subpoena on Muscle Beach Nutrition, LLC. Through its own counsel, Muscle Beach Nutrition, LLC has produced relevant documents in response to that subpoena.[22] Moreover, Muscle Beach Nutrition, LLC has informed the parties that it will appear for a deposition at a mutually agreeable time, even offering up several dates in early April for this deposition to take place. Thus, Plaintiff is pursuing this information through the proper mechanism, Rule 45, and non-party Muscle Beach Nutrition, LLC has offered to provide this information during a deposition. As a result, there is simply no reason to compel a corporate manager of a | |

---

[22]     Exhibit 5.

|  | company that is not a party in this litigation to produce non-party corporate information here. |  |
|---|---|---|

**Interrogatory No. 8:**

Identify the person(s) responsible for (including the author of) the representation that the Muscle Beach Nutrition product CRTN-3 is a "First-time Fusion of Creatine Nitrate, Creatine Hydrochloride, and Creatine Monohydrate."

**Response:**

Kramer objects to this interrogatory as seeking information that is not relevant to this dispute nor is it likely to lead to the discovery of admissible evidence. There is no claim in this lawsuit against Muscle Beach Nutrition, LLC. Furthermore, while as a member of Muscle Beach Nutrition, LLC Kramer knows this information, this information is confidential information of Muscle Beach Nutrition, LLC which, given its limited or complete lack of relevance to this proceeding, will not be disclosed. BPI's claim against Kramer in this lawsuit alleges that Kramer is personally liable for conduct he undertook while President of ThermoLife International, LLC. Kramer is not alleged to be personally responsible for any conduct that Muscle Beach Nutrition, LLC has engaged in; indeed, Muscle Beach Nutrition, LLC is not a party to this action.

Kramer stands by his objections here and will not produce information in response to this interrogatory.

| **Movant's Position:** | **Respondents' Position:** |  |
|---|---|---|
| Kramer admits he has the information requested and should be made to produce same. He improperly objects based on relevance, confidentiality, and a unilateral belief that any action on behalf of Muscle Beach Nutrition is *per se* not discoverable.<br><br>Kramer's relevance objection is misplaced because relevance is not the standard for discovery. BPI is allowed to take "allow liberal and broad discovery" to seek any facts or information that may | Non-party Muscle Beach Nutrition, LLC is a limited liability company, incorporated in California, that sells and markets CRTN-3.[23] Ron Kramer is a member and manager of Muscle Beach Nutrition, LLC. Plaintiff's interrogatory here seeks information that Kramer knows only because is a member and manager of Muscle Beach Nutrition, LLC. A party may not obtain corporate information by requesting that information in discovery |  |

[23]     Exhibit 4.

reasonably lead to discoverable evidence. Muscle Beach Nutrition's suppliers have discoverable information about the materials in the products and may have information regarding who controlled the labeling and advertising.

Kramer's confidentiality objection is meritless in view of the protective order.

Finally, Kramer is a defendant in this case because of his individual actions, regardless whether those actions were made on behalf of ThermoLife, Muscle Beach Nutrition or himself (the record supports there is no meaningful difference between them). *See*, *e.g.*, D.E. 64, 74. There mere fact that Muscle Beach Nutrition is not a named Defendant should not absolve Mr. Kramer of compliance with his obligations under the Federal Rules of Civil Procedure, particularly where, as here, discovery is designed to discover facts about Muscle Beach Nutrition and its relationship to the named Defendants (*i.e.*, alter ego issues). *See*, **Exhibit A**, Interrogatories 2, 4, 6-8, 17 and 18. Information about whether Kramer authored the statement in question is discoverable for this purpose.

from a corporate officer or employee. *See American Maplan Corp. v. Heilmayr*, 203 F.R.D. 499 (D. Kan. 2001) (overturning a magistrate judge's discovery order that required a corporation's president, who was a party to the lawsuit, to produce corporate documents); *see also Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 455 (E.D. N. C. 2005) (quashing a subpoena served on a corporate employee that sought production of corporate documents); *see also Estate of Ungar v. Palestinian Authority*, 412 F.Supp.2d 328 (S.D. N.Y. 2006) (same). The proper method for obtaining corporate documents and information from a non-party corporate entity is through a Rule 45 subpoena, not a discovery request served on the corporate president. *See American Maplan Corp. v. Heilmayr*, 203 F.R.D. 499 (D. Kan. 2001). As the Second Circuit Court of Appeals explained in *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983*, 722 F.2d 981 (2d. Cir. 1983), "A corporation's records are usually available to others within the entity and may not be treated as the private confidential papers of the any one officer or employee. The officer creates or handles the records in a representative capacity, not on his own behalf. The records [] do not belong to him but to the organization."

|  | Because Plaintiff's interrogatory seeks to compel non-party Muscle Beach Nutrition, LLC's corporate information from Mr. Kramer, its manager and member, the Court should deny BPI's motion.  Critically, Plaintiff has already served a subpoena on Muscle Beach Nutrition, LLC. Through its own counsel, Muscle Beach Nutrition, LLC has produced relevant documents in response to that subpoena.[24] Moreover, Muscle Beach Nutrition, LLC has informed the parties that it will appear for a deposition at a mutually agreeable time, even offering up several dates in early April for this deposition to take place. Thus, Plaintiff is pursuing this information through the proper mechanism, Rule 45, and non-party Muscle Beach Nutrition, LLC has offered to provide this information during a deposition. As a result, there is simply no reason to compel a corporate manager of a company that is not a party in this litigation to produce non-party corporate information here. |  |

---

[24]   Exhibit 5.

Respectfully submitted,

Dated this 27th day of April, 2020.

KRINZMAN, HUSS & LUBETSKY
FELDMAN & HOTTE
Cary A. Lubetsky
Florida Bar No. 961360
Salvatore H. Fasulo
Florida Bar No. 143952

800 Brickell Avenue, Suite 1501
Miami, Florida 33131
Telephone:  (305) 854-9700
Facsimile:  (305) 854-0508
Primary email:   cal@khllaw.com
                       shf@khllaw.com
Secondary email: eservicemia@khllaw.com

HILLYER LEGAL, PLLC

/s/ Gregory L. Hillyer
Gregory L. Hillyer
Fla. Bar No. 682489
Email: ghillyer@hillyerlegal.com
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015-2052
Telephone: 202-686-2884
Facsimile: 202-686-2877

*Attorneys for Plaintiff*

Edward M. Mullins (FBN 863920)
Ana M. Barton (FBN 85721)
Reed Smith LLP
1001 Brickell Bay Drive
9th Floor
Miami, FL 33131
Telephone: 786-747-0200
Facsimile: 786-747-0299
Email: emullins@reedsmith.com
Email: abarton@reedsmith.com

and

/s/ Gregory B. Collins
KERCSMAR & FELTUS PLLC
Gregory B. Collins

E-mail: gbc@kflawaz.com
7150 E. Camelback Road
Suite 285
Scottsdale, AZ 85251
Telephone: (480) 421-1001

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Joint Status Report was filed via CM/ECF on 27th of April, 2020 and served on counsel of record.

/s/ Gregory L. Hillyer