IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BPI SPORTS, LLC,<br><br>      Plaintiff,<br>vs.<br><br>THERMOLIFE INTERNATIONAL, LLC, and RONALD L. KRAMER,<br><br>      Defendants. | **CASE NO.: 0:19-cv-60505** |

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, BPI Sports, LLC ("BPI"), pursuant to Federal Rules of Civil Procedure 56, and Local Rule 56.1, hereby move for partial summary judgment that Defendants have no patent rights in the composition of matter "creatine nitrate," and in support thereof, respectfully refer to the memorandum of law below, and the separate and contemporaneously filed and served Statement of Material Facts, including all exhibits thereto.

### I.   INTRODUCTION

Ten years ago, U.S. Patent No. 7,777,074 ("the '074 Patent") issued containing claims 1 and 2.  Claim 1 covered the composition of matter creatine nitrate.  Over nine years ago, this claim was reexamined in the United States Patent and Trademark Office ("USPTO") based on multiple pieces prior art, one of which is over a century old.  Over six years ago, issued claims 1 and 2 were *cancelled* based on this prior art, which extinguished all rights in these claims.  Although a new claim 6 directed to creatine nitrate was proposed, this claim was deemed unpatentable, was never allowed and never issued (in any patent).  In fact, this new claim was first rejected by the Examiner over eight years ago based on the exact same prior art.  Over the course of the past five years, this new claim 6 to creatine nitrate has been rejected by the Examiner (twice) and the Patent Trial and Appeal Board (twice) based on the original prior art, and another hundred and fifty-year-old reference.  These rejections have since been affirmed by the Federal Circuit for the Court of Appeals based on the same references.  Over ninety years ago, the same 150-year-old reference was reviewed and confirmed in an independent scientific publication.  Over sixty years ago, another publication disclosed creatine nitrate and was later used by the Chemical Abstract Service (CAS) to assign Registry No. 89695-59-0 to the compound.  That was over thirty years ago (1984).

1

Defendants are still representing to consumers, competitors, BPI and this Court that they have patent rights in the composition of matter creatine nitrate because the *original claims* of the '074 Patent are *still valid*. Defendants are even representing that the reexamination of the '074 Patent actually *confirmed its validity*. This incredible position is based on the contention that these cancelled and abandoned claims are somehow entitled to a presumption of validity under 35 U.S.C. § 282 ("A patent shall be presumed valid."). According to Defendants, claims 1 and 2 of the '074 Patent remain valid as long as the '074 Patent reexamination is pending (over nine years so far) until a Certificate of Reexamination issues. Defendants maintain this position knowing it could conceivably continue until the patent expires, despite admitting that original claims 1 and 2 were rejected and permanently cancelled; new claim 6 was rejected and never issued; and any pending claims in the '074 Patent reexamination have nothing to do with creatine nitrate.

Defendants' position, while meritless, has real world consequences. Defendants are falsely advertising their own exclusive rights in creatine nitrate, and the rights of their licensees, on their websites, www.thermolife.com and www.no3-t.com/patents, which hyperlink to the originally issued '074 Patent. Defendants have promoted their New Dietary Ingredient approval by claiming that ThermoLife "invented creatine nitrate." Defendants are sending cease and desist letters to competitors listing the '074 Patent. Defendants are making these representations in a deliberate attempt to hold the industry hostage, shield certain products from competition and perpetuate the myth of a total monopoly. Since a composition of matter claim covers *all uses*, Defendants are precluding other companies from (i) providing creatine nitrate as a raw material; (ii) purchasing or importing creatine nitrate from sources other than ThermoLife; and/or (iii) using, offering for sale or selling creatine nitrate for *any purpose*. Defendants are also using this false premise to deflect BPI's claims, confront deposition witnesses and avoid discovery on various causes of action.

Defendants' positions are frivolous on their face. First, the presumption of validity is a procedural device for litigation and does not apply to reexamination proceedings at all. Second, previously issued claims that are cancelled based on prior art rejections (such as claims 1 and 2) are not viable, are not enforceable and are no longer entitled to a presumption of validity. Third, a new claim that was first introduced in a reexamination (and thrice rejected) is not a "claim of a patent" because it never issued and therefore was *never* entitled to any presumption of validity. Notwithstanding the fact that the ruling of the Court of Appeals for the Federal Circuit (the highest patent court) precludes a composition of matter claim to creatine nitrate in *any patent*, Defendants

continue to represent to this Court that they still have exclusive rights in a century old compound. Since such a position amounts to a bad faith assertion of a knowingly invalid patent, BPI is entitled to partial summary judgment on this issue.

## II.     FACTUAL BACKGROUND

### A.  The Relevant Causes of Action In The First Amended Complaint

The First Amended Complaint ("FAC") alleges that Defendants are engaged in false advertising, unfair competition and false patent marking based on representations that the '074 Patent confers patents rights in the composition of matter "creatine nitrate." Statement of Material Facts ("SMF"), ¶1. The FAC alleges that ThermoLife's exclusive right to creatine nitrate by virtue of claim 1 of the '074 Patent was short-lived. SMF, ¶2, 3. The FAC alleges that claim 1 in the originally issued '074 Patent was the subject of multiple reexaminations during which it was rendered invalid. SMF, ¶3. The FAC concludes that "ThermoLife does not own a claim to the species creatine nitrate and any claims by ThermoLife or Kramer to the contrary, either expressly or implicitly, are false, unfair and misleading." SMF, ¶4. All of these allegations are incorporated by reference into Count I (false advertising), Count II (unfair competition) and Count VI (false patent marking) ("This includes, but is not limited to, conveying the false message that the specific creatine nitrate is subject to a composition of matter patent claim, which it is not."). SMF, ¶¶1-4.

### B.  The False Advertising, Unfair Competition and False Marking of the '074 Patent

Defendants maintain, operate and control the content of the website www.thermolife.com ("ThermoLife Website"). SMF, ¶5. The ThermoLife Website contains the banner "PATENTED NITRATE TECHNOLOGY." SMF, ¶6. The ThermoLife Website touts "19 Nitrate Related Patents," "More Than 450 Valid Claims" and "Patent Coverage in 26 Countries." SMF, ¶7. Under the phrase "PATENTED NITRATE TECHNOLOGY" the ThermoLife Website displays the commercial product creatine nitrate for license and sale. SMF, ¶¶8-11. The ThermoLife Website represents that "[i]f you are interested in making a dietary supplement with nitrates in it, there is a very good chance your intended use or composition is covered by one or more of the 450 valid claims in our patent portfolio, so make sure to speak with us about a license." SMF, ¶9. The ThermoLife Website represents that "[w]e are the only legitimate source for patented and license amino acids nitrates." SMF, ¶10. The ThermoLife Website contains the statement "[s]peak with us about licensing, custom formulation, and *exclusive compounds*." SMF, ¶11 (emphasis added).

The trademark "NO3-T" appears on ThermoLife's Website. SMF, ¶12. ThermoLife owns

3

Federal Trademark Registration No. 4,732,470 for "NO3-T." SMF, ¶13. The "NO3-T" trademark on ThermoLife's Website appears in a graphic above the words "NITRATE TECHNOLOGY" and the internet web address NO3-T.com/patents. SMF, ¶14. ThermoLife's Website contains a separate hyperlink www.NO3-T.com which takes the user to the site www.no3-t.com/patents/ ("ThermoLife's Marking Website"). SMF, ¶15. Since at least March 15, 2015, ThermoLife's Marking Website contained the phrase "NO3T NITRATETECHNOLOGY." SMF, ¶16.

Since at least March 15, 2015, ThermoLife's Marking Website has listed the '074 Patent. SMF, ¶17. Over this time, it has operated as an active hyperlink to the previously issued patent as it appears on the United States Patent and Trademark Office website, www.uspto.gov. SMF, ¶18. For at least the four-year period between March 2015 and April 2019, ThermoLife's Marking Website indicated that the "NO3-T logo protects these patents: 7,777,074, 8,034,836, 8,048,921, 8,178,572, 8,183,288, 8,455,531, 8,466,187, 8,569,368, 8,569,369, 8,952,045, 8,952,046, 8,952,047, 8,957,100 and 8,957,101" (collectively, "ThermoLife Patents"). SMF, ¶19.[1] The '074 Patent still appears on ThermoLife's Marking Website at the time of this filing. SMF, ¶52.

### C. Claims 1 and 2 of the '074 Patent Are Cancelled, Invalid and Unenforceable

The '074 Patent issued on August 17, 2010. SMF, ¶21. As originally issued, claims 1 and 2 of the '074 Patent recited:

> 1. An Amino Acid Compound consisting essentially of a nitrate or nitrite of an Amino Acid selected from the group consisting of Arginine, Beta Alanine, Agmatine, Citrulline, Creatine, Glutamine, L-Histidine, Isoleucine, Leucine, Norvaline, or Ornithine.
>
> 2. The Amino Acid Compound of claim 1 wherein the Amino Acid is Arginine.

SMF, ¶22. Thus, originally issued claim 1 covered a composition of matter of creatine nitrate, which covers all uses of the compound.[2] SMF, ¶23. Claim 2 is irrelevant to creatine nitrate. *Id*.

On or about December 17, 2010, a petition under 37 C.F.R. § 1.510 for *ex parte*

---

[1] Aside from the '074 Patent, BPI's false advertising, unfair competition and false marking allegations are also directed to the fact that other ThermoLife Patents listed on ThermoLife's Marking Website do not contain any claims that encompass creatine nitrate, including U.S. Patent Nos. 8,034,836, 8,048,921, 8,569,368, 8,569,369, 8,952,045, 8,952,047 and 8,957,100. SMF, ¶20.

[2] A claim reciting a composition of matter covers all uses of the compound "regardless of what environment the compositions were used in." *EmeraChem Holdings, LLC v. Volkswagen Group of America, Inc. United States*, 2017714 Fed.Appx. 995, 998 (citing *In re Spada*, 911 F.2d 705, 708 (Fed. Cir. 1990)).

reexamination of claims 1 and 2 of the '074 Patent was filed based on a "substantial new question of patentability" ("SNQ") raised by the prior art: Ramaswamy, et al., *J Raman Spectrosc*. 34:50-56 (2003) ("the Ramaswamy Reference"), Rajkumar, et al., *J. Raman Spectrosc*. 31:1107-112 (2000) ("the Rajkumar Reference"); Petrosyan et al., *J. Molecular Structure* 794:160-167 (2006) ("Petrosyan Reference"); and McCoy, U.S. Patent No. 4,379,177 ("the McCoy Reference"). SMF, ¶24. The first petition for reexamination of the '074 Patent was assigned U.S. Serial No. 90/011,394 ("the '394 Reexamination) and reexamination based on a substantial new question of patentability was ordered under 37 C.F.R. § 1.515[3] on January 25, 2011. SMF, ¶25.

On or about August 18, 2011, a second petition under 37 C.F.R. § 1.510 for *ex parte* reexamination of claim 1 of the '074 Patent was filed based on a substantial new question of patentability raised by the prior art: Barger. G. (1914), The Simpler Natural Bases, Monographs on Biochemistry (pp. 157-163), Longmans, Green & Co. ("the Barger Reference"). SMF, ¶26. The second petition for reexamination of the '074 Patent was assigned U.S. Serial No. 90/011,869 ("the '869 Reexamination") and reexamination based on a substantial new question of patentability was ordered under 37 C.F.R. § 1.515 on October 7, 2011. SMF, ¶27.

On July 21, 2011, the Examiner in the '394 Reexamination issued an Office Action rejecting claims 1 and 2 as being anticipated under 35 U.S.C. § 102[4] in view of the Ramaswamy Reference; rejecting claim 1 under 35 U.S.C. § 102 in view of the Rajkumar Reference; rejecting claim 1 under 35 U.S.C. § 102 in view of the Petrosyan Reference; and rejecting claim 1 under 35 U.S.C. § 103 in view of the McCoy Reference taken in view of the Rajkumar Reference. SMF, ¶28. ***In response to this prior art rejection*, ThermoLife substantially amended issued claim 1 to remove creatine nitrate** and recite only the mononitrate of arginine (as shown below wherein underlined text is added and bracketed text is deleted):

---

[3] "Within three months following the filing date of a request for an *ex parte* reexamination, an examiner will consider the request and determine whether or not a substantial new question of patentability affecting any claim of the patent is raised by the request and the prior art cited therein, with or without consideration of other patents or printed publications."

[4] Anticipation under 35 U.S.C. § 102 considers whether a single reference describes the claimed invention "with sufficient precision and detail to establish that the subject matter existed in the prior art." *Wasica Finannce GmNH v. Continental Automotive Sys., Inc.*, 853 F.3d 1272, 1284 (Fed. Cir. 2017) (quoting *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002); see also In re Hyatt, 211 F.3d 1367, 1371 (Fed. Cir. 2000).

1. (Amended) An Amino Acid Compound consisting essentially of a mononitrate or nitrite of [an Amino acid selected from the group consisting of] Arginine [, Beta Alanine, Agmatine, Citrulline, Creatine, Glutamine, L-Histidine, Isoleucine, Leucine, Norvaline, or Ornithine].

SMF, ¶29. ThermoLife also *cancelled claim 2* and added new claims 3-10 which recited "An Amino Acid Compound consisting essentially of a nitrate or nitrite of" Beta Alanine (claim 3), Agmatine (claim 4), Citrulline (claim 5), Creatine (claim 6), Glutamine (claim 7), Isoleucine (claim 8), Norvaline (claim 9) and Ornithine (claim 10). SMF, ¶30.

On March 30, 2012, the '394 Reexamination was merged with the '869 Reexamination (collectively, "the Merged '074 Reexamination"). SMF, ¶31. On June 26, 2012, the Examiner in the Merged '074 Reexamination issued an Office Action rejecting amended claim 1 under 35 U.S.C. § 112, first paragraph, and rejecting new claim 6 under 35 U.S.C. § 102 as being anticipated by the Barger Reference. SMF, ¶32. In response, *on November 12, 2013*, *ThermoLife permanently cancelled amended claim 1*. SMF, ¶33. ThermoLife also added structures in place of the amino acid names recited in claims 3-10, with claim 6 (below) being exemplary for creatine:

6. A Compound having the structure of:

[Structure of creatine with substituents H$_2$N, CH$_3$, N, NH, and carboxyl group OH · Y]

wherein Y is selected from the group consisting of a Nitrate and a Nitrite

SMF, ¶34. On April 2, 2014, new claim 6 (above) was rejected in a final Office Action under 35 U.S.C. § 102 as being anticipated by the Barger Reference. SMF, ¶35.

On February 1, 2016, the Patent Trial and Appeals Board ("PTAB") affirmed the Examiner's rejection of Claim 6 ("Board Decision I"). SMF, ¶36. Board Decision I further cited a Google Books search conducted by the PTAB for the compound creatine nitrate which identified several new references, including: M. Dessaignes, "Scientific and Medicinal Chemistry: Examination of some Products of the Transformation of Creatine," 12(279), The Chemical Gazette or Journal of Practical Chemistry, 201-204 (June 1, 1854) ("the Dessaignes Reference"); and L. Gmelin, "Creatine," Handbook of Chemistry, Vol. 10: Organic Compounds Containing Eight and Ten Atom of Carbon, 249-255, Henry Watts, trs., Harrison and Sons for the Cavendish Society, London (1856) ("the Gmelin Reference"). SMF, ¶37. Accordingly, Board Decision I cited new

6

grounds of rejection of Claim 6, including (1) rejection of Claim 6 under 35 U.S.C. § 102 as anticipated by the Barger Reference as evidenced by the Dessaignes and Gmelin References; and (2) rejection of Claim 6 under 35 U.S.C. § 102 as anticipated by the Dessaignes Reference or the Gmelin Reference.  SMF, ¶38.

Following Board Decision I, ThermoLife elected to reopen prosecution of the '074 Patent, but ultimately appealed the Examiner's final rejection of Claim 6 to the PTAB.  SMF, ¶39.  On May 21, 2018, the PTAB affirmed (1) the rejection of Claim 6 under 35 U.S.C. § 102 as anticipated by the Barger Reference as evidenced by the Dessaignes and Gmelin References; and (2) the rejection of Claim 6 under 35 U.S.C. § 102 as anticipated by the Desssignes Reference or the Gmelin Reference ("Board Decision II").  SMF, ¶40.

On January 10, 2020, the Court of Appeals for the Federal Circuit affirmed Board Decision II finding that claim 6 is anticipated under 35 U.S.C. § 102.  SMF, ¶41.  On March 13, 2020, the Court of Appeals for the Federal Circuit denied ThermoLife's petition for panel rehearing and rehearing *en banc*.  SMF, ¶42.  On March 20, 2020, the Court of Appeals for the Federal Circuit issued a Mandate pursuant to Rule 41 of the Federal Rules of Appellate Procedure.  SMF, ¶43.

**D.  Several Other References Teach The Composition of Matter Creatine Nitrate**

While ThermoLife was representing to the Court of Appeals for the Federal Circuit that "no one since the dawn of modern chemistry had even attempted to make something like creatine nitrate," the 1928 textbook by A. Hunter, entitled *Creatine and Creatinine* ("the Hunter Reference"), disclosed creatine nitrate as well as aspects that ThermoLife claimed the Dessaignes Reference inadequately reported, including: (i) the name creatine nitrate; (ii) the correct alternative name "methyl guanidine acetic acid"; (iii) the correct structure; (iv) the correct molecular weight; (v) the correct salt relationship: $C_4H_9O_2N_3$ $HNO_3$; and (vi) the synthesis of evaporating a mixture of creatine with one equivalent of nitric acid.  SMF, ¶¶44, 45.  The FAC brought the Hunter Reference to Defendants' attention in April, 2019.  SMF, ¶45.

In 1961, a scientific publication by N.R. Dhar, entitled *Complex Compounds of Acid, Base and Salt with Nitrogenous and Other Organic Substances*, Proc. Natl. Acad. Sci., India 31A, Pt. 1, 74-7 (1961) ("the Dhar Reference"), disclosed creatine nitrate synthesized by reacting creatine with nitric acid to form a stable complex.  SMF, ¶46.  In 1962, an abstract of the Dhar Reference

7

was published by Chemical Abstract Services ("CAS")[5] in Volume 56. SMF, ¶47. In 1966, CAS published the 7th Collective Index corresponding to Volume Numbers V56-V65 which disclosed creatine with HNO3 (1:1) based on the Dhar Reference. SMF, ¶48. In 1984, CAS assigned creatine nitrate Registry Number 89695-59-0. SMF, ¶49. The FAC brought the CAS Registry Number for creatine nitrate to Defendants' attention in April, 2019. SMF, ¶¶46-49.

### E. Defendants Maintain A False Premise That Claim 1 Of The '074 Patent Is Valid

As of the date of this filing, Defendants still list the commercial product creatine nitrate on the ThermoLife Website, which hyperlinks to ThermoLife Marking Website, which lists the '074 Patent, which hyperlinks to the originally issued '074 Patent. SMF, ¶¶51-52. Defendants have continued their activities and maintained their position that the issued claims of the '074 Patent are still valid after: (1) the substantial, substantive amendment was made to claim 1 during reexamination to overcome a prior art rejection (SMF, ¶¶29, 53); (2) the permanent cancellation of claim 1 and 2 (SMF, ¶¶30, 33, 53); (3) the PTAB confirmed the cancellation of all original claims and affirmed the rejection of new claim 6 (SMF, ¶¶36-40, 54); (4) the Court of Appeals for the Federal Circuit affirmed the rejection of new claim 6 based on prior art, denied a panel rehearing, denied a rehearing *en banc* and issued a Mandate under Rule 41 (SMF, ¶¶41-43, 55); (5) Defendants were advised of the Hunter Reference (SMF, ¶¶45, 56); and (6) Defendants were advised that CAS assigned a Registry Number over thirty years ago (SMF, ¶¶48, 57).

#### 1. Defendants Are Using A False Premise To Challenge BPI In Depositions

On April 24, 2020, during the deposition of BPI's corporate representative, Derek Ettinger (a non-patent attorney), the witness was asked if the '074 patent is valid and whether it would surprise him to learn that "legally all claims of ThermoLife '074 patent are still valid" until a reexamination certificate issues. SMF, ¶¶58-60. After setting up this false premise, the witness was asked why BPI sued ThermoLife when the reexam of the '074 patent is still pending. SMF, ¶¶61-62. Defense counsel went so far as to threaten the witness with BPI having to pay attorneys' fees based on BPI's incorrect positions. SMF, ¶63. The witness was then shown a document that he had never seen before (an office action) which defense counsel represented was "a document

---

[5] Chemical Abstracts Service (a division of the American Chemical Society) is a periodical that provides summaries, indexes and structures of compounds in published scientific documents, including approximately 8,000 journals, technical reports, dissertations, conference proceedings, and new books. One of the principal databases is the Registry which contains information on more than 130 million organic and inorganic substances (including creatine nitrate). SMF, ¶¶48, 49.

created in the reexamination of the '074 Patent." SMF, ¶64. The document confirmed that issued claims 1 and 2 were *cancelled* and claim 6 was *rejected*. SMF, ¶65. The witness was asked to confirm that claims 3 through 5 and 7 through 10 are "confirmed" without even being shown the actual claims. SMF, ¶65. As noted above, claims 3-5 recite the irrelevant amino acids beta alanine, agmatine and citrulline, respectively; claims 7 through 10 recite the irrelevant amino acids glutamine, isoleucine, norvaline and ornithine, respectively. SMF, ¶¶30, 34.

### 2. Defendants Are Using A False Premise To Avoid BPI's Discovery

On April 27, 2020, the parties filed a Joint Status Report (ordered by Magistrate Judge Valle on April 22, 2020 [D.E. 72]) in connection a Motion to Compel filed by BPI. SMF, ¶66. In the Joint Status Report, Defendants admit that the Court of Appeals for the Federal Circuit rendered a final decision that claim 6 of the '074 Patent is invalid, but disingenuously represent that "[t]he '074 Patent is still valid." SMF, ¶¶67-68. Defendants further allege that until the reexamination of the '074 Patent concludes, the originally issued '074 Patent as it appears in the hyperlink to the USPTO on ThermoLife's Marking Website, including claims 1 and 2, are "still valid under the law." SMF, ¶69. According to Defendants, the very fact that the USPTO's website still displays the '074 Patent is evidence in and of itself that the United States considers the patent valid, despite knowing that in *ThermoLife International, LLC v. Better Body Sports, LLC, et al.*, Case No. 2:12-cv-09229 (C.D. Cal 2013), ThermoLife's U.S. Patent No. 8,202,908 was invalidated, yet the text of the patent still remains on the website. SMF, ¶¶70-71. Defendants allege that even after the reexamination certificate issues, the '074 Patent will still be valid because the validity of the majority of the claims in the '074 Patent were not at issue before the Court of Appeals for the Federal Circuit. SMF, ¶72. This argument is non-sensical since even if new claims issue, the *original claims* can *never be valid*.

To make matters worse, on April 30, 2020, in further support of its opposition to BPI's Motion to Compel, selected portions of the deposition of Derek Ettinger—including those referred to in Section E(1) above—were filed with the Court in Defendants' Notice of Filing Limited Portions of Deposition Transcript in Support of Joint Status Report [D.E. 77] ("Notice of Filing Deposition"). SMF, ¶73. On May 1, 2020, BPI responded to Defendants' Notice of Filing Deposition by pointing out that since claim 1 of the originally issued '074 Patent was canceled by ThermoLife in 2013—and since the Federal Circuit ruled that creatine nitrate has been in the prior art for over a hundred and fifty years (since 1854)—the notion that ThermoLife could accurately

9

advertise exclusive rights to this compound in 2015, much less based on the alleged allowability of irrelevant and non-issued claims to other amino acids, is preposterous. SMF, ¶74.

On May 1, 2020, following BPI's response to Defendants' Notice of Filing Deposition, lead counsel for Defendants, Gregory Collins, sent an email to lead counsel for BPI, Gregory Hillyer ("Collins Email"). SMF, ¶75. The Collins Email alleges that "[a]lthough the '074 patent was amended in the patent re-examination proceeding, the law is clear that the patent is presumed valid, as it existed pre re-examination, unless and until the re-examination certificate issues." SMF, ¶76. On May 4, 2020, Defendants filed a Reply in Support of Notice of Filing Deposition, attaching the Collins Email. SMF, ¶¶78-79. Once again, Defendants admit that "claim 1 of originally issued '074 Patent was canceled by ThermoLife in 2013." SMF, ¶80. Nevertheless, Defendants again argue in the Reply in Support of Notice of Filing that because the reexamination of the '074 Patent is still pending, the '074 Patent (as it appears in the hyperlink to the USPTO on ThermoLife's Marking Website) is valid under the law. SMF, ¶81.

### 3. Defendants Are Falsely Promoting Rights In Creatine Nitrate Despite Conceding That Products Cannot Be Lawfully Marked With '074 Patent

Defendants have been selling creatine nitrate as a commercial product since at least January 1, 2013. SMF, ¶82. Defendants have been licensing the '074 Patent since at least January 1, 2013. SMF, ¶83. Defendants have been requiring licensees to use "NO3-T" on products containing creatine nitrate since at least January 15, 2015. SMF, ¶84. The use of ThermoLife's trademark "NO3-T" by licensees is intended to be associated with the ThermoLife Marking Website. SMF, ¶85. Defendants, directly (on the ThermoLife Website) and indirectly (through the use of "NO3-T" by their licensees) have been falsely marking creatine nitrate with the '074 Patent through the ThermoLife Marking Website since at least March 2015. SMF, ¶¶5-19, 82-85.

On August 17, 2017, ThermoLife issued a press release announcing a successful new dietary ingredient ("NDI") notification from the Food and Drug Administration for creatine nitrate ("CreN"). SMF, ¶86. In this press release ThermoLife claimed that creatine nitrate was "[i]nvented by ThermoLife." SMF, ¶87. Kramer, on behalf of ThermoLife, referenced "ThermoLife's patented CreN." SMF, ¶88. Throughout 2019, counsel of record, Gregory Collins, on behalf of ThermoLife, has been sending letters to competitors identifying the '074 Patent, indicating that because it has undergone reexamination before the USPTO the validity of the claims has been underscored and citing "direct infringement of ThermoLife's patents." SMF, ¶89.

Following the filing of the FAC in April 2019, in which Defendants were accused of false

10

patent marking, Defendants attempted to remove certain irrelevant patents on the ThermoLife Patent Marking Website by listing certain patents associated with licensed products. SMF, ¶90. From at least between May 2019 to December 2019, ThermoLife's Marking Website listed the '074 Patent adjacent to the "Cellucor" line of products containing creatine nitrate, including C4 Original, C4 Ultimate, C4 Extreme Energy, M5 Ultimate and CN3. SMF, ¶91. Sometime after March 25, 2020, Defendants removed all references to the '074 Patent next to the Cellucor line of products on ThermoLife's Marking Website. SMF, ¶92. Not only does this stand as an admission that these creatine nitrate products were falsely marked with the '074 Patent, but a likely reason is because neither Defendants, nor the makers of Cellucor products, actually believe the '074 Patent still covers creatine nitrate or that claims 1 or 2 could ever be "valid" under the circumstances.

## III. LEGAL AUTHORITY

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "[T]he mere existence of some alleged factual dispute…will not defeat an otherwise properly supported motion[.] [T]he requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis added). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. An issue is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id*. at 249–50. The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's position. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986)).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). Once the moving party has adequately supported its motion, the non-movant must come forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Steifel Laboratories, Inc*.

11

*v. Brookstone Pharmaceuticals, LLC*, 2012 WL 12888436, at *11 (N.D. Ga. July 24, 2012) (citing *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011)).

## IV. ARGUMENT

BPI seeks a final determination that Defendants have no rights in the composition of matter creatine nitrate in the '074 Patent to reconcile their behavior with the reality of the reexamination, remove their obstruction of BPI's discovery, and put a stop to their anti-competitive behavior. Since at least 2013, Defendants have been selling advertising creatine nitrate, licensing creatine nitrate and marking creatine nitrate under the auspice of exclusivity based on the '074 Patent. SMF, ¶¶5-19, 82-89. Although the originally issued claims 1 and 2 of the '074 Patent were briefly presumed valid under 35 U.S.C. § 282, "this presumption is based in part on the expertise of patent examiners presumed to have done their job." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574 (Fed. Cir. 1992) (citing *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359 (Fed. Cir.), *cert. denied,* 469 U.S. 821 (1984) ("Behind it all, of course, was the basic proposition that a government agency such as the then Patent Office was presumed to do its job")); *see also*, *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1139 (Fed. Cir. 1985).

Importantly, "[t]he presumption of validity under § 282 is a procedural device, placing the burden of proving invalidity on the party asserting it. ***It is not substantive law***." *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1534 (Fed. Cir. 1983) (emphasis added). The presumption "governs procedure in *litigation* involving validity of an *issued* patent." *In re Etter*, 756 F.2d 852, 857-58 (Fed. Cir. 1985) (citing *Stratoflex* at 1534) (emphasis in original). "[M]uch confusion can be avoided by patentees who refrain from efforts to expand the role of the presumption beyond its burden-assigning and decisional approach-governing function." *Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1459 (Fed. Cir. 1984).

### A. The Presumption of Validity Does Not Apply When There Is A Substantial New Question of Patentability

The tenuous validity of claims 1 and 2 in the issued '074 Patent were challenged through a request for *ex parte* reexamination a mere four (4) months after the patent issued. SMF, ¶24-25. A second petition for reexamination followed shortly thereafter. SMF, ¶¶26-27. Both petitions were granted by the USPTO based on "substantial new questions of patentability" (SNQ). 35 U.S.C. § 305; 37 C.F.R. § 1.515; SMF ¶¶24-27.

"*Ex parte* reexamination is a curative proceeding meant to correct or eliminate erroneously granted patents." *Fresenius USA, Inc. v. Baxter Intern., Inc.*, 721 F.3d 1330, 1338 (Fed. Cir. 2013)

(citing *In re Etter*, 756 F.2d 852, 857-58 (Fed. Cir. 1985)). "The innate function of the reexamination process is to increase the reliability of the PTO's action in issuing a patent by reexamination of patents thought 'doubtful.'" *Etter* at 857 (citations omitted); *Fresenius* at 1379 (quoting *Etter*). "In a very real sense, the intent underlying reexamination is to 'start over.'" *Id.*

Thus, once the reexaminations of the '074 Patent were granted, the presumption of validity under 35 U.S.C. § 282 ceased to apply. According to the Court of Appeals for the Federal Circuit, "[r]eview of the statutes, legislative history, regulations, and case law compels the view that § 282 is not applicable to claims about which 'a substantial new question of patentability,' 35 U.S.C. § 305, is under consideration in a reexamination proceeding." *Etter* at 856, 859 ("We hold, therefore, that § 282 has no application in reexamination proceedings.").

More recently, the Federal Circuit reiterated that the presumption of validity based on the assumption that the administrative agency properly performed its function is inapplicable once an *ex parte* reexamination is instituted.

> When the Patent Office institutes *ex parte* reexamination, it reopens prosecution to determine whether the claimed subject matter should have been allowed in the first place. At that point, there is no need to presume that the Patent Office had "done its job" in the previous examination. ***Accordingly, the presumption of validity is no longer applicable***.

*Dome Patent L.P. v. Lee*, 799 F.3d 1372, 1379 (2015) (emphasis added).

### B. All Rights In Claims 1 and 2 Were Extinguished When They Were Cancelled

Following the rejections of claims 1 and 2 under 35 U.S.C. § 102 in view of four ***prior art references***, ThermoLife cancelled claim 2 and amended claim 1 to remove creatine nitrate:

| Original Claim 1 | Amended Claim 1 |
|---|---|
| 1. An Amino Acid Compound consisting essentially of a nitrate or nitrite of an Amino acid selected from the group consisting of Arginine, Beta Alanine, Agmatine, Citrulline, Creatine, Glutamin, L-Histidine, Isoleucine, Leucine, Norvaline or Ornithine | 1. An Amino Acid Compound consisting essentially of a mononitrate or nitrite of Arginine |

SMF ¶¶24-27. Amended claim 1 was thereafter rejected under 35 U.S.C. § 112, first paragraph, after which ThermoLife ***cancelled claim 1 altogether***. SMF ¶¶32-33. Accordingly, to the extent ThermoLife even had any valid rights in claim 1 and 2 after the initiation of the reexamination (presumptively or otherwise), those rights were eliminated when these claims were cancelled.

Common sense dictates that once a previously issued claim is cancelled to avoid invalidity

based on prior art, it ceases to exist, is no longer in force, and becomes a legal nullity. Such a claim cannot be considered "valid" by *any* standard and to argue otherwise amounts to bad faith.

As noted above, 35 U.S.C. § 282 is a *procedural* rule for purposes of *litigation* involving the validity of an *issued* patent. *In re Etter*, 756 F.2d at 857-58. Although "the language and legislative history of the reexamination statute show that Congress expected reexamination to take place concurrent with litigation"…"cancellation of claims during reexamination would be binding in concurrent infringement litigation." *Fresenius*, 721 F.3d at 1339-1340 ("if the patentee's claims were canceled in the reexamination, it would eliminate the need to try the infringement issue") (citing *Slip Track Systems, Inc. v. Metal Lite, Inc.*, 159 F.3d 1337 (Fed. Cir. 1998) (where cancellation of claims during a reexamination precluded maintenance of a stayed interference suit involving the same claims)). Indeed, "*Fresenius* makes clear that 'when a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot.'" *SHFL Entertainment, Inc. v. DigiDeal Corporation*, 729 Fed.Appx. 931, 934 (2018) (citing *Fresenius* at 1340); *see also Target Training Intern., Ltd. v. Extended Disc North America, Inc.*, 645 Fed. Appx. 1018, 1023 (Fed. Cir. 2016) (same).

ThermoLife's position that cancelled claims not only exist but are still considered valid until a reexamination certificate issues elevates procedural form over substantive law. *Fresenius* at 1340 (citing *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("[o]ne purpose of the reexamination procedure is to eliminate trial of that issue (***when the claim is cancelled***)") (emphasis added). Regardless of the posture, "if the original claim is cancelled or amended to cure invalidity, the patentee's cause of action is extinguished and the suit fails." *Id*.

### C. There Was Never Any Presumption of Validity Associated With New Claim 6

The same amendment which narrowed claim 1 and cancelled claim 2, added ***new*** claim 6 reciting "An Amino Acid Compound consisting essentially of a nitrate or nitrite of Creatine." SMF, ¶30. This claim was immediately rejected by the Examiner under 35 U.S.C. § 102 in view of the prior art Barger Reference. SMF ¶32. In response, ThermoLife introduced "new" (amended) claim 6 wherein "an amino acid compound consisting essentially of" was modified to "a compound having the structure of" and the name of creatine nitrate was essentially replaced by the structure of the salt. SMF ¶34. This claim was likewise rejected by the Examiner (twice), by the PTAB (twice) and finally by the Court of Appeals for the Federal Circuit. SMF ¶¶35-43.

A claim is only entitled to a presumption of validity when it appears in an issued "patent."

14

35 U.S.C. § 282. Obviously, neither iteration of claim 6 appeared or existed in the originally issued '074 Patent. To the contrary, these claims were merely proposed, but were rejected, never allowed and therefore never issued in *any patent*. SMF ¶¶32, 35-43. Since the Court of Appeals for the Federal Circuit not only rejected specific claim 6, but also ruled that the Dessaignes Reference expressly disclosed creatine nitrate in the prior art (over a hundred years ago), there are no circumstances under which this composition of matter can be patented.

### D. Defendants' Meritless Validity Arguments Are Causing Prejudice to BPI

In an effort to defend against BPI's false advertising, unfair competition and false marking allegations, Defendants are arguing against all odds that until the reexamination proceedings are complete, and a reexamination certificate issues, original claim 1 of the '074 Patent is entitled to a presumption of validity. SMF ¶¶67-70, 78-81. To the detriment of BPI, Defendants are using this meritless argument to dupe non-patent attorney witnesses during deposition and avoid discovery propounded by BPI. SMF ¶¶58-65, 67-70, 78-81.

Not only are Defendants' baseless validity arguments impeding BPI's efforts to advance its claims, if this argument is not put to rest, Defendants will continue alleging the validity of this patent (against BPI and others), avoiding false patent marking challenges and continuing to assert claim 1 against "infringers." SMF, ¶¶86-89. Indeed, Defendants, through counsel of record Mr. Collins, continue to send cease and desist letters to competitors in the industry citing the '074 Patent and perpetuating the blatant falsehood that the reexamination has *underscored its validity*. SMF, ¶89. Without court intervention, Defendants could conceivably travel under this twisted logic until the '074 Patent *expires* so long as the reexamination is still technically "pending." Meanwhile, Defendants will be holding the proverbial "Sword of Damocles" over the entire dietary supplement industry through an erroneous interpretation of § 282, despite the fact that any attempt to actually *enforce* claim 1 of the '074 Patent in any litigation would be void *ab initio*.

Another frivolous argument that Defendants are advancing is that even after the reexamination certificate issues, the '074 Patent will be valid because the validity of the majority of the claims in the '074 Patent were not at issue before the Court of Appeals for the Federal Circuit. SMF ¶72. However, a reexamination is performed on a claim-by-claim basis, so the contention that the '074 Patent will be valid "as a whole," or to *some degree based on new, irrelevant claims*, is a mischaracterization, at best, and has no bearing on Defendants' rights in creatine nitrate. The only circumstances under which a reexamined patent containing amended or

15

new claims does not automatically moot a pending action against an accused infringer is if the amended or new claims are "substantially identical" to the original claims. *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) ("Unless a claim *granted or confirmed upon reexamination* is identical to an original claim, the patent cannot be enforced against infringing activity that occurred before issuance of the reexamination certificate.") (emphasis added). There is no need to consider whether claim 6 is "substantially identical" to issued claims 1 or 2 (it is not) because it was rejected, never allowed, never issued and never will. SMF ¶¶32, 35-43.

The only claims still pending are claims 3-5 and 7-10 reciting "A Compound having the structure of" **Beta Alanine** [structure] • Y wherein Y is selected from the group consisting of a Nitrate and a Nitrite (claim 3); **Agmatine** [structure] • Y wherein Y is selected from the group consisting of a Nitrate and a Nitrite (claim 4); **Citrulline** [structure] • Y wherein Y is selected from the group consisting of a Nitrate and a Nitrite (claim 5); **Glutamine** [structure] • Y wherein Y is selected from the group consisting of a Nitrate and a Nitrite (claim 7); **Isoleucine** [structure] • Y wherein Y is selected from the group consisting of a Nitrate and a Nitrite (claim 8); **Norvaline** [structure] • Y wherein Y is selected from the group consisting of a Nitrate and a Nitrite (claim 9); and **Ornithine** [structure] (claim 10). SMF ¶¶30 and 34. None of these claims are "substantially identical" to previously issued claim 1 because (i) claim 1 recited the transitional phrase "consisting essentially of"; (ii) claim 1 contained a Markush group reciting multiple amino acids (including creatine); and (iii) each of these claims recite individual amino acids that are chemically different from creatine. Axiomatically, if any of these claims were the "substantially identical" to original claim 1, they would be unpatentable based on the same prior art that anticipated claim 1.

The allegations advanced in the Collins Email are equally misplaced. There, Mr. Collins cites the unreported decision in *Monster Energy Comp. v. Vital Pharmaceuticals, Inc.*, 2019 WL 2619666 (C. D. Cal. May 20, 2019), contending that "[a]lthough the '074 patent was amended in the patent re-examination proceeding, the law is clear that the patent is presumed valid, as it existed pre re-examination, unless and until the re-examination certificate issues." SMF, ¶¶75-76. *Monster Energy* does not stand for this proposition, nor does the case advance Defendants' cause.

*Monster Energy* is a district court decision, not a ruling from the Court of Appeals for the Federal Circuit. Glaringly, the court's conclusion that the patent at issue, U.S. Patent No. 8,445,466 ("the '446 Patent"), remained valid because the reexamination proceedings had not concluded was based entirely on plaintiff Monster's concession on the issue, nothing more. *Id*. at

16

*14. The court cites no legal authority whatsoever, not even the statutory provision of § 282, much less address the mountain of appellate law cited herein. An analysis of the decision also reveals critical differences compared to the situation presented by the '074 Patent. The '446 Patent reexamination was still addressing the rejection of the original claims (albeit amended), not ones that were permanently cancelled based on prior art. *Id*. at *3. Thus, the Court of Appeals for the Federal Circuit could still come to a different decision regarding patentability of the claims of the '446 Patent and some amended version of the original claims could still issue (which in turn would require comparison to the original claims to determine if they are substantially identical). *Bloom*, 129 F.3d at 1250. That is not the case here. Claim 1 was cancelled and adjudicated to be invalid.

To the extent *Monster Energy* stands for the proposition that a patentee can continue advertising, enforcing and marking products with a patent based on an original claim that has been cancelled by the patentee in reexamination based on anticipatory prior art it is wrongly decided. Ironically, the Collins Email neglects to mention that ThermoLife itself initiated the reexamination of the patent in *Monster Energy*, and on October 3, 2018, while the reexamination was pending, ThermoLife issued a press release indicating that "the USPTO has rejected all of VPX's claims and arguments to date…VPX has no chance of establishing patentability…" SMF, ¶77.

In summary, this is not a situation where a claim to the composition of matter of creatine nitrate could ever be pursued in the '074 Patent. Rather, the cancellation of the original claim 1 based on prior art, the inchoate nature of claim 6, followed by the final decision by the Court of Appeals for the Federal Circuit (confirming the unpatentability of both), makes it legally impossible for a composition of matter claim to creatine nitrate to be the subject of any patent, or any certificate of reexamination, much less a certificate that confirms the original, canceled claims.

## V.    CONCLUSION

In view of the foregoing, the requested partial summary judgment that Defendants have no patent rights in the composition of matter creatine nitrate under the '074 Patent is warranted.

Respectfully submitted,

Dated this 12th day of May, 2020.

KRINZMAN, HUSS & LUBETSKY
FELDMAN & HOTTE
Cary A. Lubetsky
Florida Bar No. 961360
Salvatore H. Fasulo
Florida Bar No. 143952

800 Brickell Avenue, Suite 1501
Miami, Florida 33131
Telephone: (305) 854-9700
Facsimile: (305) 854-0508
Primary email:  cal@khllaw.com
 shf@khllaw.com
Secondary email: eservicemia@khllaw.com

HILLYER LEGAL, PLLC

*s/ Gregory L. Hillyer*
Gregory L. Hillyer
Fla. Bar No. 682489
Email: ghillyer@hillyerlegal.com
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015-2052
Telephone: 202-686-2884
Facsimile: 202-686-2877

*Attorneys for Plaintiff BPI Sports, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing motion for partial summary judgment was filed via CM/ECF on May 12, 2020 and served on counsel of record.

*s/ Gregory L. Hillyer*