## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**BPI SPORTS, LLC,**

      **Plaintiff,**

**vs.**

**THERMOLIFE INTERNATIONAL, LLC,**
**and RONALD L. KRAMER,**

      **Defendants.**

**CASE NO. 0:19-cv-60505-RS**

## DEFENDANTS THERMOLIFE INTERNATIONAL, LLC AND
## <u>RONALD L. KRAMER'S MOTION TO COMPEL</u>

More than a year-and-half after Plaintiff BPI SPORTS, LLC ("BPI") filed this lawsuit, BPI has produced less than 120 documents. On April 24, 2020, BPI's Chairman, Derek Ettinger, testified as BPI's 30(b)(6) witness on all noticed topics, including the search for documents relevant to this litigation.[1] With BPI having provided such a meager document production, Defendants questioned Mr. Ettinger regarding BPI's search for documents responsive to their discovery requests. Mr. Ettinger was asked, "BPI has roughly 40 or 42 employees. Has it searched its employees' emails for documents that are relevant to this lawsuit in any way?" He answered, "We haven't done any searches for anything."[2] Following up, counsel confirmed Mr. Ettinger's shocking answer, "BPI hasn't searched any of its e-mails or any of its employees for e-mail communications that are relevant to this lawsuit; is that right?" Mr. Ettinger responded, simply, "That's correct."[3] Mr. Ettinger also explained why BPI hadn't searched its own emails, stating, "Nobody instructed me to look at my own e-mails on behalf of this case or anybody else's."

With BPI having admitted to failing to participate in discovery here in good faith and BPI's Chairman and only 30(b)(6) witness having admitted that BPI did nothing to search for responsive email communications, Defendants THERMOLIFE INTERNATIONAL, INC. and RON KRAMER (together, "Defendants"), pursuant to Fed. R. Civ. P. 37 and S.D. Fla. L.R. 7.1 and 26.1(g), move to compel BPI to produce documents responsive to Request for Production Nos. 4 and 8-11.[4] Defendants also move to compel full and complete answers to Interrogatories No. 12-16.[5] These interrogatories are all directly relevant to both BPI's claims in this action and

---

[1]    *See* relevant portions of deposition of D. Ettinger, attached as Exhibit 1 at 62-68; Defendants' Notice of 30(b)(6) Deposition, attached as Exhibit 2.
[2]    *See* Ex. 1 at 60:20-62:5.
[3]    *See* Ex. 1 at 61:14-20.
[4]    *See* Defendants' First Set of Requests for Production to BPI Sports, LLC, attached as Exhibit 3, and BPI's responses to same attached as Exhibit 4.
[5]    *See* Defendants' First Set of Interrogatories to BPI Sports, LLC, attached as Exhibit 5, and BPI's responses to same, attached as Exhibit 6.

Defendants' unclean hands affirmative defense. These requests seek information supporting BPI's advertising of its own creatine products and the ingredients included in those products.

Defendants also seek an award of attorneys' fees incurred in moving to compel pursuant to Rule 37. In support of this Motion, ThermoLife states as follows:

## MEMORANDUM OF LAW

### I.   PROCEDURAL BACKGROUND.

####   A.   BPI's Claims.

BPI's Amended Complaint alleges a kitchen sink full of claims against ThermoLife: Lanham Act, 15 U.S.C. § 1125(a), the Sherman Act, 15 U.S.C. § 2, 35 U.S.C. § 292 (false patent marking), common law unfair competition, trade libel, libel per se, tortious interference with business relations, and inequitable conduct. ThermoLife moved to dismiss all of BPI's claims. The Court's January 9, 2020 Order dismissed a majority of the claims, and BPI's only remaining claims against ThermoLife are: (1) under the Lanham Act, 15 U.S.C. 1125(a); (2) common law unfair competition; and (3) false patent marking. In addition to these claims, the Court allowed BPI's alter ego claim—alleging Ron Kramer is the alter ego of ThermoLife—to move forward.

Relevant here, BPI's Amended Complaint alleges that "ThermoLife's dietary supplement product Muscle Beach CRTN-3" is falsely advertised and falsely patent marked. (DE 12 ¶ 73.) Contrary to BPI's allegations, CRTN-3 is marked and sold by Muscle Beach Nutrition, LLC, a ThermoLife licensee, not ThermoLife. (DE 41.)

In part, BPI alleges that CRTN-3 is falsely advertised because the product lists Creatine Nitrate on the Supplement Facts Panel and touts the benefits of Creatine Nitrate. (DE 12 ¶¶ 73-78.) BPI allegedly had CRTN-3 tested by a laboratory. The results of those tests are discussed in paragraphs 73-75 of BPI's Amended Complaint. Those tests show that when the product is placed in an acquis solution, the Creatine Nitrate in the product dissociates. (DE 12 ¶¶ 75-76.) This finding is

wholly unsurprising to anyone that remembers enough of their high school chemistry; salts, like Creatine Nitrate, dissociate in water. But, according to BPI, since Creatine Nitrate dissociates in water, CRTN-3 is falsely advertised. Amended Complaint ¶ 80 alleges, "ThermoLife and its licensees' representations, implicitly or expressly, that the intact compound is being ingested, and providing benefits over creatine and nitrate separately, is false, unfair, misleading and dupes consumers into believing they are ingesting a superior supplement when they are not." ThermoLife has a number of defenses to BPI's baseless claims, but need not repeat them in this Motion to Compel.

**B.     The Discovery At Issue.**

On March 17, 2020, ThermoLife served Requests for Production and Interrogatories on BPI. (Ex. 3; Ex. 5.) Request for Production No. 4 sought, "All documents related to your testing on any product that includes Creatine Nitrate." (Ex. 3.) BPI responded as follows:

> For purposes of responding to ThermoLife's Requests for Production, BPI will interpret "your" to mean BPI Sports, LLC. BPI objects to the term "testing" as vague, ambiguous, overbroad, and unduly burdensome.  BPI objects to this request as overbroad and unduly burdensome to the extent that it seeks "[a]ll documents related to your testing" without regard to their probative value, or the volume of or burden of searching for such documents. BPI also objects to the term "related" on the basis that this term is overbroad, unduly burdensome, vague, ambiguous and not proportional to the needs of the case. *Krause v. Nevada Mutual Insurance Co.*, 2014 WL 496936, *5 (D. Nev. February 6, 2014); *Dauska v. Green Bay Packaging Inc.,* 291 F.R.D. 251, 261 (E.D. Wis. 2013). BPI further objects to this request as overbroad, unduly burdensome, not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence, to the extent that it seeks documents relating to testing of "any product," including testing of third-party products that are not the subject of any claim in this litigation. BPI further objects to this request as overbroad and unduly burdensome to the extent it seeks electronic documents, including emails, without providing reasonable search terms or the names of custodians to be searched. BPI further objects to ThermoLife's definition of "documents" to the extent it purports to seek electronically stored information, documents, or materials from sources that are not reasonably accessible because of undue burden or cost, including but not limited to backup tapes; inactive email accounts; voicemail; instant messaging; legacy data, metadata; and any type of residual, fragmented or damaged data. BPI also objects to this request to the extent that it seeks documents protected by attorney work product doctrine or attorney-client communications privilege. Subject to and without waiver of the

foregoing objections, BPI will produce documents in its possession, custody or control that are responsive to the proper scope of this request.

(Ex. 4.) From BPI's response, ThermoLife was unable to determine whether BPI has documents relating to the testing of products that include Creatine Nitrate, the dietary supplement ingredient that BPI alleges is falsely advertised. BPI produced roughly 10 emails and communications with the testing laboratory that preformed the testing referenced in BPI's First Amended Complaint, but BPI did not produce any additional testing. During the meet-and-confer telephone conference on May 12, 2020, BPI's counsel was unable to confirm or deny that BPI had responsive documents; nonetheless, BPI maintained that any responsive documents, other than the limited documents related to the testing referenced in the Amended Complaint, would not be produced by BPI.

ThermoLife's Requests for Production also included requests for communications between BPI and third parties regarding Creatine Nitrate, Defendants Ron Kramer and ThermoLife, and Muscle Beach Nutrition, LLC (the company that sells the only product at issue here):

> **REQUEST FOR PRODUCTION 8:** All communications you have had with anyone regarding Creatine Nitrate.
> **REQUEST FOR PRODUCTION 9:** All communications you have had with anyone regarding Ron Kramer.
> **REQUEST FOR PRODUCTION 10:** All communications you have had with anyone regarding ThermoLife International, LLC.
> **REQUEST FOR PRODUCTION 11:** All communications you have had with anyone regarding Muscle Beach Nutrition, LLC.

(Ex. 3.) Despite that each of these requests merely seeks BPI's communications related to the product and the parties to this lawsuit, BPI wholly refused to produce documents in response to these requests. It offered the same boilerplate objection to each of these requests. (Ex. 4.) BPI stood by this objection and refused to produce a single document in response to Defendants' requests.

Defendants' discovery requests also included interrogatories. Because BPI alleges that Creatine Nitrate is falsely advertised, Defendants' Interrogatories Nos. 12-16 seek information regarding BPI's own advertising of its creatine-based products. (Ex. 5.) As the Amended Complaint states, Creatine Nitrate is a creatine salt. Salts dissociate in water. Because salts, like Creatine Nitrate, dissociate in water, BPI alleges it is improper for ThermoLife to tout the benefits of Creatine Nitrate, because this leads consumers to believe that "the intact compound is being ingested, and providing benefits over creatine and nitrate separately." (DE 12 ¶ 80.) Since BPI alleges that Creatine Nitrate is falsely advertised as an intact compound,[6] Defendants' interrogatories focused on BPI's advertising of its own compounds, particularly creatine salts, that also dissociate in water. Interrogatories No. 12-16 are below:

> **INTERROGATORY NO. 12:** BPI's Best Creatine Product states on the product label that its concludes Creatine Magnapower, which BPI describes as "creatine bonded to pure magnesium", when used as directed by the consumer, does the creatine and magnesium in this compound dissociate prior to the ingestion by the consumer. If not, provide the factual basis for your claim.
>
> **INTERROGATORY NO. 13:** BPI's Best Creatine Product states on the product label that its concludes Creatine AKG, which BPI describes as "creatine bonded to AKG", when used as directed by the consumer, does the creatine and AKG in this compound dissociate prior to the ingestion by the consumer. If not, provide the factual basis for your claim.
>
> **INTERROGATORY NO. 14:** BPI's Best Creatine Product states on the product label that its concludes Creatine Phosphate, which BPI describes as "creatine bonded to phosphate", when used as directed by the consumer, does the creatine and phosphate in this compound dissociate prior to the ingestion by the consumer. If not, provide the factual basis for your claim.
>
> **INTERROGATORY NO. 15:** BPI's advertising for the Best Creatine Product states the bonded creatine forms in the product enhance bioavailability of creatine. Provide any and all basis for this statement.
>
> **INTERROGATORY NO. 16:** BPI's advertising for the Best Creatine Product states the bonded creatine forms in the product enhance creatine absorption. Provide any and all basis for this statement.

---

[6]     Nowhere does ThermoLife advertise that Creatine Nitrate will remain a solid "intact" compound when consumed. This frivolous claim is made up from whole cloth by BPI, who advertises the creatine salts in their products the same exact way.

(Ex. 5.) In response to each of these interrogatories, BPI wholly refused to respond. (Ex. 6.)

## II.     **BPI SHOULD BE COMPELLED**

### A.     **The Rule 26 and 37 Standards.**

"Pursuant to Federal Rule of Civil Procedure 26(b), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26; *Powers v. Target Corp.,* 2020 WL 409534, *1 (S.D. Fla. January 24, 2020). This includes document requests and interrogatories. Fed.R.Civ.P. 33 and 34. "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Powers* at *1.

If a motion to compel is granted, pursuant to Rule 37(a)(5)(a), "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: … the opposing party's nondisclosure … was substantially justified."[7]

### B.     **BPI Must Produce Communications Related to the Product and Parties At Issue In This Litigation.**

---

[7]       This Motion is timely filed. BPI served its discovery responses on April 16, 2020. The parties met and conferred both in writing and over the phone during the week of May 12, 2020, but were unable to resolve this dispute. The parties agreed in writing to extend the deadline for the filing of this Motion by seven days. *See* Ex. 7.

The Court should compel BPI to produce all relevant communications regarding the product and parties in this action. Incredibly, during BPI's 30(b)(6) deposition, BPI's Chairman admitted that BPI had not even conducted a search for such documents:

> Q:    BPI has roughly 40 or 42 employees. Has it searched its employees' emails for documents that are relevant to this lawsuit in any way?"
> A:    "We haven't done any searches for anything."[8]
>                                      ….
> Q:    "BPI hasn't searched any of its e-mails or any of its employees for e-mail communications that are relevant to this lawsuit; is that right?"
> A:    "That's correct."[9]

That means BPI has not bothered to search its emails for documents related to: Creatine Nitrate, the dietary supplement ingredient at issue in this action (Request for Production No. 8); Ron Kramer, President of ThermoLife and a named defendant (Request for Production No. 9); ThermoLife, another named defendant (Request for Production No. 10); or non-party Muscle Beach Nutrition, LLC, the company that actually sells the only product mentioned in the First Amended Complaint, CRTN-3 (Request for Production No. 11). Such disregard for the discovery process is wholly unacceptable.

"To succeed on a false advertising claim under [15 U.S.C. §25] . . . a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been -- or is likely to be -- injured as a result of the false advertising." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Documents related to the ingredient and product that is allegedly falsely advertised, along with the Defendants themselves, are clearly relevant to whether the alleged "deception" "had a material effect on a purchasing

---

[8]     Ex. 1 at 60:20-62:5.
[9]     Ex. 1 at 61:14-20.

decisions." If consumers were indeed misled by Defendants' advertising (they were not), certainly BPI would have communications with sales agents or customers identifying or complaining about the Defendants' alleged false advertising. If BPI's allegations were true, certainly it would have contacted distributors of the product at issue to inform them of its complaints. All of these documents need to be searched for and produced. Furthermore, documents in these categories certainly are relevant to determine whether BPI has been is or likely to be injured by the alleged advertising. In fact, even a lack of documents is relevant on this issue. If BPI does not have communications with anyone related to the advertising at issue, how likely is it that BPI has been damaged at all here? For this reason, all communications in these categories must be produced.

These documents also are relevant to BPI's false patent marking claim. To prevail on that claim, BPI must show that it suffered damages. 35 U.S.C. § 292. If BPI was truly damaged, as its claims, then BPI should have communications with *someone* regarding ThermoLife's alleged false marking. At the very least, BPI should have internal communications responsive to these issues.

As the Plaintiff in this lawsuit, BPI must produce documents in its possession related to the Defendants and the product at issue. This is not a grey area. The Court should order these documents produced and award ThermoLife its attorneys' fees incurred briefing this Motion. BPI's failure to produce these documents is not justifiable at all, much less substantially justified.[10]

## C.    BPI Must Produce Documents Related to its Testing of Creatine Nitrate.

Paragraph 73 of BPI's Amended Complaint discusses testing that BPI allegedly commissioned Advanced Botanical Consulting and Testing Inc. ("ABC") to conduct on CRTN-3. In paragraphs 77-78 of its Amended Complaint, BPI relies on the results of ABC's testing to allege

---

[10]    During the meet-and-confer process, BPI's counsel suggested that BPI had not produced documents here because ThermoLife's document production was lacking. That is not a recognized justification for failing to engage in thorough discovery. In any event, BPI moved to compel and ThermoLife responded that it has produced all relevant and responsive documents. Moreover, ThemroLife's document production is wholly irrelevant here.

that CRTIN-3 is falsely advertised. (DE 12.) While BPI has produced roughly 10 documents related to the testing that ABC conducted, Defendants' Request for Production No. 4 sought all documents related to any testing that BPI has conducted related to Creatine Nitrate.

The relevance of this testing is obvious: if BPI tested products with Creatine Nitrate, Defendants are entitled to know the results. Whether the results of those tests prove or disprove BPI's false advertising claim, there is no question that additional testing that BPI conducted on any product that includes Creatine Nitrate (the ingredient at issue in this lawsuit) is discoverable.

It is also worth noting that the documents that BPI has produced related to its communications with ABC do not provide any analysis from ABC regarding the results of ABC's testing. During the meet-and-confer process, BPI refused to confirm whether it is withholding documents responsive to Request for Production No. 4. This is unacceptable and all documents in BPI's possession here must be produced, including any additional communications with ABC.

### D. BPI Must Fully Respond To ThermoLife's Interrogatories 12-16.

Finally, the Court also should compel BPI to provide full and complete responses to ThermoLife's Interrogatories No. 12-16, which ask about the basis for BPI's statements regarding its own creatine products. This is relevant because BPI's own advertising informs whether Defendants' advertising is indeed false or misleading. For example, BPI advertises its Best Creatine product as including six different versions of creatine. Among the creatine versions are Creatine Magnapower, Creatine AKG, and Creatine Phosphate. Each of these ingredients is listed on the label of Best Creatine as one ingredient and BPI specifically touts that these "bonded forms" of creatine enhance bioavailability and enhance creatine absorption. (Ex. 7.)

Despite touting that the "bonded forms" of creatine enhance bioavailability and enhance creatine absorption, and despite the fact that these bonded forms of creatine likely dissociate in

water, BPI is suing Defendants for advertising that Creatine Nitrate, a bonded form of creatine that dissociates in water, has certain benefits.  Obviously, BPI must have some explanation for why its advertising statements related to bonded creatines are true, but Defendants' statements are false. For that reason, Defendants have inquired whether Creatine Magnapower, Creatine AKG, and Creatine Phosphate in fact dissociate in water. BPI's answer is relevant to determine whether, in fact, Defendants' advertising of Creatine Nitrate, as a bonded ingredient, is true or false.

Defendants also have inquired into the basis of BPI's claims that "bonded forms" of creatine enhance bioavailability and enhance creatine absorption. Since BPI is suing Defendants for advertising the benefits of a bonded form or creatine, BPI's answer here is highly relevant. If "bonded forms" indeed have additional benefits from non-bonded forms, as BPI's own advertising claims, then Defendants' advertising will be proven truthful by BPI's own words.

On the other hand, if BPI has no basis at all for its advertising statements, then BPI, unquestionably, has unclean hands and its claims must be dismissed.  *See ADT LLC v. NorthStar Alarm Servs. LLC,* No. 9:18-80283-CV, 2018 WL 6522124, at *3 (S.D. Fla. Sept. 14, 2018) (stating the elements of an unclean hands defense as "(1) the plaintiff's wrongdoing is directly related to the claim, and (2) the defendant was personally injured by the wrongdoing.")

## III.   CONCLUSION

For the foregoing reasons, the Court should order BPI to produce documents responsive to Defendants' Request for Production Nos. 4 and 8-11, and to fully and completely respond to Defendants' Interrogatories Nos. 12-16. The Court also should award Defendants' their fees pursuant to Rule 37(a)(5)(A) based on BPI's failure to participate in discovery here in good faith.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)</u>

In accordance with Local Rule 7.1(a)(3), Defendants certify that their counsel personally conferred with BPI's counsel regarding the issues raised herein via telephone conference on May 12, 2020, and through several email communications both before and after that telephone conference.   The parties were unable to reach a resolution on these issues.

RESPECTFULLY SUBMITTED on this 26th day of May, 2020.

By: */s/ Edward M. Mullins*
Edward M. Mullins (FBN 863920)
Ana M. Barton (FBN 85721)
**REED SMITH LLP**
1001 Brickell Bay Drive
Miami, FL 33131
7866-747-0200
Fax: 786-747-0299
Email: emullins@reedsmith.com
Email: abarton@reedsmith.com

and

KERCSMAR & FELTUS PLLC
Gregory B. Collins
E-mail: gbc@kflawaz.com
7150 E. Camelback Road
Suite 285
Scottsdale, AZ 85251
Telephone: (480) 421-1001

*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on May 26, 2020, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record.

By:     *Edward M. Mullins*
Edward M. Mullins, Esq.