IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BPI SPORTS, LLC,

    Plaintiff,

vs.                                  CASE NO.: 0:19-cv-60505

THERMOLIFE INTERNATIONAL, LLC,
and RONALD L. KRAMER,

    Defendants.

**BPI SPORTS, LLC'S SECOND MOTION TO COMPEL
AND REQUEST FOR ATTORNEYS' FEES AND EXPENSES**

Plaintiff, BPI Sports, LLC ("BPI"), pursuant to Fed. R. Civ. P. 37 and S.D. Fla. L.R. 7.1 and 26.1(g), hereby moves to compel Defendant ThermoLife International, LLC ("Thermolife") to produce documents in response to BPI's Second Request for Production Nos. 1-5, 7 and 11 and answers to Second Set of Interrogatories Nos. 1-3; and moves to compel Defendant, Ronald L. Kramer ("Kramer") to provide answers to BPI's Second Set of Interrogatories Nos. 1, 2 and 7. BPI further moves for its attorneys' fees and costs associated with this motion.

**I.    Whether CRTN-3 Is A ThermoLife Product Is A Central Issue In This Case**

The FAC alleges false advertising under 15 U.S.C. § 1125(a), common law unfair competition and false patent marking under 35 U.S.C. § 292. D.E. 12, FAC, Counts I, II and VI, ¶¶167-180, 194-199. For present purposes, it is sufficient to focus on the advertising, labeling and sale of the product CRTN-3. D.E. 12, FAC, ¶¶70-80 and 158-162. The FAC alleges that CRTN-3 is a product of Defendant, ThermoLife. D.E. 12, FAC, ¶¶73, 158. In their Motion to Dismiss, Defendants expressly denied that CRTN-3 is a ThermoLife product. D.E. 16, p. 3, fn. 1. Rather, Defendants alleged that the product is solely advertised and sold by an entirely separate corporate entity Muscle Beach Nutrition, LLC ("Muscle Beach Nutrition"). *Id*. According to Defendants,

1

the sole relationship between the two entities is that Muscle Beach Nutrition is a "licensee" of ThermoLife. *Id*. In support of this position, ThermoLife produced an alleged "Purchase and License Agreement" between ThermoLife and Muscle Beach Nutrition (bates stamped TLI000555-TLI000562) (confidential).

It is BPI's position that Muscle Beach Nutrition is a shell corporation, with few or no actual employees or operations, and that the license lacks credibility and was prepared for litigation. Over the course of the last several months, Defendants have attempted to pressure BPI into capitulating that it has no case at all because of the lack of any affiliation between Defendants and the CRTN-3 product. Defendants' conviction on this point was so strong that Defendants and their counsel, Gregory Collins, repeatedly threatened BPI and its counsel with sanctions in a telephone conference, a letter and a proposed motion if BPI maintained its position. *See* Exhibit 1 (Rule 11 letter) and Exhibit 2 (proposed Rule 11 motion). In response to the proposed motion, BPI provided a detailed response letter outlining the overwhelming evidence that CRTN-3 was created by and is sponsored by, advertised by, sold by, or otherwise affiliated with Defendants.[1] Exhibit 3.

Subsequently, in response to BPI's first Motion to Compel (D.E. 62), Mr. Collins submitted a declaration in which he testified, under oath, that "*CRTN-3 isn't sold or marketed by ThermoLife; the product is sold by Muscle Beach Nutrition*." D.E. 65-1, ¶4. Mr. Collins provided the same testimony in response to BPI's Motion for Leave to Amend (D.E. 64). D.E. 69-1, ¶7. Mr. Collins further testified that prior to becoming aware of the Second Amended Complaint, "*Defendants have been preparing to defend this case by demonstrating that CRTN-3 was not a ThermoLife product*." D.E. 69-1, ¶8.[2]

---

[1] Defendants' Rule 11 motion was never filed even after the twenty-one (21) day waiting period.

[2] BPI's Reply in Support of its Motion to Amend provided further evidence that CRTN-3 is a product created, advertised and sold by ThermoLife. D.E. 74, pp. 2-5. The evidence also now

## II. BPI Issued A Second Round Of Discovery To Address Defendants' Defense

On April 3, 2020, BPI served a Second Request for Production of Documents on ThermoLife (Requests 1-12); a Second Set of Interrogatories on ThermoLife (Roggs 1-3); and a Second Set of Interrogatories to Ronald Kramer ("Kramer") (Roggs 1-7) (collectively, Second Set of Discovery"). Composite Exhibit 5. The Second Set of Discovery is designed to (i) address Defendants' *sole defense* that CRTN-3 is not a ThermoLife product; (ii) investigate the legitimacy of Defendants' evidence and testimony in support of this defense; and (iii) gather more evidence to defend BPI and its counsel against Defendants' constant threats of sanctions.

## III. Defendants Refused To Produce Any Documents Or Answer Any Interrogatories

On May 4, 2020, Defendants responded to BPI's Second Set of Discovery. Composite Exhibit 6. ThermoLife refused to produce a single document in response to the Second Request for Production, including any e-discovery on the license *Defendants produced*. Exhibit 6-1. ThermoLife refused to provide any substantive responses to the Second Set of Interrogatories. Exhibit 6-2. Kramer once again refused to provide any substantive responses to the Second Set of Interrogatories.[3] Exhibit 6-3. Defendants' rationale is that none of the Second Set of Discovery is relevant to any claim or defense in this case or it relates to Muscle Beach Nutrition, LLC. *Id*.

## IV. Defendants Refused To Make A Single Concession During The Meet and Confer

On May 7, 2020, BPI provided Defendants with a detailed letter outlining the relevance of the Second Set of Discovery and explaining why all of Defendants' objections are misplaced. Exhibit 8. On May 12, 2020, counsel for the parties met and conferred by telephone. During the teleconference, counsel for BPI reiterated BPI's position that the discovery not only directly relates

---

includes a subsequent April 27, 2020 email in which Mr. Collins refers to documents stored in paper files in "ThermoLife's Muscle Beach Offices." Exhibit 4.
[3] Kramer refused to provide substantive responses to BPI's First Set of Interrogatories. D.E. 62.

3

to allegations in the FAC, but affirmative positions, evidence, testimony and admissions proffered by the Defendants. In the interest of narrowing the issues, BPI agreed to withdraw Second Requests for Production 6, 8-10 and 12. BPI has also elected not to pursue Second Interrogatories 3-6 to Kramer in the interest of pursing the answers in deposition.

Defendants made no concessions whatsoever. At most, Defendants agreed to confirm whether documents responsive to Requests for Production 4 (purchase orders), 5 (invoices) and 7 (proof of payment) exist, but have failed to do so.[4] Otherwise, Defendants elected to maintain the frivolous position that *nothing* in the Second Set of Discovery is relevant to the First Amended Complaint, even in those instances where *Defendants themselves* injected issues (CRTN-3 is not a ThermoLife product), evidence (license agreement), testimony (Collins Declaration) and admissions (ThermoLife's Muscle Beach office). Defendants have taken the bizarre position that since the Second Set of Discovery relates to allegations in the Second Amended Complaint, it cannot relate to allegations in the First Amended Complaint, and the discovery is therefore objectionable. This argument lacks any basis, in part, because BPI has exhaustively demonstrated the direct linear relationship between the Second Set of Discovery and the First Amended Complaint, and in part, because there is a natural overlap of issues between the two pleadings.

Defendants' blanket refusals reflect a real concern that any responses will negatively affect their positions. For example, in the event the license agreement is legitimate and prepared in the ordinary course of business, it does not make sense why ThermoLife would refuse to supply native files or answer Interrogatory No. 1 which asks for the identification of the authors, dates, signature, manner, location and witnesses. The only way these questions become threatening is if the license

---

[4] BPI gave Defendants until May 20, 2020 (over a week) to confirm this fact, but Defendants failed to respond in this reasonable timeframe (or even by the date of this filing).

4

is a fake.  Likewise, the only logical reason Kramer would refuse to confirm whether ThermoLife pays for Muscle Beach Nutrition's advertising is if it does.  Otherwise, Kramer would be eager to deny this fact.  Finally, to the extent that Defendants' responses support the conclusion CRTN-3 *is* advertised or sold by ThermoLife (or is *not* sold by Muscle Beach Nutrition), this would directly contradict the repeated, sworn testimony of Defendants' own counsel.[5]  D.E. 69-1, ¶7.

Regardless of the reasons, Defendants' blatant discovery violations are severely prejudicing BPI's ability to support its claims, rebut arguments that *Defendants* injected into the case, investigate evidence that *Defendants* proffered, and defend against *Defendants'* repeated charges of sanctions.  It is also wasting precious discovery time and precluding BPI from securing documents it needs to depose ThermoLife, Kramer and Muscle Beach Nutrition before the close of discovery (July 8, 2020).

**V.     LEGAL STANDARD**

"Pursuant to Federal Rule of Civil Procedure 26(b), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26; *Powers v. Target Corp.*, 2020 WL 409534, *1 (S.D. Fla. January 24, 2020).  This includes document requests and interrogatories. Fed.R.Civ.P. 33 and 34.  The Federal Rules also afford the Court broad authority to control the scope of discovery, …but 'strongly favor full discovery whenever possible.'" *Id.* at *2 (*citing Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306-07 (11th Cir. 2011)).

---

[5] The existing record evidence is inconsistent with the testimony of Mr. Collins.  D.E. 74, p. 5.

"Thus, courts allow liberal and broad discovery in keeping with the spirit and purpose of these rules." *Id.* (citing *Rosenbaum v. Becker & Poliakoff, P.A.*, 708 F. Supp. 2d 1304, 1306 (S.D. Fla. 2010). "[W]hen a party objects to discovery, the onus is on the objecting party to demonstrate with specificity how the objected-to request is unreasonable or otherwise unduly burdensome." *Powers* at *2 (citing *Alvar v. No Pressure Roof Cleaning, LLC*, 2018 WL 1187777, at *2 (S.D. Fla. Mar. 7, 2018)). "The Court does not recognize conclusory boilerplate objections or formulaic objections followed by an answer to the request." Magistrate Judge Valle's Discovery Procedures, ¶4. "The Court may impose sanctions, monetary or otherwise, if the Court determines discovery is being improperly…withheld in bad faith or without substantial justification. *Id*.

## VI. BPI'S DISCOVERY THAT SHOULD BE COMPELLED

### A. Requests For Production 1-3 and Interrogatory No. 1 to ThermoLife

Under Fed.R.Civ.P. 34(a)(1)(A) BPI may take discovery regarding "any designated documents *or electronically stored information*…" Second Requests for Production 1-3 seeks native files (including Word and PDF versions) of the license agreement and the metadata associated with same. Ex. 6-1. Second Interrogatory No. 1 seeks basic information about the circumstances surrounding the creation and execution of this document (*e.g.*, author, date, signatory, place and witnesses). Ex. 6-2. Defendants' objections that this discovery "is not relevant to any claim *or defense* in this action"; only relates to "new allegations that BPI seeks to add in this lawsuit"; and "Muscle Beach Nutrition, LLC is not a party to this lawsuit" are frivolous given that Defendants' defense is that Muscle Beach Nutrition is a mere "licensee" of ThermoLife and *Defendants produced the license.* BPI has a right to know if the document is *bona fide*. BPI does not have to be satisfied with the objection that "[t]here is no relevancy to date of creation and circumstances of the creation of this document" given that the document itself and the surrounding

circumstances all point to the license being a complete fabrication that was not created or executed on the date reflected. Defendants' blanket refusal to provide the most basic information support BPI's suspicions. If the document is real, there is absolutely no reason why Defendants would resist production since this would support their position that Muscle Beach Nutrition is a licensee.

      **B.**     **Second Requests For Production 4, 5 and 7 to ThermoLife**

Second Requests for Production 4, 5 and 7 seek the purchase orders, invoices and proof of payment under the license agreement, respectively. Ex. 6-1. Since the license agreement is clearly relevant, documents generated under the license are equally relevant, particularly given that such documents help confirm whether the parties are actually operating under it. Indeed, this discovery goes *directly* to Defendants' *sole defense* that ThermoLife and Muscle Beach Nutrition are separate entities, operate at arm's length and generate records in the normal course of business. Defendants' objections are the same as those regarding the license (*see* above) and are therefore meritless for the same reasons. *Id*. Consistent with BPI's positions that the license is a sham and there is no distinction between the supplement products of ThermoLife and Muscle Beach Nutrition, counsel for Defendants has already intimated that these documents do not even exist. If this is the case, responding to these Requests was a "no brainer" and Defendants should now be compelled to issue new responses confirming their non-existence. Otherwise, the documents should be produced.

      **C.**     **Second Interrogatory Nos. 2 and 3 and Request No. 11 to ThermoLife**

Second Interrogatory No. 2 asks ThermoLife to identify its bank accounts, whether any revenue generated from the sale of CRTN-3 has been deposited into any identified account and whether any funds from these accounts have been used for the operations of Muscle Beach Nutrition. Ex. 6-2. ThermoLife's objections that this interrogatory is not relevant to any claim or defense is this action and because it touches on Muscle Beach Nutrition are not sustainable. *Id*. The interrogatory itself references the product CRTN-3, which is referenced in the FAC, the

7

sponsorship of which the parties are both disputing. D.E. 12, FAC, ¶¶73, 158. The mere fact that Muscle Beach Nutrition is not a party does not preclude BPI from asking questions about *ThermoLife's* relationship with this entity, particularly given that it was Defendants which injected the argument that CRTN-3 is not a ThermoLife product. D.E. 16, p. 3, fn. 1. ThermoLife's objection that it produced the license agreement between ThermoLife and Muscle Beach Nutrition makes the sharing of revenue between these two entities that much more probative. Ex. 6-2.

ThermoLife has provided sworn testimony that *ThermoLife's lack of involvement in the advertisement or sale of CRTN-3* is their *only defense*. D.E. 16, p. 3, fn. 1. D.E. 69-1, ¶¶7, 8. In the event ThermoLife comingles revenue from the sale of CRTN-3, or funds the operations of Muscle Beach Nutrition, ThermoLife is contributing to the advertising and sale CRTN-3. If ThermoLife is not involved in these activities, there should be no reluctance in confirming this fact because it would support Defendants' own positions. In either case, there are *no* circumstances under which this interrogatory could be considered "irrelevant to any claim or defense."

Second Interrogatory No. 3 asks ThermoLife to identify all employees *of ThermoLife*, and for each, provide their date of hire, title, job responsibilities, etc., and what entity is reflected on their paycheck. Ex. 6-2. Defendants provided the same objections made in connection with Second Interrogatory No. 2. *Id*. The position that such questions are irrelevant is meritless, particularly where BPI is already aware that ThermoLife shares employees with Muscle Beach Nutrition. Exhibit 3, p. 7 (identifying Alexander Nikolaidis as an employee of ThermoLife and Muscle Beach Nutrition). Such objections are also hypocritical and unfair given that Defendants' counsel posed the same questions to BPI during the corporate deposition. Exhibit 9, 43:25-49:24 ("How many employees does BPI have now approximately?"; "Do you know someone named Ali Jacob?"; "Who is the CFO?"; "Who is in charge of product formulation?").

Second Request for Production No. 11 requests financial statements from ThermoLife going back five (5) years. Ex. 6-1. ThermoLife acknowledges in its response that "BPI has a claim here that CRTN-3 is falsely advertised and falsely patent marked." *Id*. Thus, the objection that its financial statements have no relevance to any claim or defense in this action is once again misplaced, since these documents should reveal whether ThermoLife expended resources for the operations of Muscle Beach Nutrition, *including the advertising and sale of the CRTN-3 product*.

### D.  Interrogatories 1, 2 and 7 to Kramer

This is the *second time* Kramer has failed to provide *any* responses to BPI's interrogatories. D.E. 62. Second Interrogatories 1, 2 and 7 are directed to ThermoLife's relationship to Muscle Beach Nutrition. Ex. 6-3. This relationship is clearly relevant to Defendants' denial that CRTN-3 is a ThermoLife product. D.E. 16, p. 3, fn. 1. D.E. 69-1, ¶¶7, 8. Kramer is the CEO of both companies. Exhibit 3, p. 5; D.E. 74, p. 8. Second Interrogatory No. 1 concerns the property at 1811 Ocean Front Walk, Venice California 90291. Ex. 6-3. This address is the corporate offices of Muscle Beach Nutrition, which it shares with ThermoLife. Exhibit 3, p. 4-7; D.E. 64, p. 3; D.E. 74, pp. 2-5. Kramer bought this building with the intention of selling *ThermoLife products*. D.E. 74, p. 3 (citing Ex. 2). The product CRTN-3 is sold at this location in the "Muscle Beach Nutrition store" also referred to as the "ThermoLife retail store." Exhibit 3, p. 5; D.E. 74, p. 4. Defendants' own attorney referred to this location as "ThermoLife's Muscle Beach Offices." Exhibit 4. Even the Defendants' objections (same as above) state that "both use the address." Ex. 6-3. BPI must be permitted to explore the owners and operation of this property because if ThermoLife owns the retail store, pays the rent and/or pays utilities at the location where CRTN-3 is advertised and sold, ThermoLife is advertising and selling CRTN-3 (which would directly contradict sworn testimony).

With similar reasoning, Second Interrogatory No. 2 requests the identification of all ThermoLife employees who work for Muscle Beach Nutrition. Ex. 6-3. This is a straightforward

question to ThermoLife (not Muscle Beach Nutrition) that should be answered. As noted above, BPI is already aware of one shared employee. Exhibit 3, p. 7. Although Kramer objects on the same basis as Second Interrogatory No. 1 (*see* above), shared employees (and their function) further reflect that the corporate form is a sham, Muscle Beach Nutrition has no employees of its own, and such overbroad objections are cloaking the fact that CRTN-3 is a ThermoLife product.

Second Interrogatory No. 7 asks for the entity that pays marketing expenses for Muscle Beach Nutrition; the bank account from which the marketing expenses are paid; and the owner of the bank account. Ex. 6-3. In the interest of compromise, BPI is willing to narrow this request to whether ThermoLife pays these expenses (in whole or in part). Kramer objects on the basis that "[t]he information sought by this interrogatory relates to Muscle Beach Nutrition, LLC," however, this interrogatory is directed to Kramer either in his individual capacity or as the Chief Executive Officer of ThermoLife (and their unilateral activities). The mere fact that an interrogatory to Kramer mentions or touches on Muscle Beach Nutrition does not render it objectionable. Although Kramer further objects on the basis that he "currently has pending with this Court an objection to providing Muscle Beach Nutrition, LLC information here in response to written discovery," that objection is inapplicable here because BPI is *not* posing a question to Kramer in his capacity as the Chief Executive Officer of Muscle Beach Nutrition.

Kramer's remaining objection that this interrogatory is not relevant to the FAC is misplaced. Ex. 6-3. As discussed above, Second Interrogatory No. 7 is relevant to the FAC because Defendants have provided sworn testimony that *ThermoLife does not advertise or sell CRTN-3* and that this is their *only defense*. D.E. 16, p. 3, fn. 1. D.E. 69-1, ¶¶7, 8. In the event that ThermoLife pays the marketing expenses for Muscle Beach Nutrition, **ThermoLife advertises CRTN-3** and the sworn testimony Defendants offered would be directly contradicted.

| | |
|---|---|
| Respectfully submitted, | Dated this 26th day of May, 2020. |

KRINZMAN, HUSS & LUBETSKY
FELDMAN & HOTTE
Cary A. Lubetsky
Florida Bar No. 961360
Salvatore H. Fasulo
Florida Bar No. 143952

800 Brickell Avenue, Suite 1501
Miami, Florida 33131
Telephone:  (305) 854-9700
Facsimile:  (305) 854-0508
Primary email:   cal@khllaw.com
                 shf@khllaw.com
Secondary email: eservicemia@khllaw.com

HILLYER LEGAL, PLLC

*s/ Gregory L. Hillyer*
Gregory L. Hillyer
Fla. Bar No. 682489
Email: ghillyer@hillyerlegal.com
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015-2052
Telephone: 202-686-2884
Facsimile: 202-686-2877

*Attorneys for Plaintiff BPI Sports, LLC*

## COMPLIANCE WITH LOCAL RULE 26.1(g)(2)

The information required under S.D.Fla. L.R. 26.1 (g)(2) is set forth in Exhibit 7.  A Word version of the chart will be provided to Defendants to juxtapose their positions to those of BPI.

## S.D. FLA. L.R. 7.1 AND FED.R.CIV.P. 37 CERTIFICATE OF GOOD FAITH

I HEREBY CERTIFY that counsel for BPI met and conferred with counsel for Defendants in a good faith effort to resolve the issues raised by this motion, but were unable to do so.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Second Motion to Compel was filed via CM/ECF on May 26, 2020 and served on counsel of record.

*s/ Gregory L. Hillyer*