# EXHIBIT 1

**KERCSMAR & FELTUS** PLLC
www.businesslawaz.com

7150 EAST CAMELBACK ROAD, SUITE 285
SCOTTSDALE, AZ 85251
(480) 421-1001 · FAX (480) 421-1002

Greg Collins
gbc@kflawaz.com

March 20, 2020

**VIA U.S. MAIL and E-MAIL**

Gregory L. Hillyer
5355 Wisconsin Avenue NW
Suite 440
Washington, DC 20015
ghillyer@hillyerlegal.com

>        Re:    *BPI Sports, LLC v. ThermoLife et. al.*
>               USDC, Southern District of Florida Case 0:19-cv-60505-FAM

Dear Mr. Hillyer,

I wanted to follow-up on our conversation last Wednesday. As I mentioned on the phone call, we believe that BPI Sports, LLC lacks a Rule 11 basis to continue with its claims against my clients ThermoLife International, LLC and Ron Kramer. As I explained on the phone, BPI's claims must be immediately dismissed.

A brief summary of this action is necessary here. BPI originally filed its Complaint on February 26, 2019 (DE 1). BPI's original Complaint was entirely deficient. When we raised this issue with BPI's then counsel, BPI tacitly acknowledged the deficiencies in its own pleadings by filing an Amended Complaint on April 19, 2019 (DE 12). BPI's Amended Complaint alleged claims against ThermoLife for:  Lanham Act, 15 U.S.C. § 1125(a), the Sherman Act, 15 U.S.C. § 2, 35 U.S.C. § 292 (false patent marking), common law unfair competition, trade libel, libel per se, tortious interference with business relations, and inequitable conduct. As you know, ThermoLife moved to dismiss all of BPI's claims and the Court dismissed the majority of BPI's Amended Complaint.

After the Court's January 9, 2020 Order, BPI's only claims that remain against ThermoLife are: (1) under the Lanham Act, 15 U.S.C. 1125(a); (2) common law unfair competition; and (3) false patent marking. In addition to these claims, the Court allowed BPI's alter ego claim, alleging Ron Kramer is the alter ego of ThermoLife, to move forward.

"A litigant who presses on with a position after being warned either by the court or by an adversary that the case law or facts flatly contradict the position urged by the litigant will be

March 20, 2020
Page 2

sanctioned under Rule 11." *See In re Froid*, 106 B.R. 293, 295 (Bankr. M.D. Fla. 1989). An attorney that continues to press a frivolous claim is subject to Rule 11 sanctions. *Id.* As district courts within Florida have explained, Rule 11 "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable." *In re Engle Cases*, 283 F.Supp.2d 1174, 1211 (M.D. Fl. 2017). Explaining further, "Rule 11 requires [litigants] to make reasonable inquiries into the veracity of information filed before the court and to advise the court of any changes." *Id.* (citing *Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997) (per curiam). Importantly, an attorney's duty under Rule 11 is separate and distinct from his/her clients, "As officers of the court, [lawyers] [a]re duty bound to inform the court of the information in counsel's complaints that they kn[o]w to be false—even if the court ha[s]n't repeatedly asked them for that information." *In re Engle Cases*, 767 F.3d at 1117 (citations omitted).

We write to put you on notice that BPI cannot continue to press its case here, which is based on factual pleadings that BPI and you know are false. As an officer of the Court you have a duty to inform the Court that BPI's Amended Complaint contains materially false statements. As explained below, the Court only allowed BPI's Amended Complaint to move forward here as a result of BPI's false pleadings.

First, with respect to BPI's Lanham Act false advertising claim, the Court's January 9, 2020 Order recites the five basis that BPI identified for this claim:

> To meet its burden, BPI alleges that: (1) Defendants' main website falsely claims, and creates a false impression to competitors and consumers, that creatine nitrate falls within the scope of ThermoLife's patents and that ThermoLife is the "only legitimate source for patented and license[d] amino acid[] nitrates" (Am. Compl. ¶¶ 31-35, 42-43, 158-160, 166); (2) Defendants have made false representations in patents and "promotions" concerning the invention, synthetization, discovery, and performance of various amino acid nitrates and related compositions (*id.* ¶¶ 58-68); (3) ThermoLife falsely claims on the label of its Muscle Beach CRTN-3 dietary supplement that the product contains an intact creatine nitrate compound and ThermoLife's licensees make similar misrepresentations on their products (*id.* ¶¶ 72-80); (4) ThermoLife made false and misleading representations to the Court of Appeals for the Federal Circuit regarding the development and existence of creatine nitrate (*id.* ¶¶ 128-138); and (5) ThermoLife made false and misleading representations to the FDA regarding the identity and purity of creatine nitrate, and these representations were also inconsistent with statements ThermoLife previously made to USPTO (*id.* ¶¶ 139-157).

(DE 37 at 10-11.)

After identifying five possible pleaded basis for BPI's false advertising claim, the Court then analyzed the legal sufficiency of these allegations. With regard to BPI's claim that ThermoLife committed false advertising by making misrepresentations in court and to regulatory agencies, the Court held that such conduct does not constitute advertising and it is not actionable under the Lanham Act. (DE 37 at 11.) Accordingly, categories 4 and 5 set forth above are no longer part of this lawsuit. These categories relate to statements made by ThermoLife about its patents.

March 20, 2020
Page 3

As the Court explained, "these statements were not made for the purposes of influencing consumers to buy Defendants' goods or services but, rather, served regulatory and legal purposes." (*Id.*)

This leaves only categories 1, 2 and 3. In category 1, BPI alleged, "Defendants' main website falsely claims, and creates a false impression to competitors and consumers, that creatine nitrate falls within the scope of ThermoLife's patents and that ThermoLife is the 'only legitimate source for patented and license[d] amino acid[] nitrates'." Here, in ruling on the motion to dismiss, the Court did not analyze the sufficiency of BPI's pleadings on this issue. This was because BPI offered nothing in its pleadings addressing the falsity of ThermoLife's website. As you well-know, ThermoLife's website does not contain any false statements about its patents, or otherwise.

There can be no dispute that ThermoLife holds an extensive patent portfolio related to "amino acid nitrates." These patents include U.S. Patents: 7,777,074 - 8,034,836 - 8,048,921 - 8,178,572 - 8,183,288 - 8,455,531 - 8,466,187 - 8,569,368 - 8,569,369 - 8,952,045 - 8,952,046 - 8,952,047 - 8,957,100 - 8,957,101 - 10,555,921 - 10,485,777 - 10,472,322 - 10,435,356 - 10,426,792 and 10,426,750. While some of these patents have been challenged through re-examinations with the United States Patent Office, as a patent attorney you surely know that all patents are presumed valid unless and until a final re-examination certificate issues declaring them invalid. *See Microsoft Corp. v. i4i Limited Partnership,* 564 U.S. 91 (2011) ("Congress specified the applicable standard of proof in 1952 when it codified the common-law presumption of patent validity. Since then, it has allowed the Federal Circuit's correct interpretation of § 282 to stand. Any re-calibration of the standard of proof remains in its hands."); *see also IMCS, Inc. v. D.P. Technology, Corp.,* 264 F.Supp.193 (E.D. Pa. 2003) (holding that even though patent was procured by fraud, it was presumed valid until invalid and, thus, advertising the patent did not constitute false advertising).

Moreover, even if a pending re-exam meant that a patent could not be championed in an advertisement (which is simply not true), this would not change the fact that ThermoLife is the "only legitimate source for patented and license[d] amino acid[] nitrates."[1] BPI cannot identify any other source for "patented and licensed amino acid nitrates." Thus, BPI's Amended Complaint is unequivocally false on this point.

Furthermore, I remind you here that you are well-aware that statements about inventorship, like the ones on ThermoLife's website, are not sufficient grounds for a Lanham Act false advertising claim. In *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 632 F.Supp.2d 362, (D. Del. 2009),

---

[1]     ThermoLife's statement is truthful, and BPI nor anyone else can show evidence otherwise. However, to clear up your apparent confusion and help you identify what a real false advertising statement is, and what real false patent marking is, you need look no further than your client Hi-Tech Pharmaceuticals, Inc. You represent Hi-Tech Pharmaceuticals in ThermoLife International, LLC v. Hi-Tech Pharmaceuticals, Inc., Case No. 1:15-CV-00892, pending in the District Court for the District of Atlanta. As you should well know, Hi-Tech has falsely advertised and falsely patent marked its APS "Creatine Nitrate" product as "patented" for years, by falsely claiming "Creatine Nitrate by APS is a vastly superior patented creatine" on the APS website. This false statement (and many others) were also widely disseminated by Hi-Tech to dozens of web sites and retailers nationwide. This is blatant false advertising and false patent marking which was made by one of your own clients, Hi-Tech Pharmaceuticals, Inc., and is directly relevant to BPI's baseless claims here. In contrast, the truth is that ThermoLife is "only legitimate source for patented and license[d] amino acid[] nitrates."

March 20, 2020
Page 4

you represented the defendant. There, you filed a motion to dismiss the plaintiff's claims that alleged that your client falsely advertised its windshield wiper blades. You argued that claims of inventorship are not actionable under the Lanham Act. The Federal District Court for the District of Delaware agreed with you, holding:

> "[F]alse attribution of the authorship" of an invention or innovation is not an actionable false advertisement under § 43(a) of the Lanham Act. *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300 (Fed.Cir.2009); *see Monsanto Company v. Syngenta Seeds, Inc.*, 443 F.Supp.2d 648, 653 (D.Del.2006). Therefore, plaintiff has not stated a claim under the Lanham Act for false advertising related to Pylon's statement that it developed a frameless windshield wiper blade.

*Robert Bosch, LLC*, 632 F.Supp.2d at 366.

*Robert Bosch* is directly applicable here. As you know, it is routinely cited for the principle that false advertising claims asserting that a party has falsely advertised its patent rights are not actionable under the Lanham Act. Such representations, even if false, are not a representation as to the "nature, characteristics, qualities, or geographic origin of … goods, services, or commercial activities", which are the only advertising statements that are actionable under 15 U.S.C. § 1125(a)(1)(B). Accordingly, you have knowingly filed frivolous claims against ThermoLife; under the argument you made and prevailed on in *Robert Bosch* BPI's claims lack a legal basis. These claims were filed for the sole purpose of harassment, after BPI sued ThermoLife in Arizona.

In summary, to the extent BPI presses forward on claims related to statements about ThermoLife's patents on ThermoLife's website (category 1), BPI and you personally will violate Rule 11. BPI is well-aware that ThermoLife holds patents that have not been invalidated related to the use of "amino acid nitrates." Furthermore, you have previously argued (correctly) in federal court that claims of inventorship, like the ones on ThermoLife's website, are not actionable. You cannot now take a contrary position of law, which you know to be incorrect. *See Daniels v. Sodexo, Inc.*, 2013 WL 4008744, *5 (M.D. Fl. 2013) (imposing sanctions as result of the continued reliance on erroneous legal positions).

With category 1 addressed, I move on to category 3 identified in the Court's January 9, 2020 Order. The Court described category 3 as BPI's claim that, "ThermoLife falsely claims on the label of its Muscle Beach CRTN-3 dietary supplement that the product contains an intact creatine nitrate compound and ThermoLife's licensees make similar misrepresentations on their products." Indeed, this is the only one of the five identified basis for BPI's claim that the Court analyzed in its January 9, 2020 Order. The Court allowed this claim to go forward because, "statements on the label of ThermoLife's Muscle Beach CRTN-3 dietary supplement qualify; these statements are of a commercial nature and are made by ThermoLife – BPI's competitor – to influence consumers to buy the product." (*Id.* at 12.) Despite allowing these claims to move forward, the Court noted that ThermoLife contests that "Muscle Beach [CRTN-3] is a [ThermoLife] product." (*Id.*) The Court though "declined [ThermoLife's] invitation [to consider documents outside the pleadings] and accept[ed] BPI's allegations as true with respect to the ownership of Muscle Beach." (*Id.*) Thus, the Court allowed this claim to go forward only because BPI affirmatively pleaded false information: that CRTN-3 was a ThermoLife product.

March 20, 2020
Page 5

But BPI is well-aware that CRTN-3 is not a ThermoLife product. In its own pleading BPI identified CRTN-3 as "Muscle Beach CRTN-3." (Amended Complaint ¶ 73.)  Moreover, on February 19, 2020, you emailed a notice regarding a subpoena to my office. In your notice, you requested that I waive service of a subpoena for Muscle Beach Nutrition, LLC. Your email included the California Secretary of State Statement for Muscle Beach Nutrition, LLC, which is again attached for your reference as Exhibit 1 here. The Secretary of State Statement identifies Muscle Beach Nutrition, LLC as its own company. Furthermore, the Secretary of State Statement identifies Ron Kramer as the only member of Muscle Beach Nutrition, LLC. A screen-shot of the document is below:

| 1. **Limited Liability Company Name** (Enter the exact name of the LLC.  If you registered in California using an alternate name, see instructions.) | | | | |
|---|---|---|---|---|
| MUSCLE BEACH NUTRITION LLC | | | | |
| 2. **12-Digit Secretary of State File Number** | 3. **State, Foreign Country or Place of Organization** (only if formed outside of California) | | | |
| 201416810203 | CALIFORNIA | | | |
| 4. **Business Addresses** | | | | |
| a. Street Address of Principal Office - Do not list a P.O. Box | City (no abbreviations) | | State | Zip Code |
| 1811 Ocean Front Walk | VENICE | | CA | 90291 |
| b. Mailing Address of LLC, if different than item 4a | City (no abbreviations) | | State | Zip Code |
| 1334 E CHANDLER BLVD # 5-D76 | PHOENIX | | AZ | 85048 |
| c. Street Address of California Office, if Item 4a is not in California - Do not list a P.O. Box | City (no abbreviations) | | State | Zip Code |
| 1811 Ocean Front Walk | VENICE | | CA | 90291 |
| 5. **Manager(s) or Member(s)** | If no managers have been appointed or elected, provide the name and address of each member. At least one name **and** address must be listed.  If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank).  If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank).  Note:  The LLC cannot serve as its own manager or member.  If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions). | | | |
| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | | Suffix |
| Ron | | Kramer | | |
| b. Entity Name - Do not complete Item 5a | | | | |
| | | | | |
| c. Address | City (no abbreviations) | | State | Zip Code |
| 1811 Ocean Front Walk | VENICE | | CA | 90291 |

Accordingly, you now know and should have always known that Muscle Beach Nutrition, LLC is a separate company from ThermoLife, and that Muscle Beach Nutrition, LLC sells its own finished retail products, not ThermoLife finished retail products. ThermoLife is not even a member or manager of Muscle Beach Nutrition, LLC. Thus, there is no basis for BPI's allegation in paragraph 73 of the Amended Complaint that Muscle Beach CRTN-3 is a "ThermoLife dietary supplement."

Since BPI's false allegation was the only reason that the Court allowed BPI's Lanham Act false advertising claim to move forward, BPI must immediately dismiss this claim. You lack a Rule 11 basis to continue to assert this claim. Again, an attorney that continues to press a frivolous claim is personally subject to Rule 11 sanctions. *See In re Froid,* 106 B.R. 293, 295 (Bankr. M.D. Fla. 1989); *see also In re Engle Cases*, 767 F.3d at 1117. As an officer of the Court, you have an affirmative duty to correct the materially false allegations in BPI's Amended Complaint.

This leaves just claims in category 2 of the Court's Order: "promotions concerning the invention, synthetization, discovery, and performance of various amino acid nitrates and related compositions." Claims in this category also lack a Rule 11 basis. First, the Court identified category 2 as including false statements made in "patents and promotions."  To the extent BPI can identify any false statement made in a patent, as explained above (with respect to categories 4 and 5), the Court has properly determined that such a statement is not actionable under the Lanham

March 20, 2020
Page 6

Act. Second, claims in category 2 also lack a Rule 11 basis because BPI failed to identify any false ThermoLife "promotion." The only alleged promotions discussed in the Amended Complaint are promotions of Muscle Beach Nutrition's product. Again, as explained above, CRTN-3 is not a ThermoLife product; Muscle Beach Nutrition and ThermoLife are separate entities.[2]

Finally, BPI's false marking claim also lacks a Rule 11 basis. Here, again, BPI's allegation that CRTN-3 was a ThermoLife product was the only reason the Court allowed this claim to move forward. As the Court explained:

> The only ThermoLife product specifically identified as being a marked unpatented article (the 'what') is the Muscle Beach CRTN-3 dietary supplement. (Am. Compl. ¶¶ 73-77, 158 -166.) BPI generally alleges that ThermoLife's licensees' 'product(s)' are falsely marked (*id.* ¶¶ 79, 163-165, 197), but that allegation lacks the specificity required of Rule 9(b).

(DE 37 at 16.)

In so holding, the Court went on to explain that ThermoLife could not be held responsible for the patent markings included on its licensee's products, stating: "BPI has cited no case law extending liability to a patent holder for markings by a licensee, when the marking statute on its face attaches liability to the person who marks the unpatented product." (*Id.*) As a result, the sole basis that the Court found for BPI's false marking claim was BPI's false allegation that "ThermoLife's Muscle Beach CRTN-3 product is falsely marked with inapplicable patents." (*Id.* at 17.) But, again, CRTN-3 is not a ThermoLife product at all. And BPI knows this.

In summary, BPI's Amended Complaint survived ThermoLife's Motion to Dismiss only because BPI falsely alleged that CRTN-3 was a ThermoLife product. It isn't. And there can be no dispute on this point. As required by Rule 11, you must immediately withdraw BPI's false pleading. With this false allegations withdrawn, BPI's entire Amended Complaint fails as pleaded.[3]

---

[2] BPI's common law unfair competition claim similarly lacks a Rule 11 basis. Here, the Court allowed this claim to go forward for the same reasons it allowed BPI's false advertising claim to move forward: BPI falsely alleged that CRTN-3 was a ThermoLife product. Accordingly, there is no factual basis for this claim either and it must be dismissed.

[3] Because BPI's false allegation that CRTN-3 is a ThermoLife product is easily demonstrated as false, there is no reason here to discuss in detail the fact that Muscle Beach Nutrition's statements regarding Creatine Nitrate are unquestionably true. Briefly, it is worth noting though that even the study that BPI cites in its Amended Complaint on Creatine Nitrate, Acute and chronic safety and efficacy of dose dependent creatine nitrate supplementation and exercise performance, Journal of International Society of Sports Nutrition (2016), found that Creatine Nitrate was more effective at increasing athletic performance than creatine monohydrate. The results section states, "Only the CrN-High [Creatine Nitrate] group was significantly greater than PLA [placebo] ($p < 0.05$)." Moreover, contrary to your pleadings, Muscle Beach is correct to assert that Creatine Nitrate is a "fusion" (or mixture) of 3 separate forms of Creatine; Merriam-Websters provides the following synonyms for "fusion": blend, combination, composite, mix,

March 20, 2020
Page 7

We fully recognize that Rule 11(c)(2) requires ThermoLife to serve you with a Rule 11 Motion under Rule 5 21-days prior to filing the motion with the Court. Because you did not sign the Amended Complaint, we have decided to provide you an opportunity to correct BPI's factual pleadings here prior to the service of the Rule 11 Motion. If you refuse to withdraw the false allegations from BPI's Amended Complaint by March 27, 2020, we will serve you with a Rule 11 Motion under Rule 5. That motion will identify your failure to take action in response to this letter as a separate basis for sanctions and seek an award of attorneys' fees against you and your firm personally. Regardless, of how you move forward here, BPI's false allegations and its failure (until now) to correct this false allegation provides grounds for an award of attorneys' fees in this matter under 35 U.S.C. § 285 and 15 U.S.C. ¶ 117(a).

I look forward to hearing from you in response to these issues on or before March 27, 2020.

Sincerely,

KERCSMAR & FELTUS PLLC

*s/Greg Collins*

Greg Collins

GBC/mab

---

mixture. There can be no dispute that the 3 different Creatine forms used in CRTN-3 is a mixture or blend of Creatine nitrate, Creatine monohydrate, and Creatine HCL; after all, all 3 of these different creatine sources are clearly listed on the label in the Supplement Facts Panel as separate ingredients. Finally, to the extent BPI continues to believe that the fact that Creatine Nitrate dissociates in water is grounds for false advertising (and, it is not), then BPI has no grounds to sue for false advertising, as BPI is advertising the Creatine compounds in its own Best Creatine product (Creatine Magnapower Creatine AKG, and Creatine phosphate, which are salts that disassociate in water) in the exact same way, which is discussed in our recent disclosure of affirmative defenses. Further, illustrating that "creatine nitrate" is properly listed on Muscle Beach Nutrition's label, one of your other clients, Hi-Tech Pharmaceuticals, sells a product under the brand name "APS Creatine Nitrate." Like Muscle Beach Nutrition, APS lists this as one ingredient on its label. A copy of the APS label is available here: https://www.apsnutrition.com/products/creatine-nitrate. Your own client lists "creatine nitrate" on its label just as Muscle Beach Nutrition does and also your current client, BPI, lists creatine salts (which creatine nitrate is) on its label as one ingredient, just as Muscle Beach Nutrition does. As you are well aware, this is not false advertising, this is harassment. Therefore, even an assertion against Muscle Beach Nutrition on these grounds is frivolous.