IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BPI SPORTS, LLC,

    Plaintiff,

vs.

THERMOLIFE INTERNATIONAL, LLC, MUSCLE BEACH NUTRITION LLC LLC and RONALD L. KRAMER,

    Defendants.

CASE NO.: 0:19-cv-60505-SMITH

## RESPONSE TO EXPEDITED REQUEST FOR TELEPHONIC STATUS CONFERENCE

Plaintiff, BPI Sports, LLC ("BPI"), by and through its undersigned counsel, hereby responds to Defendants' Expedited Request for Telephonic Status Conference to Discuss Maintaining Current Pre-Trial Schedule [D.E. 98] ("Request for Status Conference") as follows.

### RESPONSE

BPI will participate in a status conference if the Court deems it necessary.[1] Exhibit 1, email dated June 10, 2010. Unfortunately, Defendants' Request for Status Conference is not a *bona fide* attempt to complete discovery by July 8, 2020—it is a blatant attempt to avoid discovery relating to Muscle Beach Nutrition. This was confirmed in a telephonic conference held after the filing on June 11, 2020, in which defense counsel, Gregory Collins, confirmed Defendants' position that the indemnification proposal removes Defendants' obligation to comply with BPI's outstanding discovery relating to Muscle Beach Nutrition, its relationship to ThermoLife, or Defendants' past representations. Defendants neglected to inform the Court that "streamlining" the case meant racing to the discovery deadline by *again* deeming BPI's discovery irrelevant.

---

[1] The Court's Order on BPI's Motion for Leave to Amend, the Court indicated that "the Court will extend pretrial deadlines and the trial date to accommodate the amendment" and "upon Muscle Beach Nutrition, LLC's appearance in this case, the Court will enter a separate scheduling order." D.E. 91. Since BPI was not certain how the close of discovery would be affected in the new scheduling order, if at all, following the issuance of this Order, counsel for BPI (i) raised the issue with defense counsel about how the upcoming depositions should be handled; (ii) requested availability from defense counsel to discuss scheduling further; and (iii) asked for any alternative proposals. Exhibit 1, email dated June 8, 2020.

Defendants also fail to disclose that their "proposal" came immediately *after* BPI contacted Defendants and informed them that their objections to BPI's outstanding discovery—which relates primarily to the relationship between ThermoLife, Muscle Beach Nutrition and CRTN-3—are moot in view of the Second Amended Complaint.  Exhibit 1, email dated June 8, 2020.  Rather than address the outstanding discovery, Defendants indicated that they wanted to "move the Court for a scheduling conference to address the pending deadlines here in light of the filing of the second amended complaint."  Exhibit 1, June 9, 2020.  The motion has nothing to do with "scheduling."

Significantly, the outstanding discovery is the subject of two pending motions to compel based on Defendants' endless and meritless objections that BPI is not entitled to *any* information about Muscle Beach Nutrition because it is not a party and this entity is irrelevant to the First Amended Complaint.  D.E. 62, 87.  As the Court is well-aware, this type of obfuscation regarding Muscle Beach Nutrition was the main reason the Second Amended Complaint was pursued in the first place.  BPI's entire second set of requests for production and interrogatories are directed to revealing ThermoLife's entangled relationship to Muscle Beach Nutrition (and their products), including investigating representations made by Defendants about these relationships.  D.E. 87-7.  Defendants failed to provide any documents or answer any interrogatories based on lack of relevance (and other hollow objections) despite the fact that the discovery was predicated on representations and defenses Defendants themselves injected into the case.[2]  D.E. 87-7.

Rather than withdraw the relevance and other objections now that Muscle Beach Nutrition is a party (and produce the information), Defendants have found a new way to shield Muscle Beach Nutrition from discovery: a transparent proposal whereby ThermoLife is responsible for Muscle Beach Nutrition in *every respect*.  Although Defendants advance this proposal as a measure for "conserving time" and "preserving resources," it is designed to preclude BPI from securing the **exact same discovery** BPI has been seeking regarding Muscle Beach Nutrition for months.  Defendants are going to these lengths in the hope of distancing themselves from previous positions,

---

[2]  Magistrate Valle has set a telephonic hearing on BPI's two motions to compel on June 19, 2020. D.E. 90.  Pursuant to the pre-hearing Order, the parties are in the process of submitting updated meet and confer charts to be included in filings due June 12, 2020.  *Id*.  Defendants are expected to raise indemnification as a new ground for avoiding the pending discovery.  In any case, BPI will refer Magistrate Valle to the Request for Status Conference and this filing.  Based on the probative nature of the discovery, coupled with Defendants' actions, all of Defendants objections should be overruled.

and sanitizing evidence that has already been produced, which BPI believes includes suspicious and incredible documents, testimony and representations. *See*, *e.g.*, D.E. 64 and 74.

Case in point, Defendants have been claiming that ThermoLife and Muscle Beach Nutrition are separate entities, operating at arm's length, such that ThermoLife has nothing to do with CRTN-3, the sale thereof, or the associated advertising. Defendants went so far as to repeatedly threaten sanctions against BPI and its counsel for maintaining that CRTN-3 is a ThermoLife product. *See*, D.E. 87, Exhibits (including Rule 11 Letter (D.E. 87-1) and proposed Rule Motion (D.E. 87-2) (not filed following BPI's letter (D.E. 87-3)). In response to BPI's first Motion to Compel (D.E. 62), Mr. Collins submitted a declaration in which he testified, under oath, that "CRTN-3 isn't sold or marketed by ThermoLife; the product is sold by Muscle Beach Nutrition." D.E. 65-1, ¶4. Mr. Collins provided the same testimony in response to BPI's Motion for Leave to Amend (D.E. 64). D.E. 69-1, ¶7. Mr. Collins further testified that prior to becoming aware of the Second Amended Complaint, "Defendants have been preparing to defend this case by demonstrating that CRTN-3 was not a ThermoLife product." D.E. 69-1, ¶8. Then when BPI propounded discovery to probe these representations, ThermoLife refused to respond *at all* based on lack of *relevance*.[3] D.E. 87-7. Now, after a year of claiming that Muscle Beach Nutrition is a mere licensee (with no trademark license and a potentially fraudulent patent license), ThermoLife has elected to stand in its shoes, hold it harmless and pay any judgment against it, *including the false advertising of CRTN-3 which ThermoLife repeatedly disavowed*.

BPI is at a loss about how (1) Defendants could have the audacity to engage in *more* gamesmanship and obfuscation regarding discovery into Muscle Beach Nutrition even after the filing of the Second Amended Complaint added this entity as a party; (2) once again use Muscle Beach Nutrition as a "sword and a shield" even after the Court cautioned that doing so "frustrates not only Plaintiff's ability to litigate its case, but also stymies discovery in this action"; and (3) attempt to mislead and misinform the Court that the Request for Status Conference relates to the close of discovery without disclosing the ulterior motive of avoiding BPI's discovery. At most, Defendants state that with "ThermoLife agreeing to stand behind any Judgment entered against MBN, *additional time for discovery is not necessary* and thus no changes are necessary to the

---

[3] In an email on May 12, 2020 to BPI's counsel, Mr. Collins disingenuously stated that "I profess to honestly have no idea what relevancy any of the discovery sought related to ThermoLife's connections with Muscle Beach Nutrition, LLC has to any claim in the First Amended Complaint."

scheduling order."  Request for Status Conference, p. 2 (emphasis added).  This does not adequately inform the Court of Defendants' distorted view that they will have no obligation under such an agreement to address any discovery directed at Muscle Beach Nutrition, yet that is what is meant by "additional time for discovery is not necessary."[4]  The only conceivable reason to burden the Court with this indemnification offer is to lay the groundwork for future objections (*e.g.*, at the upcoming discovery hearing with Magistrate Valle, at the party depositions, etc.) that the relationship between ThermoLife and Muscle Beach Nutrition has been rendered irrelevant, thereby gutting BPI's outstanding discovery (or any future attempts to secure discovery).

Even if the Court were inclined to entertain Defendants' arguments, whether ThermoLife indemnifies Muscle Beach Nutrition has no effect whatsoever on the discovery to which BPI seeks (presently or in the future).  This is particularly true in those instances where Defendants have already taken tenuous *factual* positions or provided questionable documents and testimony.  BPI has the right to investigate those position to see whether they *ever* had any propriety.  The mere fact that ThermoLife has unilaterally decided to redefine its relationship to Muscle Beach Nutrition should not foreclose BPI's ability to establish that Defendants falsely represented the situation in the first place, avoided discovery that would confirm BPI's suspicions about the relationship and produced evidence that may well have been manufactured to perpetrate a fraud.

A party simply does not behave in this manner unless it is hiding damaging information.  To give the Court an appreciation of the significance of the investigation into the evidence Defendants have provided—and why Defendants want to avoid all discovery regarding Muscle Beach Nutrition—in their Motion to Dismiss, Defendants alleged that Muscle Beach Nutrition is a "licensee" of ThermoLife.  D.E. 16, p. 3, fn. 1.  In support of this position, ThermoLife produced an alleged "Purchase and License Agreement."[5]  BPI served an interrogatory about the basic circumstances surrounding this document (*e.g.*, creation, author, date, signatory, witnesses, etc.) and a document request for the native files (and metadata) to determine when it was created.  D.E. 87-7, Request for Production 1-3 and Interrogatory No. 1 (to ThermoLife).  ThermoLife has refused to respond to this discovery or even answer a *single question* about the license *ThermoLife produced* which is antithetical to the document being authentic and credible.  ThermoLife has all

---

[4]  Defendants' true motives are also reflected in a footnote curiously stating that "BPI's alter ego allegations are moot."  Request for Status Conference, f.n. 2.

[5]  Bates stamped TLI000555-TLI000562) (confidential).

but admitted that none of the documents that would have necessarily been generated if the license was legitimate even exist (purchase orders, invoices and proof of payment).  D.E. 87-7, Requests for Production 4, 5 and 7.  In the event the document was not created or executed at or near the date reflected, but rather, was prepared for purposes of litigation to support the misrepresentation that Muscle Beach Nutrition is a "licensee" of ThermoLife, the license agreement is fraudulent and Defendants have fabricated evidence.

Likewise, to avoid the filing of the Second Amended Complaint and to avoid discovery designed to reveal the relationship between ThermoLife and Muscle Beach Nutrition, Mr. Collins repeatedly testified under oath that "CRTN-3 isn't sold or marketed by ThermoLife; the product is sold by Muscle Beach Nutrition."  D.E. 65-1, ¶4; D.E. 69-1, ¶7.  ThermoLife and Kramer[6] then denied the *relevance* of BPI's interrogatories regarding this and other representations, including (i) the business conducted in the building housing the Muscle Beach Nutrition retail store (a/k/a the ThermoLife retail store); (ii) what entity pays for the marketing of CRTN-3; (iii) whether revenue from CRTN-3 was deposited into a ThermoLife bank account; (iv) whether ThermoLife funds have been used for some or all of the operations of Muscle Beach Nutrition, including marketing expenses; and (v) which ThermoLife employees perform marketing on behalf of Muscle Beach Nutrition.  D.E. 87-7 (Interrogatory No. 2 (to ThermoLife); Interrogatory Nos. 1, 2 and 7 (to Kramer)).[7]  BPI also asked for financial statements which would resolve or at least shed light on all of these issues.  D.E. 87-7 (Request for Production No. 11).  If Muscle Beach Nutrition has no actual operations, if ThermoLife paid for the marketing of CRTN-3 and/or if ThermoLife generated revenue from the sale CRTN-3, the sworn testimony provided by Mr. Collins is not true.[8]

Given the lengths Defendants have gone to in order to avoid disclosure—and given what discovery into Muscle Beach Nutrition may ultimately show—it is central to the issues of whether

---

[6] Kramer has refused to provide a single substantive response to any of the twenty-two (22) Interrogatories propounded by BPI.  See D.E. 62, 87 (BPI's motions to compel Kramer).

[7] BPI has also issued subpoenas to the manufactures of the finished product CRTN-3 to determine what entity ordered, paid for, and took title to this product (which in turn was sold).  If it was ThermoLife, not Muscle Beach Nutrition, Defendants have provided false testimony that "CRTN-3 isn't sold by ThermoLife."

[8] BPI has already provided substantial evidence about ThermoLife and Muscle Beach Nutrition that is inconsistent with the testimony of Mr. Collins.  *See*, *e.g.*, D.E. 74, p. 2-5.

Defendants have committed litigation misconduct and whether this case should be deemed exceptional for purposes of attorneys' fees.

In summary, Defendant's Request for Status Conference should be denied outright in favor of a fair schedule based on the Court's discretion, or alternatively, granted if for no other reason than to compel Defendants to provide a full explanation why they used the auspice of scheduling to avoid discovery previously served on them.   At a minimum, BPI respectfully requests that the Court provide BPI with a reasonable amount of time to receive complete responses to its outstanding discovery and take the appropriate depositions free of meritless objections.   Finally, BPI objects to Defendants using an expedited motion as a "fig leaf" for chicanery that costs BPI and the Court precious time, effort and resources.

Respectfully submitted,                                                Dated this 12th day of June, 2020.

KRINZMAN, HUSS & LUBETSKY
FELDMAN & HOTTE
Cary A. Lubetsky
Florida Bar No. 961360
Salvatore H. Fasulo
Florida Bar No. 143952

800 Brickell Avenue, Suite 1501
Miami, Florida 33131
Telephone:   (305) 854-9700
Facsimile:   (305) 854-0508
Primary email:    cal@khllaw.com
                                shf@khllaw.com
Secondary email: eservicemia@khllaw.com

HILLYER LEGAL, PLLC

*s/ Gregory L. Hillyer*
Gregory L. Hillyer
Fla. Bar No. 682489
Email: ghillyer@hillyerlegal.com
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015-2052
Telephone: 202-686-2884
Facsimile: 202-686-2877

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Return of Service was filed via CM/ECF on June 12, 2020 and served on all counsel of record.

<em>s/ Gregory L. Hillyer</em>