IN THE UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF
FLORIDA

BPI SPORTS, LLC,

    Plaintiff,

vs.

THERMOLIFE INTERNATIONAL, LLC,
and RONALD L. KRAMER,

    Defendants.

CASE NO. 0:19-cv-60505-SMITH

**DEFENDANTS THERMOLIFE AND KRAMER'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff's Motion for Partial Summary Judgment seeks an order "that Defendants have no patent rights in the composition of matter creatine nitrate under the '074 Patent [U.S. Patent No. 7,777,074]." (DE 81 at 17.) The very fact that Defendants make this request demonstrates that defendants currently *do* have patent rights in the composition of matter creatine nitrate under the '074 Patent and the '074 Patent is not invalid. If the patent reexamination of the '074 Patent had concluded, pursuant to 35 U.S.C. § 307 and 37 C.F.R. § 1.570(a), a Reexamination Certificate would have issued and BPI simply would be enforcing that decision if it were successful.

35 U.S.C. § 307, titled *Certificate of patentability, unpatentability, and claim cancellation*, states:

> In a reexamination proceeding under this chapter, when the time for appeal has expired or any appeal proceeding has terminated, the Director will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable.

And, 37 CFR § 1.570(a), titled *Issuance and Publication of Ex Parte Reexamation Certificate Concludes Ex Parte Reexamination Proceeding*, provides:

> **To conclude an ex parte reexamination proceeding, the Director will issue and publish an ex parte reexamination certificate in accordance with 35 U.S.C. 307** setting forth the results of the ex parte reexamination proceeding and the content of the patent following the ex parte reexamination proceeding.

(Emphasis added.) Pursuant to 35 U.S.C. § 307 and 37 C.F.R. § 1.570(a), no Reexamination Certificate has issued with respect to the '074 Patent making it clear the reexamination proceeding has not yet concluded. (Defendants' Statement of Material Facts ("DSOF") ¶ 101.)

The subject matter of the '074 Patent that BPI improperly asks this Court to declare invalid is currently involved in a reexamination proceeding and until a Reexamination Certificate issues stating otherwise, the '074 Patent, as originally granted by the USPTO, is entitled to a presumption of validity. Contrary to the misleading citations that are peppered throughout BPI's brief, every single court that ever has considered this issue is in agreement. In fact, USPTO decisions made during a reexam proceeding that have ***not*** been made final by the issuance of a Reexamination Certificate are inadmissible, when used to establish that the patent at issue is invalid (contrary to BPI's argument here), because of the "risk of prejudice and confusion by allowing evidence of incomplete Reexamination proceedings that would call into question the presumption of [patent] validity." *Tire Servs. Equip. Mfg. Co., Inc. v. Gaither Tool Co.*, 158 F. Supp. 3d 774, 780 (D. Minn. 2016) (quoting *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.,* 597 F. Supp. 2d 897, 907 (N.D. Iowa 2009); *see also* 37 CFR § 1.570(a).

The fact that BPI filed this Motion while the '074 Patent currently is involved in a reexamination proceeding, and a Reexamination Certificate has not issued, highlights BPI's complete misunderstanding of patent law and warrants immediate denial of BPI's Motion. Nonetheless, BPI spends 17 pages trying to confuse the issue with completely irrelevant and incorrect legal citations (which are addressed below). Then, after 17 pages of irrelevant argument,

BPI's own summary of its motion highlights for this court just how oblivious BPI is regarding patent law principles. BPI concludes its Motion by saying:

> In summary, this is not a situation where a claim to the composition of matter of creatine nitrate could ever be pursued in the '074 Patent, … it [is] <u>legally impossible</u> for a composition of matter claim to creatine nitrate to be the subject of any patent, or any certificate of reexamination.

(DE 81 at 17.) Nothing could be further from the truth. Defendants are due to file a Petition for Writ of Certiorari on or before August 10, 2020[1], appealing from the Federal Circuit Court of Appeals January 10, 2020 decision affirming the Patent and Trademark Appeal's Board's Decision finding Claim 6 of the '074 Patent anticipated under 35 U.S.C. § 102. Represented by its separate patent counsel, Latham Watkins, the Defendants will seek Supreme Court review. ("DSOF ¶ 100.) If this Court granted BPI's Motion, the decision would be subject to reversal if the United States Supreme Court were to grant certiorari and were to reverse the Federal Circuit. Critically, contrary to BPI's legally incorrect argument, a victory before the Supreme Court easily can result in ThermoLife owning a valid patent covering the composition of matter of creatine nitrate: whether or not ThermoLife will continue to have "patent rights in the composition of matter creatine nitrate" in the '074 Patent is now something that is up to the Supreme Court to decide. Regardless, it is clearly not "legally impossible" as BPI claims. Rarely are summary judgment motions so inappropriate, but the fact that the '074 Patent is still involved in a reexamination proceeding, and no Reexamination Certificate has issued, with a simple citation to the black letter patent law stated in 35 U.S.C. § 307 is all that is needed for denial of BPI's Motion.

---

[1] The Federal Circuit Court of Appeals denied ThermoLife's petition for panel rehearing en banc on March 20, 2020. (PSOF ¶ 43.) Supreme Court Rule 13.1 sets the deadline to file a writ of certiorari 90 days after denial of a motion for rehearing. Due to the ongoing public health concerns related to COVID-19, on March 19, 2020, issued Order List 589, which extended this deadline to 150 days, here August 10, 2020. (DSOF ¶¶ 99-100.)

3

The Court also should deny BPI's Motion because the scope of the '074 Patent is not dispositive on any BPI claim. BPI has no claim entitling it to a declaratory judgment regarding any subject matter of the '074 Patent; nor could it amend its claims to add such a count here, since ThermoLife never has asserted the '074 Patent against BPI.[2] Furthermore, as explained below, a decision "that Defendants have no patent rights in the composition of matter creatine nitrate under the '074 Patent" is not dispositive on either BPI's false advertising or false patent marking claims. As a result, a ruling under Rule 56(g) on this issue will not resolve any claim or defense. For this reason, as well, BPI's Motion should be denied.

This response is supported by the separately filed Defendants' Response to Statement of Material Fact and Defendants Separate Statement of Facts ("DSOF").

## MEMORANDUM OF POINTS AND AUTHORITIES

Typically, a response to a motion for summary judgment would begin by addressing the relevant standard for entry of summary judgment and then go on to identify factual disputes. BPI's Motion, though, is not a typical motion for summary judgment. Instead of moving for summary judgment on a claim or defense, BPI seeks summary judgment: "that Defendants have no patent rights in the composition of matter creatine nitrate under the '074 Patent [U.S. Patent No. 7,777,074]." (DE 81 at 17.) But, the fact that BPI seeks to have established here is unquestionably not true. Furthermore, as discussed in Section II of this response, the factual support upon which BPI relies to make its argument is not relevant or admissible. To the extent any party is entitled to summary judgment on this fact, ThermoLife is entitled to have the Court establish that the '074

---

[2] *Mfg Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059, 60 (Fed. Cir. 1995) (declaratory judgment plaintiff lacked standing to bring a declaratory judgment claim seeking invalidity of the patent at issue because the patentee had not asserted the patent against the plaintiff); *see also Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, Case No. 18-cv-60912-Bloom/Valle, 2018 WL 4932282 (S.D. Fla. Oct. 10, 2018) (patent owner's covenant not to sue plaintiff seeking declaratory judgment on validity of patent eliminated case or controversy), *aff'd on other grounds*, 806 Fed. Appx. 966 (May 26, 2020).

Patent, including its protection of creatine nitrate, is presumed valid before this Court. For this reason, the presumption of validity of the '074 Patent, including its protection of creatine nitrate, is addressed in Sections I-II of this brief, prior to any discussion of the relevant summary judgment standard. Section III of this brief then addresses the procedural impropriety of BPI's request.[3]

**I.     The '074 Patent Is Presumed Valid Before This Court Until A Reexamination Certificate Issues Stating Otherwise; Accordingly, BPI's Motion, Which Demonstrates A Fundamental Misunderstanding Of Patent Law, Should Be Denied.**

**A.     Federal Statutes, Federal Regulations, And Federal Circuit Court of Appeals Decisions Establish That Patents Are Presumed Valid While A Reexamination Is Pending.**

BPI acknowledges that Claim 1 of the issued '074 Patent protects the compound creatine nitrate. (PSOF ¶ 23.) BPI then goes on to explain that the '074 Patent currently is undergoing reexamination in the United States Patent Office and during the reexamination, "ThermoLife substantially amended issued Claim 1 to remove creatine nitrate." (DE 81 at 5.) As BPI indicates, these amendments resulted in proposed amended Claim 6 protecting the compound creatine nitrate. (PSOF ¶ 30.) As BPI points out, in the reexamination proceedings, proposed amended Claim 6 has been rejected under 35 U.S.C. § 102, as anticipated by the prior art. (PSOF ¶¶ 32, 35.) ThermoLife appealed from that decision and the Patent Trial and Appeals Board affirmed the rejection. (PSOF ¶¶ 36, 40.) ThermoLife furthered appealed that decision to the Federal Circuit Court of Appeals. (PSOF ¶ 41.) Again, the rejection was affirmed. A mandate issued on March 20, 2020. (PSOF ¶ 43.) And. ThermoLife's Petition for Writ of Certiorari is due on or before August 10, 2020, which it will pursue. (*Supra* n. 1.)

---

[3] Defendants separately have addressed each of Plaintiff's statements of fact in their separately filed DSOF. For brevity, this Response does not include either a procedural background or a factual background section. The relevant procedural background and factual background is included along with the legal argument below.

5

Relying on this procedural background, which is all taken directly from the USPTO reexamination of the '074 Patent, BPI's Motion claims that "to the extent ThermoLife had any valid rights to claim 1 [] after the initiation of the reexamination (presumptively or otherwise), those rights were eliminated when these claims were canceled." (DE 81 at 13.) In support of this, BPI cites only "common sense." But "common sense" is not the law, and BPI's convoluted arguments are not "common sense" either.

Patent reexamination proceedings are governed by the Code of Federal Regulations. 37 CRF 1.530(k) provides that in any ex parte reexamination:

> Although the Office actions will treat proposed amendments as though they have been entered, **the proposed amendments will not be effective until the reexamination certificate is issued and published**. (Emphasis added.)

As the Federal Code of Regulations confirms, amendments like the amendments that ThermoLife offered during reexamination, are not final until the Reexamination Certificate issues. As a result, until a Reexamination Certificate issues a patent continues to be presumed valid as issued. Accordingly, a Reexamination Certificate related to the '074 Patent will not issue until "any appeal proceeding has terminated." *See* 35 U.S.C. § 307. If this court granted BPI's motion based on the evidence presented by BPI, this court would interfere with the reexamination of the '074 patent and ThermoLife's right to exhaust its appellate remedies. This, too, legally should end the inquiry here and, as a result, BPI's Motion should be denied.

And, contrary to BPI's argument, this is the result that makes "common sense." This is because until the Reexamination Certificate issues, the patent claims still can be allowed/amended/rejected/canceled during the pendency of the reexamination. As a result, while in reexamination, the claims of the patent are in flux. The '074 Patent is the perfect example of this, because during the reexamination, ThermoLife proposed amendments to the patent that, as

BPI points out, proposed that amended Claim 6 now would protect creatine nitrate, instead of Claim 1. (PSOF ¶ 30.) The validity of Claim 6 will pend before the U.S. Supreme Court, with ThermoLife's Petition for Certiorari due on August 10, 2020. A successful outcome in that proceeding can result in remand to the USPTO after which a Patent Reexamination Certificate may issue that includes protection for "patent rights in the composition of creatine nitrate." Indeed, ThermoLife's proposed amended Claim 6, which BPI concedes covers creatine nitrate, is the very subject of ThermoLife's forthcoming petition to the Supreme Court. (PSOF ¶ 30; DSOF ¶¶ 95-101.) But, regardless of that outcome, until a Certificate of Reexamination issues, any claim cancellations and/or amendments made during the '074 Patent reexam are not legally effective or binding. See 37 CRF 1.530(k).

*Infinity Headwear & Apparel, LLC v. Jay Franco & Sons, Inc.*, 2016 WL 5372843 (S.D. N.Y. 2016), is a perfect example. There, the district court applied the regulations and statutes cited above to achieve the same result Defendants have reached here. There, defendant moved the court to dismiss the plaintiff's infringement claims against it because, during the re-examination of the patent at issue, the plaintiff had amended the relevant patent claims. The court denied defendant's motion because the patent still was pending reexamination; no Reexamination Certificate had issued. In reaching this decision, the court provides a detailed discussion regarding the effects of amending a claim during a patent reexamination on the validity of the patent. As the *Infinity Headwear* Court explained:

> [Defendant's] arguments fail to understand the relationship between an action for patent infringement in federal court and a co-pending administrative proceeding in the form of an ex parte reexamination at the PTO. …. [E]ven though the PTO "will treat proposed amendments as though they have been entered, ***the proposed amendments will not be effective until the reexamination certificate is issued and published.***" 37 C.F.R. § 1.530(k). That is, "[u]ntil a reissue application is granted, the original patent shall remain in effect." *Id.* § 1.178. Amendments made during reexamination … are not controlling and do not nullify the effect of the claims of

7

>the original patent until ***after*** the reissue application is granted and the PTO issues a reexamination certificate.

*Id*. at * 4 (emphasis in original). As *Infinity Headwear* explains, the Reexamination Certificate concludes the reexam and, until that certificate issues, any allowances/amendments/rejections/cancelations made during the reexamination proceeding are not binding outside of the reexamination.[4]

To argue otherwise, BPI tries to confuse the issue by discussing case law concerning the presumption of validity of "patents in reexam", instead of the validity of "patents in court proceedings." (DE 81 at 12.). As BPI's cited cases show, patents in reexamination are not presumed valid for the purposes of reexamining the patent, *in the reexam proceeding*, in light of new art presented. *See In re Etter*, 756 F.2d at 857; *see also Gould v. Control Laser Corp*., 705 F.2d 1340, 1342 (Fed. Cir. 1983). ThermoLife agrees that for the purpose of *reexamining patents in reexamination proceedings* the examiner must look at the claim through neutral eyes. It stands to reason that if "a substantial new question of patentability" is raised, an examiner must look at the art as if they are examining the issue for the first time, but this is where BPI's argument ends.

Contrary to BPI's arguments, in *court* proceedings, patent claims are valid as issued unless a Reexamination Certificate issues stating otherwise. As the Federal Circuit Court of Appeals explained in *Ethicon, Inc. v. Donald J. Quigg,* 849 F.2d 1422 (Fed. Cir. 1988),"Before the courts, a patent is presumed valid and the party asserting invalidity must prove facts to establish invalidity

---

[4] *Infinity Headwear* is not a novel application of these statutes and regulations. Federal courts routinely apply a presumption of validity to patents that are undergoing reexamination. As this Court is well-aware, the validity of patents pending reexamination frequently is addressed when parties seek to stay patent litigation pending resolution of a reexamination. While courts typically stay such cases, pending reexamination, they do so in order to preserve judicial resources because patent reexaminations can limit the issues in pending infringement cases. District courts though are free to move forward with patent infringement claims, even when a reexamination is pending, and, when they do, the patent still is entitled to a presumption of validity. *Bartex Research, LLC v. FedEx Corp.,* 611 F.Supp.2d 647 (E.D. Tex. 2009) (declining to stay patent infringement lawsuit pending the outcome of reexam and noting that the "patent is presumed valid").

of each claim by clear and convincing evidence. 35 U.S.C. § 282 [additional citation omitted]. In a reexamination proceeding, on the other hand, there is no presumption of validity and the 'focus' of the reexamination 'returns essentially to that present in an initial examination … [because] the intent underlying reexamination is to start over in the PTO with respect to the limited examination areas."[5] While this matter is pending before this federal district court, the '074 Patent is entitled to a presumption of validity.

In sum, unless a Reexamination Certificate issues stating otherwise, the '074 Patent, as originally granted by the USPTO, is entitled to a presumption of validity.

**B.   Every Court That Has Considered Whether A Negative Result In A Pending Reexamination Effects The Validity Of The Patent, While The Reexamination Is Still Pending, Have Concluded That The Patent Is Presumed Valid.**

Every federal district court that has considered whether a negative result in a pending reexamination effects the validity of the patent, before the Reexamination Certificate issues, has held that in these circumstances the patent is presumed valid as originally issued.

In *Tire Services Equipment Mfg. Co., Inc. v. Gaither Tool Co.*, 158 F. Supp. 3d 774, 780 (D. Minn. 2016), the court dealt with this issue. There, the defendant counterclaimed asserting that the plaintiff was committing false patent marking by marking its product with a patent that was undergoing reexamination. In the reexamination proceeding, the USPTO had "finally rejected" all of the patent's claims. At the time of the *Tire Services* decision, the patentee was appealing the USPTO's decision to the Patent Appeals Board. As the *Tire Services* Court explained, the fact that the USPTO's decision was on appeal meant that that the "final[] rejection" was not a final

---

[5]   BPI also cites additional cases *Slip Track Systems, Inc. v. Metal Lite, Inc.,* 159 F.3d 1337 (Fed. Cir. 1998) and *SHFL Entertainment Inc. v. DigiDeal Corp.*, 729 Fed. App. 931, 934 (Fed. Cir. 2018), for the unremarkable position that once a patent reexamination concludes along with all appeals therefrom, the reexamination decision is binding in pending litigation involving the patent. In both cases, the Reexamination Certificate already would have issued for the patent at issue, since all appeals were concluded. None of these cases applies here.

resolution. It held, "[T]here has been no issuance of a Reexamination Certificate, which would mark the finalization of the reexamination proceedings. Without the reexamination being final, [Claimant] cannot demonstrate that the [Defendant] acted with knowledge that it was deceiving the public by marking its products with the [patent at issue]." *Id*. at 780. *Tire Services* is directly on point. Until a Reexamination Certificate issues, the patent undergoing reexamination still is presumed valid and this presumption still applies even when there has been a negative result in the pending reexamination.[6]

*Monster Energy Comp. v. Vital Pharmaceuticals, Inc.*, 2019 WL 2619666 (C.D. Cal. May 20, 2019), also is directly on point. There, the plaintiff brought suit alleging that the defendant falsely patent marked its products by listing a patent on its product that was undergoing reexamination. As the district court's opinion notes, the plaintiff alleged that "the [patent at issue] was finally rejected by the U.S. Patent and Trademark Office [during reexamination] as obvious in February 2018, a decision which was affirmed by the U.S. Patent Trial and Appeals Board in March 2019. [Defendant] has continued to advertise [the product] after the March 2019 final rejection of the '466 Patent." *Id*. at *2. After explaining the basis for the plaintiff's claim, the court granted defendant's motion to dismiss the false marking claim stating, "the '466 Patent currently remains valid, because proceedings over the validity of the patent in the U.S. Patent and Trademark Office have not concluded. … It appears that Plaintiff is in fact attempting to challenge the validity of the patent itself. But for purposes of § 292, patents which prima facie cover the product and have not been declared invalid 'are entitled to a presumption of validity." *Id*. at *6.

---

[6] As stated in *Tire Service*, not only is a reexamination proceeding not concluded until the Reexamination Certificate issues but as *Tire Service* holds: **"**Without the reexamination being final, [Claimant] cannot demonstrate that the [Defendant] acted with knowledge that it was deceiving the public by marking its products with the [patent at issue]." 158 F. Supp. 3d at 780.

Like the rest of the cases cited herein, The *Monster Energy* Court could just as well have been ruling on BPI's claim. Like the patent at issue there, ThermoLife's '074 Patent currently is in reexamination and, just like in *Monster Energy,* "the proceedings over the validity of the patent have not concluded." Also, like the patent at issue in *Monster Energy*, the reexamination of ThermoLife's '074 Patent has progressed to the point that the United States Patent Office has canceled certain claims and its decisions have been affirmed during appeals within the reexamination. Nonetheless, because the reexamination proceeding has not concluded through the issuance of a Reexamination Certificate, ThermoLife's '074 Patent, like the patent at issue in *Monster Energy*, is "entitled to a presumption of validity."

BPI attempts to distinguish *Monster Energy* by arguing, first, that the ruling there is a result of the plaintiff conceding that the patent remained valid prior to the Reexamination Certificate issuing. But, the fact that the plaintiff conceded this point (as BPI should here) is irrelevant. BPI's unsupported argument shows only that there is simply no support for BPI's position.

BPI also claims that *Monster Energy* is distinguishable because, "The '466 Patent reexamination was still addressing the rejection of the original claims (albeit amended), not ones that were permanently canceled based on prior art." (DE 81 at 17.) But, even if this were true (which it is not), it matters not. Pursuant to 37 C.F.R. 1.530(k), even though the PTO "will treat proposed amendments as though they have been entered [in the reexamination], ***the proposed amendments will not be effective until the reexamination certificate is issued and published.***" As *Monster Energy* explains, the patent, as issued, is still presumed valid while the appeal of the reexamination is pending.

As *Tire Services* and *Monster Energy* make clear, relying on the U.S. Code, a patent owner does not falsely assert the validity of its patents when those patents are involved in reexamination

11

proceedings, even when the reexamination proceeding has resulted in the cancelation of patent claims, *during the reexamination proceeding*. Unless and until the Reexamination Certificate issues, the patent is presumed valid as issued. Federal statutes, federal regulations, Federal Circuit Court of Appeals decisions, and the only district court opinions that have considered this issue are all in agreement. BPI's arguments to the contrary, based on "common sense", do not reflect "common sense" at all and are not consistent with the law. BPI does not cite a single on-point legal authority; none exists. For this reason, the Court should deny BPI's Motion.

**II.     BPI's "Facts" On Summary Judgment Are Supported Only By Lawyer Argument And Inadmissible Documents From The Pending Patent Reexamination.**

In moving for summary judgment, the movant must come forward with admissible evidence. *Macuba v. Deboer*, 193 F. 3d 1316, 1322-25 (11th Cir. 1999). Here, all of the facts upon which BPI relies are derived from the pending reexamination of the '074 Patent before the USPTO. It is well-settled that "evidence of incomplete patent reexamination proceedings is not admissible to prove invalidity of a patent, because it has no probative value on that issue." *Transamerican Life Ins. Co. v. Lincoln Life Ins. Co.,* 597 F. Supp. 2d 897 (N.D. Iowa 2009); *see, e.g., The Serv. Equip. MFG, Co., Inc. v. Gaither Tool Co*., 158 F. Supp. 3d 774 (D. Minn. 2016). This is because an ongoing reexamination is not final; as a result, determinations in the reexamination are not admissible for the truth of the matter asserted therein. *See Callaway Golf Co. v. Achushnet Co.,* 576 F.3d 1331, 1343 (Fed. Cir. 2009) ("The non-final re-examination determinations were of little relevance to the jury's independent deliberations on the factual issues underlying the question of obviousness. In contrast, the risk of jury confusion if evidence of the non-final PTO proceedings were introduced was high."); *see also Automated Merch. Sys., Inc. v. Crane Co*., 3:04-CV-48, 2012 WL 12892418, at *2 (N.D.W. Va. Feb. 28, 2012) ("evidence of the rejection of AMS' patents-in-suit during non-final reexamination proceedings before the PTO is irrelevant as defined by Rule

401 and thus should be excluded pursuant to Rule 402."). While district courts sometimes have discretion to admit evidence from reexaminations, the admission of documents from a patent reexamination is proper only when either the patent reexaminations proceedings has concluded or where the evidence is being used merely to show that a reexamination is currently pending. *See Wonderland NurseryGoods Co., Ltd. v. Thorley Indus., LLC*, CIV.A. 12-196, 2014 WL 695549, at *9 (W.D. Pa. Feb. 24, 2014).

Here, BPI seeks to use evidence from a non-final reexamination to argue that the '074 Patent no longer protects a "composition of matter of creatine nitrate." Thus, BPI is relying on this evidence from a non-final reexamination to prove that the rulings in the non-final reexamination were correct. As a result, the entire factual basis of BPI's Motion must be struck.

BPI's Motion does not cite to any witness testimony or declaration. BPI has no witness to testify regarding the validity of the '074 Patent. BPI's only 30(b)(6) witness was its Chairman, Derek Ettinger. (DSOF ¶ 104.) Mr. Ettinger was asked repeatedly regarding the basis of BPI's assertion that any subject matter of the '074 Patent is invalid. (DSOF ¶ 105.) As Mr. Ettinger admitted during his deposition, he was unable to testify regarding the validity of the '074 Patent. (DSOF ¶ 105.) Mr. Ettinger was asked specifically "a patent is presumed valid until a re-exam certificate issues?" He answered:

```
    A    Again, doesn't surprise me to hear
    that and it's not surprising the other way
    around.  Yeah, I mean, I would take your
    word on it, you know.
```

(DSOF ¶ 106.)

While BPI complains that Mr. Ettinger was "dup[e]d", counsel's questions here were not complicated. (DE 81 at 15.) BPI's 30(b)(6) witness was either unable or unwilling to answer simple questions for almost every 30(b)(6) subject, including the '074 Patent and the basis of BPI's claims in this case. (DSOF ¶¶ 105-106.) As a result, BPI has no admissible evidence to offer related to the validity of ThermoLife's "patent rights in the composition of matter creatine nitrate under the '074 Patent." Even the procedural background that BPI offers from the reexamination proceedings is inadmissible. For this reason, as well, BPI's Motion should be denied.[7]

### III. A DETERMINATION ON THIS ISSUE IS NOT DISPOSITIVE ON ANY BPI CLAIM; FOR THIS REASON, AS WELL, BPI'S MOTION SHOULD BE DENIED.

Because BPI's Motion seeks an order on a factual issue, not a legal claim, the Court has discretion under Rule 56(g) whether to entertain the motion at all. Since BPI's Lanham Act false advertising or false patent marking claims do not turn on whether the '074 Patent covers a composition of matter consisting of creatine nitrate, the Court should decline to hear the motion.

#### A. BPI Fails To Identify The Standard For Partial Summary Judgment; Partial Summary Judgment Is Not Appropriate On This Issue.

BPI's Motion for Partial Summary Judgment does not seek entry of judgment on any claim or defense. Instead, BPI seeks an order "that Defendants have no patent rights in the composition of matter creatine nitrate under the '074 Patent [U.S. Patent No. 7,777,074]." (DE 81 at 17.)

---

[7] Repeating arguments addressed in the reexamination, BPI's factual background includes a laundry list of irrelevant items it claims are facts relating to why subject matter of the '074 Patent should be declared invalid. BPI's inadmissible lawyer argument is just another intentional attempt to confuse this Court. BPI's irrelevant prior art refences like "Hunter" (PSOF ¶ 45), which is not the prior art that is under review in the ongoing reexam proceeding (*See* PSOF Ex. 15), and "Dhar" (PSOF ¶ 45), which the USPTO improperly cited against ThermoLife and then dropped as a reference after being challenged, have nothing to do with the validity of the '074 Patent (*See* PSOF Ex. 15). BPI tries to add credibility to its arguments by indicating that the CAS assigned a Registry Number to creatine nitrate over 30 years ago (PSOF ¶¶ 47-50), but a CAS number means nothing; this can be just a theoretical number. CAS is a prophetic database. CAS is a database that contains thousands, if not millions, of prophetic, uncharacterized substances. CAS generates new compounds by software. (DSOF ¶ 107.) Without discovery or expert testimony regarding any reference BPI mentions in regard to the '074 patent, the Court could not reach the conclusion that subject matter of the '074 Patent is invalid, even if a claim for patent invalidity were before this Court which it is not.

14

Federal Rule of Civil Procedure 56(g) provides that a court "may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." The decision whether or not to enter an order stating a material fact as undisputed for the remainder of the litigation is entirely within the trial court's discretion. *See id.* "A court, in its discretion in shaping the case for trial, may deny summary judgment as to portions of the case that are ripe therefor, for the purpose of achieving a more orderly or expeditious handling of the entire litigation." *Powell v. Radkins*, 506 F.2d 763, 765 (5th Cir. 1975). Here, as explained below, the issue of whether ThermoLife has patent rights in the composition of matter creatine nitrate is not dispositive on any BPI claim. For this reason, the Court could decline to hear the motion.

      **B.**    **A Determination Of Whether The '074 Patent Protects The Composition Of Matter of Creatine Nitrate Is Not Dispositive On BPI's False Advertising Claim.**

In its Motion, BPI argues that its Lanham Act false advertising claim somehow relates to the validity of the '074 Patent. Contrary to BPI's argument, BPI's disclosed Lanham Act false advertising claim has nothing to do with the '074 Patent.

Dr. S. Bannister, BPI's liability expert, offered opinions that Defendants engaged in false advertising under the Lanham Act, 15 U.S.C. § 1125, and false patent marking under 35 U.S.C. § 287. (DSOF ¶ 109.) While Dr. S. Bannister's opinions are wrong on all of these points (which is a subject for another day), Dr. S. Bannister's opinions reveal the limited scope of BPI's claims. Dr. S. Bannister's report provides the following opinions (A-E), which all address false advertising claims related to CRTN-3:

| | | |
|---|---|---|
| V. | SUMMARY OF OPINIONS | 8 |
| | A. The Representation That CRTN-3 Is A "first-time fusion of Creatine Nitrate, Creatine HCl, and Creatine Monohydrate" Is Literally false, Misleading, and Unsubstantiated | 8 |
| | B. The Representation That CRTN-3 Includes A "HYPER INFUSED CREATINE MATRIX" Is False, Misleading, And Unsubstantiated | 9 |
| | C. The Representation That CRTN-3 Includes A "Hydro-GO Electrolyte Matrix" Is False, Misleading, and Unsubstantiated | 9 |
| | D. When Used As Directed, CRTN-3 Does Not Administer "Three Of The Most Effective Forms Of Creatine In One Cutting-Edge Formula" | 9 |
| | E. CRTN-3 Does Not Increase Vasodilation Increase Vasodilation To Achieve Any Effects Faster Than Ever Before | 10 |

(DSOF ¶¶109-110.) All of Dr. S. Bannister's opinions addressing the alleged false advertising (opinions A-E) relate to advertising of Muscle Beach Nutrition, LLC's CRTN-3 product that have nothing to do with any patent marking. Thus, BPI has acknowledged, as it must, that its false advertising claim is limited to Muscle Beach Nutrition, LLC's CRTN-3 product *not* the '074 Patent. Accordingly, the '074 Patent isn't relevant to any of these alleged false advertising claims. For this reason alone, BPI is not entitled to a ruling from this Court regarding the scope of the '074 Patent in connection with its Lanham Act false advertising claim. This issue is irrelevant to BPI's false advertising claims.

The Court also need not reach this issue related to false advertising because, as Plaintiff is well-aware, advertising statements regarding the scope of a patent are not grounds for a Lanham Act false advertising claim. In *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362 (D. Del. 2009), the defendant won a motion to dismiss on this very point:

> "[F]alse attribution of the authorship" of an invention or innovation is not an actionable false advertisement under § 43(a) of the Lanham Act. Baden Sports, Inc. v. Molten USA, Inc., 556 F.3d 1300 (Fed.Cir.2009); see Monsanto Company v. Syngenta Seeds, Inc., 443 F.Supp.2d 648, 653 (D.Del.2006). Therefore, plaintiff has not stated a claim under the Lanham Act for false advertising related to Pylon's statement that it developed a frameless windshield wiper blade.

16

*Robert Bosch, LLC,* 632 F.Supp.2d at 366.

Not only is *Robert Bosch* directly applicable here, BPI's counsel Gregory Hillyer represented **the defendant** and made the wining argument (taking the exact **opposite** position in this case). *Id*. For this reason, as well, statements regarding the scope of the '074 Patent are not relevant to BPI's Lanham Act false advertising claim, making the issue inappropriate for partial summary judgment.

    **C.    A Determination Regarding The Scope of The '074 Patent Is Not Dispositive With Regard To BPI's False Patent Marking Claim; Accordingly, BPI's Motion Should Be Denied.**

The validity of the patent rights in the composition of matter creatine nitrate under the '074 Patent also is not dispositive with respect to BPI's false marking claim. "To be liable for false marking, a party must mark 'an unpatentable article'" and it must do so "for purposes of deceiving the public." *Pequignot v. Solo Cup. Co.*, 608 F.3d 1356 (Fed. Cir. 2010) (En Banc). Here, BPI asserts that the inclusion of the NO3-T trademark on ThermoLife's licensees' products constitutes marking "an unpatentable article." (DE 92, Second Amended Complaint, ¶ 107.) BPI also contends that ThermoLife has falsely marked its creatine nitrate dietary supplement ingredient through the same inclusion of the NO3-T trademark.

BPI, though, does not dispute that claim 1 of the issued '074 Patent protected creatine nitrate. (PSOF ¶ 23.) Because the '074 Patent, as originally issued, covers creatine nitrate, the question here becomes whether ThermoLife's listing of the '074 Patent on its NO3-T.com website, while the patent was undergoing reexamination was done "for the purposes of deceiving the public." *See Pequignot*, 608 F.3d at 1363. As the Federal Circuit has held, this is a high-standard. The defendant must act with "purpose of deceit, rather than simply knowledge that a statement is false." *See id.* Because there is no record evidence that ThermoLife ever intended to deceive

anyone, and because BPI never could prove otherwise, the validity of the '074 Patent or whether the '074 Patent protects the composition of matter creatine nitrate under the '074 Patent is not dispositive on BPI's false marking claim. Indeed, to the extent the '074 Patent's validity is relevant on this issue, the issue is dispositive in ThermoLife's favor, not BPI's. As the Court held in *Tire Services*, without the reexamination having concluded, "[Claimant] cannot demonstrate that the [Defendant] acted with knowledge that it was deceiving the public by marking its products with the [patent at issue]." 158 F. Supp. 3d at 780. For this reason, as well, the Court could decline to entertain BPI's Motion.

## IV. CONCLUSION.

The '074 Patent as originally issued covered a composition of matter consisting of creatine nitrate. While the '074 Patent currently is in a patent reexamination, no Reexamination Certificate has issued and, therefore, the reexamination proceeding is not over. Allowances/amendment/rejections/cancelations in reexaminations are not binding until the Reexamination Certificate issues. 37 C.F.R. § 1.530(k). BPI does not cite one legal authority holding otherwise. For this reason, the Court should deny BPI's Motion.

Furthermore, because non-final determinations in reexaminations are not binding until a Reexamination Certificate issues, non-final determinations are not admissible for the truth of the matter stated therein. For this reason, as well, BPI's Motion should be denied. BPI cannot rely on a non-final reexamination determination (as it does here) to petition this Court to declare any portion of the '074 Patent invalid.

Finally, the Court could also deny BPI's Motion because the scope of the '074 Patent is not dispositive of any claim BPI asserts here.

BPI never should have filed suit against Defendants asserting that the '074 Patent's protection of a composition of matter creatine nitrate already had been invalidated. BPI has no support for its position. All of the authority is to the contrary and BPI's Motion must be denied.

Dated: June 19, 2020

Respectfully submitted,

s/Edward M. Mullins

**KERCSMAR & FELTUS PLLC**
Gregory B. Collins (admitted *Pro Hac Vice*)
E-mail:  gbc@kflawaz.com
Molly Rogers (admitted *Pro Hac Vice*)
E-mail:  cmr@kflawaz.com
7150 E. Camelback Road, Suite 285
Scottsdale, AZ  85251
Telephone: (480) 421-1001

and

**REED SMITH LLP**
Edward M. Mullins
Florida Bar No. 863920
E-mail:  emullins@reedsmith.com
Ana M. Barton
Florida Bar No. 85721
E-mail:  abarton@reedsmith.com
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Telephone: (736) 747-0200

*Attorneys for Defendants ThermoLife International LLC and Ron Kramer*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF on June 19, 2020, which sent service via email to all counsel of record.

s/Edward M. Mullins
Edward M. Mullins