**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

BPI SPORTS, LLC,

       Plaintiff,

vs.

THERMOLIFE INTERNATIONAL,
LLC, MUSCLE BEACH NUTRITION LLC
and RONALD L. KRAMER,

       Defendants.

**CASE NO.: 0:19-cv-60505-SMITH**

## PLAINTIFF BPI SPORTS, LLC'S MOTIONS *IN LIMINE*

Plaintiff, BPI Sports, LLC ("BPI"), by and through its undersigned counsel, and pursuant the Second Amended Scheduling Order [D.E. 191], hereby submits its Motions *in Limine* requesting that the Court preclude Defendants from presenting testimony, documents or other evidence regarding (or mentioning in opening statements) the following:

1.     The alleged false patent marking of BPI's products;

2.     BPI's products and their associated advertising;

3.     Several literature references that are the subject of BPI's *Daubert* Motion to Preclude Certain Opinions from Dr. Thomas Bannister [D.E. 175]; and

4.     The past criminal history of BPI's Chairman, Derek Ettinger.

Further to the instructions in the Second Amended Scheduling Order, BPI submits below a one-page memorandum for each of these four issues.

### 1. Defendants' Allegations that BPI's Products are Falsely Patent Marked

Pursuant to Federal Rules of Evidence 402 and 403, BPI moves to preclude Defendants from presenting evidence, or mentioning during opening statements, that BPI has engaged in false patent marking. Throughout discovery, Defendants have cited unrelated BPI products which refer to "patented" ingredients. However, whether these ingredients are "patented" is irrelevant to any claim or defense in this case. Fed. R. Ev. 402. Logically, the nature of BPI's representations about its own products *having nothing to do* with BPI's claims of false marking *against Defendants*, much less justify or excuse the unlawful actions pled in the Second Amended Complaint.

Defendants' allegations of false patent marking against BPI fail from both a pleading and substance standpoint. There are no affirmative defenses or counter-claims against BPI for false patent marking under 35 U.S.C § 292. Indeed, Defendants ThermoLife International, LLC and Ronald Kramer do not even have an affirmative defense that mentions "false patent marking." D.E. 113, pp. 16-17. Although Muscle Beach Nutrition, LLC advanced an unclean hands defense that refers to various BPI ingredients as "not patented," the crucial element of intent to deceive the public is not pled at all, much less with particularity. *Compare* 35 U.S. Code § 292 ("for the purpose of deceiving the public") and Fed.R.Civ.P. 9(b) (fraud must be pled with "particularity") with D.E. 135, Affirmative Defense 1, pp. 18-19 (offering no facts in support of intent).

Most glaringly, Defendants haven't proven *anything* regarding BPI's representations—not even that the ingredients are **not patented**. Moreover, there is no evidence in the record of any deceptive intent attributable to BPI. Rather, during the 30(b)(6) deposition of Derek Ettinger, he repeatedly testified that (i) BPI is not the patent holder; (ii) information about patent protection derives from the actual patent holder, which also serves as the source of the ingredients; and (iii) BPI relies on the patent holder for accurate information, and if there is any question, it is an issue that BPI would have to take up with the source. **Exhibit 1**, Deposition of Derek Ettinger, 367:7-375:3 ("we're not a patent holder…where we say it's patented, that would be something for the patent holder to have to deal with…").

Any probative value (zero) will be substantially outweighed by confusion, waste of time and will mislead the jury. FRE 403. *Defendants*' false patent marking is the only cause of action properly pled and proven in discovery. Exploring the unpled issue of BPI's patented ingredients will create a "trial within a trial," draw false parallels with Defendants' false patent marking, cause confusion and create the misimpression that Defendants' false marking is somehow acceptable.

### 2. Defendants' Allegations Regarding BPI's Products and Advertising

Pursuant to Federal Rule of Evidence 402 and 403, BPI moves to preclude Defendants from presenting evidence, or mentioning during opening statements, the nature of BPI's products and the advertising associated with same. Throughout discovery, Defendants have sought to draw comparisons between their product CRTN-3 and BPI's products—all of which have different ingredients and advance different statements. Some of BPI's products are creatine products, others are not, but none of them contain the salt ***creatine nitrate***, which is the primary basis for BPI's accusations of false advertising. Any comparison between CRTN-3 and BPI's products is also improper because BPI does not make the same representations as Defendants, namely, that its products constitute a "first-time fusion of Creatine Nitrate, Creatine Hydrochloride, and Creatine Monohydrate"; include a "hyper-infused creatine matrix"; contain "three of the most effective forms of creatine" or "increase vasodilation," much less that there is insufficient nitrate ion to do so. Thus, BPI's products are irrelevant inasmuch as they do not tend to support or refute any of BPI's claims *against Defendants* for the false advertising of CRTN-3. Fed.R.Evid. 402.

Any probative value of BPI's products and its advertising (zero) will be substantially outweighed by unfair prejudice, confusion, waste of time and will mislead the jury. Fed.R.Evid. 403. For example, Defendants will mislead the jury into believing that its literally false advertisements are somehow lawful by comparing them to BPI's unrelated, unaccused statements. The jury will draw false parallels, despite the fact that the products and advertisements are completely different. An enormous amount of time and effort will be wasted presenting evidence of BPI's products and the associated advertisements when there are simply no substantive claims involving them. This will cause confusion regarding which advertisements stand accused as the litigants engage in a contest over which advertisements have propriety (creating a "trial within a trial"), despite the fact that there are no causes of action involving BPI's products or statements. This will prejudice BPI when it attempts to present evidence in support of its own claims.

To the extent Defendants contend that evidence of BPI's products goes to their "unclean hands" defense,[1] this defense concerns *equitable relief*, which the Court decides. This renders even less relevant (if possible) evidence of BPI's products and its related statements. *Williams v. Foerster*, 335 So. 2d 810, 814 (Fla. 1976) (unclean hands defense is directed to a court of equity).

---

[1] BPI moved to strike the affirmative defenses of ThermoLife and Ronald Kramer. D.E. 130.

### 3.      Defendants' Untimely Literature References

Pursuant to Federal Rules of Civil Procedure 26 and Federal Rules of Evidence 403, 702 and 703, BPI moves to preclude Defendants from offering into evidence certain scientific literature references, either through BPI's expert, Defendants' expert, or *any* lay witnesses who have not been designated as experts, including Defendant Ronald Kramer and Alexander Nikolaidis. These references are identified in BPI's pending *Daubert* Motion to preclude Dr. Thomas Bannister from testifying about them on the basis that he never read them, considered them, or included them in his expert report. D.E. 175; D.E. 171-6 through 171-11 ("Literature References").[2] BPI now seeks to preclude Defendants from moving the Literature Reference into evidence by any other means.

The Literature References are hearsay and not independently admissible.[3] Axiomatically, the introduction of scientific materials which requires special expertise (or testimony about them) is the purview of experts, not lay witnesses like Mr. Kramer or Mr. Nikolaidis (who have not been designated as experts or issued any expert reports). Fed.R.Civ.P. 26; Fed. R. Evid. 701. Although Fed.R.Ev. 803(18) creates an exception for treatises that are used to cross-examine an adverse expert witness, under this rule, "[i]f admitted, the statement may be read into evidence but *not received as an exhibit*." Thus, to the extent that Defendants are permitted to cross examine BPI's expert, Dr. Steve Bannister, on the Literature References, they still cannot be received into evidence, only read in. Since this will not take place (if at all) until he testifies, Defendants should also be prohibited from mentioning the Literature References during opening statements.

---

[2] With respect to the introduction of the Literature References through Dr. Thomas Bannister, BPI incorporates by reference herein the arguments made in its *Daubert* Motion. D.E. 175, pp. 8-14. These include the fact that Dr. Thomas Bannister admitted that he (1) never read the Literature References and hence lacked the ability to properly opine on them; (2) was aware for months that vasodilation – the purported subject of the literature references – was at issue but had not searched for any literature for inclusion in his expert report; and (3) did not bother to read the rebuttal report of BPI's expert until the eve of his deposition. At deposition he did not offer a single independent opinion, but rather, merely parroted the self-serving statements of defense counsel. Dr. Thomas Bannister's testimony on the Literature References was therefore not properly disclosed under Fed. R. Civ. P. 26 and is inadmissible under Fed. R. Evid. 702 and 703.

[3] *Lebron v. Sec'y of Fla. Dept. of Children & Families*, 772 F.3d 1352, 1369-70 (11th Cir. 2014) (finding underlying medical articles inadmissible for not being offered through expert testimony); *Arnold v. Novartis Pharm. Corp.*, 28 F.Supp. 3d. 1268, 1271 (M.D. Fla. 2014) (noting scientific literature is inadmissible unless it is offered through an expert pursuant to Fed.R.Evid. 803(18)); *Mayes v. City of Hammond, IN*, 442 F. Supp. 2d 587, 599 (N.D. Ind. 2006) (explaining a treatise which is not relied upon by an expert witness is inadmissible under Fed.R.Evid. 803(18)).

3

###### 4.        The Criminal History of BPI's Chairman, Derek Ettinger

Pursuant to the meet and confer obligations in the Second Amended Scheduling Order [D.E. 191], BPI proposed to Defendants a stipulation that it would not introduce evidence, or use for impeachment, the past criminal record of Defendant Ronald Kramer (the founder and Chief Executive Officer of Defendants ThermoLife International, LLC and Muscle Beach Nutrition, LLC)—in exchange for Defendants not introducing evidence or using for impeachment the past criminal record of BPI's Chairman, Derek Ettinger.  Defendants refused this stipulation despite the fact that *Defendants* offered this *exact stipulation* to BPI regarding the depositions of these same witnesses (to which BPI agreed).

Based on Defendants' inexplicable refusal of BPI's proposed stipulation, pursuant to Federal Rules of Evidence 609 and 403, BPI hereby moves to preclude Defendants from presenting evidence, using for impeachment, or mentioning during their opening statements, the past criminal record of Derek Ettinger.  Almost two decades ago, in 2003, Mr. Ettinger was convicted of possession with intent to distribute and counterfeit labeling of a drug product.  **Exhibit 2**, p. 2.  He was sentenced to 27 months in prison and was released from prison on February 18, 2005.  *Id.*, at 3.  This date marks Mr. Ettinger's "release from confinement" under Fed.R.Evid. 609(b).

"Generally, Rule 609 only permits a party to impeach a witness as to felony convictions and misdemeanor convictions involving dishonesty as long as the convictions are not more than 10 years old."  Fed.R.Evid. 609(b); *United States v. Maxwell*, 2006 WL 8439795, *6 (M.D. Fla. 2006); *Thompkins v. Lil'Joe Records, Inc.*, 2003 WL 25719229, *1 (S.D. Fla. 2003) (granting a motion *in limine* as to convictions that occurred more than 10 years old); *Stone Eagle Services, Inc. v. Pay-Plus Solutions, Inc.*, 2015 WL 3824208, *11 (M.D. Fla. 2015).

Mr. Ettinger's past convictions are fifteen years-old, time-barred and therefore irrelevant. Under Rule 609(b), such evidence can only conceivably be used if its "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  Under this Rule, ancient convictions are *presumed* to be prejudicial.  Mr. Ettinger's convictions have no probative value in this case and he has had no arrests or convictions since his release over fifteen (15) years ago.  Allowing Defendants to use Mr. Ettinger's past criminal convictions against him will be unduly prejudicial to BPI and present the risk of jury confusion as to the purpose of that testimony.  *Stone Eagle Services*, 2015 WL 3824208 at *11; Fed. R. Ev. 403, 609 (b).  Under such circumstances, any evidence of Mr. Ettinger's criminal history should be excluded at trial.

4

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to L. R. 7.1(A)(3), counsel for BPI has conferred with counsel for Defendants, who has indicated that Defendants will oppose all of the relief requested in this Motion *in Limine*.

| | |
|---|---|
| Respectfully submitted, | Dated this 8th day of January, 2021. |

KRINZMAN, HUSS & LUBETSKY
FELDMAN & HOTTE
Cary A. Lubetsky
Florida Bar No. 961360
Salvatore H. Fasulo
Florida Bar No. 143952
800 Brickell Avenue, Suite 1501
Miami, Florida 33131
Telephone:  (305) 854-9700
Facsimile:  (305) 854-0508
Primary email:   cal@khllaw.com
                          shf@khllaw.com
Secondary email: eservicemia@khllaw.com

HILLYER LEGAL, PLLC

*s/ Gregory L. Hillyer*
Gregory L. Hillyer
Fla. Bar No. 682489
Email: ghillyer@hillyerlegal.com
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015-2052
Telephone: 202-686-2884
Facsimile: 202-686-2877

Javier Sobrado
Fla. Bar. No. 44992
Email: JSobrado@BrickellIP.com
1101 Brickell Ave
South Tower, Suite 800
Miami, FL 33131
Telephone (305)728-8331

*Attorneys for Plaintiff BPI Sports, LLC*

5

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion *in Limine* was filed via CM/ECF on January 8, 2021 and served on counsel of record.

*s/ Gregory L. Hillyer*

6