UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-CIV-60505-SMITH/VALLE

BPI SPORTS, LLC,

Plaintiff,

v.

THERMOLIFE INTERNATIONAL, LLC,
MUSCLE BEACH NUTRITION LLC, and
RONALD L. KRAMER,

Defendants.

---

**REPORT AND RECOMMENDATION TO DISTRICT JUDGE**

THIS CAUSE is before this Court on Plaintiff BPI Sports, LLC's Motion for Terminating and Monetary Sanctions (the "Motion"). (ECF No. 143). U.S. District Judge Rodney Smith referred the Motion to the undersigned for a Report and Recommendation. (ECF No. 152).

Accordingly, having reviewed the Motion, Defendants' response (ECF No. 151), Plaintiff's reply (ECF No. 159), having held an evidentiary hearing, and being otherwise fully advised in the premises, the undersigned respectfully recommends that the Motion be **GRANTED IN PART** for the reasons set forth below.[1]

[1] On November 18, 2020, the undersigned held a four-hour evidentiary hearing on this Motion and also on Plaintiff's Third Motion to Compel (as defined below), (ECF No. 148). (ECF No. 184) (11/18/20 hearing minutes); *see also* (ECF No. 192) (11/18/20 hearing transcript) ("Sanctions Hr'g Tr."). In advance of the hearing, the parties filed a Joint Stipulation, agreeing to the admissibility of Plaintiff's pre-marked exhibits (Pl. Exhs. 1-39, 41), Defendants' pre-marked exhibits (Def. Exhs 1-22), and Exhibit 40-Rev, all of which the Court admitted into evidence during the hearing. *See* (ECF No. 179) (Joint Stipulation); (Sanctions Hr'g Tr. 7:7-14). The parties also agreed to forego live witness testimony and rely instead on the deposition transcript of Defendant Kramer. (ECF No. 179); (Pl. Exh. 33)(the "Kramer Dep.").

## I. THE MOTION FOR SANCTIONS

On September 24, 2020, Plaintiff filed the instant Motion for Sanctions. (ECF No. 143). In the Motion, Plaintiff seeks sanctions against Defendants and their attorney Gregory Collins based on: (i) Defendant Ronald Kramer's ("Kramer") creation of a License Agreement (as further defined below) on March 9, 2020 for use in the litigation; (ii) Defendants' production of allegedly false financials that under-report Defendant Muscle Beach Nutrition's (as defined below) profits by deducting costs paid for by Defendant ThermoLife International, LLC ("ThermoLife"); (iii) attorney Collins' allegedly perjured statements in two declarations filed with the Court, *see* (ECF Nos. 65-1 and 69-1); (iv) attorney Collins' overall conduct during the proceedings (including bullying, yelling, making threats and intimidating tactics during deposition and meet and confers, and emailing a purportedly unjustified Rule 11 motion that was never filed); (v) Defendants' overall litigation conduct (including discovery obfuscation and alleged forum shopping in another lawsuit filed by ThermoLife against Plaintiff); and (vi) Defendant Kramer's conduct at an unrelated patent hearing (including alleged threats, intimidation, and bullying). *See generally* (ECF No. 143).

Based on these purported procedural and substantive abuses, Plaintiff asks the Court to enter a default judgment against Defendants and sanction attorney Collins, pursuant to the Court's inherent powers, 28 U.S.C. § 1927, and/or Federal Rule of Civil Procedure 37.[2] (ECF No. 143 at 5, 21-26). Plaintiff argues that no sanction short of default will adequately remedy the

[2] Plaintiff also requests fees and costs under Rule 54(d)(2)(B). *Id*. Additionally, on October 14, 2020, Plaintiff filed a separate motion to compel production of documents responsive to BPI's Third Set of Requests for Production to Defendants. (ECF No. 148) ("Plaintiff's Third Motion to Compel"). In the Third Motion to Compel, Plaintiff seeks to obtain communications between Defendants and their counsel under the crime-fraud exception to the attorney-client privilege regarding the circumstances surrounding the creation of the License Agreement document. *Id.* The undersigned will address Plaintiff's Third Motion to Compel by separate order.

cumulative effect of these abuses, which render Defendants' evidence generally untrustworthy and tarnish the integrity of the judicial proceedings. (Sanctions Hr'g Tr. 36:24-37:8, 37:16-21).

In response, Defendants assert that they have not violated any court orders, have provided all discovery, Plaintiff has not suffered any prejudice, and there is simply no sanctionable conduct under any of the rules or the Court's inherent powers. (ECF No. 151 at 2-3). As to Plaintiff's allegation that Defendants manufactured the License Agreement during the litigation, Defendants argue that Defendant Kramer simply "memorialized" a pre-existing oral/implied agreement, which is a common practice in intellectual property cases, so that no fraud was committed on Plaintiff or the Court. *Id*. at 7-10.

This Report will focus on whether Defendant Kramer and his attorney acted in bad faith in creating the License Agreement for use in this litigation. A finding of bad faith unlocks this Court's "inherent powers" to sanction parties and attorneys who knowingly perpetrate a fraud on the Court. *Chambers v. NASCO Inc.*, 501 U.S. 32, 43-51 (1991); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (S.D. Fla. 1998). Here, as discussed more fully below, the undersigned finds that the circumstances surrounding the creation of the License Agreement, coupled with its seemingly innocuous production during discovery and Defendants' subsequent tactical attempts to stimy discovery on this issue, provide clear and convincing evidence of Defendants' bad faith so as to warrant the imposition of sanctions pursuant to the Court's inherent powers.

Nevertheless, the undersigned finds that sanctions are not warranted in connection with the other alleged misconduct, singly or in combination. Specifically, the undersigned finds that: (i) questions regarding the accuracy of the Muscle Beach financials can adequately be addressed through cross-examination and impeachment at trial; (ii) attorney Collins' statements in two Declarations filed with the Court, *see* (ECF Nos. 65-1 and 69-1), do not rise to the level of perjury;

and (iii) attorney Collins' and Defendant Kramer's individual conduct and overall litigation strategy may not be a model for civility, but do not warrant the extreme sanction Plaintiff requests. Thus, Plaintiff's Motion is denied as to these allegations.

## II. RELEVANT PROCEDURAL BACKGROUND

This case has a long litigation history, which is accurately stated in the Motion and Defendants' response and will not be recounted here. *See generally* (ECF Nos. 143, 151); *see also* (ECF Nos. 181, 182 at 2) (Plaintiff's Chronology of Events, to which Defendants do not substantively object). In summary, Plaintiff filed the initial Complaint in February 2019 alleging claims under the Lanham Act, 15 U.S.C. § 1125(a), unfair competition, trade libel, libel per se, and tortious interference with business relations. (ECF No. 1). In April 2020, Plaintiff filed its Amended Complaint. (ECF No. 12). Subsequently, Defendants ThermoLife and Kramer moved to dismiss the Amended Complaint, arguing *inter alia* that the allegations in the Amended Complaint related to Muscle Beach Nutrition LLC ("Muscle Beach"), one of ThermoLife's licensees, and not to Defendants ThermoLife and Kramer. (ECF No. 16 at 3, 4, 8) (generally alleging that BPI was, in effect, suing the wrong company).

On June 5, 2020, following a partial grant of Defendants' motion to dismiss the Amended Complaint and upon obtaining leave of Court, *see* (ECF Nos. 37, 91), Plaintiff filed the Second Amended Complaint ("SAC"), which remains the operative pleading. (ECF No. 92). Notably, the SAC added Defendant Muscle Beach as a party to the action. The SAC alleges violations of the Lanham Act, unfair competition, and false patent marketing against all Defendants. *Id.* ¶¶ 115-136.

On June 10, 2020, five days after the filing of the SAC, Defendants filed an Expedited Request for a Telephonic Status Conference with the District Judge. *See* (ECF No. 98) (the

"Expedited Request"). In the Expedited Request, Defendants ThermoLife and Kramer advised the District Judge that they had agreed to "indemnify, defend, and hold harmless" Muscle Beach and agreed to be "held jointly and severally liable for any judgment against [Muscle Beach] in order to streamline this action including any remaining discovery and the issues for trial," contingent upon the Court maintaining the then-existing pretrial schedule, despite the filing of the SAC. (ECF No. 98 at 2-4). On June 16, 2020, the District Judge denied the Expedited Request, stating, in part, "consistent with the Rules, Plaintiff is entitled to discovery; Defendants cannot unilaterally limit Plaintiff's discovery rights. In sum, regardless of any indemnification agreement between Defendants, Defendants must comply with rules and law governing this action." (ECF No. 108).

On June 18, 2020, two days after the District Court' rejection of ThermoLife and Kramer's attempt to limit the scope of discovery by offering to indemnify and hold Muscle Beach harmless, Defendants ThermoLife and Kramer filed their Answer and Affirmative Defenses ("Answer") to the SAC. (ECF No. 113). Defendant Muscle Beach separately filed its Answer to the SAC on July 7, 2020. (ECF No. 135). Relevant to the instant Motion, after having spent months arguing that Muscle Beach was a separate entity and that Plaintiff had sued the wrong entities, Defendants' Answers admitted that "ThermoLife and Muscle Beach are alter egos of each other, with ThermoLife controlling Muscle Beach." (ECF Nos. 113 ¶¶ 64 n.1, 68 n.2, 135 ¶¶ 64 n.1, 68 n.2).

## III. RELEVANT DISCOVERY MOTIONS

Plaintiff's current Motion is the latest in a series of motions aimed at obtaining documents relevant to a purported license agreement between ThermoLife and Muscle Beach. The relevant discovery requests and resulting motions to compel are summarized below.

*First Request for Production to Defendants ThermoLife and Kramer and Subpoena to then Non-Party Muscle Beach*

In February 2020, Plaintiff served its First Requests for Production ("RFP") on Defendants ThermoLife and Kramer. *See* (ECF Nos. 62 at 2, 62-2, 181 at 2). Specifically, RFP No. 11 to ThermoLife requested the production of "[a]ll licenses to the ThermoLife patents, including licenses with any of the third parties named (or the associated products listed) on http://www.no3-t.com/patents/ or docket entry number 22-5." (ECF No. 62-2 at 20). In response, on March 20, 2020, ThermoLife, through its attorney Collins, produced a document titled "Purchase and License Agreement," purporting to be the License Agreement between ThermoLife and Muscle Beach (the "License Agreement"). (ECF Nos. 143-1, 181 at 2). The License Agreement listed an effective date of March 16, 2017, but was otherwise undated and signed by Defendant Kramer on behalf of both companies. *See* (ECF No. 143-1); (Sanctions Hr'g Tr. 20:5-9). Notably, nothing in the License Agreement or ThermoLife's written response to RFP No. 11 alerted Plaintiff that the License Agreement was, in fact, created during this litigation on March 9, 2020 by Defendant Kramer purportedly to "memorialize" a pre-existing oral/implied license between ThermoLife and Muscle Beach. (ECF No. 143-1); (Sanctions Hr'g Tr. 19:4-24).

Relatedly, on February 21, 2020, Plaintiff served a subpoena on then non-party Muscle Beach requesting production of any license agreements with ThermoLife. (ECF No. 181 at 2). On April 2, 2020, Muscle Beach's attorney Matthew Wolf produced a second copy of the License Agreement that had been previously produced by attorney Collins on behalf of ThermoLife. (Sanctions Hr'g Tr. 26:7-13); *see also* (Pl. Exh. 4).

*Second Discovery Requests to ThermoLife and Kramer*

On April 3, 2020, Plaintiff propounded its Second Set of Discovery Requests to Defendants ThermoLife and Kramer. (ECF Nos. 87-2, 97 at 3, 181 at 2). The goal of these requests was,

among other things, to obtain additional information regarding the relationship between ThermoLife and then non-party Muscle Beach, including electronic discovery regarding the License Agreement that had been produced in March 2020. (ECF No. 87 at 2-5). For example, in RFP Nos. 1-3, Plaintiff sought native files (including Word and PDF versions) of the License Agreement and the underlying metadata. *Id*. at 6. Interrogatory No. 1 sought basic information about the circumstances surrounding the creation and execution of this document (author, date, signatory, place, and witnesses). *Id*. Defendants refused to provide discovery, objecting that this discovery "[was] not relevant to any claim or defense in this action" because Plaintiff had not pled alter ego and "[Muscle Beach] is not a party to this lawsuit." (ECF No. 89 at 8-9). Consequently, Plaintiff filed its Second Motion to Compel on May 26, 2020. *See generally* (ECF No. 87). In the Second Motion to Compel, Plaintiff asserted that it had a right to discover the "bona fides" of the License Agreement. *Id*. at 6.

*Discovery Hearing on Plaintiff's First and Second Motions to Compel and ThermoLife's and Kramer's Amended Responses*

On June 19, 2020, the undersigned held a hearing on Plaintiff's First and Second Motions to Compel. (ECF Nos. 62, 87); *see also* (ECF Nos. 115, 118). At the conclusion of the hearing, the undersigned granted in part Plaintiff's motions to compel, ordering Defendants ThermoLife and Kramer to provide amended responses to Plaintiff's interrogatories and RFPs regarding the creation of the License Agreement and providing additional information regarding its financial business dealings with Muscle Beach. *See generally* (ECF No. 122) (6/19/20 hearing transcript) ("Discovery Hr'g Tr."). In doing so, the undersigned found that despite ThermoLife and Kramer's judicial admission of alter ego liability in the Answer filed the day before the hearing, the License Agreement remained relevant to the issues in the case. (Discovery Hr'g Tr. 88:16-18); *see also id*. 89:24-90:1 ("Defendants' decision to indemnify Muscle Beach and to admit alter ego doesn't

alter the parties' discovery obligations going forward."). The undersigned reiterated that "the license agreement is a very important part of this litigation" and that Defendants' admission of "alter ego liability does not change the scope of the discovery as to the underlying licensing agreement." *Id.* 89:5-10.

In compliance with the Court's Order, ThermoLife and Kramer supplemented their discovery responses on July 15, 2020. (ECF No. 143-4) (ThermoLife's Amended Responses to Plaintiff's Second Set of Interrogatories); (ECF No. 143-8, Pl. Exh. 15) (Kramer's Amended Responses to Plaintiff's Second Set of Interrogatories). In its response, ThermoLife included the underlying metadata for the License Agreement, which showed that the License Agreement had been created on March 9, 2020 by Defendant Kramer, almost one year after the filing of the instant lawsuit and after Plaintiff had propounded its discovery requests to ThermoLife and Kramer, and issued a subpoena to then non-party Muscle Beach. *See* (ECF No. 143-3, Pl. Exh. 8). More specifically, in response to Interrogatory No. 1, which asked ThermoLife to "[d]escribe the circumstances surrounding the creation and execution of the License Agreement]," ThermoLife stated:

> On or about March 9, 2020, Ron Kramer created the [License Agreement] between [Muscle Beach] and [ThermoLife] to memorialize in writing the oral agreement that was reached between Muscle Beach and ThermoLife, on or about March 16, 2017, when Mr. DeLuca was still a part-owner of Muscle Beach. To create the [License Agreement], Mr. Kramer accessed one of ThermoLife's other license agreements in a Microsoft Word document. Mr. Kramer does not remember which licensing agreement he accessed. Using another purchase and license agreement from the same time period of early 2017 as a template, Mr. Kramer made the necessary edits to the document, using Microsoft Word. When Mr. Kramer was done making edits to the document, he printed off the document. He did not save the modified [License Agreement] in Microsoft Word.
>
> With the document printed off, he signed the document on behalf of both [Muscle Beach] and ThermoLife. He then handed the agreement to administrative assistant Cynthia Andrade. On March 9, 2020, Ms. Andrade created a PDF of the document. The native PDF file and the metadata associated with the PDF file have been

> produced in response to BPI's requests for production, along with this interrogatory response.
>
> The PDF document was then sent to [Muscle Beach's] counsel, Matt Wolf for production in response to a subpoena that was served upon [Muscle Beach] by [Plaintiff]. On April 2, 2020, in an email from [Matt Wolf, Muscle Beach's counsel] to [Plaintiff's counsel], Matt Wolf provided a native of the PDF file, which has been reproduced along with this amended response.

(ECF No. 143-4 at 3-4, Pl. Exh. 9).

*Plaintiff's Motion for Sanctions and November 18, 2020 Hearing*

On September 24, 2020, Plaintiff filed the instant Motion seeking sanctions against Defendants and attorney Collins based on Defendant Kramer's creation of the License Agreement, which Plaintiff claims was done in bad faith and constitutes a fraud on the Court. (ECF No. 143 at 15, 21, 23). Thus, Plaintiff asks the Court to enter a default judgment against Defendants and to sanction attorney Collins for these purported abuses, pursuant to the Court's inherent powers, 28 U.S.C. §1927, and/or Rule 37.[3] *Id.* at 5, 23.

## IV. LEGAL STANDARDS

The Court has "an inherent power to regulate litigation and sanction the parties, as well as their counsel, for abusive practices." *Brandt v. Magnificent Quality Florals Corp.*, No. 07-20129-CIV, 2009 WL 899925, at *4 (S.D. Fla. Mar. 31, 2009), *aff'd*, 371 F. App'x 994 (11th Cir. 2010);

---

[3] The parties disagree on whether Plaintiff's motion properly seeks sanctions against attorney Collins, or only against Defendants. Although some parts of Plaintiff's Motion refer only to sanctions against Defendants while other sections refer to sanctions against attorney Collins, the Motion is sufficiently clear to put attorney Collins on notice that sanctions were being sought against him. *See, e.g.*, (ECF No. 143 at 21, 22-24) (discussing sanctions under 28 U.S.C. § 1927, which can only be imposed on attorneys); *id.* at 18-21, 24 (discussion of allegedly perjured Declarations by attorney Collins). Nonetheless, because the undersigned ultimately concludes that Plaintiff has not established the requisite bad faith necessary for the imposition of sanctions under either the Court's inherent powers or § 1927 against attorney Collins, Defendants' argument that Plaintiff's motion fails to comply with due process notice requirements is moot and need not be addressed. (Sanctions Hr'g Tr. 67:11-14, 68:10-69:7).

*Spolter v. Suntrust Bank*, 403 F. App'x 387, 390 (11th Cir. 2010) (noting that federal courts have the inherent power to sanction parties and lawyers). This includes the "inherent power to sanction a fraud upon the Court, which sanction can include dismissal of a case." *Gyasi v. M/V "ANDRE,"* No. 07-23282-CIV, 2008 WL 162644, at *2 (S.D. Fla. Jan. 16, 2008). "Invocation of a court's inherent power requires a finding of bad faith." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (citation omitted); *Brown Jordan Int'l, Inc. v. Carmicle*, No. 0:14-CV-60629-ROSENBERG/BRANNON, 2016 WL 815827, at *34-35 (S.D. Fla. Mar. 2, 2016), *aff'd*, 846 F.3d 1167 (11th Cir. 2017); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1251 (11th Cir. 2007) ("[B]efore a court can impose sanctions on an attorney under its inherent powers, it must make a finding of bad faith.") (citation omitted).

In determining whether sanctions are appropriate under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *Barash v. Kates*, 585 F. Supp. 2d 1347, 1362 (S.D. Fla. 2006) (quotation omitted). "Bad faith exists when the court finds that a fraud has been practiced upon it, or that the very temple of justice has been defiled, or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." *Brown Jordan Int'l*, 2016 WL 815827, at *35. However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44; *see also Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (same). Thus, courts in this District have held that "fundamentally penal" sanctions, such as dismissals or an award of attorneys' fees, require proof by clear and convincing evidence. *See, e.g.*, *In re Brican Am. LLC Equip. Lease Litig.*, 977 F. Supp. 2d 1287, 1293 n.6 (S.D. Fla. 2013); *JTR Enters., LLC v. An*

*Unknown Quantity*, 93 F. Supp. 3d 1331, 1367 (S.D. Fla. 2015), *aff'd sub nom. JTR Enters., LLC v. Columbian Emeralds*, 697 F. App'x 976 (11th Cir. 2017).

## V. DISCUSSION

### A. Sanctions against Defendants are Warranted under the Court's Inherent Powers

Based on the record before the court, the undersigned finds that sanctions are warranted against Defendants Kramer, ThermoLife, and Muscle Beach. Here, Plaintiff has shown by clear and convincing evidence that Defendant Kramer knowingly created a document for use in this litigation to advance his case and impede the efficient presentation of Plaintiff's case. Moreover, Kramer produced the License Agreement through ThermoLife in its March 2020 discovery responses and through Muscle Beach in its April 2020 response to Plaintiff's subpoena.[4]

Plaintiff argues that Defendants' overall conduct, especially relating to the fabrication of the License Agreement, is so abusive as to constitute an "unconscionable scheme" that warrants the ultimate sanction of a judgment against Defendants, as well as costs and fees. *See generally* (ECF No. 143 at 5-25). In response, Defendants do not dispute the Court's inherent authority to impose such sanctions, but argue that: (i) ThermoLife's admission of alter ego liability makes the Muscle Beach License Agreement irrelevant; (ii) Defendants disclosed and explained the circumstances surrounding the creation of the License Agreement, so that neither Plaintiff nor the fact-finding process was prejudiced; (iii) Kramer lawfully memorialized a pre-existing oral/implied agreement that existed since March 2017 between ThermoLife and Muscle Beach;

[4] Before discussing the evidence of bad faith, which supports sanctions, the undersigned notes that, contrary to Defendants' argument, Plaintiff need not seek Rule 11 sanctions before proceeding under § 1927 or the Court's inherent powers. (Sanctions Hr'g Tr. 68:2-8; 75:23-76:4). That is simply not the law. *See Chambers*, 501 U.S. at 33 ("Requiring the court to apply the other mechanisms to discrete occurrences before invoking the inherent power to address remaining instances of sanctionable conduct would serve only to foster extensive and needless satellite litigation, which is contrary to the aim of the rules themselves.").

and (iv) Defendants did not act purposefully or in bad faith. *See generally* (ECF No. 151); *see also* (Sanctions Hr'g Tr. 103:21-107:22). For the reasons discussed below, the undersigned disagrees.

First, the License Agreement is relevant to discovery on the claims and defenses at issue. Indeed, as to the License Agreement, both the District Judge and the undersigned have previously warned Defendants that they cannot seek to limit the scope of discovery by first agreeing to indemnify and hold Muscle Beach harmless and then by admitting alter ego liability in their Answers. *See, e.g.*, (ECF No. 108) (District Judge: "Defendants cannot unilaterally limit Plaintiff's discovery rights" by agreeing to indemnify Muscle Beach); (Discovery Hr'g Tr. 88:16-18) (undersigned: "[D]despite Defendants' judicial admission of alter ego, [the License Agreement] remains relevant to the issues in this case, and should be produced"); *id.* 89:24-90:1 (undersigned: "Again, Defendants' decision to indemnify Muscle Beach and to admit alter ego doesn't alter the parties' discovery obligations going forward."); *id.* 90:5-10 (undersigned: "[T]he licensing agreement is a very important part of this litigation" and "to judicially admit alter ego liability does not change the scope of the discovery as to the underlying licensing agreement.").

Second, when the License Agreement was produced to Plaintiff in March 2020, the operative complaint was the Amended Complaint and there was a dispute as to the relationship between the corporate entities. At that time, Defendants ThermoLife and Kramer's main defense was that Plaintiff had incorrectly sued ThermoLife, and that the correct defendant was its licensee, Muscle Beach. *See, e.g.*, (ECF No. 16 at 3, 4, 8) (Motion to Dismiss); *see also* (ECF No. 89 at 5, 8) (Defendants' Opposition to Plaintiff's Second Motion to Compel). To be clear, the SAC, which alleged alter ego liability and added Muscle Beach as a party defendant, was not filed until June 2020. Moreover, Defendants did not admit alter ego liability until June 18 and July, 7, 2020.

(ECF Nos. 113 ¶¶ 64 n.1, 68 n.2, 135 ¶¶ 64 n.1, 68 n.2). Thus, it is disingenuous for Defendants to argue that the License Agreement was irrelevant when the parties disputed the relationship between the corporate entities.

Third, Defendant Kramer's argument that he simply "memorialized" a pre-existing oral/implied agreement with Muscle Beach, and that such "memorializations" are "extremely common in intellectual property cases," (Sanctions Hr'g Tr. 66:1-2), ignores the stark contrast between his purported "memorialization" and that accepted by courts as legitimate in other intellectual property cases. (Sanctions Hr'g Tr. 82:1-12, 99:14-15). For example, in *Balsamo/Olson Grp., Inc. v. Bradley Place Ltd. P'ship*, 966 F. Supp. 757, 763 (C.D. Ill. 1996), the newly created document evidenced an arms-length agreement and expressly stated that it was a "memorialization" of an earlier oral agreement.[5] *Id. at* 761 n.9. In contrast, Kramer's newly created document did not alert Plaintiff that the License Agreement was a memorialization until compelled to do so by this Court. (Discovery Hr'g Tr. 88:19-22). Further obfuscating the authenticity of the License Agreement, the License Agreement did not reflect the date on which it was memorialized, was signed by Defendant Kramer for both parties, and did not reflect the actual terms that purportedly governed the relationship between ThermoLife and Muscle Beach.[6] (ECF No. 143 at 4). Thus, the License Agreement simply does not reflect the true course of conduct between the parties. (Sanctions Hr'g Tr. 132:15-16). Furthermore, sanctions are appropriate under the court's inherent powers when a party fabricates evidence to enhance his case. *See, e.g.*,

---

[5] *Balsamo* is also factually distinguishable as it relates to an issue of statutory standing requirements, and not sanctions.

[6] Indeed, the terms contained in the License Agreement bore little resemblance to the terms described by ThermoLife and Kramer in discovery. For example, although the License Agreement did not include any payment terms, the record reflects that ThermoLife purportedly loaned funds to Muscle Beach, which Muscle Beach was obligated to repay. (Sanctions Hr'g Tr. 132:15-16).

*Vargas v. Peltz*, 901 F. Supp. 1572, 1580 (S.D. Fla. 1995) (dismissing case when "[p]laintiff . . . attempted, by fraudulent means, to 'enhance' her case through the introduction of fabricated [evidence] and through fictionalized testimony concerning how she supposedly received the [evidence]"). Here, circumstantial evidence suggests that Defendant Kramer tried to enhance his case by manufacturing a written License Agreement at a time when the license was a disputed issue in the case.

Next, Defendants' argument that sanctions are unwarranted because they were forthright in producing the License Agreement and in disclosing the circumstances surrounding its creation rings hollow and sounds of revisionist history. (ECF No. 151 at 3); (Sanctions Hr'g Tr. 122:5-124:2). Although Defendants produced the License Agreement in ThermoLife's March 2020 Response to Plaintiff's First Set of Request for Production, nowhere in that response did ThermoLife indicate that this document was a memorialization of an existing oral or implied license. (Sanctions Hr'g Tr. 19:4-8: Pl. Exh. 2). Rather, Defendants waited until Plaintiff suspected the irregularities surrounding the License Agreement, and then tried to foreclose discovery on the issue: (i) first by filing the Expedited Request before the District Judge and offering to indemnify and hold Muscle Beach harmless if the Judge maintained the existing pre-trial deadlines (despite the filing of the SAC adding Muscle Beach as a defendant); (ii) then by filing their Answers admitting alter ego liability for Muscle Beach; and (iii) lastly before the undersigned by arguing that their admission of alter ego liability foreclosed Plaintiff's right to discovery on the License Agreement, which was now irrelevant. The record clearly reflects Defendants' vigorous objections to discovery requests about the License Agreement; Defendants did not produce the underlying metadata and a narrative explaining the circumstances surrounding the execution of the License Agreement until ordered by the Court. *See generally* (Discovery

Hr'g Tr. 88:19-22); *see also* (Sanctions Hr'g Tr. 46:10-49:21). Simply put, Defendants cannot escape sanctions because they eventually rectified their misconduct after being ordered by the Court. *See, e.g.*, *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (confirming district court's entry of default judgment against defendant who committed perjury during depositions, even though defendant clarified the statements under questioning by the district judge before trial started).

Furthermore, bad faith includes situations where a party purposely "tamper[s] with the evidence." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997). Here, Defendant Kramer fabricated a written agreement that did not exist prior to this lawsuit, and initially tried to pass it if off as legitimate. Defendant Kramer's belated explanation that he created the License Agreement in response to a Request for Production is unconvincing. *See* (Sanctions Hr'g Tr. 43:5-9); *also* (Kramer Dep. 228:1-6) ("Well, you know, when Mr. Wolf was badgering my attorney, I gave this agreement to memorialize the license so he would understand that there was no, really no difference in the terms of this license than any other previous licenses from ThermoLife."). Defendants were not asked to fabricate a license; they were asked to produce existing licenses. If no written license existed, then Defendant Kramer could have explained that an oral or implied license had existed, as he tried to convince the Court during the hearing. *See, e.g.*, (Sanctions Hr'g Tr. 96:3-19; 115:13-116:1); *see also* (Kramer Dep. 153:2-154:1) (Kramer's testimony that he was knowledgeable about the legality of oral and implied licenses). Moreover, according to Defendants, Kramer is a sophisticated litigant who "does a lot of IP." (Sanctions Hr'g Tr. 79:24-80:4). Against this backdrop, it is evident that the goal of Kramer's conduct was to advance the defenses in the lawsuit. Accordingly, the undersigned recommends that the Motion be granted as to Defendant Kramer and Defendants ThermoLife and Muscle Beach based

on the clear and convincing evidence of Kramer's bad faith in fabricating the License Agreement, and ThermoLife's and Muscle Beach's knowing production of the License Agreement.

**B. Sanctions Against Defense Counsel are Not Warranted**

The above notwithstanding, the undersigned finds insufficient evidence to sanction attorney Collins either through use of the Court's inherent powers or pursuant to 28 U.S.C. § 1927.[7] As with inherent powers, sanctions under § 1927 require a finding of bad faith. During the hearing, the undersigned questioned Plaintiff's counsel about Plaintiff's request for sanctions against attorney Collins. *See* (Sanctions Hr'g Tr. 34:7-35:21). In response, Plaintiff's counsel ambivalently stated, "My position at this point is to defer to the court on how [the issue of sanctions against attorney Collins] resolves itself. We did include 1927 as a remedy." *Id.* 35:8-10. Counsel later suggested that the Court might wish to conduct an *in camera* review of emails between attorney Collins and Defendants to determine the attorney's role in the incident and "if the Court feels like there's something to support this argument, so be it . . . . I don't want to create facts that don't exist and I don't want to argue that situations exist that don't [exist]." *Id.* 46:16-23.

Given counsel's lukewarm pursuit of sanctions against attorney Collins, coupled with the lack of evidence that attorney Collins was personally involved in, directed, or advised Defendant Kramer to create the License Agreement, the undersigned declines to invoke its inherent authority or § 1927 to sanction attorney Collins, finding no evidence that attorney Collins acted in bad faith.

[7] Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See generally*, *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001), amended on reh'g, 311 F.3d 1077 (11th Cir. 2002) (citing 28 U.S.C. § 1927). The statute was designed to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith. *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (citation omitted).

*See, e.g.*, *id.* 43:15-20 (Plaintiff's counsel's admission that he "[could not] say that anybody directed anybody to do it."); *see also id.* 42:1-19 (referring to Kramer's deposition testimony that he did not recall any emails with counsel); *id.* 116:2-18 (Defendants' counsel's discussion of lack of evidence that Defendant Kramer sought the advice of counsel before creating the License Agreement); *id.* 129:24-130:1 (Defendants' counsel argument that there is "no evidence that Mr. Collins had any scienter, that he was trying to commit fraud upon this court at all."). Accordingly, the undersigned recommends against an award of sanctions against attorney Collins.

## VI. RECOMMENDED SANCTIONS AGAINST DEFENDANTS

Plaintiff argues that no lesser sanction other than default is appropriate to punish Defendants, deter future misconduct, and restore the integrity of the proceedings. *Id.* 36:24-40:18); *see also* (ECF No. 143 at 1). Where documents are fabricated and used in support of claims, courts often find that only dismissal "can insure against abuse of the judicial process . . . ." *Benjamin v. BWIA Airlines*, No. 07-20017-CIV, 2009 WL 10667416, at *7 (S.D. Fla. Jan. 13, 2009). Moreover, dismissal or default judgment is particularly appropriate where the fabricated evidence concerns a "pivotal" or "linchpin" issue in the case. *Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007) (citing Vargas, 901 F. Supp. at 1582; *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1049 (8th Cir. 1991)). Plaintiff argues that the License Agreement was such a linchpin issue. (Sanctions Hr'g Tr. 192:3-4, 28:10).

Although not a "linchpin" document, the License Agreement was directly relevant to a disputed issue in the case, and its existence served to advance Defendants' case. But defaulting a defendant is a "drastic remedy" that should only be used in "extreme situations." *Perlman v. Theodule*, No. 09-80477-CIV, 2010 WL 11505826, at *1 (S.D. Fla. Aug. 10, 2010) (citation omitted). With this in mind, and after considering Defendants' actions, the prejudice to Plaintiff's

case (including wasted time and labor), and the Court's interest in promoting fairness and protecting the integrity of the judicial system, the undersigned concludes that lesser sanctions will serve to preserve the integrity of the judicial system and deter future misconduct by Defendants, while also ensuring Plaintiff's right to a fair trial. *See, e.g.*, *Rybner v. Cannon Design, Inc.*, No. 95 CIV. 0279 (SS), 1996 WL 470668, at *6 (S.D.N.Y. Aug. 20, 1996) (finding lesser sanctions in the form of jury instructions and award of fees and costs were "adequate to protect the integrity of the judicial system" despite plaintiff's fabrication of evidence and perjury). Lastly, the undersigned need not consider whether sanctions against Defendants are also appropriate under Rule 37.

Accordingly, the undersigned recommends that: (i) Defendants be precluded from introducing into evidence or otherwise using the License Agreement in their case-in-chief; (ii) the jury be advised of Defendant Kramer's attempt to manufacture favorable evidence, and its effect on his overall credibility;[8] and (iii) Plaintiff be awarded reasonable fees and costs incurred in connection with this Motion and the two prior motions to compel discovery regarding the License Agreement, ECF Nos. 62 and 87.

## VII. RECOMMENDATION

Accordingly, for the reasons discussed above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Sanctions (ECF No. 143) be **GRANTED IN PART**. More specifically: (i) Defendants should be precluded from introducing into evidence or otherwise using the License Agreement in their case-in-chief; (ii) the jury should be advised of

---

[8] *See Rybner*, 1996 WL 470668, at *6 (permitting charge to jury that plaintiff's falsehood under oath should be "considered seriously . . . in assessing [plaintiff's] credibility"); *Bernal v. All Am. Inv. Realty, Inc.*, 479 F.Supp.2d 1291, 1293-94 (S.D. Fla. 2007) (allowing jury instruction regarding defendant's spoliation of evidence and procurement of false evidence, "which [the jury] may consider in assessing his credibility").

Defendant Kramer's attempt to manufacture favorable evidence and its effect on his overall credibility; and (iii) Plaintiff should be awarded reasonable fees and costs incurred in connection with this Motion and the two prior motions to compel discovery regarding the License Agreement, ECF Nos. 62, 87.[9]

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on February 24, 2021.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Rodney Smith
All Counsel of Record

[9] Toward that end, upon a ruling on this Report, the Court should also direct that Plaintiff file a supplement, including billing records, to support the requested attorney's fees and costs incurred in connection with the discovery motions and this Motion.