**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| _____ ) | |
| BPI SPORTS, LLC, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | **CASE NO. 0:19-cv-60505-SMITH** |
| v. ) | |
| ) | |
| THERMOLIFE INTERNATIONAL, LLC, ) | |
| MUSCLE BEACH NUTRITION, LLC, ) | |
| and ) | |
| RONALD L. KRAMER. ) | |
| ) | |
| ) | |
| *Defendants*. ) | |
| _____ ) | |

**<u>DEFENDANTS THERMOLIFE INTERNATIONAL, LLC'S,</u>**
**<u>MUSCLE BEACH NUTRITION'S AND RONALD L. KRAMER'S MOTION</u>**
**<u>UNDER RULE 60(b)(6) TO VACATE PORTIONS OF ORDER OF JULY 14, 2021</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

TABLE OF EXHIBITS ......................................................................................................... vi

I. Introduction........................................................................................................... 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

    A.    The Dispute over the License Agreement ...................................................... 2

    B.    The Discovery Dispute Over Then-Non-Party MBN ..................................... 3

    C.    The License Agreement was Not Relevant During Trial ............................... 5

III. ARGUMENT ........................................................................................................... 7

    A.    Relief under Rule 60(b)(6) is Warranted ...................................................... 7

    B.    Vacatur Is Warranted When an Issue Becomes Moot Through No Fault of the Party Seeking Vacatur ................................................................................. 7

    C.    The Evidence-Fabrication Portions of the Sanctions Order are Moot and Should be Vacated ...................................................................................... 10

    D.    The Motion to Vacate is Timely .................................................................. 16

IV. CONCLUSION...................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*A&F Bahamas, LLC v. World Venture Grp., Inc.*,
No. 15-60019-CIV, 2019 WL 1979427 (S.D. Fla. May 3, 2019) ................................................. 7

*AAMCO Transmissions, Inc. v. Romano*,
No. 13-5747, 2016 WL 7374544 (E.D. Pa. June 27, 2016) ......................................................... 7

*ABS Global, Inc. v. Cytonome/ST, LLC*,
984 F.3d 1017, 1020 (Fed. Cir. 2021) ....................................................................................... 8

*Al Najjar v. Ashcroft*,
273 F.3d 1330 (11th Cir. 2001) ............................................................................................... 11

*Already, LLC v. Nike, Inc.*,
568 U.S. 85, 91 (2013) ............................................................................................................. 8

*Alvarez v. Smith*,
558 U.S. 87 (2009) ............................................................................................................... 1, 7

*American Association of University Professors v. U.S. Department of Justice*,
175 F.4th 413 (2d Cir. 2026) ................................................................................................... 9

*American Games, Inc. v. Trade Products, Inc.*,
142 F.3d 1164 (9th Cir. 1998) ............................................................................................... 10

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997) .................................................................................................................. 2

*Arthur v. Thomas*,
739 F.3d 611 (11th Cir. 2014) ................................................................................................. 7

*Atlanta Gas Light Co. v. F.E.R.C.*,
140 F.3d 1392 (11th Cir. 1998) ........................................................................................... 2, 8

*BankWest, Inc. v. Baker*,
446 F.3d 1358 (11th Cir. 2006) ........................................................................................... 8, 9

*BDO Seidman, LLP v. Freeman*,
No. 05-23076-CIV, 2007 WL 9701126 (S.D. Fla. May 8, 2007) ...................................... 8, 9, 10

*Blair v. Shanahan*,
919 F. Supp. 1361 (N.D. Cal. 1996) ......................................................................................... 7

*BLOM Bank SAL v. Honickman*,
145 S. Ct. 1612 (2025) ............................................................................................................. 7

*BPI Sports, LLC v. ThermoLife International, LLC,*
   Nos. 2023-1068, -1625, -1112,
   2025 WL 1683234 (Fed. Cir. June 16, 2025) ................................................................ 1, 6, 14, 10

*BUC International Corp. v. International Yacht Council Ltd.,*
   517 F.3d 1271 (11th Cir. 2008) ................................................................................ 16

*Camreta v. Greene,*
   563 U.S. 692 (2011) ................................................................................................. 14

*City & County of San Francisco v. Garland,*
   42 F.4th 1078 (9th Cir. 2022) ................................................................................... 14

*Cuffy v. Secretary, Department of Corrections,*
   No. 16-CV-62463, 2023 WL 5487500 (S.D. Fla. July 5, 2023) ...................................... 7

*Cutter v. Wilkinson,*
   544 U.S. 709 (2005) ................................................................................................. 11

*Democratic Executive Committee of Florida v.*
   *National Republican Senatorial Committee,*
   950 F.3d 790 (11th Cir. 2020) ................................................................................... 13

*Dennison Manufacturing Co. v. Panduit Corp.,*
   475 U.S. 809 (1986) ................................................................................................. 11

*Dominguez v. Circle K Stores, Inc.,*
   No. 11-23196-Civ., 2013 WL 4773629 (S.D. Fla. Sept. 4, 2013) ................................. 16

*Evolution Nutraceuticals, Inc. v. ThermoLife International, LLC,*
   No. 2:25-cv-00461-DJH (D. Ariz. filed Feb. 12, 2025) ............................................. 11

*Florida Association of Rehabilitation Facilities, Inc. v.*
   *State of Florida Department of Health & Rehabilitative Services,*
   225 F.3d 1208 (11th Cir. 2000) ................................................................................ 11

*Imperial Residential Design, Inc. v. Palms Development Group, Inc.,*
   70 F.3d 96 (11th Cir. 1995) ..................................................................................... 13

*Kaye v. Personal Injury Funding III, LP,*
   733 F. Supp. 2d 1345 (S.D. Fla. 2010) ..................................................................... 11

*Klapprott v. United States,*
   335 U.S. 601 (1949) ................................................................................................. 7

*Lairsey v. Advance Abrasives Co.,*
   542 F.2d 928 (5th Cir. 1976) ................................................................................... 16

iii

*Maradiaga v. United States*,
679 F.3d 1286 (11th Cir. 2012) ................................................................................. 7

*Marseilles Hydro Power LLC v. Marseilles Land & Water Co.*,
481 F.3d 1002 (7th Cir. 2007) ............................................................................. 9, 10

*Mas-Hamilton Group v. LaGard, Inc.*,
156 F.3d 1206 (Fed. Cir. 1998)........................................................................... 13, 14

*Miller v. Fenton*,
474 U.S. 104 (1985)................................................................................................... 11

*MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*,
965 F.3d 1210 (11th Cir. 2020) ............................................................................... 13

*Pernix Federal, LLC v. United States*,
No. 24-2327, 2026 WL 1906698 (Fed. Cir. July 2, 2026)......................................... 8

*Powell v. McCormack*,
395 U.S. 486 (1969)................................................................................................... 11

*Ramsey v. Walker*,
304 F. App'x 827 (11th Cir. 2008) ........................................................................... 16

*Russman v. Board of Education of the Enlarged City School District of the City of Watervliet*,
260 F.3d 114 (2d Cir. 2001) ...................................................................................... 8

*Skiles v. Careplus Health Plans, Inc.*,
No. 14-14087-BB, 2015 WL 1801272 (11th Cir. April 7, 2015)............................... 8

*Soliman v. United States ex rel. INS*,
296 F.3d 1237 (11th Cir. 2002) ................................................................................. 8

*Superhuman Inc. v. ThermoLife International, LLC*,
No. 1:24-cv-23765-DPG  (S.D. Fla. filed Sept. 30, 2024) ....................................... 11

*Superhuman Inc. v. ThermoLife International, LLC*,
No. 2:24-cv-09589-AB-AGR (C.D. Cal. filed Nov. 5, 2024) ................................... 11

*ThermoLife International, LLC v. Hi-Tech Pharmaceuticals, Inc.*,
No. 1:15-cv-00892-ELR (N.D. Ga. filed Mar. 27, 2015) ................................... 11, 12

*ThermoLife International, LLC v. Nikolaidis*,
No. 25STCV23506  (Cal. Super. Ct. filed Oct. 12, 2025).................................... 11, 16

*Troiano v. Supervisor of Elections in Palm Beach County, Florida*,
382 F.3d 1276 (11th Cir. 2004) ................................................................................. 11

*United States v. Cooper*,
   No. 11-15741, 2012 WL 3104258 (11th Cir. Aug. 1, 2012) ..................................................... 16

*United States v. Munsingwear, Inc.*,
   340 U.S. 36 (1950)................................................................... 1, 2, 7–11, 13, 14, 17

*United States v. Wheat*,
   Criminal Action No. 1:17-cr-229-AT-CMS (N.D. Ga. filed June 28, 2015) ........................... 12

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*,
   513 U.S. 18 (1994)................................................................................. 8–10, 12, 13

*Valero Terrestrial Corp. v. Paige*,
   211 F.3d 112 (4th Cir. 2000) ........................................................................... 9, 10

*Zivotofsky ex rel. Zivotofsky v. Clinton*,
   566 U.S. 189 (2012)........................................................................................ 10, 11

## Rules

15 U.S.C. § 1117.......................................................................................................... 1

28 U.S.C. § 2106.......................................................................................................... 9

35 U.S.C. § 285............................................................................................................ 1

Federal Rule of Civil Procedure 37(a)(5) ........................................................................ 4

Federal Rule of Civil Procedure 50 ................................................................................ 6

Federal Rule of Civil Procedure 59 ................................................................................ 6

Federal Rule of Civil Procedure 60 ................................................................................ 6

Federal Rule of Civil Procedure 60(b)........................................................................ 7, 9

Federal Rule of Civil Procedure 60(b)(6) ............................................... 1, 2, 7, 9, 15, 16

Federal Rule of Civil Procedure 60(c)(1) ...................................................................... 16

Supreme Court Rule 10................................................................................................ 11

## Other Authorities

13C Wright, Miller & Cooper,
   *Federal Practice & Procedure* § 3533.10 (3d ed. 2011)................................................. 7

**TABLE OF EXHIBITS**

| Exhibit # | Description |
|---|---|
| 1 | Non-Precedential Opinion, *BPI Sports, LLC v. ThermoLife International, LLC*, Nos. 2023-1068, -1625, -1112 (Fed. Cir. June 16, 2025) (DE 69) |
| 2 | Corrected Non-Confidential Opening Brief of Appellants ThermoLife International, LLC, Ronald L. Kramer, and Muscle Beach Nutrition LLC, *BPI Sports, LLC v. ThermoLife International, LLC*, Nos. 2023-1068, -1625, -1112 (Fed. Cir. filed June 29, 2023) (DE 28) |
| 3 | Corrected Non-Confidential Reply Brief of Appellants ThermoLife International, LLC, Ronald L. Kramer, and Muscle Beach Nutrition LLC, *BPI Sports, LLC v. ThermoLife International, LLC*, Nos. 2023-1068, -1625, -1112 (Fed. Cir. filed Oct. 31, 2023) (DE 41) |
| 4 | Appellants ThermoLife International, LLC, Ronald L. Kramer, and Muscle Beach Nutrition LLC's Combined Petition for Panel Rehearing and Rehearing En Banc, *BPI Sports, LLC v. ThermoLife International, LLC*, Nos. 2023-1068, -1625, -1112 (Fed. Cir. filed July 30, 2025) (DE 73) |
| 5 | Order on Petition for Panel Rehearing and Rehearing En Banc, *BPI Sports, LLC v. ThermoLife International, LLC*, Nos. 2023-1068, -1625, -1112 (Fed. Cir. Sept. 2, 2025) (DE 75) |
| 6 | Petition for a Writ of Certiorari, *ThermoLife International, LLC v. BPI Sports, LLC*, No. 25-860 (Jan. 15, 2026) |
| 7 | Supreme Court Denial of Petition for a Writ of Certiorari, *ThermoLife International, LLC v. BPI Sports, LLC*, No. 25-860 (Mar. 23, 2026) |
| 8 | Complaint, *Superhuman Inc. v. ThermoLife International, LLC*, No. 1:24-cv-23765-DPG (S.D. Fla. filed Sept. 30, 2024) (DE 1) |
| 9 | Complaint, *Superhuman Inc. v. ThermoLife International, LLC*, No. 2:24-cv-09589-AB-AGR (C.D. Cal. filed Nov. 5, 2024) (DE 1) |
| 10 | Complaint, *Evolution Nutraceuticals, Inc. v. ThermoLife International, LLC*, No. 2:25-cv-00461-DJH (D. Ariz. filed Feb. 12, 2025) (DE 1) |
| 11 | Plaintiff's Motion for Preliminary Injunction, *Evolution Nutraceuticals, Inc. v. ThermoLife International, LLC*, No. 2:25-cv-00461-DJH (D. Ariz. filed Apr. 26, 2025) (DE 20) |

vi

| 12 | Cross-Complaint, *ThermoLife International, LLC v. Nikolaidis*, No. 25STCV23506 (Cal. Super. Ct. filed Sept. 29, 2025) |
|----|----|
| 13 | First Amended Cross-Complaint, *ThermoLife International, LLC v. Nikolaidis*, No. 25STCV23506 (Cal. Super. Ct. filed May 4, 2026) |
| 14 | Aleeia, *How ThermoLife Got Away With Lying in Its Marketing Material*, EvilCorporations.com (Aug. 21, 2025), https://evilcorporations.com/corporate-corruption-thermolife-supplement-scandal/ |
| 15 | Profile for Aleeia (William) C., LinkedIn (accessed June 14, 2026), https://www.linkedin.com/in/aleeia-c-20ab60b3/ |
| 16 | *Two-Time Convicted Felon CEO and His Dietary Supplement Company Convicted of $4.7 Million Fraud Scheme*, U.S. Attorney's Office, Northern District of Georgia (Nov. 24, 2025), https://www.justice.gov/usao-ndga/pr/two-time-convicted-felon-ceo-and-his-dietary-supplement-company-convicted-47-million |
| 17 | Home Page, Muscle Beach Nutrition (accessed June 24, 2026), https://musclebeach.com/ |
| 18 | Apparel, Muscle Beach Nutrition (accessed June 24, 2026), https://musclebeach.com/collections/apparel |
| 19 | Accessories, Muscle Beach Nutrition (accessed June 25, 2026), https://musclebeach.com/collections/accessories |
| 20 | Pumping Iron Pre-Workout, Muscle Beach Nutrition (accessed June 24, 2026), https://musclebeach.com/products/pumping-iron-pre-workout |
| 21 | Muscle Beach, Instagram (accessed June 24, 2026), https://www.instagram.com/musclebeach/ |
| 22 | Muscle Beach Post Compilation, Instagram (accessed June 24, 2026), https://www.instagram.com/musclebeach/ |
| 23 | Email from Gregory Hillyer (June 24, 2026) |
| 24 | Second Amended Complaint, *ThermoLife Int'l, LLC v. Hi-Tech Pharmaceuticals, Inc.*, No. 1:15-cv-00892-ELR (N.D. Ga. filed Sept. 25, 2017) (DE 226) |
| 25 | Defendants' Unopposed Motion to Continue Trial Date, *ThermoLife Int'l, LLC v. Hi-Tech Pharmaceuticals, Inc.*, No. 1:15-cv-00892-ELR (N.D. Ga. filed Apr. 11, 2025) (DE 508) |

vii

| 26 | Order, *United States v. Wheat*, Criminal Action No. 1:17-cr-229-AT-CMS (N.D. Ga. filed Aug. 19, 2025) (DE 627) |
|----|---|
| 27 | Excerpts of Transcript of Jury Trial (Nov. 13, 2025), *United States v. Wheat*, Criminal Action No. 1:17-cr-229-AT-CMS (N.D. Ga. filed Mar. 17, 2026) (DE 867) |
| 28 | Stephen Daniells, *Hi-Tech Pharmaceuticals and CEO Convicted of $4.7 Million Wire Fraud Scheme,* NutraIngredients.com (Nov. 25, 2025), https://www.nutraingredients.com/Article/2025/11/25/hi-tech-pharmaceuticals-and-its-ceo-convicted-of-47-million-fraud-scheme/. |
| 29 | *Hi-Tech Pharmaceuticals and CEO Convicted in Multimillion-Dollar GMP Fraud Scheme*, Stack3d.com (Nov. 27, 2025), https://www.stack3d.com/2025/11/hi-tech-gmp-trial/. |
| 30 | Rosie Manins, *Money, Drugs at Core of Atlanta Businessman's Fraud trial*, Atlanta Journal-Constitution (Oct. 23, 2025), https://www.ajc.com/news/2025/10/money-drugs-at-core-of-atlanta-businessmans-fraud-trial/. |
| 31 | Sean Moloughney, *Jared Wheat, Hi-Tech Pharmaceuticals Convicted of Wire Fraud*, Nutraceuticals World (Nov. 25, 2025), https://www.nutraceuticalsworld.com/breaking-news/jared-wheat-hi-tech-pharmaceuticals-convicted-of-wire-fraud/. |
| 32 | Hi-Tech Pharmaceuticals, Inc., *BPI Sports and Hi-Tech Pharmaceuticals Complete First Prepackaged Chapter 5 and Promptly Emerge Positioned for Long-Term Growth,* PR Newswire (Dec. 1, 2023), https://www.prnewswire.com/news-releases/bpi-sports-and-hi-tech-pharmaceuticals-complete-first-prepackaged-chapter-5-and-promptly-emerge-positioned-for-long-term-growth-302002884.html. |

Pursuant to Federal Rule of Civil Procedure 60(b)(6), Defendants ThermoLife International, LLC ("ThermoLife"), Muscle Beach Nutrition LLC ("MBN"), and Ronald L. Kramer (collectively "Defendants") respectfully move for a limited vacatur of limited findings in the Court's Order on July 14, 2021 (DE 252), which affirmed and adopted the Report and Recommendation to District Judge (DE 226) ("Sanctions Order").  Due to the nature of the appellate ruling in this case, the limited disputed findings of the Sanctions Order are now rendered moot and should be vacated under the *Munsingwear* doctrine.

To be clear, Defendants do not seek to vacate or modify the sanction imposed against Defendants, including the monetary sanctions.  The present motion seeks vacatur of only limited subsidiary findings that, due to the appellate court's ruling, have become moot through no fault of Defendants and thus are not further reviewable.  Litigants nonetheless continue to rely on the now-mooted findings to the detriment of Defendants.  Limited vacatur is therefore in the interest of justice and the "ordinary course." *Alvarez v. Smith*, 558 U.S. 87, 97 (2009).

## I.  Introduction

In this case, after appeal to the United States Court of Appeals for the Federal Circuit, Defendants have prevailed on all claims brought by Plaintiff BPI Sports LLC ("BPI").  Because Defendants are prevailing parties for all causes of action (which BPI does not dispute), Defendants filed renewed motions for attorneys' fees under 35 U.S.C. § 285 and 15 U.S.C. § 1117.  DE 447; DE 448.  Those motions remain pending.

Typically, the attorney's fees motion would be the last request of a prevailing party.  But this case is unusual for another reason.  The Federal Circuit's ruling rendered moot this Court's findings with respect to Defendants' purported fabrication of evidence.  While the Federal Circuit's ruling affirmed this Court's sanctions ruling, the Federal Circuit did so without relying on the finding that Defendants purportedly fabricated evidence.  Ex. 1 at 5 (*BPI Sports, LLC v. ThermoLife Int'l, LLC*, Nos. 2023-1068, -1625, -1112, 2025 WL 1683234 (Fed. Cir. June 16, 2025)).  The appeals court's ruling "assum[ed] Defendants *did not* fabricate the License Agreement." *Id.* (emphasis added).  With that assumption, the appeals court turned the evidence-fabrication ruling into an unreviewed and unreviewable finding.

That assumption has left Defendants with no appellate review of the underlying findings of a purported fabrication of evidence.  The result is the epitome of a situation that warrants a narrow vacatur of the court's now unreviewed and unreviewable findings.

This sequence of events, as detailed below, has rendered moot Defendants' dispute concerning the Sanctions Order's finding that Defendants purportedly fabricated a written patent-license agreement ("License Agreement") between ThermoLife and MBN. Accordingly, the present motion asks, pursuant to Federal Rule of Civil Procedure 60(b)(6), that this Court take the additional routine step of vacating the now-moot portions of the Sanctions Order regarding the License Agreement. When, as here, an issue becomes moot before the losing party has had a full opportunity for adjudication on appeal, by no fault of that party, the proper course is to vacate the decision lest that decision be given preclusive or persuasive effect. *See, e.g., United States v. Munsingwear,* 340 U.S. 36, 39-40 & n.2 (1950); *Atlanta Gas Light Co. v. F.E.R.C.,* 140 F.3d 1392, 1402 (11th Cir. 1998) (vacating two earlier orders in accordance with *Munsingwear* because "established practice was to vacate the opinion of a district court which has been mooted by a change in circumstances while the case is pending appeal").

Absent vacatur, the Sanctions Order's findings will remain despite Defendants' inability to ask an appeals court to overturn the findings. ThermoLife's adversaries have already weaponized the sanctions findings by citing the Order as if it were binding, in an apparent belief that Defendants are estopped from further challenging the sanctions findings. Other future litigants will also likely cite the Sanctions Order as persuasive authority to argue that a *nunc pro tunc* agreement is not permitted under similar circumstances. Both are strong reasons why "[v]acatur is in order," *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71-72 (1997), and why Defendants' narrowly tailored request to vacate the specific findings should be granted.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Defendants presume that the Court is well aware of the facts and history of this case and thus detail only the facts most pertinent to the present motion. For further background, *see* DE 364; DE 433; DE 448. Other relevant facts are set forth in the accompanying Declaration of Ronald L. Kramer ("Kramer Decl.").[1]

### A. The Dispute over the License Agreement

ThermoLife and MBN are separate corporate entities. Ex. 2 at 74; Ex. 4 at 3; Ex. 6 at 4. While Defendant Ron Kramer is the principal owner (and CEO) of both, the companies' corporate

---

[1] For evidence that was previously presented to the Court and is in the record, the present motion largely cites the relevant briefs, which are attached exhibits. The relevant briefs cite the underlying evidence that supports the factual assertions in the present motion. If helpful to the Court, ThermoLife can refile the relevant documents.

forms are separate and distinct.  Ex. 2 at 75.  They are incorporated in different states, have separate bank accounts, and keep separate books.  At one point, they had different principals (Jeremy DeLuca was a former part-owner of MBN).  DE 229 at 4; Ex. 2 at 72-75; Ex. 3 at 45-46.  BPI introduced no evidence to the contrary during trial.  *See* Trial Tr. 2:43:2-3:32:25.

Despite these facts, at the outset of the dispute, BPI sued only ThermoLife and not MBN for false advertising of MBN's CRTN-3 product.  Ex. 2 at 26-27, 74; Ex. 4 at 3; Ex. 6 at 4.  BPI did not assert an alter ego claim implicating MBN.  Ex. 2 at 74; Ex. 4 at 3-5; Ex. 6 at 4-5.  Instead, BPI sued ThermoLife solely over the sale of CRTN-3, despite CRTN-3 being a product created and sold solely by MBN and not ThermoLife—presumably because ThermoLife's revenue dwarfed MBN's revenue, even though ThermoLife's revenue was largely unrelated to the sale of CRTN-3.  Ex. 2 at 26-27, 74; Ex. 4 at 3-7; Ex. 6 at 4-5.

Later evidence did show that ThermoLife and MBN had either an oral patent license or an implied patent license (or both) for ThermoLife's patented ingredients.  Ex. 2 at 72-77; Ex. 3 at 43-46; Ex. 4 at 6-7, 18-19; Ex. 6 at 4-6.  BPI's manufactured dispute focused on the ill-fated recommendation of Defendants' former counsel Gregory Collins to produce a *nunc pro tunc* written document that memorialized this patent license from 2016—including former counsel Gregory Collins's litigation tactics and failure to provide, in the Court's view, full information about the written document's provenance.  Ex. 2 at 26-27; Ex. 3 at 47; Ex. 4 at 16-17; Ex. 6 at 45-47.

## B.  The Discovery Dispute Over Then-Non-Party MBN

Rather than sue MBN, BPI tried to get MBN discovery through ThermoLife.  Ex. 2 at 26-27, 74; Ex. 4 at 3; Ex. 6 at 4.  BPI initially disputed the business relationship between ThermoLife and MBN on BPI's suspicion that MBN's sales of CRTN-3 products should be tied to ThermoLife, even though MBN only licensed ThermoLife's patents and purchased the active creatine nitrate ingredient from ThermoLife.  DE 151 at 2-3; Ex. 4 at 74; Ex. 6 at 4.  BPI suspected, without any tangible evidence, that ThermoLife was responsible for the marketing and sales of CRTN-3.  *See* DE 62-2.  But again, BPI did not allege an alter ego claim in either the original complaint or its later first amended complaint.  Ex. 2 at 74; Ex. 4 at 3-5; Ex. 6 at 4-5.

Defendants objected to BPI's discovery requests because, in their view, BPI had not established relevance of the discovery.  Ex. 4 at 4-5; Ex. 6 at 5.  As Defendants explained, if BPI wanted discovery from MBN, BPI should have sued MBN or, at a minimum, alleged an alter-ego or related theory of liability.  Ex. 2 at 26-27; Ex. 4 at 3-5; Ex. 6 at 4-5.  But BPI did not make any such

3

claims, at first.[2]  *Id.*

Ultimately, BPI filed a motion to compel seeking discovery about the relationship between ThermoLife and MBN.  *See* DE 62 at 2-10; Ex. 4 at 4-6; Ex. 6 at 5-6.  Defendants opposed.  *See* DE 65.  The parties then proceeded with discovery.  Defendants fully complied and produced all responsive discovery.  Ex. 4 at 4-5; Ex. 6 at 6.  As part of its discovery responses, ThermoLife produced the License Agreement.  DE 143 at 4; Ex. 4 at 5; Ex. 6 at 6.  At this time, BPI had not served any discovery requests seeking information about the details surrounding any license agreement between ThermoLife and MBN.  Ex. 4 at 4-5; Ex. 6 at 6.  Thus, ThermoLife was obligated only to produce the requested documents.  *Id.*

At that point, BPI used the License Agreement as a hook for seeking additional discovery. On April 3, 2020, BPI served additional discovery.  DE 226 at 6-8; *see also* DE 87-2.  BPI's additional discovery requests were aimed at the details of the License Agreement.  DE 87-2 at 1-11.  Through former counsel, Defendants objected to producing further information because they opted to agree that ThermoLife and MBN were alter egos, which necessarily mooted the underlying discovery dispute.  DE 135 ¶ 64 n.1; *id.* ¶ 68 n.2; Ex. 2 at 26; Ex. 4 at 5; Ex. 6 at 5.  Defendants agreed to this course as a way to limit unnecessary discovery and expense.  Ex. 4 at 5; Ex. 6 at 5. By this time, the case had been pending for sixteen months, and Defendants had expended significant attorney's fees to defend baseless false-advertising claims over a product that had approximately $162,000 in total sales.  DE 337-37; Ex. 4 at 5.  On May 26, 2020, BPI filed a second motion to compel.  DE 87; Ex. 4 at 5; Ex. 6 at 5.  BPI was seeking production of metadata and updated interrogatory responses concerning the creation of the License Agreement.  DE 87 at 6-10; Ex. 4 at 5; Ex. 6 at 5.

On June 19, 2020, a hearing was held on the pending motions.  Ex. 4 at 5; Ex. 6 at 6.  After briefing and argument, Magistrate Judge Valle granted BPI's motions to compel but denied fees and costs because "the parties' respective positions were substantially justified under Rule 37(a)(5)."  DE 122 at 93:1-15; Ex. 2 at 23; Ex. 4 at 5-6; Ex. 6 at 6.  She added: "I think the issues – the fact that we ended up having a two-hour hearing show[s] that the issues in this case are nuanced and complicated[.]"  *Id.*  As a result of that second motion, the Court ordered Defendants to provide supplemental discovery responses about the patent license and how it was memorialized

---

[2] BPI ultimately acquiesced when it filed its second amended complaint, where BPI alleged the same claims against MBN as a defendant for the first time.  Ex. 4 at 4-5; Ex. 6 at 5.

4

in the written document.  DE 122; Ex. 4 at 6; Ex. 6 at 6.

In response, Defendants again provided complete discovery responses and explained in detail how and why the License Agreement was prepared and produced.  *See, e.g.*, DE 151 at 6-9; Ex. 2 at 72; Ex. 4 at 6; Ex. 6 at 6.  Mr. Kramer also explained that the License Agreement was intended to memorialize the oral (or implied) license from 2016.  DE 151, Ex. C at 2-3 (interrogatory response explaining that Mr. Kramer created the written agreement "to memorialize in writing the oral agreement that was reached between Muscle Beach and ThermoLife, on or about March 16, 2017"); Ex. 2 at 27, 72; Ex. 4 at 6; Ex. 6 at 6.  Mr. Kramer even explained that he used "one of Defendants' other license agreements in a Microsoft Word document" as a template to accurately capture the terms of ThermoLife's agreements from March 2017.  *Id.*; Ex. 2 at 76.  Along with those responses, Defendants also produced the metadata associated with the document.  Ex. 4 at 5-6.

Several months later, on September 24, 2020,  BPI then moved for case-terminating sanctions based, in part, on Defendants' discovery responses.  DE 143 at 4, 12-13; Ex. 4 at 7; Ex. 6 at 6-7.  BPI did not contend that Defendants' responses were incomplete or misleading.  Instead, BPI argued that ThermoLife had produced a "false" license agreement and alleged misconduct of Defendants' former counsel Gregory Collins.  DE 143 at 4, 12-13; Ex. 4 at 7; Ex. 6 at 6-7.  A hearing was held on November 18, 2020.  DE 184.  While Magistrate Judge Valle previously concluded that the parties' discovery positions were substantially justified on the same issues raised in BPI's motion for sanctions, Judge Valle nevertheless ruled that Defendants and their former counsel had acted in bad faith with respect to the subsequent discovery efforts about the written patent license.  DE 226 at 11-16; Ex. 4 at 7.  In her Report and Recommendation, Judge Valle focused "on whether Defendant Kramer and his attorney acted in bad faith in creating the License Agreement for use in this litigation."  *Id.* at 3.  Judge Valle found that "the circumstances surrounding the creation of the License Agreement, coupled with its seemingly innocuous production during discovery and Defendants' subsequent tactical attempts to stimy [sic] discovery on this issue, provide clear and convincing evidence of Defendants' bad faith so as to warrant the imposition of sanctions pursuant to the Court's inherent powers."  *Id.*  The Court later adopted the Report and Recommendation, including the recommended sanctions.  DE 252.

### C.  The License Agreement was Not Relevant During Trial

The case was tried to a jury in October 2021.  BPI pursued three claims for Lanham Act

false advertising, state-law unfair competition, and false patent marking.  The jury found in favor of Defendants on the false patent marking claim.  DE 332 at 4-5.  For the Lanham Act false-advertising and state-law unfair-competition claims, the jury found Defendants liable but awarded BPI zero damages.  *Id.* at 1-4.  During trial, BPI did not introduce any evidence establishing that the License Agreement was relevant to any of the three claims presented to the jury.  Ex. 2 at 26-27; Ex. 3 at 46-47; Ex. 4 at 4.[3]

After the verdict, on November 22, 2021, Defendants renewed their Rule 50 JMOL motion that BPI failed to meet its burden of proving false advertising and unfair competition.  DE 361.  BPI filed a Rule 59 motion, seeking a new trial on the theory of a compromised verdict.  DE 360.  The Court denied both motions on September 30, 2022.  DE 416 and 417.

On October 25, 2022, Defendants filed a motion under Rule 60, seeking relief from the judgment and from the Court's sanctions decision.  DE 433.  Defendants presented evidence that showed that *nunc pro tunc* licenses and the memorialization of those licenses are common practices and entirely permissible.  *Id.* at 16-20.  The Court denied Defendants' Rule 60 motion on February 14, 2023.  DE 438.  The parties timely appealed their respective adverse decisions to the United States Court of Appeals for the Federal Circuit.  DE 440.

On June 16, 2025, the Federal Circuit issued its opinion reversing the Court's denial of Defendants' JMOL motion.  Ex. 1 at 6-9.  Defendants thus prevailed on all claims brought by BPI.  Additionally, the appeals court affirmed this Court's Sanctions Order.  *Id.* at 9-11.  In doing so, the Federal Circuit did not affirm the finding that the License Agreement was fabricated.  Instead, the Federal Circuit specifically "assum[ed]," presumably from arguments presented in Defendants' appeal, that Defendants "did not fabricate the License Agreement."  *Id.* at 11.  The Federal Circuit's affirmance instead rests on the separate bases for sanctions—specifically this Court's findings "that Appellants (1) withheld information surrounding the circumstances of the License Agreement until compelled to release this information and (2) attempted to prevent discovery of the circumstances surrounding the creation of the License Agreement."  *Id.*  Thus, the appeals court's affirmance rested not on a finding of evidence fabrication but on Defendants' actions in withholding and preventing discovery about the License Agreement.  *Id.*  Of course, those actions

---

[3] The only instance where BPI referenced the License Agreement during trial was its attempt at tarnishing Mr. Kramer's credibility, and it was not offered as substantive evidence to support any of the three claims presented to the jury.  DE 358 at 114-149 (Trial Tr. 4:144:14-4:149:6).

were attributable to Defendants' prior counsel.

Defendants sought rehearing and rehearing en banc, Ex. 4, which was denied on September 2, 2025, Ex. 5.  On January 15, 2026, Defendants filed a petition for a writ of certiorari with the United States Supreme Court.  Ex. 6.  The Supreme Court denied the petition on March 23, 2026. Ex. 7.

## III.  ARGUMENT

### A.  Relief under Rule 60(b)(6) is Warranted

A Rule 60(b)(6) motion permits a court to "relieve a party" from an "order" for "any other reason that justifies relief."  *A&F Bahamas, LLC v. World Venture Grp., Inc.*, No. 15-60019-CIV, 2019 WL 1979427, at *2 (S.D. Fla. May 3, 2019) (quoting Fed. R. Civ. P. 60(b)).  Relief under Rule 60(b)(6) is an "extraordinary remedy," and thus a movant must establish "extraordinary circumstances" warranting relief.  *Arthur v. Thomas*, 739 F.3d 611, 628 (11th Cir. 2014) (citations omitted); *accord BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1617 (2025); *Klapprott v. United States*, 335 U.S. 601, 614-15 (1949).  A party seeking relief under Rule 60(b) must show "a justification for relief so compelling that the district court is required to grant the motion."  *Cuffy v. Sec'y, Dep't of Corrections*, No. 16-CV-62463, 2023 WL 5487500, at *1 (S.D. Fla. July 5, 2023) (quoting *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012)).

Here, for the reasons stated below, Defendants have established the "extraordinary circumstances" that warrant relief and have shown that vacatur is required under settled precedent.  As detailed, numerous courts have applied *Munsingwear* via a Rule 60(b)(6) motion.  *See infra*; *see, e.g.*, *AAMCO Transmissions, Inc. v. Romano*, No. 13-5747, 2016 WL 7374544, at *3 (E.D. Pa. June 27, 2016) (granting the plaintiff's motion for vacatur under Rule 60(b)(6)); *Blair v. Shanahan*, 919 F. Supp. 1361, 1367 (N.D. Cal. 1996). The same should be done here.

### B.  Vacatur Is Warranted When an Issue Becomes Moot Through No Fault of the Party Seeking Vacatur

When an issue becomes moot before the losing party has a full opportunity to challenge the underlying decision, vacatur is the standard remedy.  In *Munsingwear*, 340 U.S. at 39-40 & n.2, the Supreme Court explained that, when a case or controversy becomes moot on appeal, "the standard disposition in federal civil cases" is to "vacate the judgment below and remand with a direction to dismiss."  *See also Alvarez*, 558 U.S. at 97; 13C Wright, Miller & Cooper, *Federal Practice & Procedure* § 3533.10 (3d ed. 2011) ("A reasonably clear answer can be given for the disposition of cases that become moot by events outside the parties' control after final judgment

7

in the district court but before decision of the last appeal that is available as a matter of right—the judgment should be vacated, and the action dismissed as moot.").

Since *Munsingwear*, the Supreme Court has recognized only one exception to this "standard disposition": Where the party seeking vacatur itself caused the mootness, such as by entering into a settlement agreement, vacatur is no longer the "standard disposition." *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24-28 (1994). In such cases, the party seeking vacatur must demonstrate "exceptional circumstances" beyond the case's mootness. *Id*. at 29. In its articulation of this exception, the Court observed that a court asked to vacate a judgment must always "take account of the public interest" in judicial precedents, which parties may not conspire to circumvent by agreeing to invoke the "secondary remedy of vacatur." *Id*. at 26-27. But this public-interest factor "carries considerably less weight" where the case being reviewed is a district court decision. *Russman v. Bd. of Educ. of the Enlarged City Sch. Dist. of the City of Watervliet*, 260 F.3d 114, 122 n.2 (2d Cir. 2001).

The Eleventh Circuit has applied *Munsingwear* when vacating district court decisions where the case has become moot on appeal by no fault of the losing party. *See, e.g., Skiles v. Careplus Health Plans, Inc.*, No. 14-14087-BB, 2015 WL 1801272, at *1 (11th Cir. April 7, 2015) (vacating the district court's order of remand where the appeal became moot because a party was dismissed from a state-court action); *BankWest, Inc. v. Baker*, 446 F.3d 1358, 1368 (11th Cir. 2006) (vacating the district court's order denying motions for preliminary injunction under the *Munsingwear* rule); *Soliman v. United States ex rel. INS*, 296 F.3d 1237, 1243 (11th Cir. 2002) (per curiam) ("Under our precedent, when a case becomes moot on appeal, the Court of Appeals must not only dismiss the case, but also vacate the district court's order."); *Atlanta Gas Light*, 140 F.3d at 1402-03 (vacating two orders that became moot during appeal in accord with *Munsingwear*). The Federal Circuit likewise deems vacatur to be the "proper disposition." *Pernix Federal, LLC v. United States*, No. 24-2327, 2026 WL 1906698, at *2 (Fed. Cir. July 2, 2026); *ABS Glob., Inc. v. Cytonome/ST, LLC*, 984 F.3d 1017, 1020 (Fed. Cir. 2021) ("On appeal, . . . a case becomes moot 'when the issues presented are no longer ''live'' or the parties lack a legally cognizable interest in the outcome.'" (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013))).

As the Eleventh Circuit explained in *Soliman*, "[t]he policy of vacating the underlying judgment is 'premised on the equitable principle that a party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to

8

acquiesce in the judgment.'"  296 F.3d at 1243-44 (citing *Atlanta Gas Light,* 140 F.3d at 1403 (quoting *U.S. Bancorp*, 513 U.S. at 25)).  Moreover, "since vacatur is a remedy afforded to a party who has been denied an opportunity to challenge a particular ruling on appeal, the remedy only applies to those issues which the party actually challenged on appeal."  *BDO Seidman, LLP v. Freeman,* No. 05-23076-CIV, 2007 WL 9701126, at *8 (S.D. Fla. May 8, 2007) ("[T]he appellate court must 'vacate *the portion* of the district court's order that addresses [the mooted issue].'" (quoting *BankWest,* 446 F.3d at 1368 (emphasis and modifications in original)).

The *Munsingwear* doctrine is equally applicable to a district court's authority to vacate or modify its own ruling under at least Rule 60(b)(6).  "The rationale" for permitting vacatur when a case becomes moot rests on basic notions of fair play and justice, as "frustrat[ion] by the vagaries of circumstance" should not require a party "to acquiesce" to a ruling that can no longer be challenged or was not passed on by a reviewing court.  *U.S. Bancorp*, 513 U.S. at 25.  "*Munsingwear* practice 'clears the path for future relitigation of the issues between the parties' and ensures that unreviewable judgments do not 'spawn[] any legal consequences.'"  *Am. Ass'n of Univ. Professors v. United States Dep't of Justice*, 175 F.4th 413, 416 (2d Cir. 2026) (quoting *Munsingwear*, 340 U.S. at 40-41).

The rule that vacatur is the appropriate remedy, *i.e.*, the "ordinary practice," when a case becomes moot by no fault of the losing party applies with equal force to a motion asking the district court to vacate a portion of its own decision.  Such request is little different than when a litigant asks a district court to invoke its authority to vacate decisions under Federal Rule of Civil Procedure 60(b)(6), which permits district courts to "relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief."  *Id*.; *see also U.S. Bancorp*, 513 U.S. at 29 (recognizing the authority of district courts to vacate a decision in light of mootness under Rule 60(b)).  That power is at least as broad as appellate courts' authority to "affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review."  28 U.S.C. § 2106.

Consistent with these principles, district courts apply the *Munsingwear* standard to vacating their own decisions under Rule 60(b)(6).  *E.g.*, *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 120 (4th Cir. 2000) ("[D]istrict courts have long vacated (or not) their own judgments due to mootness on the same grounds that appellate courts have[.]").  Some courts have suggested that a district court is "not … cabined by the 'exceptional circumstances' test" of *U.S. Bancorp* and thus

9

a district court's power to vacate under Rule 60(b)(6) is broader. *Marseilles Hydro Power LLC v. Marseilles Land & Water Co.*, 481 F.3d 1002, 1003-04 (7th Cir. 2007); *see also Am. Games Inc. v. Trade Prods., Inc.,* 142 F.3d 1164, 1167-70 (9th Cir. 1998). *But see Valero*, 211 F.3d at 116-17 (indicating that the "same" standard applies under Rule 60(b)(6) as under § 2106 and *U.S. Bancorp*).[4]

### C. The Evidence-Fabrication Portions of the Sanctions Order are Moot and Should be Vacated

Here, the Court's "fabricated evidence" finding has become a mooted issue through no fault of Defendants. It is now a classic example of the type of dispute that is properly vacated upon the straightforward application of the *Munsingwear* doctrine. Not vacating the identified ruling would only cause continued harm to Defendants, who prevailed in the litigation.

*First*, there can be little disagreement that the parties' dispute over the purportedly fabricated License Agreement is now moot through no fault of Defendants. As noted above, Defendants took all possible steps to appeal the findings in the Sanctions Order. *See* Exs. 1-7. The Federal Circuit's opinion affirming the Sanctions Order expressly did not decide whether the License Agreement was "fabricated" and in fact assumed, presumably from the facts presented in the appeal briefing, that the License Agreement was *not* fabricated. *BPI Sports*, 2025 WL 1683234, at *5. By affirming the Court's Sanctions Order while assuming that the License Agreement was not fabricated, the Federal Circuit rendered moot the issue of whether the "License Agreement fabrication" was clearly erroneous.

Additionally, Defendants challenged the same findings that were rendered moot on appeal. As shown in Defendants' briefing before the Federal Circuit, Defendants challenged the specific findings at issue here. *See* Ex. 2 at 70-77; Ex. 3 at 42-47. Defendants also challenged then in their petition for rehearing en banc. Ex. 4 at 18-21. As this Court explained in another case, "the remedy [of vacatur] only applies to those issues which the party actually challenged on appeal." *BDO Seidman,* 2007 WL 9701126, at *8. Defendants have squarely met that requirement.

Further, given the Federal Circuit's ruling, Defendants could not challenge the specific "evidence fabrication" ruling at the Supreme Court. Defendants did file a certiorari petition, but the petition was focused on what Defendants saw as the misapplication of the inherent authority

---

[4] As noted below, any possible difference in standards has no bearing here because the "exceptional circumstances" test is not applicable.

to sanction. *See* Ex. 6. Defendants could not seek review of the evidence-fabrication issue because it was not decided by the Federal Circuit. *See* S. Ct. R. 10 ("Review on a writ of certiorari is not a matter of right, but of judicial discretion."); *see also Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 201 (2012) ("In particular, when we reverse on a threshold question, we typically remand for resolution of any claims the lower courts' error prevented them from addressing."); *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005) (declining to consider certain arguments because the appellate court "did not rule on respondents' further argument" after reaching a determination on other grounds); *Dennison Mfg. Co. v. Panduit Corp.*, 475 U.S. 809, 810 (1986) ("In the absence of an opinion clearly setting forth the views of the Court of Appeals on these matters, we are not prepared to give plenary consideration to petitioner's claim that the decision below cannot be squared with [the relevant rule]."); *Miller v. Fenton*, 474 U.S. 104, 118 (1985) (electing not to reach an issue, in part, because "it is not clear from this language that the court [of appeals] did in fact independently evaluate the" issue below).

This resulting scenario in this case is a classic example of mootness that mandates vacatur. *See, e.g.*, *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1281 (11th Cir. 2004); *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001); *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216-17 (11th Cir. 2000) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969))); *Kaye v. Pers. Injury Funding III, LP*, 733 F. Supp. 2d 1345, 1346-47 (S.D. Fla. 2010).

*Second*, Defendants are being adversely impacted precisely in the manner that the *Munsingwear* doctrine is intended to prevent. As detailed in the accompanying declaration and exhibits, numerous litigants have weaponized the alleged "evidence fabrication" findings that Defendants can no longer challenge on appeal. *See ThermoLife Int'l, LLC v. Nikolaidis*, No. 25STCV23506 (Cal. Super. Ct. filed Oct. 12, 2025) ("*Nikolaidis*"); *Evolution Nutraceuticals, Inc. v. ThermoLife Int'l, LLC*, No. 2:25-cv-00461-DJH (D. Ariz. filed Feb. 12, 2025); *Superhuman Inc. v. ThermoLife Int'l, LLC*, No. 2:24-cv-09589-AB-AGR  (C.D. Cal. filed Nov. 5, 2024); *Superhuman Inc. v. ThermoLife Int'l, LLC*, No. 1:24-cv-23765-DPG  (S.D. Fla. filed Sept. 30, 2024); Exs. 8-13; Kramer Decl. ¶¶ 12-22. They have weaponized the now-moot findings in subsequent litigations involving ThermoLife and/or Mr. Kramer in an effort to tarnish their credibility and to vilify the transactions between ThermoLife and MBN that validly existed even before the

11

discovery dispute over the License Agreement.  These cases exemplify how ThermoLife's adversaries have expressly relied on the sanctions findings in an attempt to bolster their claims or improperly tarnish ThermoLife and/or Mr. Kramer.  *See id.* ¶¶ 12-22; Exs. 8-13.  These examples highlight the real-world consequences and adverse impact imposed on ThermoLife.

Additionally, ThermoLife has a long-pending patent-infringement action against Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech") and other defendants in the Northern District of Georgia.  *ThermoLife Int'l, LLC v. Hi-Tech Pharms., Inc.*, No. 1:15-cv-00892-ELR (N.D. Ga. filed Mar. 27, 2015); Kramer Decl. ¶ 25.  In 2023, Hi-Tech publicly reported that it had acquired BPI.  Ex. 32. Of further interest, Hi-Tech is represented in the Georgia litigation by Gregory Hillyer, the same attorney who represents BPI in the present, baseless action against ThermoLife.  Ex. 25 at 2. Hi-Tech is Mr. Hillyer's biggest client, accounting for "roughly half" of his law firm's litigation matters "over the last decade."  Ex. 27. Mr. Hillyer also served as an expert witness for Hi-Tech and its CEO, Jared Wheat, in *United States v. Wheat*, Criminal Action No. 1:17-cr-229-AT-CMS (N.D. Ga. filed June 28, 2015).  Exs. 25-26.

The patent action by ThermoLife was stayed pending the results of the related criminal trial in which Hi-Tech and Mr. Wheat were defendants.  Ex. 25.  Hi-Tech and Mr. Wheat were recently convicted of wire fraud, and Hi-Tech was also convicted of conspiracy, and money laundering in that proceeding. ThermoLife expects the patent action to resume shortly regardless of the sentence ultimately imposed.  Kramer Decl. ¶ 25; *see also* Exs. 16, 28–31.

Given Hi-Tech's relationship with BPI, Mr. Hillyer's substantial involvement with Hi-Tech, and his familiarity with the sanctions findings in this case, there is a substantial concern that Hi-Tech and Mr. Wheat will invoke those findings to attack ThermoLife's and Mr. Kramer's credibility when defending the patent claims.  Kramer Decl. ¶ 26.

Beyond the litigations, an apparent consumer advocate is spreading the now-moot sanctions findings through a website called "Evil Corporations."  Exs. 14 & 15; Kramer Decl. ¶ 17. The website published a posting that directly quotes the Sanctions Order to claim that ThermoLife and Mr. Kramer were responsible for "a deliberate act of deception."  Ex. 14 at 5.  The website also falsely repeats the now refuted allegations that BPI pressed at trial, including the contention that "[t]he people who bought CRTN-3 … were the invisible injured."  *Id.*  This article is yet another example of how the now-mooted findings are continuing to be deployed to Defendants' detriment.

12

Ultimately, Defendants sought "review of the merits of an adverse ruling, but [are] frustrated by the vagaries of circumstances," and they "ought not in fairness be forced to acquiesce in the judgment." *U.S. Bancorp,* 513 U.S. at 25. Using the Sanctions Order in subsequent proceedings that are unrelated to the present matter is highly prejudicial, especially because the License Agreement issue was highly contested but review of the Court's findings is now moot.

Moreover, the Court's interest to deter future conduct by Defendants was satisfied and remains undisturbed as the vacatur being sought is limited to only those portions of the Court's Sanctions Order directed to the issue of whether the License Agreement was fabricated. Indeed, at trial, Defendants did not introduce or otherwise use the License Agreement in their case-in-chief and the jury was instructed about Defendant Kramer's alleged attempt to manufacture favorable evidence and its effect on his overall credibility. The deterrent effects of the substantial monetary sanctions are also not at issue in this Motion. A vacatur would not disturb the sanctions imposed on Defendants but would remove the findings surrounding the purported fabrication of the License Agreement, an issue that Defendants are precluded from further appealing because the issue was mooted by the vagaries of the Federal Circuit opinion.

Additionally, the ongoing impact of the now-mooted evidence-fabrication ruling takes this case outside the category of mooted cases that cannot have an impact on other litigations. *Cf. Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*, 950 F.3d 790, 795 (11th Cir. 2020) (declining to vacate a stay-panel opinion because "the necessarily tentative and preliminary nature of a stay-panel opinion precludes the opinion from having an effect outside that case").

Finally, the "public interest" further weighs heavily in favor of vacatur here. *See U.S. Bancorp,* 513 U.S. at 26 ("As always when federal courts contemplate equitable relief, our holding must also take account of the public interest."); *accord Munsingwear*, 340 U.S. at 41. The public interest favors the preservation of upheld judgments and findings—not those that the Federal Circuit did not adopt. The public interest will be harmed if courts and litigants are left to rely on this Court's Sanctions Order that contains now-mooted findings.

Here, the Court's finding that a later-written patent-license agreement is necessarily "fabricated evidence" runs counter to cases routinely recognizing the propriety of such a written memorialization of an earlier oral agreement. Indeed, such agreements are not unusual. *See, e.g., MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1219 (11th Cir. 2020) (holding that a "nunc pro tunc assignment filed before" the action's filing date "with an effective

13

assignment date before the action" is sufficient for standing); *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) ("This court has adopted the reasoning of those courts which have held that a copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer *ab initio.*"); *see also Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998). Under these circumstances, the public interest is harmed when a ruling that runs counter to other precedent remains "on the books" even though the appellate process did not affirm the ruling. The Federal Circuit assumed the fabrication of the License Agreement did not happen, and the Sanctions Order will only cause confusion if the "evidence fabrication" ruling is not vacated.

Furthermore, the public interest will be advanced because only partial vacatur is sought here. "[P]artial vacatur of a lower opinion can be appropriate." *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1088 (9th Cir. 2022); *see also Camreta v. Greene*, 563 U.S. 692, 698 (2011) (vacating only "the part of the Ninth Circuit opinion that decided the Fourth Amendment issue" under *Munsingwear*). Other litigants and attorneys can continue to rely on the Court's findings that relate to attempts to prevent discovery into the License Agreement. Of course, in Defendants' view, that discovery conduct was solely attributable to former counsel.

Finally, the interests of justice warrant limited vacatur. ThermoLife and Muscle Beach Nutrition are continuing on their path of being successful companies, Kramer Decl. ¶¶ 5-10, but the existence of the now-moot sanctions findings continues to have a detrimental effect, *id.* ¶¶ 12-26. ThermoLife currently has a portfolio of over 100 granted patents and over 100 pending patents that span over 19 jurisdictions. *Id.* ¶ 6. Those patents and patent applications relate to various innovations, including for example, the use of nitrate to reduce blood pressure, the use of nitrate to increase muscle growth, the use of nitrate to increase vasodilation, methods to create and administer nitric oxide gas, methods to treat anemia, methods to increase SpO2, methods to treat migraine, methods to treat COPD, water-soluble curcumin compounds, carnitine salt derivatives, and amino acid nitrate compounds, and many more. *Id.* ThermoLife has successfully licensed its patented technologies to many leading players in the supplement market such as Force Factor, LLC, Cellucor, Inc., Ghost Lifestyle LLC, Glanbia plc., HumanN, Inc., Qunol® by Quten Research Institute, LLC, Sanofi S.A., and dozens of other companies. *Id.* ¶ 7.

Muscle Beach Nutrition is having success with a new focus. *Id.* ¶ 8. It has renewed emphasis on the "Muscle Beach" brand and offers apparel, accessories, and other products under the

MUSCLE BEACH trademark.  *Id.* ¶¶ 8-9; Exs. 17-22.  It also now offers the PUMPING IRON®
pre-workout supplement, which is a patented two-step formula for immediate nitric oxide produc-
tion.  Kramer Decl. ¶ 10; Ex. 20.

Absent vacatur, the evidence-fabrication findings will continue to unfairly impose a cloud
over Mr. Kramer, ThermoLife, and Muscle Beach Nutrition.  As detailed below, adversaries con-
tinue to weaponize the findings, even though Defendants have no feasible path to challenge them
(other than the present Rule 60 motion).  That creates a manifestly unjust status quo that will lead
only to further harm against two successful businesses that already had to endure BPI's years-long
failed litigation resting on meritless claims.  Indeed, as Defendants had explained earlier on several
occasions, BPI never had any reasonable basis to bring its action against Defendants.  *See, e.g.*,
DE 361 at 4-19; Ex. 2 at 33-69; Ex. 3 at 3-24.  Yet, Defendants had to endure years of litigation
and eventually prevailed when the Federal Circuit ruled.  Ex. 1.  That same type of injustice should
not hang over Defendants now in view of the mootness of the sanctions findings.

Furthermore, vacating the limited sanctions findings has no impact on Plaintiff BPI.  The
monetary award will remain intact upon vacatur because the sanctions order will largely remain in
place but be limited to the findings that relate to the counsel-driven litigation and discovery deci-
sions to not produce discovery responses.  Given the lack of impact on BPI, one might expect BPI
to not oppose the motion, yet BPI does, and it may be doing so because BPI is now controlled by
Hi-Tech Pharmaceuticals.  *See* Kramer Decl. ¶ 25.[5]

In sum, Defendants request limited vacatur of the Order's findings to the extent that such
findings conclude that the License Agreement was fabricated.  Specific limited findings include:

> (1) "Defendant Kramer fabricated a written agreement that did not exist prior
> to the lawsuit, and initially tried to pass it [] off as legitimate."  DE 252 at 5
> (alteration in original).[6]

> (2) "Defendants had committed a fraud upon the Court when Defendant Kra-
> mer knowingly fabricated evidence to advance his case."  DE 252 at 5.

---

[5] In 2023, Hi-Tech Pharmaceuticals reported that it acquired BPI. Ex. 32.  Accordingly, because
Hi-Tech is being sued by ThermoLife for patent infringement, BPI may take a position with respect
to this motion that would later benefit Hi-Tech and allow it to use the sanctions findings in its
pending litigation or elsewhere against ThermoLife.
[6] The alteration in the Sanctions Order omits the errant word "if" that is in the Report and Recom-
mendation.  *See* DE 252 at 5.

(3) "Defendant Kramer knowingly fabricated a written document for use in litigation, initially tried to pass it off as legitimate to advance his case." DE 252 at 6.

### D.  The Motion to Vacate is Timely

"A motion under Rule 60(b)(6) must be made within a reasonable time." *United States v. Cooper*, No. 11-15741, 2012 WL 3104258, at *3 (11th Cir. Aug. 1, 2012) (quoting Fed. R. Civ. P. 60(c)(1)).  A determination of what constitutes a reasonable time depends on the facts in an individual case, and in making the determination, courts should consider whether the movant had a good reason for the delay in filing and whether the non-movant would be prejudiced by the delay. *Ramsey v. Walker*, 304 F. App'x 827, 828 (11th Cir. 2008) (quoting *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 930 (5th Cir. 1976)); *see also BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1275 (11th Cir. 2008) (what constitutes a reasonable time is determined by considering "whether the parties have been prejudiced by the delay and whether a good reason has been presented for failing to take action sooner." (quotation omitted)).

Here, given the atypical circumstances, Defendants' motion is timely.  Defendants have filed their motion in a reasonable amount of time after the most pertinent case-related events.  Specifically, as noted, Defendants unsuccessfully sought Supreme Court review.  Defendants' petition sought to reverse the entire sanctions order.  Had it been successful, Defendants' petition for certiorari could have obviated the need to file the present motion.  Under these facts, Defendants have filed their Rule 60(b)(6) motion within a "reasonable time." *See, e.g., BUC Int'l,* 517 F.3d at 1276 (finding that waiting six and seven months for filing Rule 60(b)(6) motions was not an unreasonable delay); *Dominguez v. Circle K Stores, Inc.*, No. 11-23196-Civ., 2013 WL 4773629, at *4 (S.D. Fla. Sept. 4, 2013) (finding that waiting six months for filing a Rule 60(b)(6) motion was not an unreasonable delay).

Additionally, the recent litigation activity against ThermoLife and Mr. Kramer has heightened the importance of vacating the limited portions of the Sanctions Order.  For instance, the cross-claim filed by the defendant in *Nikolaidis*, alleges that a purported "agreement" was fabricated and specifically cites the BPI sanctions order and findings to falsely claim that Mr. Kramer has a "documented history of falsifying evidence." Ex. 13 at 5-6; Kramer Decl. ¶¶ 21-22.  The use of the BPI sanctions order here is particularly significant because the pleading relies on the BPI sanctions order as part of its purported evidence that a material piece of evidence was fabricated. *Id.*  Quite plainly, ThermoLife will have to refute these separate claims, but the continued

16

existence of the now-mooted sanctions findings will adversely impact ThermoLife's ability to defend itself from the false allegations in the Nikolaidis litigation. The cross-complaint asserts disputes about oral agreements, ownership rights, and other business dealings. *Id.* at 3-10. Without limited vacatur here, the litigant in the *Nikolaidis* action will almost certainly—but incorrectly—argue that the sanctions findings here should be given preclusive effect.

Beyond that case, as noted above, there are at least four cases where ThermoLife's adversaries have expressly relied on the sanctions findings in an attempt to bolster their claims or improperly tarnish ThermoLife and/or Mr. Kramer. *See* Kramer Decl. ¶¶ 12-22; Exs. 8-13. Those specific examples underscore the timeliness of the present motion and the need for relief to eliminate the prejudice that Defendants are experiencing and will likely continue to experience, absent limited vacatur.

Defendants are filing this motion while the Court is considering Defendants' pending motion for attorney's fees. *See* DE 448.[7] While Defendants could arguably wait until that issue is resolved, Defendants are opting to proceed sooner so that the Court can resolve this matter as soon as practicable. Defendants also note that BPI recently filed a renewed request for ruling, seeking that ThermoLife "immediately pay" all "associated fees and costs" of the Sanctions Order, without addressing the pending attorney's fees motion that might offset those fees. *See* DE 461 at 1-3. But, if fees are granted to ThermoLife as the prevailing party, the fees owed to BPI simply could be deducted from the fees owed to ThermoLife. Accordingly, BPI's request has no utility other than inconveniencing ThermoLife and the Court, pending a decision on the fees motion.

While time has elapsed since the Court's Sanctions Order, that is not controlling here given the unique timeline and the continued weaponization by ThermoLife adversaries of the now-moot findings. When seeking to vacate an earlier district court decision rendered moot by a later appeal, a party will be constrained by the time elapsed due to the time required for appellate review. In this case, for purposes of the present motion, the mootness of the specific sanctions findings did not become final until the Supreme Court denied Defendants' certiorari petition on March 23, 2026. Had the Supreme Court taken the case and reversed the Federal Circuit's affirmance of the sanctions order, there would be no reason for the present motion.

---

[7] Before the appeal, BPI had filed a motion for attorney's fees, DE 386, but after Defendants' successful appeal, BPI did not refile, and only Defendants are seeking fees and costs as the prevailing parties.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the now-moot portions of the Order of July 14, 2021, specifically those portions related to a finding that the License Agreement was fabricated and that Defendants committed a fraud upon the Court, must be vacated under *Munsingwear*.  The now-moot findings include the following statements: (1) "Defendant Kramer fabricated a written agreement that did not exist prior to the lawsuit, and initially tried to pass it [] off as legitimate"; (2) "Defendants had committed a fraud upon the Court when Defendant Kramer knowingly fabricated evidence to advance his case"; and (3) "Defendant Kramer knowingly fabricated a written document for use in litigation, initially tried to pass it off as legitimate to advance his case."  These and any related finding on the same issue in the Court's Order of July 14, 2021, have been mooted by the Federal Circuit's Opinion where the appeals court "assum[ed] [Defendants] did not fabricate the License Agreement."

Respectfully submitted, this 31st day of July 2026.

/s/ Edward M Mullins
Edward M. Mullins (FBN 863920)
Reed Smith LLP
200 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
Telephone: 786-747-0200
Facsimile: 786-747-0299
Email: emullins@reedsmith.com

and

18

Matthew J. Dowd (*pro hac vice*)
Robert J. Scheffel (*pro hac vice*)
Dowd Scheffel PLLC
1717 Pennsylvania Avenue NW
Suite 1025
Washington, D.C. 20006
Tel: (202) 559-9175
mdowd@dowdscheffel.com
rscheffel@dowdscheffel.com

*Attorneys for Defendants*

19

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)</u>

Pursuant to Local Rule 7.1(a)(3), counsel for Defendants certify that they have met and conferred in good faith with counsel for BPI on the matters set forth in this motion and were unable to come to a resolution.  Specifically, on June 16, 2026, counsel for Defendants emailed BPI counsel requesting to know "by Friday, June 19, 2026, whether your client will or will not oppose the motion" and informing BPI that "the requested limited vacatur will have no impact on BPI or any of its rights."  Ex. 23 at 1-2.  On June 24, 2026, BPI counsel responded: "BPI will oppose the motion."  *Id.* at 1.

*/s/ Matthew J. Dowd*
Matthew J. Dowd (*pro hac vice*)
Dowd Scheffel PLLC
1717 Pennsylvania Avenue NW
Suite 1025
Washington, D.C. 20006
Tel: (202) 559-9175
mdowd@dowdscheffel.com

*Counsel for Defendants*

20

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 31, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record.

*/s/ Edward M. Mullins*
Edward M. Mullins

21