**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

|  |  |  |
|---|---|---|
| BPI SPORTS, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **CASE NO. 0:19-cv-60505-SMITH** |
| v. | ) | |
| | ) | |
| THERMOLIFE INTERNATIONAL, LLC, | ) | |
| MUSCLE BEACH NUTRITION, LLC, | ) | |
| and | ) | |
| RONALD L. KRAMER. | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**DECLARATION OF RONALD KRAMER IN SUPPORT OF MOTION
UNDER RULE 60(b)(6) TO VACATE PORTIONS OF THE ORDER OF JULY 14, 2021**

I, Ronald L. Kramer, hereby declare, under penalty of perjury, as follows:

1.      I am the President and Chief Executive Officer of ThermoLife International, LLC ("ThermoLife") and of Muscle Beach Nutrition LLC ("Muscle Beach Nutrition") (collectively "Defendants").  I am also one of the named defendants in this action.

2.      I make and submit this declaration in connection with the Motion Under Rule 60(b)(6) To Vacate Portions of the Order of July 14, 2021.

3.      In the motion, Defendants are respectfully asking the Court to follow the Supreme Court's guidance and vacate the following findings from the district court's sanctions order, which is DE 252 ("Sanctions Order").  Specifically, I understand that the following statements/findings in the Sanctions Order have been rendered moot by the Federal Circuit's opinion yet they continue to cause harm to my companies and me: (1) "Defendant Kramer fabricated a written agreement that did not exist prior to the lawsuit, and initially tried to pass it [] off as legitimate"; (2)

1

"Defendants had committed a fraud upon the Court when Defendant Kramer knowingly fabricated evidence to advance his case"*;* and (3) "Defendant Kramer knowingly fabricated a written document for use in litigation, initially tried to pass it off as legitimate to advance his case."

4. As explained in the motion, my companies and I are unable to further challenge those findings, and the appeals court did not rely on the findings when affirming the sanctions decision.

5. The existence of those findings is having an ongoing detrimental effect on my companies and me because other parties continue to rely on them to support their incorrect allegations against my companies and me personally.

6. As background, ThermoLife currently has a portfolio of approximately 112 issued patents and 123 pending patent applications spanning approximately 19 jurisdictions.  By way of example, the subject matter of ThermoLife's patent portfolio includes the use of nitrate to reduce blood pressure, the use of nitrate to increase muscle growth, the use of nitrate to increase vasodilation, methods to create and administer nitric oxide gas, methods to treat anemia, methods to increase SpO2, methods to treat migraine, methods to treat COPD, water soluble curcumin compounds, carnitine salt derivatives, and amino acid nitrate compounds, among many others.

7. ThermoLife has successfully licensed its patented technology to numerous companies.  These companies include leading players in the supplement market such as Force Factor, LLC, Cellucor, Inc., Ghost Lifestyle LLC, Glanbia plc., HumanN, Inc., Qunol® by Quten Research Institute, LLC, Sanofi S.A., and dozens of other companies.

8. Muscle Beach Nutrition also continues to be successful.  Muscle Beach Nutrition has continued its business with a renewed emphasis on the "Muscle Beach" brand.  It offers apparel, accessories, and other products under the MUSCLE BEACH trademark.  *See* Exs. 17-22.

2

9. The MUSCLE BEACH trademark is federally registered as Registration Nos. 3862182, 5311625, 6091280, and 6146502. The MUSCLE BEACH NUTRITION mark is federally registered as Registration No. 5311626. Meanwhile, applications for registration of the MUSCLE BEACH GYM trademark (Ser. No. 97503869), the MUSCLE BEACH TV trademark (Ser. No. 97792218), and the MUSCLE BEACH trademark for use with printed books (Ser. No. 97773621) are pending.

10. Muscle Beach Nutrition also now offers the PUMPING IRON® pre-workout supplement. The PUMPING IRON® pre-workout supplement is a patented two-step formula for immediate nitric oxide production. *See* Ex. 20.

11. As was established in the record of this litigation, Muscle Beach Nutrition ceased its sales of CRTN-3, the only product at issue in BPI's baseless case and the only product that BPI claimed was falsely advertised.

12. Since the Sanctions Order was issued, ThermoLife is currently involved in, or has recently been involved in at least the following litigations: 1) *Superhuman Inc. v. ThermoLife International, LLC*, No. 1:24-cv-23765-DPG (S.D. Fla. filed Sept. 30, 2024) ("*Superhuman I*"); 2) *Superhuman Inc. v. ThermoLife International, LLC*, No. 2:24-cv-09589-AB-AGR (C.D. Cal. filed Nov. 5, 2024) ("*Superhuman II*"); 3) *Evolution Nutraceuticals, Inc. v. ThermoLife International, LLC*, No. 2:25-cv-00461-DJH (D. Ariz. filed Feb. 12, 2025) ("*Evolution*"); and 4) *ThermoLife International, LLC v. Nikolaidis*, No. 25STCV23506 (Cal. Super. Ct. filed Oct. 12, 2025) ("*Nikolaidis*").

13. In each of these litigations since the Sanctions Order, the opposing party cites the sanctions findings and/or the "evidence fabrication" findings noted above as purported support for its respective allegations and/or requested relief.

14.     *Superhuman I* involved claims for declaratory judgment, unfair competition, trade libel, defamation, false or misleading representation, product disparagement, and tortious interference arising from ThermoLife's legitimate patent-enforcement activities. Ex. 8.  In its complaint, Superhuman cited the BPI sanctions order as support for its allegations that ThermoLife had a history of improper litigation conduct and was therefore also acting improperly in the dispute with Superhuman.  *Id.* ¶ 7.  Superhuman cited the sanctions findings from the present BPI case to attack my honesty and credibility and to purportedly support its allegations that ThermoLife acted improperly.  *Id.* ¶¶ 7-9.

15.     *Superhuman I* settled on approximately November 5, 2024.  Even though the case settled without reaching a judgment on the merits, ThermoLife was forced to expend significant resources to defend itself.

16.     *Superhuman II* was an action also filed by Superhuman in the Central District of California involving similar claims of unfair competition, business disparagement, false or misleading representation, product disparagement, and tortious interference.  Ex. 9.  Superhuman again cited the BPI sanctions order and findings as purported support for its allegations that ThermoLife and I have a history of improper litigation conduct.  *Id.* ¶¶ 7-8.  The plaintiff relied on those allegations to incorrectly characterize ThermoLife and me as untrustworthy actors, and it tried to bolster its claims that ThermoLife's patent enforcement activities were undertaken in bad faith.  *Id.*

17.     *Superhuman II* settled on approximately December 16, 2024.  Even though the case settled without reaching a judgment on the merits, Superhuman took a license to ThermoLife's patents, despite initiating the dispute, and ThermoLife was forced to expend significant resources to defend itself against allegations it cannot challenge.

18.     In *Evolution*, the plaintiff Evolution Nutraceuticals asserted seven claims, including for noninfringement of one of ThermoLife's patents, unfair competition, trade libel, commercial disparagement, false or misleading representation, product disparagement, tortious interference, and bad-faith patent infringement under the Arizona Patent Troll Prevention Act.  Ex. 10.  In its complaint, Evolution recites largely the same BPI sanctions findings as were cited by the plaintiff in *Superhuman I* and *Superhuman II*.  *Id.* at 3.  The plaintiff Evolution Nutraceuticals tried to use the BPI sanctions finding to allege that ThermoLife's conduct was wrongful, dishonest, and undertaken in bad faith.  *Id.*

19.     Evolution Nutraceuticals also relied on the BPI sanctions order in its Motion for Preliminary Injunction.  Ex. 11.  There, Evolution Nutraceuticals again cited the sanctions as purported evidence that ThermoLife has an "established reputation" for "vexatious" litigation conduct and specifically repeated the allegation that I committed fraud on a court.  *Id.* ¶ 8. Evolution Nutraceuticals relied on those allegations to argue that extraordinary injunctive relief was necessary.  Although ThermoLife ultimately prevailed on the preliminary injunction issue in *Evolution*, this victory was largely due to the strength of ThermoLife's position in that case and was certainly complicated by Evolution Nutraceuticals' citations to the sanctions findings.

20.     The *Evolution* litigation is ongoing.  The Rule 16 scheduling order was only recently issued on June 12, 2026, laying out the claim-construction schedule and setting a hearing on claim construction for February 4, 2027.  ThermoLife ultimately succeeded in opposing the preliminary injunction on the merits, despite having to respond to Evolution Nutraceuticals' use of the sanctions order.

21.     *Nikolaidis* is an action involving a dispute concerning ownership interests, contractual rights, company governance, financial transactions, the authenticity and effect of

certain documents, and alleged oral agreements. Ex. 12; Ex. 13. In his original cross-complaint and first amended cross-complaint, the cross-plaintiff cites the BPI sanctions order and findings as support for his allegations and cross-claims. Ex. 12 ¶¶ 19-20; Ex. 13 ¶¶ 19-32. Here, Mr. Nikolaidis's pleading cites the BPI sanctions order to support his (untrue) allegation that a document at issue in his case was fabricated. *Id.* ¶ 20.

22. The *Nikolaidis* litigation is ongoing. The cross-defendants (ThermoLife and I) filed an anti-SLAPP motion, and a hearing on that motion was recently held on June 26, 2026. My side won the motion and was awarded fees.

23. I am also aware of other publications that are seeking to weaponize the sanctions finding in a manner that is harmful to my companies and me personally. For example, one online posting is titled "How ThermoLife Got Away with Lying in its Marketing Material," and a true and correct copy of that posting is attached as Exhibit 14. The posting is from a website having the URL address of EvilCorporations.com. Based on its text, it purports to have been published on August 21, 2025. The posting includes a copy of the Federal Circuit's decision and directly quotes the sanctions findings from the BPI litigation to disparage ThermoLife and me as responsible for "a deliberate act of deception." *Id.* at 5. The article remains publicly available on the internet where it can be located by potential customers, business partners, opposing litigants, and others. I also note that the article makes no reference to the fact that Defendants in fact prevailed against baseless BPI's claims.

24. These examples of litigants and a non-litigant using the Court's "fabricated evidence" and "fraud upon the court" findings are extremely troubling and damaging. I accept that the Court issued sanctions based on the discovery dispute during the BPI litigation, but I understand (from the Federal Circuit's opinion) that the Federal Circuit affirmed only on the bases

of disputes about producing requested discovery, and those litigation disputes were the type controlled by my counsel, such as Defendants' objections based on relevance.

26. Additionally, ThermoLife is currently pursuing a patent-infringement action against Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech") and other defendants in the Northern District of Georgia. *ThermoLife Int'l, LLC v. Hi-Tech Pharms., Inc.*, No. 1:15-cv-00892-ELR (N.D. Ga. filed Mar. 27, 2015); Ex. 24. That case has been pending since 2015 and is expected to proceed following the criminal sentencing of Hi-Tech and its CEO Jared Wheat. *See* Exs. 16, 28-31.

26. Of note, the primary defendant in that case Hi-Tech is represented by Gregory Hillyer, the same attorney who represents BPI Sports in the present baseless action he filed against me and my companies. Because Mr. Hillyer is familiar with the sanctions findings and represents Hi-Tech in an action brought by ThermoLife, I have concerns that Hi-Tech, Mr. Wheat, and/or Mr. Hillyer will rely on those findings to attempt to attack my credibility and ThermoLife's credibility when the patent litigation resumes. *See* Exs. 25-27.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on July 30, 2026.

By: /s/ Ronald L. Kramer
Ronald L. Kramer