# Exhibit 1

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

―――――――――――――

**BPI SPORTS, LLC,**
*Plaintiff-Cross-Appellant*

**v.**

**THERMOLIFE INTERNATIONAL LLC, RONALD L. KRAMER, MUSCLE BEACH NUTRITION LLC,**
*Defendants-Appellants*

―――――――――――――

2023-1068, 2023-1625, 2023-1112

―――――――――――――

Appeals from the United States District Court for the Southern District of Florida in No. 0:19-cv-60505-RS, Judge Rodney Smith.

―――――――――――――

Decided:  June 16, 2025

―――――――――――――

GREGORY HILLYER, Hillyer Legal, PLLC, Washington, DC, argued for plaintiff-cross-appellant.  Also represented by NICHOLAS JOHN SULLIVAN.

MATTHEW JAMES DOWD, Dowd Scheffel PLLC, Washington, DC, argued for defendants-appellants.  Also represented by ROBERT JAMES SCHEFFEL.

―――――――――――――

Before REYNA, CUNNINGHAM, and STARK, *Circuit Judges.*

REYNA, *Circuit Judge.*

The parties cross-appeal a final judgment of the U.S. District Court for the Southern District of Florida of false advertising under the Lanham Act and unfair competition under state law, and a sanctions order. As to the appeal, we reverse the judgment and affirm the district court's sanctions order. We dismiss the cross-appeal as moot.

BACKGROUND

I.

Creatine nitrate is an amino-acid nitrate used in dietary supplements. At the time of the trial, appellant ThermoLife International LLC ("ThermoLife") owned several patents covering creatine nitrate. J.A. 2015, J.A. 2228. Appellant Ronald Kramer is the president, chief executive officer, and sole owner of ThermoLife and the chief executive officer of appellant Muscle Beach Nutrition ("MBN") (ThermoLife, Mr. Kramer, and MBN, hereinafter "Appellants" or "defendants"). J.A. 369, ¶¶47–48.

ThermoLife licensed its patented creatine nitrate technology to manufacturers, including MBN. *See* J.A. 1278. From 2017 to 2021, MBN sold a creatine nitrate product called "CRTN-3." J.A. 2000–02, J.A. 2320. The label for CRTN-3 listed the benefit of "increase[d] vasodilation," in addition to other benefits. J.A. 2001.

Cross-appellant BPI Sports, LLC ("BPI" or "plaintiff") manufactures and sells dietary nutritional supplements and competes with licensees of ThermoLife. J.A. 365–66, J.A. 669.

II.

On February 26, 2019, BPI sued ThermoLife and Mr. Kramer in the U.S. District Court for the Southern District of Florida for false advertising under the Lanham Act and

unfair competition under state law in connection with CRTN-3, as well as false patent marking under the Patent Act.[1]  J.A. 200–18.  In April 2019, BPI filed an amended complaint.  J.A. 45.  ThermoLife and Mr. Kramer moved to dismiss the amended complaint, arguing that the allegations in the complaint related to MBN, ThermoLife's licensee, and not ThermoLife and Mr. Kramer.  J.A. 23.  In other words, it asserted BPI was suing the wrong party.  *Id.*

Before MBN was added to the suit, the parties disputed discovery of information surrounding an alleged license agreement between ThermoLife and then non-party MBN. In February 2020, BPI served ThermoLife and Mr. Kramer its first set of discovery requests, seeking "[a]ll licenses to the ThermoLife patents, including licenses with any . . . third parties[.]"  J.A. 25.  On March 20, 2020, ThermoLife produced an alleged license agreement between ThermoLife and MBN ("License Agreement").  *Id.*  The License Agreement listed an effective date of March 16, 2017, but was otherwise undated.  *Id.*  Mr. Kramer signed the document on behalf of both companies.  *Id.*

Notably, and undisputedly, Mr. Kramer created the License Agreement on March 9, 2020, in an alleged attempt to memorialize a pre-existing "oral/implied" license between ThermoLife and MBN.  *Id.*  Also undisputedly, ThermoLife and Mr. Kramer did not inform BPI in its March 20, 2020, production that Mr. Kramer had created the License Agreement on March 9, 2020.  J.A. 17.

On April 3, 2020, BPI served ThermoLife and Mr. Kramer its second set of discovery requests, seeking to obtain additional information about the License Agreement. J.A. 25–26.  ThermoLife and Mr. Kramer objected, arguing that such information was irrelevant because MBN was

---

[1]    BPI filed other claims before the district court, none of which reached trial or are at issue in this appeal.

4                     BPI SPORTS, LLC v. THERMOLIFE INTERNATIONAL LLC

not a party to the suit nor an alleged alter ego of the defendants.  J.A. 26.  On May 26, 2020, BPI filed a second motion to compel.[2]  *Id.*

On June 5, 2020, following a partial grant of defendants' motion to dismiss the amended complaint, BPI filed its second amended complaint, adding MBN as a defendant.  J.A. 23.  On June 10, 2020, defendants notified the district court that they would agree to indemnify MBN and to be held jointly and severally liable for any judgment against MBN if the court maintained the existing pretrial deadlines.  J.A. 23–24.  On June 18, 2020, defendants filed their answer to the second amended complaint, admitting that MBN was an alter ego of ThermoLife.  J.A. 24.

At the June 19, 2020, hearing, the district court ordered defendants to provide necessary information about the License Agreement.  J.A. 26.  Defendants produced the underlying metadata for the License Agreement, revealing that Mr. Kramer created the License Agreement on March 9, 2020.  J.A. 27.

On September 24, 2020, BPI filed a motion seeking sanctions against the defendants and their attorney, based on Mr. Kramer's creation of the License Agreement.  J.A. 28.  BPI argued that the creation was done in bad faith and constituted a fraud on the court.  *Id.*

On July 14, 2021, the district court ordered sanctions against the defendants but not their attorney ("Sanctions Order").  J.A. 19.  The district court found that Mr. Kramer acted in bad faith by knowingly fabricating the License Agreement and repeatedly obstructing discovery to conceal this fraud.  J.A. 15, J.A. 34–35.  The district court ordered that (1) the License Agreement be excluded from trial, (2)

---

[2]    BPI had previously filed a motion to compel discovery following defendants' March 20, 2020, production.  J.A. 49.

an adverse instruction be given to the jury concerning Mr. Kramer's attempt to manufacture favorable evidence and its effect on his overall credibility, and (3) BPI be awarded reasonable fees and costs incurred with its motion for sanctions and two motions to compel discovery concerning the License Agreement.  J.A. 19, J.A. 37–38.

In October 2021, BPI tried its three claims to the jury. *See* J.A. 500.  The jury found that BPI showed false advertising and unfair competition but awarded zero damages. J.A. 5263–66.  The jury found in favor of the defendants as to the false patent marking claim.[3]  J.A. 5266.  The district court entered final judgment on October 25, 2021.  J.A. 75.

On November 22, 2021, BPI moved for a new trial under Federal Rule of Civil Procedure 59 ("Rule 59 motion") based on an alleged compromise verdict.  J.A. 3945–53.  Defendants renewed a motion for judgment as a matter of law ("JMOL") under Federal Rule of Civil Procedure 50 ("Rule 50 motion"), arguing that BPI failed to meet its burden of showing false advertising and unfair competition. J.A. 3954.  The district court denied both motions.  J.A. 3–8.

On October 25, 2022, one year after judgment was entered, defendants moved under Federal Rule of Civil Procedure 60(b) ("Rule 60(b) motion") for relief from the judgment and the court's Sanctions Order.  J.A. 3998.  The district court denied this motion as untimely.  J.A. 9.

The parties cross-appeal their respective denied motions.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

---

[3]  BPI does not appeal the false patent marking finding.  We thus leave that portion of the judgment undisturbed.  *See Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1335 nn.3–4 (Fed. Cir. 2001).

6     BPI SPORTS, LLC v. THERMOLIFE INTERNATIONAL LLC

## DISCUSSION

### I.

As a threshold matter, BPI's false advertising claim under the Lanham Act and its unfair competition claim under state law rise and fall together in this case. *See, e.g.*, *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1343 (11th Cir. 2012); *see also* Appellants' Br. 69–70; Cross-Appellant's Br. 57–58 ("BPI relies on the same arguments advanced above [concerning the Lanham Act claim] to support its position . . . on unfair competition."). BPI's belated attempt at oral argument to argue otherwise is waived. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

Appellants appeal the district court's (1) denial of its Rule 50 motion for JMOL, (2) issuance of the Sanctions Order, and (3) denial of its Rule 60(b) motion. BPI cross-appeals the district court's denial of its Rule 59 motion. For the reasons discussed below, we reverse the district court's denial of Appellants' Rule 50 motion for JMOL and enter judgment in favor of Appellants. We affirm the district court's Sanctions Order as to the attorneys' fees. In light of our reversal of the judgment, Appellants' appeal of the denial of its Rule 60(b) motion and BPI's cross-appeal are moot. *eSimplicity, Inc. v. United States*, 122 F.4th 1373, 1376 (Fed. Cir. 2024). We thus dismiss the cross-appeal as moot and do not address Appellants' Rule 60(b) challenge.

### II.

We review the denial of post-trial motions for JMOL under regional circuit law, here the Eleventh Circuit. *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1312 (Fed. Cir. 2010). "Under Eleventh Circuit law, we review a district court's denial of JMOL de novo, viewing all evidence in the light most favorable to the

nonmoving party[.]" *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1368 (Fed. Cir. 2021) (citing *Hicks v. City of Tuscaloosa*, 870 F.3d 1253, 1257 (11th Cir. 2017)). "JMOL should be granted only when the [moving party] presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Id.* (quotations omitted).

To prove a false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a plaintiff must establish five elements: "(1) a false or misleading advertisement (2) that deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the plaintiff has been, or is likely to be, injured by the false advertising." *J-B Weld Co. v. Gorilla Glue Co.*, 978 F.3d 778, 796 (11th Cir. 2020). The failure to establish any one of the five elements is fatal to a party's claim. *See id.*

Here, Appellants argue that they are entitled to JMOL because no reasonable jury could have found that various elements of BPI's false advertising claim were met. *See* Appellants' Br. 34, 44, 57. We agree with Appellants that no reasonable jury could have found in favor of BPI under the falsity element of a false advertising claim, i.e., that CRTN-3 label's statement of "increase vasodilation" was literally false. On that basis, we reverse the judgment, and we need not reach Appellants' arguments concerning the other elements of BPI's false advertising claim.

The falsity element is "satisfied if the challenged advertisement is literally false, or if the challenged advertisement is literally true, but misleading." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (quotations omitted). As an initial matter, only literal falsity is at issue in this appeal. On the verdict form, the jury concluded that CRTN-3's label of "increase[d] vasodilation" was literally false. J.A. 5263. On that same form, the jury

did not reach whether the alleged misrepresentation was misleading. *Id.* On appeal, BPI does not argue that to the extent we disagree with the jury verdict on the literal falsity element, we should affirm on the alternative ground that CRTN-3's statement of "increase[d] vasodilation" was misleading. Cross-Appellant's Br. 46–50. BPI's one conclusory statement that Appellants' advertisement was "misleading" in a subsection header of its brief, Cross-Appellant's Br. 46, does not preserve for appeal any argument that the advertisement was misleading. *SmithKline*, 439 F.3d at 1320 (noting that "mere statements of disagreement" with the lower court do not amount to a developed argument). Thus, we focus our analysis only on the literal falsity element.[4]

Here, no reasonable jury could have concluded that CRTN-3's statement of "increase vasodilation" was literally false. BPI's own evidence shows that the dosage disclosed in CRTN-3's label would "cause vasodilation" for people weighing 113 pounds or less. *See* J.A. 776, 199:8–13 (BPI's expert testifying that "[i]n order for 319.4 milligrams of [creatine] nitrate [in CRTN-3] to cause vasodilation, the

---

[4]     And in any event, no reasonable jury could have concluded that CRTN-3's statement of "increase vasodilation" was misleading. If an advertisement is not literally false—as is the case here—the movant must provide evidence that the misleading statement resulted in consumer deception. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). While consumer surveys or market research are not required, a moving party must provide "expert testimony or other evidence." *Id.* (quotations omitted). Here, BPI presented no evidence to the jury that CRTN-3's label of "increase vasodilation" deceived consumers into purchasing CRTN-3 and thus BPI's misleading claim necessarily fails. *See* Appellants' Br. 54, 57; Cross-Appellant's Br. 46–50.

body weight would have to be about 113 pounds"). Thus, BPI's own expert admits that it is not literally false that CRTN-3 "increase[s] vasodilation."

BPI argues that CRTN-3's "increase vasodilation" statement is "literally false" because the evidence shows that the dosage amount of creatine nitrate needed for "an average adult in the U.S. weighing 177 pounds" is more than the amount disclosed in CRTN-3. Cross-Appellant's Br. 46–47. This argument, however, supports the conclusion that CRTN-3's "increase vasodilation" statement is not literally false. BPI, like its expert, concedes that CRTN-3 increases vasodilation in some people. BPI's argument fails because there is no statement on the label that, for instance, the product "increases vasodilation" for the "average adult . . . weighing 177 pounds." It merely stated that it will "increase vasodilation." J.A. 2001. BPI provides no legal or factual support for its theory that CRTN-3's statement of "increase vasodilation" applies only to the "average adult . . . weighing 177 pounds."

Because no reasonable jury could find CRTN-3's statement of "increase vasodilation" is literally false, BPI's Lanham Act claim for false advertising necessarily fails. We reverse the district court's judgment as to the false advertising and unfair competition claims.[5]

## III.

Appellants appeal the district court's Sanctions Order. Appellants' Br. 70. We note that Appellants' challenge is largely mooted by our reversal of the judgment. Because we enter judgment in Appellants' favor, Appellants'

---

[5] As previously noted, the unfair competition claim is dependent on the false advertising claim. Also, as previously noted, we leave the portion of the judgment as to the false patent marking claim undisturbed. *See Advanced Cardiovascular*, 261 F.3d at 1335 nn.3–4.

challenges to portions of the Sanctions Order concerning an adverse jury instruction and other evidentiary issues are no longer at issue. *eSimplicity, Inc.*, 122 F.4th at 1376. The only portion of the Sanctions Order that remains ripe for review is the district court's award of attorneys' fees. For the reasons discussed below, we affirm the district court's Sanctions Order as to the attorneys' fees.

A district court has inherent authority, which is governed "by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quotations omitted). A court may exercise this power to sanction a party who has acted in bad faith after making such a finding. *Id.* at 45–46; *see also Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017). "The inherent power must be exercised with restraint and discretion." *Purchasing Power*, 851 F.3d at 1225. It is a remedy "for rectifying disobedience, regardless of whether such disobedience interfered with the conduct of the trial." *Id.*

Appellants argue that the district court's Sanctions Order runs afoul of *Purchasing Power*. Appellants' Br. 71–72. According to Appellants, *Purchasing Power* requires a district court to first determine that bad faith was the "only" explanation for the alleged sanctionable conduct before unlocking its inherent power to sanction. Appellants' Br. 72. And according to Appellants, the district court did not make this finding, and thus, its use of its inherent authority was erroneous. *Id.* We disagree with Appellants' reading of *Purchasing Power*. That case provides that "in the absence of direct evidence of subjective bad faith, this standard can be met if an attorney's conduct is so egregious that it could only be committed in bad faith." 851 F.3d at 1224–25. In other words, *a party* may show bad faith by establishing that the conduct was so egregious, it was only committed in bad faith. This proposition does not mean that *a district court* is required to find that bad faith is the

only explanation for the bad conduct at issue before issuing sanctions. Appellants' reading of *Purchasing Power* is misplaced.

Appellants argue that the Sanctions Order is based on a "clearly erroneous view of the evidence," and thus should not stand. Appellants' Br. 73. In particular, Appellants argue that they did not "fabricate[]" the License Agreement for use in the litigation below. Appellants' Br. 73–74. But, even assuming Appellants did not fabricate the License Agreement, the district court rested its Sanctions Order on additional, sufficient findings. The district court found that Appellants (1) withheld information surrounding the circumstances of the License Agreement until compelled to release this information and (2) attempted to prevent discovery of the circumstances surrounding the creation of the License Agreement. J.A. 16–17 (finding that Mr. Kramer "initially tried to pass" the License Agreement "off as legitimate to advance his case" and "impeded the presentation of [BPI's] case"); J.A. 17 ("During discovery, *after compelled to do so by the Court*, Defendants disclosed the metadata associated with the License Agreement[.]" (emphasis added)); *id.* (noting that Appellants "tried to prevent discovery of the circumstances surrounding the License Agreement" by offering to indemnify and hold MBN harmless if the court maintained the existing pretrial deadlines). These findings are not clearly erroneous and are sufficient to support a bad faith determination. *Chambers*, 501 U.S. at 46 (noting that bad faith may exist where a "fraud has been practiced upon [the court], or that the very temple of justice has been defiled" (quotations omitted)). Thus, we see no error in the district court's sanction of attorneys' fees. *Purchasing Power*, 851 F.3d at 1225 (explaining that a district court's inherent power "is for rectifying disobedience" and for "vindicating judicial authority").

In sum, the district court did not abuse its discretion in issuing its Sanctions Order. We affirm the Sanctions Order as to the attorneys' fees.

12        BPI SPORTS, LLC v. THERMOLIFE INTERNATIONAL LLC

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. We reverse the judgment of false advertising under the Lanham Act and unfair competition under state law. We affirm the district court's Sanctions Order. We dismiss the cross-appeal.

**JUDGMENT REVERSED, SANCTIONS ORDER AFFIRMED, CROSS-APPEAL DISMISSED**

## COSTS

No costs.