**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

BPI SPORTS, LLC,

Plaintiff,

vs.

THERMOLIFE INTERNATIONAL, LLC, MUSCLE BEACH NUTRITION, LLC and RONALD L. KRAMER,

Defendants.

**CASE NO.: 0:19-cv-60505-SMITH-STRAUSS**

**BPI SPORTS, LLC'S OPPOSITION**
**TO DEFENDANTS' MOTION UNDER RULE 60(b)(6)**

Plaintiff, BPI Sports, LLC ("BPI"), by and through its undersigned counsel, hereby submits its opposition to Defendants ThermoLife International, LLC, Muscle Beach Nutrition, LLC and Ronald L. Kramer's Motion Under Rule 60(b) To Vacate Portions of Order of July 14, 2021 (D.E. 462, "Motion"), and respectfully states as follows.

## I. INTRODUCTION

This Court ruled that all Defendants committed fraud for which sanctions were warranted. D.E. 252 ("Sanctions Order"). This ruling and all associated findings were affirmed by the Court of Appeals for the Federal Circuit. Motion, Exhibit 1 ("We affirm the district court's Sanctions Order"). Well over a year later, Defendants have now filed an ill-conceived and ill-timed Motion seeking relief under Fed.R.Civ.P. 60(b)(b) for a "vacatur of limited findings." According to the Motion, eviscerating entire sections of the Sanctions Order constitutes nothing more than a "routine step" because "[t]he Federal Circuit's ruling rendered moot this Court's findings with respect to Defendants' purported fabrication of evidence." Motion, p. 1. Not only does this absurd conclusion contradict the appellate decision itself, Defendants rely on a misleading interpretation of the opinion as their sole justification. Namely, Defendants truncated a sentence and modified a crucial expression to triumphantly declare that the Federal Circuit "assum[ed] Defendants *did not* fabricate the License Agreement." *Id*. (bracket and italics in original). The sentence actually reads: "But, ***even assuming*** Appellants did not fabricate the License Agreement, the district court rested its Sanctions Order on additional, sufficient findings." Exhibit 1, p. 11 (emphasis added).

The blatant rewriting, followed by the subjective reading of this passage, defies credulity. In the correct version, the Federal Circuit merely assumed, *for argument's sake*, that *even if* the license was not fabricated, other grounds existed "sufficient to support a bad faith determination." *Id*. The Court employed this approach based on the applicable standard of review, *i.e.*, whether the findings were clearly erroneous, or whether there was an abuse of discretion. There is no factual, legal, or common sense support for Defendants' position that, in so doing, *all grounds other than those considered in the alternative*—including that the license agreement *was fabricated*—were selectively nullified, much less invoked some convoluted version of the mootness doctrine. Moreover, a simple comparison of the Federal Circuit opinion to the Motion reveals that the Court expressly relied on some of the same findings Defendants are requesting to be stricken.

Defendants' claim that their arguments were not evaluated on appeal is equally frivolous. The Court noted that "Appellants argue that they did not 'fabricate[]' the License Agreement for use in the litigation below." *Id*. The Court later confirmed that "[w]e have considered the parties' remaining arguments and find them unpersuasive." *Id*., p. 12. The Federal Circuit affirmed and subsequently denied any rehearings, including *en banc*. Motion, Exhibits 4, 5. The U.S. Supreme Court denied *cert*. *Id*., Exhibits 6, 7. Defendants are not entitled to further appellate review.

The balance of the Motion demonstrates that it was filed for an improper purpose. This is manifested, *inter alia*, in the admission that recent litigation activity has heightened the importance of vacating the limited portions of the Sanctions Order, coupled with the declaration signed under oath by Defendant, Ronald L. Kramer D.E. 462-1, "Kramer Decl." There, Kramer sponsors the flawed theory that statements in the Sanctions Order "have been rendered moot by the Federal Circuit's opinion" and claims that they "continue to cause harm to my companies and me." *Id*., ¶¶3, 5. The harm flows from their mere "existence" which allows parties to truthfully inform other tribunals about his fraudulent litigation behavior. *Id*. Suspiciously, it is these exact same statements that Defendants now contend were not relied on, are moot and should be stricken.

The repetitive assertion of meritless positions is on brand for Defendants as observed in a recent Ninth Circuit decision granting BPI attorneys' fees and costs. *ThermoLife Int'l, LLC v. BPI Sports, LLC*, 2026 WL 2409839 (9th Cir. Aug. 18, 2026) (citing other negative decisions). According the Ninth Circuit, ThermoLife's persistence in litigating the same claims against BPI "illustrated a pattern of pursuing a meritless litigation strategy." *Id*.

Finally, the Motion is untimely under Rule 60(c) because it should have been filed within a reasonable time after the Sanctions Order issued on July 14, 2021. The Motion was filed over six years later. To the extent the relevant date is the issuance of the Federal Circuit opinion on June 16, 2025, the Motion was filed over a year later. Defendants contradict themselves with respect to the relevancy of the Petition for Certiorari, but even counting from the denial, five months elapsed.

## II. ARGUMENT

### A. The Background Provided In The Motion Is Irrelevant

#### 1. The Disputes Over the License Agreement

Despite the fact that the Motion presumes "the Court is well aware of the facts and history of this case," a background section is provided that bears no relationship to the grounds for relief. Motion, p. 2-5. Since the Motion focuses entirely on the alleged consequences of the Federal Circuit decision, the facts underlying the issuance of the Sanctions Order are not the "most pertinent to the present motion." *Id*. The only reason to continue asserting a stale narrative about the License Agreement that has already been soundly rejected is to unwind the findings in the Sanctions Order. Unsurprisingly, Defendants cite their own subjective briefing in support. *Id*.

"Litigants have an obligation to reconsider and revise their positions when they are no longer viable." *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, 2025 WL 643208, at *4 (S.D. Fla. Feb. 25, 2025), appeal granted in part, 2025 WL 2800463 (S.D. Fla. Sept. 26, 2025). Courts in this District have repeatedly recognized the continuing obligation of practicing lawyers to ensure that their representations remain supportable throughout each filing in a case. *Mittenthal v. Florida Panthers Hockey Club, Ltd.*, 472 F. Supp. 3d 1211, 1221 (S.D. Fla. 2020) ("[Rule 11] obligation[s] continue[ ] throughout the pendency of the litigation."); *Deer v. Saltzman, Tanis, Pittell, Levin & Jacobson, Inc.*, 2011 WL 1526829, at *5–6 (S.D. Fla. Apr. 1, 2011) (sanctioning a party under Rule 11 where the party failed to timely take corrective action as to certain counts of an amended complaint when aware that certain of her claims were untenable); *In re BankAtlantic Bancorp, Inc. Securities Litig.*, 851 F. Supp. 2d 1299, 1311–314 (S.D. Fla. Aug. 3, 2011) (imposing Rule 11 sanctions where counsel failed to "conduct his own independent analysis of the facts and law which form the basis of a pleading or motion") (citing *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1277 (3d Cir. 1994)). A non-exhaustive list of representations advanced in the Motion that cannot be sustained in light of this Court's earlier rulings is set forth in Exhibit 1.

**2. The License Agreement Was Relevant During Trial**

For reasons similar to those stated above, whether the License Agreement was relevant at trial has no bearing on whether aspects of the Sanctions Order are moot and should be stricken. Nevertheless, Defendants are wrong on all counts. The License Agreement was produced during discovery by Defendants ThermoLife (and Muscle Beach Nutrition). Motion, p. 4. The terms allegedly concerned the purchase of raw ingredients from ThermoLife to be incorporated into the product at issue, CRTN-3. *Id*. at 3. The document was represented, albeit falsely, by Defendants as defining the rights and obligations between ThermoLife and Muscle Beach Nutrition, which were the signatories. *Id*. Magistrate Valle found that "the license was a disputed issue in the case" and reiterated that it was "a very important part of this litigation." D.E. 226, p. 8.

The License Agreement was moved into evidence and used by BPI on cross examination. *Id*., p. 6, fn. 3. Of course the document was "not offered as substantive evidence" by BPI—because it was false, fabricated and fraudulent. *Id*. Defendants' criticism that the License Agreement was referenced as an "attempt at tarnishing Mr. Kramer's credibility" shows a misunderstanding of the trial process. When Kramer elected to testify, he put his own credibility into issue, which is never irrelevant. It is axiomatic that "one goal of effective cross-examination is to impeach the credibility of opposing witnesses." *United States v. Lindstrom*, 698 F.2d 1154, 1160 (11th Cir. 1983).

**B. The Stringent Requirements To Satisfy Rule 60(b)(b)**

The Motion concedes that relief under Rule 60(b)(6) is an "extraordinary remedy" and a movant must establish "extraordinary circumstances" warranting relief. Motion, p. 7 (citing *Arthur v. Thomas*, 739 F.3d 611 (11th Cir. 2014); *BLOM Bank SAL v. Honickman*, 605 U.S. 204 (2025); *Klapprott v. United States*, 335 U.S. 601, 614-15 (1949)). The "justification for relief [must be] so compelling that the district court is ***required*** to grant the motion." *Id*. (citing *Cuffy v. Sec'y, Dep't of Corr.*, No. 18-62463-CIV, 2023 WL 5487500, at *1 (S.D. Fla. July 5, 2023) (quoting *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012)) (emphasis added). Given that Rule 60(b) is such an extraordinary remedy mere "disagreement with the Court's ruling is an insufficient basis for reconsideration of a prior order." *Cuffy* at *1 (quoting *Martes v. Sacco*, 2011 WL 13272347, at *1 (S.D. Fla. Apr. 7, 2011)). A Rule 60(b) motion is therefore "not a vehicle for rehashing arguments the Court has already rejected or for attempting to refute the basis of the Court's earlier

decision." *Martes v. Sacco*, 2011 WL 13272347, at *1 (S.D. Fla. Apr. 7, 2011) (quoting *Lamar Advertising of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 490 (M.D. Fla. 1999)).

**C. The Alleged Basis For Relief Under Rule 60 Is Substantively Meritless**

The Motion is just the latest in a series of failing attempts to challenge the Sanctions Order. These have included: Objections to the Report and Recommendation [D.E. 229, denied by issuance of Sanctions Order, D.E. 252]; Motion to Reconsider [D.E. 323, denied by trial initiation, D.E. 324]; Motion Under Rule 60(b) [D.E. 433, denied by Order, D.E. 438]; Opening and Reply Briefs of Appellants [D.E. 28 and 41, Sanctions Order Affirmed]; Petition for Panel Rehearing [D.E. 73, denied, D.E. 75]; Petition for *Writ of Certiorari* [D.E. 78, denied, D.E. 79].

Unfortunately, Defendants' desperation in having the terms of the Sanctions Order revised has led to the advancement of untimely, *post-hoc* legal positions that lack any substantive merit. BPI is not aware of any precedent—nor does the Motion to provide any—for the proposition that language in an appellate opinion that has been modified by a party constitutes "extraordinary circumstances" justifying the vacating of findings of a district court order under Rule 60(b), particularly where the appellate decision *unambiguously affirmed the order*. Despite the Motion's constant repetition that this situation presents a "classic example" of the type of dispute that is properly vacated under the mootness doctrine, the doctrine is inapplicable and an example cannot be "classic" if it never occurred previously and is wholly manufactured in bad faith.

**1. The Significant Appellate History**

The Motion fails to provide an accurate explanation of the appellate history, much less the relevant Federal Circuit opinion. The Report and Recommendation ("R&R) recommending that BPI's motion for sanctions be granted, in part, issued on February 24, 2021. D.E. 226. The R&R found the presence of clear and convincing evidence that Defendant "Kramer fabricated a written agreement that did not exist prior to this lawsuit, and initially tried to pass it off as legitimate." *Id*. at 15. The Sanctions Order issued on July 14, 2021. It adopted the findings of the R&R, including that Kramer, *inter alia*, "knowingly fabricated a written document" and then after BPI "identified suspicious circumstances relating to the fabricated document, Defendants sought to prevent discovery of their fraud." D.E. 252, pp. 6, 8.

Following pre- and post-trial motion practice by the Defendants relating to this issue, an initial Notice of Appeal (citing the Sanctions Order) was filed on October 12, 2022. D.E. 420. A

second Notice of Appeal was filed by Defendants on March 10, 2023 following the denial of a Rule 60 motion (which also challenged the Sanctions Order). D.E. 439.

Defendants filed their [Corrected] Opening Brief to the Federal Circuit on June 29, 2023. Motion, Exhibit 2. Defendants dedicated ten (10) pages of their appeal brief to challenging the sanctions, including the argument that "***[t]he court's sanction decision rests on the erroneous conclusion that the license agreement was 'fabricated***' 'for use in the Ligation' with the intent to advance ThermoLife's claims or defenses." Motion, Exhibit pp. 73-74 (emphasis added). BPI filed its Responsive Brief on September 6, 2023. Exhibit 2. BPI dedicated sixteen (16) pages to refuting Defendants' arguments, including defending this Court's ruling that Kramer fabricated the License Agreement in bad faith. *Id*., pp. 26-36.

The Federal Circuit opinion issued on June 16, 2025. Motion, Exhibit 1. The Court expressly recognized Defendants' position that the Sanctions Order was based on an erroneous view of the evidence, including the specific argument that they did not fabricate the License Agreement for use in the litigation. *Id*., p. 11. In response the Court held:

> ***But, even assuming Appellants did not fabricate the License Agreement, the district court rested its Sanctions Order on additional, sufficient findings***. The district court found that Appellants (1) withheld information surrounding the circumstances of the License Agreement until compelled to release this information and (2) attempted to prevent discovery of the circumstances surrounding the creation of the License Agreement. J.A. 16–17 (finding that Mr. Kramer "initially tried to pass" the License Agreement "off as legitimate to advance his case" and "impeded the presentation of [BPI's] case"); J.A. 17 ("During discovery, *after compelled to do so by the Court*, Defendants disclosed the metadata associated with the License Agreement[.]" (emphasis added)); *id.* (noting that Appellants "tried to prevent discovery of the circumstances surrounding the License Agreement" by offering to indemnify and hold MBN harmless if the court maintained the existing pretrial deadlines).

*Id*. Ultimately, travelling under an abuse of discretion standard, the Court held that the "findings are not clearly erroneous and are sufficient to support a bad faith determination." *Id*. The Court therefore found "***no error*** in the district court's sanction of attorneys' fees." *Id.* (emphasis added). In the Conclusion, the Court stated that "[w]e have considered the parties' remaining arguments and find them unpersuasive." *Id*. at 12. Accordingly, the Sanctions Order was affirmed in full. *Id.*; *see also*, Judgment dated June 16, 2025, Exhibit 3 ("Sanctions Order Affirmed").

On July 31, 2026, Defendants filed a Combined Petition for Panel Rehearing and Hearing En Banc. Motion, Exhibit 4. In the Petition, Defendants advised the Federal Circuit that the

decision should be "***corrected*** to hold that there was no clear and convincing evidence of a fabrication that amounted to a fraud on the court." *Id*., p. 20. Defendants went so far as to provide a blackline version of the proposed amendment which read: "But, ~~even assuming~~ while we agree that Appellants did not fabricate the License Agreement…" *Id*. The Petition made no mention of the U.S. Supreme Court's decision in *United States v. Munsingwear*, 340 U.S. 36 (1950), much less the mootness doctrine. The Petition was denied on September 2, 2025. Motion, Exhibit 5.

On January 15, 2026, Defendants filed a Petition for a Writ of Certiorari. Motion, Exhibit 6. In its summary of the Federal Circuit's decision, Defendants falsely alleged that "the Court did not affirm any finding of evidence fabrication or any purported 'fraud on the court'[1]—both findings that were critical to the district court's inherent-powers invocation." *Id*., p. 8. Defendants also asserted, for the first time, that "[t]he panel instead specifically 'assum[ed] [Defendants] did not fabricate the License Agreement.'" Defendants did not mention *Munsingwear* or mootness. The Cert Petition was denied on March 23, 2026. Motion, Exhibit 7. Defendants acknowledge that they "took all possible steps to appeal the findings in the Sanctions Order." Motion, p. 10.

**2. Defendants Deceptively Modified The Opinion**

Notwithstanding the background outlined above, the Motion represents to the Court:

> ***Additionally, the appeals court affirmed the Sanctions Order. In so doing, the Federal Circuit did not affirm that the License Agreement was fabricated. Instead, the Federal Circuit specifically "assum[ed]," presumably in Defendants' appeal, that Defendants "did not fabricate the License Agreement."***

Motion, p. 6 (bold and italics added). This is a complete misrepresentation. The only way to reach these twisted conclusions is to truncate the actual sentence in the opinion and modify the phrase "even assuming" to "assum[ed]" in order to manufacture a declarative expression. Defendants were well aware that this is not how the passage read, much less what it meant, because they already tried to change the meaning through the proposed amendment: "But, ~~even assuming~~ while we agree that Appellants did not fabricate the License Agreement." Motion, Exhibit 4, p. 20.

[1] Defendants' contention that the Federal Circuit did not affirm any "fraud on the court" cannot be reconciled with the Court's determination that the district court's findings are "sufficient to support a bad faith determination" in which the Court cited "*Chambers*, 501 U.S. at 46 (noting that bad faith may exist where a "***fraud has been practiced upon [the court]***, or that the very temple of justice has been defiled"). Motion, Exhibit 1, p. 11.

Equally glaring is Defendants' representation that in *affirming* the Sanctions Order (in which no clear error or abuse of discretion was identified) the Federal Circuit (1) did not affirm the factual findings—*i.e.*., ***did find error*** in assuming the License Agreement was not fabricated; and (2) did so based on the persuasiveness of Defendants' appellate brief (which contradicts the findings in the Sanctions Order). *Id*. The latter is currently being used to drive the false narrative that Defendants' arguments on appeal in connection with the License Agreement have been blessed by the Federal Circuit, which in turn, requires dramatic vacatur of this Court's findings.

The Motion also reads the manufactured sentence in the appellate opinion out of context. Defendants do not deny that the opinion refers to other bad faith actions, including: (1) Defendants withheld information surrounding the circumstances of the License Agreement until compelled to release this information; and (2) Defendants attempted to prevent discovery of the circumstances surrounding the creation of the License Agreement. Motion, p. 6 and Exhibit 1, p. 11. According to the Motion, such reliance further establishes that the Federal Circuit did not rest its finding on "evidence of fabrication," but rather "Defendants' actions in withholding and preventing discovery about the License Agreement"—*a/k/a* the ***cover-up***. However, the fabrication of the License Agreement and the cover up are not mutually exclusive since there would be no reason to withhold and prevent discovery of the License Agreement if it was authentic.

The next sentence in the opinion references aspects of the Sanctions Order detailing how Kramer "***initially tried to pass***" the License Agreement "***off as legitimate*** to advance his case." Motion, Exhibit 1, p. 11 (emphasis added). This is an implicit, if not express acknowledgement that the License Agreement ***was not legitimate***. The next sentence refers to another aspect of the cover-up, namely, how Defendants refused to produce the metadata associated with the License Agreement until "*compelled to disclose so by the Court*." *Id*. (emphasis in original). Again, the Federal Circuit would not have cited this finding if it was operating under the assumption that the metadata did not evidence a fabrication. Similar reasoning applies to efforts to "prevent discovery of the circumstances surrounding the License Agreement by offering to indemnify and hold MBN harmless if the court maintained the existing pretrial deadlines." *Id*. The opinion proceeds to cite *Chambers* for the proposition that "bad faith may exist where a 'fraud has been practiced upon [the court]…'" *Id*. If the Federal Circuit actually assumed, as Defendants contend, that the License Agreement was not fabricated, their withholding and prevention of discovery would not be

characterized as bad faith, fraudulent behavior, much less an attempt to ***pass it off as legitimate***.

Because there is congruency between Defendants' fabrication of the License Agreement and the other findings relied on, Defendants' request for vacatur actually *encompasses* some of the findings the Federal Circuit held to be "not clearly erroneous" and "sufficient to support a bad faith determination." Motion, p. 15-16. This is shown in the chart below which juxtaposes Defendants' requests for vacatur with the portions of the opinion which Defendants do not dispute. The overlap provides an independent basis for denying the requested vacatur.

| Request for Vacatur | Federal Circuit Opinion |
| --- | --- |
| "Defendant Kramer fabricated a written agreement that did not exist prior to the lawsuit, and initially tried to pass it off as legitimate" | The Motion admits the License Agreement did not exist prior to the lawsuit. Motion, p. 5. Opinion citing J.A. 16–17 (finding that Mr. Kramer "initially tried to pass" the License Agreement "off as legitimate…"). |
| "Defendants had committed a fraud upon the Court when Defendant Kramer knowingly fabricated evidence to advance his case" | Opinion citing *Chambers*, 501 U.S. at 46 (bad faith may exist where a "fraud has been practiced upon [the court]"). Opinion citing J.A. 16–17 (finding that Mr. Kramer tried to pass the License Agreement off as legitimate "to advance his case"). |
| "Defendant Kramer knowingly fabricated a written document for use in litigation, initially tried to pass it off as legitimate to advance his case." | Opinion citing J.A. 16–17 (finding that Mr. Kramer "initially tried to pass" the License Agreement "off as legitimate to advance his case." |

### 3. The Mootness Doctrine Is Inapplicable

When a litigant deliberately modifies the language and meaning of a court order, with the intent of creating a false premise, any conclusions based on it are *per se* unsustainable. The process only gets worse when a litigant misinterprets and misapplies a legitimate doctrine. In this regard, the Motion relies heavily on *Munsingwear* to allege that portions of the Sanctions Order were rendered moot given that the Federal Circuit "assumed Defendants did not fabricate the License Agreement." It is worth noting that *Munsingwear* was available to Defendants following the original Federal Circuit opinion, yet was not used in the Petition for the Panel Rehearing or the Petition for Writ of Certiorari. Motion, Exhibits 4, 6. Accordingly, reliance on the *Munsingwear* decision, and the related mootness arguments, have been waived.

According to the Motion, "when a case or controversy becomes moot on appeal, 'the standard disposition in federal cases' is to 'vacate the judgement below and remand with a direction to dismiss.'" Motion, p. 7 (citing *Alvarez v. Smith*, 558 U.S. 87 (2009)). However, this precept does not apply to the present circumstances, in part, because there is no authority to support the position that a controversy becomes moot *based on the result of the subject appeal itself*.

*Munsingwear* addresses what to do with a lower court decision when the case becomes moot while an appeal is pending before a higher court. *Munsingwear*, 340 U.S. at 36-41. In *Munsingwear*, the Supreme Court held that, where intervening circumstances moot an issue and thus prevent appellate review of the underlying decision, the decision below should ordinarily be vacated. *Id*. This decision, as well as the related authority cited in the Motion is grossly off-point because vacatur is only appropriate when a change in circumstances moots and issue ***while an appeal was pending***—separate and apart from the result of the appeal itself.[2] Here, there are no intervening circumstances that justify vacatur, or even make *Munsingwear* remotely applicable.

---

[2] *Munsingwear* at 37 (case mooted because a regulated commodity was decontrolled); *Alvarez v. Smith*, 558 U.S. 87 (2009) (underlying property disputes between parties resolved and mooted); *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994) (case mooted by settlement); *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114 (2d Cir. 2001) (student's treatment at academic institution mooted by graduation); *Skiles v. CarePlus Health Plans, Inc.*, No. 14-14087-BB, 2015 WL 1801272, at *1 (11th Cir. Apr. 7, 2015) (party appealing the district court's order of remand to state court was dismissed from the state-court action); *BankWest, Inc. v. Baker*, 446 F.3d 1358 (11th Cir. 2006) (while the appeal of an order denying preliminary injunction seeking to bar the state from enforcing laws against payday lending was pending, appellants elected to abandon the payday loan program resulting in the issue being moot); *Soliman v. U.S. ex rel. INS*, 296 F.3d 1237 (11th Cir. 2002) (while appeal challenging a detainee's treatment was pending, appellant was returned to his native country rendering the case moot); *Atlanta Gas Light Co. v. FERC*, 140 F.3d 1392 (11th Cir. 1998) (parties settled and the appeal of early orders was determined to be moot); *Pernix Fed., LLC v. United States*, No. 2024-2327, 2026 WL 1906698, at *1 (Fed. Cir. July 2, 2026) (underlying contract was cancelled thus mooting appeal); *ABS Glob., Inc. v. Cytonome/ST, LLC*, 984 F.3d 1017 (Fed. Cir. 2021) (while the *inter partes* review determination was being appealed, patent holder disavowed its right to appeal district court's noninfringement judgment thus mooting appeal); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 133 (2013) (unilaterally issued covenant not to sue mooted any case or controversy); *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276 (11th Cir. 2004) (audio components not available in voting booths to aid the blind or visually impaired acquired and made available for all future elections thus mooting the issue); *Al Najjar v. Ashcroft*, 273 F.3d 1330 (11th Cir. 2001) (appeal regarding habeas corpus relief became moot once Attorney General acquired unfettered discretion to detain alien upon Court of Appeals' affirmance of deportation

Defendants contend that portions of the Sanctions Order should be vacated because it should not have to "acquiesce" to a ruling that can no longer be challenged on appeal. Motion, p. 9 (citing *U.S. Bancorp*, 513 U.S. at 25). However, because the issue of fabrication was ***not mooted***, nothing evaded review, and such grounds cannot be used to justify vacatur. To the extent there is no longer any opportunity to appeal, it is not based on mootness, but the fact that Defendants' appeals have simply been exhausted. In summary, *Munsingwear* and its progeny are inapplicable because (i) the Sanctions Order is not pending on review; (ii) there have been no independent intervening circumstances; and (iii) appellate review has not been prevented.

**D. The Motion Was Filed For An Improper Purpose**

Perhaps the height of irony is the portion of the Motion claiming that vacatur would resolve unfairness, further justice and serve the public interest. Motion, p. 11-15. In this regard, the Motion, relying on the Kramer Declaration, cites five pending cases: (1) *Superhuman Inc. v. ThermoLife International, LLC*, No. 1:24-cv-23765-DPG (S.D. Fla. filed Sept. 30, 2024); (2) *Superhuman Inc. v. ThermoLife International, LLC*, No. 2:24-cv-09589-AB-AGR (C.D. Cal. filed Nov. 5, 2024); (3) *Evolution Nutraceuticals, Inc. v. ThermoLife International, LLC*, No. 2:25-cv-00461-DJH (D. Ariz. filed Feb. 12, 2025); (4) *ThermoLife International, LLC v. Nikolaidis*, No. 25STCV23506 (Cal. Super. Ct. filed Oct. 12, 2025); and (5) *ThermoLife Int'l, LLC v. Hi-Tech Pharms., Inc.*, No. 1:15-cv-00892-ELR (N.D. Ga. filed Mar. 27, 2015). Motion, pp. 11-12 (citing Kramer Decl., ¶¶12, 25). The unfairness to Defendants allegedly stems from the fact that litigants are "weaponizing" this Court's findings—which is to say they simply repeated them. It is self-evident that Kramer's complaints about the Sanctions Order form an insufficient basis for vacatur under Rule 60(b)(6). Although the Motion baldly claims that this Court's "fabricated evidence finding" is a "classic example of the type of dispute that is properly vacated upon the straightforward application of the *Munsingwear* doctrine," the doctrine was not designed to provide Defendants another bite at the apple because Kramer does not care for the "real world consequences."

---

order); *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, (11th Cir. 2000) (remanded to district court where it determined that claim was rendered moot by change in law); *Powell v. McCormack*, 395 U.S. 486 (1969) (other existing issues result in the case not being mooted); *Kaye v. Pers. Inj. Funding III, LP*, 733 F. Supp. 2d 1345 (S.D. Fla. 2010) (action was rendered moot by arbitrator's ruling that attorney was not subject to arbitration).

The "interests of justice" do not "warrant limited vacatur," particularly when the only basis is that ThermoLife and Muscle Beach are ongoing businesses, have patents, hold licenses and offer apparel and accessories. Motion, pp. 14-15. To the extent the findings in the Sanctions Order have "imposed a cloud" over Defendants, it is their own behavior that is responsible for the bad weather. Nor would public interest be served by allowing Defendants' litigation behavior to be sanitized. Although the Motion concedes that "the public interest favors preservation of upheld judgments and findings," Defendants do not believe this precept applies to affirmed orders of this Court.

What becomes increasingly clear from the arguments presented, Kramer's declaration, the false assumptions and the inapplicability of *Munsingwear*, is that the Motion was filed under Rule 60(b)(6) for an improper purpose. Kramer states the sanctions findings are troubling, detrimental and damaging to his businesses based on cases filed in 2024-2025; a post published in August, 2025; and a future trial. Kramer Decl., ¶¶5, 12-13, 23-26. The Motion was not pursued until over a year after the Federal Circuit opinion issued on June 16, 2025 and five months after the U.S. Supreme Court denied cert on March 23, 2026. It stands to reason that as the Sanctions Order was cited more frequently a retrofitted argument was created to attack its findings. This would explain the delay, the weak merits, the need to rewrite the appellate opinion and the "coincidence" that the most damaging findings are the same findings Defendants now claim are moot and require vacatur.

Defendants' never-give-up strategy, regardless of the accuracy of factual representations, or legal arguments, has been found to be their standard practice. Recently, on August 18, 2026, the Ninth Circuit Court of Appeals affirmed an award of attorneys' fees and costs to BPI against Defendants ThermoLife and Muscle Beach Nutrition based on the underlying Arizona litigation, *ThermoLife International, LLC v. BPI Sports, LLC*, Case No. 2:18-cv-04663-PHX-SPL (D. Ariz.) ("Arizona Action"). The Arizona Action is both significant and familiar because, on July 8, 2020, ThermoLife and Muscle Beach Nutrition filed *ThermoLife International, LLC, et al. v. BPI Sports, LLC*, Case No.: 0:20-cv-61373-RAR (S.D. Fla.) (J. Ruiz), [D.E. 1.]—which essentially was the Arizona Action—in a blatant attempt at forum shopping and to gain leverage in this case.[3]

The Ninth Circuit identifies numerous cases ThermoLife filed against sport supplement distributors containing nearly identical allegations, all of which were dismissed, some within ten

---

[3] For a more detailed explanation of Defendants' forum shopping, BPI respectfully refers the Court to the motion that led to the Sanctions Order. D.E. 143.

days of each other. *ThermoLife*, 2026 WL *2. After the district court granted BPI's motion to dismiss in the Arizona Action, BPI moved for attorneys' fees and costs under the Lanham Act, 15 U.S.C. § 1117(a). *Id*. at 3. In granting the motion, the district court determined the Arizona Case was "exceptional" because ThermoLife engaged in "strategic maneuvering that strongly suggests forum shopping" and "repeatedly and knowingly asserted meritless claims against BPI." *Id*.

The Ninth Circuit characterized the district court's findings as follows:

> the district court determined that ThermoLife's claims were ***frivolous, vexatious, and unreasonable*** because ThermoLife had ***no reasonable or legal basis to believe that its claims would succeed***. The district court noted that its dismissal of ThermoLife's claims was "merely the latest in a series of decisions in this District—all occurring during the course of ThermoLife's litigation with BPI—dismissing unfair competition and false advertising claims brought by ThermoLife against other defendants for the exact same reason. The district court determined that "[t]here is a difference between a zealous and passionate pursuit of claims that a party reasonably believes have merit, and a vexatious and harassing pursuit of claims that a party has repeatedly filed against the same types of defendants only to see those claims repeatedly dismissed for having the same deficiencies."

*Id*., p. 8 (emphasis added).

In affirming the district court's award of fees and costs in the amount of $454,339, the Ninth Circuit concluded that ThermoLife's persistence in litigating its claims against BPI in light of repeated dismissals of the same claims "***illustrated a pattern of pursuing a meritless litigation strategy***." *Id*. at *4-5 (emphasis added). The Motion illustrates the same pattern.

**E. The Motion Is Untimely Under Fed.R.Civ.P. 60(c)**

Motions under Rule 60(b)(6) must be filed within a "reasonable time ... after the entry of the judgment or order." *Ramsey v. Walker*, 304 F. App'x 827, 828 (11th Cir. 2008) (quoting Fed.R.Civ.P. 60(c)(1)). Defendants seek relief from the Sanctions Order issued July 14, 2021. D.E. 252. Significantly, Defendants already brought a motion under Rule 60(b) on October 25, 2022, seeking this Court vacate the same order. D.E. 433. The Court denied this motion as untimely because under Rule 60(c), "a motion under Rule 60(b) must be made within a reasonable time and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." D.E. 438. Given that Defendants sought to vacate the Sanctions Order under Rule 60(b)(1), the Court further found that "Defendants Motion is thus untimely: the portion of the Motion that seeks relief from the Court's July 14, 2021 Order is brought over a year after the entry of that Order." *Id*.

Although Defendants are now moving under Rule 60(b)(6), the Motion has not been filed within a "reasonable time" because it has been over ***six (6) years*** after the entry of the Sanctions Order. Even if the relevant date is the issuance of the Federal Circuit opinion on June 16, 2025 which Defendants contend caused the need for vacatur, the Motion was still filed over a year later.

The Motion alleges that the denial of its Petition for Certiorari is the triggering event of Rule 60(c)'s reasonable time standard. Motion, p 16. But Defendants are using this petition both a sword and a shield. One the one hand, Defendants allege that they had to wait for the Supreme Court's decision before filing its Motion. Motion, p. 16. Defendants went so far as to rely on the premise that "[w]hen seeking to vacate an earlier district court decision rendered moot by a later appeal, a party will be constrained by the time elapsed due to the time required for appellate review." Motion, p 17. On the other hand, Defendants allege that it "could not seek review of the evidence-fabrication issue" before the Supreme Court "because it was not decided by the Federal Circuit." Motion, p. 11. If ThermoLife believed it could not address the fabrication findings at the Supreme Court, there was no reason to delay seeking review by this Court. Defendants cannot have it both ways, but either way, they did not file the Motion within a reasonable time. Even assuming, *arguendo*, that the Petition for Certiorari was relevant to the issue of delay, Defendants still waited five months after the denial to file the Motion. Under such circumstances, the Motion is untimely and should be denied at least on this basis.

## III. CONCLUSION

For all of the foregoing reasons, the Motion should be denied in full.

August 28, 2026

Respectfully submitted,

*Gregory L. Hillyer*
HILLYER LEGAL, PLLC
Gregory L. Hillyer
Fla. Bar No. 682489
Email: ghillyer@hillyerlegal.com
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015-2052
Telephone: 202-686-2884
Facsimile: 202-686-2877

*Attorneys for Plaintiff BPI Sports, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of this Opposition was filed via CM/ECF on August 28, 2026 and served on counsel of record.

*s/ Gregory L. Hillyer*