# EXHIBIT 1

| Motion | Court Rulings |
| --- | --- |
| "Later evidence did show that ThermoLife and MBN had either an oral patent license or implied patent license (or both) for ThermoLife's patent ingredients. Ex. 2 at 72-77; Ex. 3 at 43-46; Ex. 4 at 6-7, 18-19; Ex. 6 at 4-6." Motion, p. 3.<br><br>"Mr. Kramer also explained that the License Agreement was intended to memorialize the oral (or implied) the license from 2016. DE 151, Ex. C at 2-3 (interrogatory response explaining that Mr. Kramer created the written agreement 'to memorialize in writing the oral agreement that was reached between Muscle Beach and ThermoLife, on or about March 16, 2017'; Ex. 2 at 27; Ex. 4 at 6; Ex. 6 at 6." Motion, p. 5.<br><br>Referring to the result of attorney Gregory Collins' "ill-fated" recommendation to produce a *nunc pro tunc* written document that memorialized a patent license from 2016 as "BPI's manufactured dispute." Motion, p. 3.<br><br>"Mr. Kramer even explained that he used 'one of Defendants' other license agreements in a Microsoft Word document" as a template to accurately capture the terms of ThermoLife's agreements from March 2017. *Id.*; Ex. 2 at 76." Motion, p. 5. | "Defendant Kramer fabricated a written agreement that did not exist prior to this lawsuit and initially tried to pass it off as legitimate." D.E. 226, p. 15; D.E. 252, p. 5.<br><br>"Defendants were not asked to fabricate a license; they were asked to produce existing licenses. If no written license existed, then Defendant Kramer could have explained that an oral or implied license had existed, as he tried to convince the Court during the hearing. *See, e.g.*, (Sanctions Hr'g Tr. 96:3-19; 115:13-116:1); *see also* (Kramer Dep. 153:2-154:1) (Kramer's testimony that he was knowledgeable about the legality of oral and implied licenses)." D.E. 226, p. 15.<br><br>"Defendant Kramer's argument that he simply 'memorialized' a pre-existing oral/implied agreement with Muscle Beach, and that such 'memorialization' are 'extremely common in intellectual property cases,' (Sanctions Hr'g Tr. 66:1-2), ignores the stark contrast between his purported 'memorialization' and that accepted by courts as legitimate in other intellectual property cases." D.E. 226, p. 13. |
| "Mr. Kramer even explained that he used 'one of Defendants' other license agreements in a Microsoft Word document' as a template to accurately capture the terms of ThermoLife's agreements from March 2017. *Id.*; Ex. 2 at 76." Motion, p. 5. | "Moreover, the terms of the License Agreement did not reflect the actual terms purportedly governing the relationship between ThermoLife and Muscle Beach. (*See* DE 143-1; R&R at 13 (citing Sanctions Hr'g Tr. [DE 192] 132:15-16).)" D.E. 252, p. 7.<br><br>"Indeed, the terms contained in the License Agreement bore little resemblance to the terms described by ThermoLife and Kramer |

| | |
|---|---|
| | in discovery. For example, although the License Agreement did not include any payment terms, the record reflects that ThermoLife purportedly loaned funds to Muscle Beach, which Muscle Beach was obligated to repay. (Sanctions Hr'g Tr. 132:15-16)." D.E. 226, p. 13, fn. 6. |
| The License Agreement was Not Relevant During Trial. Motion, p. 5. | "Thus, it is disingenuous for Defendants to argue that the License Agreement was irrelevant when the parties disputed the relationship between the corporate entities." D.E. 226, p. 13.<br><br>"In doing so, the undersigned [Magistrate Valle] found that despite ThermoLife and Kramer's judicial admission of alter ego liability in the Answer filed the day before the hearing, the License Agreement remained relevant to the issues in the case. (Discovery Hr'g Tr. 88:16-18); *see also id.* 89:24-90:1 ("Defendants' decision to indemnify Muscle Beach and to admit alter ego doesn't alter the parties' discovery obligations going forward.")." D.E. 226, p/ 7-8.<br><br>"The undersigned reiterated that 'the license agreement is a very important part of this litigation' and that Defendants' admission of 'alter ego liability does not change the scope of the discovery as to the underlying licensing agreement.' *Id.* 89:5-10." D.E. 226, p. 8. |
| "The only instance where BPI referenced the License Agreement during trial was its attempt at tarnishing Mr. Kramer's credibility…" Motion, p. 6, fn. 3 | "One goal of effective cross-examination is to impeach the credibility of opposing witnesses." *United States v. Lindstrom*, 698 F.2d 1154, 1160 (11th Cir. 1983). |
| "Defendants fully complied and produced responsive discovery. Ex. 4 at 4-5; Ex. 6 at 6. As part of its discovery responses, ThermoLife produced the License Agreement. DE 143 at 4; Ex. 4 at 5; Ex. 6 at 6." Motion, p. 4. | "Finally, the Magistrate Judge found that 'the circumstances surrounding the creation of the License Agreement, coupled with its seemingly innocuous production during discovery and Defendants' subsequent tactical attempts to [stymie] discovery on this issue, provide clear and conceiving evidence of Defendants' bad faith . . . .' |

| | |
|---|---|
| | (R&R at 3.)" D.E. 252, p. 5<br><br>"Next, Defendants' argument that sanctions are unwarranted because they were forthright in producing the License Agreement and in disclosing the circumstances surrounding its creation rings hollow and sounds of revisionist history. (ECF No. 151 at 3); (Sanctions Hr'g Tr. 122:5-124:2)." D.E. 226, p. 14. |
| At this time, BPI had not served any discovery requests seeking information about the details surrounding any license agreement between ThermoLife and MBN. Ex. 4 at 4-5; Ex. 6 at 6. Thus, ThermoLife was not obligated only to produce the requested documents. *Id.*" Motion, p. 4. | "Despite disclosing the License Agreement in March 2020, Defendants did not claim that the License Agreement represented a purported oral agreement until after Plaintiff suspected irregularities surrounding the document." D.E. 252, p. 7. |
| "BPI's additional discovery requests were aimed at the details of the License Agreement. DE 87-2 at 1-11. Through former counsel, Defendants objected to producing further information because they opted to agree that ThermoLife and MBN were alter egos, which necessarily mooted the underlying discovery dispute. DE 135 ¶ 64 n.1; *id.* ¶ 68 n2; Ex. 2 at 26; Ex. 4 at 5; Ex. 6 at 5. Defendants agreed to this course as a way to limit unnecessary discovery and expense. Ex. 4 at 5; Ex. 6 at 5." Motion, p. 4. | "The Magistrate Judge found that the Defendants then tried to prevent discovery of the circumstances surrounding the License Agreement by (i) filing an Expedited Request before the District Judge and offering to indemnify and hold Muscle Beach harmless if the Judge maintained the existing pretrial deadlines; (ii) admitting alter ego liability for Muscle Beach; (iii) arguing before the Magistrate Judge that admission of alter ego liability foreclosed Plaintiff's right to discovery. (R&R at 14 (citing Discovery Hr'g Tr. 88:19-22; Sanctions Hr'g Tr. 46:10-49:21)). In effect, the record evidence leads to a conclusion that, after Plaintiff identified suspicious circumstances relating to the fabricated document, Defendants sought to prevent discovery of their fraud." D.E. 252, pp. 7-8. |
| "BPI did not contend that Defendants' responses were incomplete or misleading." Motion, p. 5. | "Instead, BPI argued that ThermoLife had produced a "false" license agreement and alleged misconduct of Defendants' former counsel, Gregory Collins. DE 143 at 4, 12-13; Ex. 4 at 7; Ex. 6 at 6-7." Motion, p. 5. |
| "After briefing and argument, Magistrate Valle granted BPI's motions to compel but denied | THE COURT: Can I stop you, Mr. Mullins. Let me stop you there, however. I think that |

| | |
|---|---|
| fees and costs because 'the parties' respective positions were substantially justified under Rule 37(a)(5).' DE 122 at 93:1-15; Ex. 2 at 23; Ex. 4 at 5-6; Ex. 6 at 6." Motion, p. 4.<br><br>"While Magistrate Valle previously concluded that the parties' discovery positions were substantially justified on the same issues raised in BPI's motion for sanctions, Judge Valle nevertheless ruled that Defendants and their former counsel had acted in bad faith with respect to the subsequent discovery efforts about the written patent license. DE 226 at 11-16; Ex. 4 at 7." Motion, p. 5. | the plaintiffs raised a good point, and you cited to this in your response. You said that I didn't find bad faith in my -- and that is on page 14 of your response -- because I didn't award fees under Rule 37 and I stated that the positions were substantially justified. This hearing, however, took place in June, correct?<br><br>MR. MULLINS: Right. Correct.<br><br>THE COURT: And the circumstances regarding the licensing agreement were not made known until July.<br><br>MR. MULLINS: Your Honor –<br><br>THE COURT: Am I not right? Am I not right on the time line?<br><br>MR. MULLINS: You're not correct. Instead, as they admitted here today, they always thought that the license agreement was not created –<br><br>THE COURT: That is not my question.<br><br>MR. MULLINS: No, your Honor –<br><br>THE COURT: Wait. Stop. When I talk, you stop.<br><br>MR. MULLINS: Go ahead.<br><br>THE COURT: My question is as follows. I said that in June. At that time Mr. Hillyer may well have had his suspicions, but his suspicions -- he didn't know anything about the creation of, act or creation of this license until July 15th when you responded, amended the responses to the interrogatories and the requests for production. Am I right on that chronology?<br><br>MR. MULLINS: You're right [discussion]<br><br>Hearing Tr., p. 71, ln. 19-p. 72, ln. 21. |