**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| BPI SPORTS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>THERMOLIFE INTERNATIONAL, LLC,<br>MUSCLE BEACH NUTRITION, LLC,<br>and<br>RONALD L. KRAMER.<br><br><br>*Defendants*. | ) | **CASE NO. 0:19-cv-60505-SMITH** |

**DEFENDANTS THERMOLIFE INTERNATIONAL, LLC'S, MUSCLE BEACH NUTRITION, LLC'S AND RONALD L. KRAMER'S REPLY IN SUPPORT OF THEIR MOTION UNDER RULE 60(b)(6) TO VACATE PORTIONS OF ORDER OF JULY 14, 2021**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

I. The Federal Circuit Did Not Adopt The Challenged Fabrication Findings .......... 1

A. BPI Confirms That the Federal Circuit Did Not Decide the Fabrication Issue .......... 2

B. Affirmance Does Not Constitute Adoption of Every Underlying and Disputed Finding .......... 3

C. BPI Relies on Unreasonable and Incorrect Inferences .......... 4

II. BPI Identifies No Authority Establishing That *Munsingwear* Does Not Apply When The Appellate Decision Itself Makes A Subsidiary Finding Unreviewable .......... 5

A. The Equitable Purpose of *Munsingwear* Governs the Analysis .......... 5

B. BPI's Categorical Limitation Does Not Appear in the Cases It Cites .......... 6

C. Federal Circuit Precedent Confirms the Applicability of *Munsingwear* .......... 6

III. BPI's Waiver And Timeliness Arguments Do Not Defeat Relief .......... 7

A. BPI Cites No Authority Requiring a Party to Present a Post-Appeal Rule 60(b)(6) Theory in a Rehearing or Certiorari Petition .......... 7

B. BPI's Timeliness Argument Uses the Wrong Triggering Event and Incorrect Elapsed Periods .......... 8

C. The Earlier Rule 60 Motion Involved a Different Basis for Relief .......... 9

IV. The Continuing Use Of The Findings By Third Parties Supports Equitable Relief .......... 9

V. Conclusion .......... 10

## TABLE OF AUTHORITIES

**Cases**


*American Games, Inc. v. Trade Products, Inc.*,
142 F.3d 1164 (9th Cir. 1998) ........ 6

*Anderson v. Smithfield Foods, Inc.*,
353 F.3d 912 (11th Cir. 2003) ........ 1, 10

*BPI Sports, LLC v. ThermoLife International, LLC*,
Nos. 2023-1068, 2023-1625, 2023-1112,
2025 WL 1683234 (Fed. Cir. June 16, 2025) ........ 2–4

*BUC International Corp. v. International Yacht Council Ltd.*,
517 F.3d 1271 (11th Cir. 2008) ........ 9

*Camreta v. Greene*,
563 U.S. 692 (2011) ........ 7

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ........ 4

*Doe v. Wooten*,
747 F.3d 1317 (11th Cir. 2014) ........ 7

*Dominguez v. Circle K Stores, Inc.*,
No. 11-23196-CIV, 2013 WL 4773629 (S.D. Fla. Sept. 4, 2013) ........ 9

*Droplets, Inc. v. E*TRADE Bank*,
887 F.3d 1309 (Fed. Cir. 2018) ........ 3

*Fromson v. Advance Offset Plate, Inc.*,
755 F.2d 1549 (Fed. Cir. 1985) ........ 3

*Insulet Corp. v. EOFlow, Co. Ltd.*,
104 F.4th 873 (Fed. Cir. 2024) ........ 4

*Mangosoft, Inc. v. Oracle Corp.*,
525 F.3d 1327 (Fed. Cir. 2008) ........ 3

*Omega Patents, LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) ........ 1, 3, 6, 7, 10

*Standard Oil Co. of California v. United States*,
429 U.S. 17 (1976) ........ 6, 8

*Stratoflex, Inc. v. Aeroquip Corp.*,
713 F.2d 1530 (Fed. Cir. 1983) .......... 3

*TecSec, Inc. v. International Business Machines Corp.*,
731 F.3d 1336 (Fed. Cir. 2013) .......... 4

*United States v. Munsingwear, Inc.*,
340 U.S. 36 (1950) .......... 1, 5, 6, 7, 10

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*,
513 U.S. 18 (1994) .......... 5, 6

*Valero Terrestrial Corp. v. Paige*,
211 F.3d 112 (4th Cir. 2000) .......... 6, 7

**Rules**

Federal Rule of Civil Procedure 11(b)(1) .......... 10

Federal Rule of Civil Procedure 11(b)(2) .......... 1, 10

Federal Rule of Civil Procedure 60(b) .......... 6, 8, 9

Federal Rule of Civil Procedure 60(b)(1) .......... 9

Federal Rule of Civil Procedure 60(b)(6) .......... 6–10

BPI's opposition misunderstands a basic premise of appellate decisionmaking. The Federal Circuit, as with other appellate courts, "review[s] judgments, not opinions" or "predicate findings." *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1369 (Fed. Cir. 2021). An appellate court's affirmance does not necessarily mean that the appellate court rules on every factual and legal dispute presented in an appeal. BPI avoids or misses this basic premise when arguing that the Federal Circuit affirmed every disputed factual finding, even those unnecessary to the court's affirmance. The Federal Circuit expressly assumed that Defendants did *not* fabricate the License Agreement and affirmed based on "additional, sufficient findings" concerning discovery conduct. The word "sufficient" in the court's opinion exposes the flawed reasoning in BPI's opposition.

This is precisely the inequity that a *Munsingwear* vacatur is intended to prevent: an adverse determination that has become unreviewable should not remain available for "spawning any legal consequences." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950). BPI acknowledges the problem when it states that the continuing harm flows from the findings' "mere 'existence.'" Opp'n 2, 11. BPI cannot point to any authority holding that vacatur is categorically unavailable in a situation such as this where the appellate decision is the mooting event.

BPI's effort to portray this narrow request as evidence of an improper purpose or bad faith is particularly misplaced. BPI pressed its meritless false-advertising claim for years, only for the Federal Circuit to soundly reject BPI's basic premise in view of BPI's own evidence. For some unstated reason, BPI fights about narrow, now-mooted factual findings. Granting the motion will (in this case) not impact BPI one wit, yet it continues its hyperbolic attack on ThermoLife and its counsel. BPI's acerbic opposition is not typical for a party that has no dog in the fight.[1]

## I. The Federal Circuit Did Not Adopt The Challenged Fabrication Findings

BPI's opposition rests on the mistaken premise that the Federal Circuit's affirmance constituted an affirmance of every disputed fact and every finding in the Sanctions Order. The Federal

[1] BPI and its counsel have inexplicably raised the stakes by serving, on September 11, 2026, a proposed Rule 11 motion that rehashes its opposition to the Rule 60 motion (as Ex. 1). BPI's proposed Rule 11 motion is itself meritless. It fails to cite a single case that precludes the application of *Munsingwear* under the present circumstances. By definition, it therefore fails to meet the standard that the instant motion is anything but "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2); *see also Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915-16 (11th Cir. 2003). Even if ThermoLife's motion is understood as seeking an extension of existing law, BPI's response and associated proposed motion are merely attempts to weaponize Rule 11 while overlooking the legal standard.

Circuit expressly *assumed* that no fabrication had occurred and affirmed based on independent discovery findings. Neither the Federal Circuit's ultimate disposition, nor the inferences BPI draws from the opinion, converts the reserved fabrication issue into an appellate holding.

**A. BPI Confirms That the Federal Circuit Did Not Decide the Fabrication Issue**

The complete language of the Federal Circuit's opinion refutes BPI's principal argument. On appeal, ThermoLife had argued that the finding of fabrication was not supported in the record. As noted in the opinion, "Appellants argue that the Sanctions Order is based on a 'clearly erroneous view of the evidence,' and thus should not stand. Appellants' Br. 73. In particular, Appellants argue that they did not 'fabricate[]' the License Agreement for use in the litigation below. Appellants' Br. 73-74." *BPI Sports, LLC v. ThermoLife Int'l LLC*, No. 2023-1068, 2025 WL 1683234, at *5 (Fed. Cir. June 16, 2025). But the court did not reach that issue. It stated: "But, even *assuming* Appellants did not fabricate the License Agreement, the district court rested its Sanctions Order on additional, sufficient findings." *Id.* (emphasis added). The court then identified those additional findings, stating that Defendants, through their former counsel, allegedly "withheld information surrounding the circumstances of the License Agreement until compelled to release this information" and "attempted to prevent discovery of the circumstances surrounding the creation of the License Agreement." *Id.*

BPI argues that Defendants "truncated" the Federal Circuit's holding and improperly converted "even assuming" into "assum[ed]," Opp'n 1–2, 7, but this minor change does not materially alter the statement or the holding of the court. The complete sentence in context still supports Defendants' position. The court expressly distinguished between the document fabrication issue (assumed and not addressed by the court) and the "additional, sufficient findings" regarding alleged discovery misconduct by prior counsel upon which the court relied. Defendants do not contend that the Federal Circuit affirmatively found the License Agreement was valid and authentic. They do contend that the Federal Circuit expressly did not decide whether it was fabricated.

BPI's own characterization establishes that point. BPI admits the Federal Circuit "merely assumed, for argument's sake," that the License Agreement was not fabricated. Opp'n 2. The purpose of assuming a disputed proposition for argument's sake is to decide the matter on other, dispositive grounds without resolving that proposition. Whether the assumption was adopted because of Defendants' briefing or merely for analytical purposes makes no difference as the fabrication issue was unnecessary to the disposition and received no appellate merits determination.

BPI's reliance on the proposed blackline Defendants submitted with their rehearing petition confirms why Defendants sought such clarification on rehearing. *See* Opp'n 7. Defendants asked the panel to eliminate the very ambiguity BPI now exploits by making explicit that the fabrication findings were not a basis for affirmance.

**B. Affirmance Does Not Constitute Adoption of Every Underlying and Disputed Finding**

BPI repeatedly emphasizes that the Federal Circuit affirmed the Sanctions Order and found "no error in the district court's sanction of attorneys' fees," Opp'n 1, 6, but those statements address the ultimate disposition, not every subsidiary finding within the Sanctions Order. The Federal Circuit affirmed the sanction because it identified other findings that were independently sufficient to support bad faith. That disposition did not require the court to decide whether the License Agreement was fabricated, which it expressly stated it was not addressing.

This distinction reflects ordinary appellate practice. The Federal Circuit repeatedly has explained that appellate courts "review judgments, not opinions" or "predicate findings."[2] An affirmance establishes that the result below can stand. It does not necessarily adopt every factual premise, statement, or alternative rationale appearing in the reviewed decision. BPI's assertion that if the Federal Circuit "did not affirm the factual findings" it necessarily "did find error" rests on the same fundamental misunderstanding of appellate practice and ignores the language of the opinion. Opp'n 8 (emphasis in original).

The structure of the Federal Circuit's analysis makes the distinction particularly clear here. The court first assumed that fabrication did not occur and then identified the "additional" findings sufficient to support bad faith. It concluded that "[t]hese findings" were "not clearly erroneous and are sufficient to support a bad faith determination." *BPI Sports*, 2025 WL 1683234, at *5. The ensuing statement that the court found "no error" in the sanction therefore establishes that the sanction was affirmed on those independent grounds. It does not convert the assumed, unreached fabrication issue into an appellate holding.

BPI also misunderstands the Federal Circuit's statement that it had "considered the parties' remaining arguments and [found] them unpersuasive." Opp'n 2, 6; *BPI Sports*, 2025 WL 1683234,

[2] *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1369 (Fed. Cir. 2021); *see also Droplets, Inc. v. E*TRADE Bank*, 887 F.3d 1309, 1321 (Fed. Cir. 2018); *Mangosoft, Inc. v. Oracle Corp.*, 525 F.3d 1327, 1330 (Fed. Cir. 2008); *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1556 (Fed. Cir. 1985); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed. Cir. 1983).

at *6. Such a statement does not transform a question expressly assumed for purposes of analysis into a merits determination. *See Insulet Corp. v. EOFlow, Co.*, 104 F.4th 873, 883 (Fed. Cir. 2024) (expressly identifying matters the court had "not decided" before stating that it had "considered [the party's] remaining arguments and [found] them unpersuasive"); *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336, 1343–44 (Fed. Cir. 2013) (holding that an issue was not "actually determined" by an affirmance resting on independent grounds).

The denial of rehearing and certiorari does not alter what the Federal Circuit's opinion decided. *See* Opp'n 2, 7. Defendants sought every available form of review, but neither the denial of rehearing nor the denial of certiorari supplied the missing merits determination concerning fabrication. The standards for those proceedings are completely different from this motion. Those proceedings merely exhausted Defendants' appellate remedies without changing the Federal Circuit's stated rationale, paving the way for the present motion.

### C. BPI Relies on Unreasonable and Incorrect Inferences

Unable to identify an express appellate holding on fabrication, BPI attempts to infer one from the Federal Circuit's discussion of the discovery conduct. BPI argues that the opinion's reference to Kramer having "initially tried to pass" the agreement "off as legitimate" was an "implicit, if not express acknowledgement" that the agreement was fabricated. Opp'n 8. But an inference drawn by BPI cannot override the Federal Circuit's express assumption.

The Federal Circuit expressly separated the assumed fabrication issue from the "additional, sufficient findings" concerning discovery. The Federal Circuit treated the initial production, delayed disclosure of metadata, and attempts to limit additional discovery as conduct sufficient to support sanctions even under the assumption that the agreement was not fabricated. BPI argues that there is "congruency" between the fabrication and discovery findings because there would have been no reason to resist discovery if the agreement were authentic. Opp'n 8–9. That is pure speculation, but more importantly is not the Federal Circuit's holding.

BPI's reliance on the opinion's citation to *Chambers* is equally misplaced. *See* Opp'n 7 n.1, 8 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). The Federal Circuit cited *Chambers* for the general principles that bad faith can support inherent-authority sanctions, and that bad faith can be found from fraud practiced upon the court. *BPI Sports*, 2025 WL 1683234, at *5. But the Federal Circuit did not state that Defendants committed fraud upon the Court or that Kramer fabricated evidence. The court instead expressly held that the independent discovery findings were

sufficient to support a bad-faith determination.

BPI's comparison chart identifies neither any necessary overlap between the requested relief and the findings sustained on appeal nor any language in which the Federal Circuit itself found fabrication. Opp'n 9. The chart merely juxtaposes the vacatur requests with the portions of the Federal Circuit's opinion, largely in parentheticals, describing this Court's findings made below. *Id.* It does not show that the Federal Circuit independently adopted those findings.

Contrary to BPI's argument, its Exhibit 1 shows how the Motion correctly focuses on the now-mooted disputed findings from the Report and Recommendation and the Sanctions Order. The continued existence of those disputed findings is the very premise for the requested relief.

BPI's response also confirms the narrower point relevant here: BPI concedes that the License Agreement was "not offered as substantive evidence." Opp'n 4. The Agreement's only purpose at trial was to put the sanctions findings in front of the jury. The Agreement was not substantive evidence establishing any element of any claim or defense submitted to the jury.

## II. BPI Identifies No Authority Establishing That *Munsingwear* Does Not Apply When The Appellate Decision Itself Makes A Subsidiary Finding Unreviewable

BPI's *Munsingwear* argument depends on a categorical limitation that its authorities do not recognize. Although BPI cites cases involving external events that caused mootness during an appeal, none holds that those circumstances are the exclusive basis for equitable vacatur. Both Federal Circuit precedent and *Munsingwear's* underlying purpose support vacatur when an appellate disposition leaves a consequential subsidiary finding unnecessary and unreviewable through no fault of the party seeking review.

### A. The Equitable Purpose of *Munsingwear* Governs the Analysis

*Munsingwear* vacatur exists "to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." 340 U.S. at 40–41. Similarly, a party that seeks review but is "frustrated by the vagaries of circumstance" should not "in fairness be forced to acquiesce" to the unreviewed determination. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994). The controlling considerations are the unavailability of merits review, the party's responsibility for that circumstance, and the consequences of leaving the determination intact. *Munsingwear,* 340 U.S. at 40–41; *U.S. Bancorp*, 513 U.S. at 25.

Those considerations favor relief here. Defendants did not settle the case, abandon their appeal, or voluntarily relinquish review. They challenged the fabrication findings in their Federal Circuit briefs, sought panel and *en banc* rehearing, and petitioned for certiorari. The Federal

Circuit's alternative-ground affirmance made the fabrication question unnecessary to the disposition, and the conclusion of appellate proceedings made further merits review unavailable.

BPI argues that appellate review was not prevented because Defendants' appellate remedies have "simply been exhausted," Opp'n 11, but, with its description, BPI highlights rather than refutes the equitable problem. Defendants exhausted every appellate mechanism without receiving a merits determination on the fabrication findings, and the specific findings continue to be weaponized to Defendants' detriment. Treating exhaustion without adjudication as equivalent to completed merits review would defeat the doctrine's purpose.

Further, Rule 60(b)(6) also permits the Court to apply similar equitable principles. To wit, a district court is authorized to entertain a Rule 60(b) motion after appellate affirmance without first obtaining appellate permission. *Standard Oil Co. v. United States*, 429 U.S. 17, 18 (1976). District courts likewise may consider *Munsingwear* and *Bancorp*'s equitable principles when deciding whether to vacate their own orders under Rule 60(b). *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 120 (4th Cir. 2000); *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1167–70 (9th Cir. 1998).

**B. BPI's Categorical Limitation Does Not Appear in the Cases It Cites**

BPI asserts that *Munsingwear* vacatur is "only appropriate when a change in circumstances moots [an] issue while an appeal was pending—separate and apart from the result of the appeal itself," Opp'n 10, but none of BPI's cited authorities sets out that categorical rule. The cases collected in its footnote finding mootness describe circumstances in which mootness resulted from settlement, graduation, cancellation of a contract, or other external events. *Id.* at 10 n.2. But providing examples of circumstances warranting vacatur does not establish that those circumstances constitute the exclusive universe in which equitable relief is available.

BPI claims that *Munsingwear* is inapplicable because "the Sanctions Order is not pending on review," there were no "independent intervening circumstances," and "appellate review has not been prevented." Opp'n 11. BPI likewise cites no decisions making these propositions mandatory elements of either *Munsingwear* vacatur or general post-appeal relief under Rule 60(b)(6).

**C. Federal Circuit Precedent Confirms the Applicability of *Munsingwear***

*Omega Patents* undermines BPI's categorical theory. There, the judgment rendered irrelevant an adverse predicate infringement finding, so the Federal Circuit declined to review its merits and vacated the predicate finding. 13 F.4th at 1368–69. It explained that the procedural posture

had "frustrat[ed]" the appellant's "right to appeal"; that the appellant could suffer indemnification, reputational, and fee-related harm from the finding; and that appellate review had become unavailable "through no action or fault of its own." *Id.* at 1369–70. The court vacated the finding to "expunge[] an adverse decision that would be reviewable had this [issue] not become moot." *Id.* at 1370 (quoting *Camreta v. Greene*, 563 U.S. 692, 712 n.10 (2011)).

The same principles apply here. First, an appellate court's decision not to reach an unnecessary predicate finding does not constitute adoption of that finding. Second, vacatur may be appropriate when the subsidiary finding is irrelevant to the judgment, unreviewable on the merits, and capable of causing collateral harm. *Omega Patents* did not require any of the external events existing in BPI's cases before vacating the predicate finding.

Further, and contrary to BPI's response, there can be no dispute that the vagaries of this case have created "extraordinary circumstances." It was extraordinary for BPI to litigate such a meritless claim for years, and it now goes back to the same well with its proposed Rule 11 motion. Had BPI never filed its meritless case, ThermoLife would not have been in a discovery dispute that led to the sanctions in the first place. With the "extraordinary circumstances" standard easily met, the "established practice" and the "standard disposition in federal civil cases" of vacatur then apply when mootness prevents merits review. 340 U.S. at 39 & n.2. Rule 60 is an appropriate vehicle when *Munsingwear* vacatur is warranted. *Valero*, 211 F.3d at 120–23.

## III. BPI's Waiver And Timeliness Arguments Do Not Defeat Relief

BPI next argues that Defendants waived their request and failed to file it within a reasonable time, but neither contention withstands scrutiny. Defendants preserved their challenge to the fabrication findings throughout the appellate proceedings, filed this Motion shortly after those proceedings concluded, and previously sought Rule 60 relief on a materially different basis before the circumstances supporting the present Motion existed.

### A. BPI Cites No Authority Requiring a Party to Present a Post-Appeal Rule 60(b)(6) Theory in a Rehearing or Certiorari Petition

BPI is wrong when asserting that Defendants waived the application of *Munsingwear* because they did not invoke the doctrine in their rehearing or certiorari petitions. Opp'n 9.[3] BPI cites no authority holding that a party forfeits a later Rule 60(b)(6) request by not requesting

[3] To the extent that mootness is an Article III jurisdictional issue, it cannot be waived. *See Doe v. Wooten*, 747 F.3d 1317, 1322 n.3 (11th Cir. 2014).

district-court equitable relief in a petition for discretionary appellate review. The underlying issue was preserved at every level. Defendants challenged the fabrication findings before the Federal Circuit, requested rehearing on the ground that those findings had not been affirmed, and informed the Supreme Court that the Federal Circuit had not affirmed them.

The present Motion was not ripe until the completed appellate process. Defendants could not have known that every avenue for obtaining a merits determination had closed until rehearing and certiorari proceedings concluded. Rule 60(b)(6) supplies the procedural mechanism for asking this Court to address the consequences of that completed process. That timing is consistent with the nature of post-appeal Rule 60(b) relief because "the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events." *Standard Oil*, 429 U.S. at 18. Here, the circumstances establishing a basis for this Motion did not exist until the appellate proceedings ended without a merits determination on the fabrication findings.

**B. BPI's Timeliness Argument Uses the Wrong Triggering Event and Incorrect Elapsed Periods**

First, BPI miscalculates the time elapsed from its triggering events. It states that the Motion was filed "over six years" after the Sanctions Order of July 14, 2021, Opp'n 3, 14, but the Motion actually was filed on July 31, 2026, approximately five years after that order, not more than six. BPI also states that Defendants waited "five months" after certiorari was denied on March 23, 2026. *Id.* at 3, 12, 14. The Motion was filed approximately four months later.

More fundamentally, entry of the Sanctions Order is not the appropriate starting point for evaluating this Rule 60(b)(6) ground. The relevant circumstances arose from the Federal Circuit's alternative-ground affirmance on June 16, 2025, and became final only after rehearing was denied and the Supreme Court denied certiorari on March 23, 2026. Before the appellate process ended, Defendants were still pursuing relief that could have eliminated or materially altered the need for this Motion. BPI does not address this point, and its reliance on the date of the Sanctions Order underscores BPI's complete misunderstanding of how Rule 60(b) works.

BPI contends that if Defendants believed the Supreme Court could not review the fabrication question directly, "there was no reason to delay seeking review by this Court," Opp'n 14, but Defendants' certiorari petition sought relief from the sanctions ruling as a whole. Had the Supreme Court granted that relief, the present Motion would have become unnecessary. Waiting for the appellate process to conclude avoided duplicative proceedings and ensured that no remaining appellate avenue could provide relief.

A motion filed approximately four months after certiorari was denied was made within a reasonable time. *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1276 (11th Cir. 2008) (six- and seven-month periods not unreasonable); *Dominguez v. Circle K Stores, Inc.*, No. 11-23196-CIV, 2013 WL 4773629, at *4 (S.D. Fla. Sept. 4, 2013) (six-month period reasonable). BPI identifies no prejudice caused by the interval, particularly because this Motion poses no prejudice to BPI: Defendants do not seek to alter the sanctions, recover the monetary payment, or even disturb the discovery findings sustained on appeal.

**C. The Earlier Rule 60 Motion Involved a Different Basis for Relief**

BPI emphasizes that Defendants previously sought relief under Rule 60(b) and that the Court denied that motion as untimely under Rule 60(b)(1), Opp'n 13, but the earlier motion asserted different grounds and was filed before the Federal Circuit's opinion. It could not have addressed an appellate disposition that had not yet occurred. The present Motion does not revive the earlier Rule 60(b) arguments. It rests on circumstances created by the later appellate process in which the Federal Circuit assumed no fabrication, affirmed on independent grounds, and left Defendants without an appellate merits determination of findings that are causing collateral consequences. Those circumstances provide a distinct basis for relief under Rule 60(b)(6).

**IV. The Continuing Use Of The Findings By Third Parties Supports Equitable Relief**

BPI attempts to recast the continuing use of the challenged findings as evidence that the Motion was filed for an improper purpose. Its own description of that continued use instead confirms the collateral consequences supporting relief. The findings continue to be repeated in unrelated proceedings as purported evidence of fabrication and fraud, notwithstanding the absence of any appellate determination adopting them.

BPI's own arguments confirm the mooted findings' impact beyond this case. In BPI's own words, Mr. Kramer's asserted harm "flows from [the findings'] mere 'existence.'" Opp'n 2. It later characterizes the subsequent litigants' conduct as "simply repeat[ing]" the findings. *Id.* at 11. BPI's response thus confirms the very reason why ThermoLife is seeking relief pursuant to Rule 60(b)(6).

The fact that other parties deploy the now-mooted findings further emphasizes the gravity of the resulting harm and the need for relief. The findings are being offered, and will continue to be so offered, as purported dispositive support for new, unproven allegations of fabrication, fraud, dishonesty, and bad faith, even though the Federal Circuit expressly did not decide whether those

fabrication findings were correct. The continued repetition of those findings is precisely the type of legal consequence spawned by an unreviewed determination for which *Munsingwear* vacatur exists. 340 U.S. at 41.

BPI also invokes Defendants' acknowledgment that the public interest favors preserving "upheld judgments and findings," Opp'n 12, but the three challenged fabrication findings were not "upheld." BPI's public-interest argument incorrectly assumes the disputed premise. Limited vacatur serves *Munsingwear*'s public interest by clearing away non-upheld determinations from "spawning any legal consequences." 340 U.S. at 41.

BPI inexplicably argues that the Motion was filed for an improper purpose because it followed increased use of the findings in other proceedings. Opp'n 11–12. The timing of ThermoLife's Motion supports rather than undermines it. The third parties' repeated invocations of the challenged findings have further crystallized the resulting harm, and the end of the appellate road left Rule 60(b)(6) as the next and last option.

Under BPI's byzantine reasoning, a party should not seek vacatur until it can demonstrate concrete collateral consequences, Opp'n 12, but once those consequences materialize, the request (under BPI's reasoning) would become improper because it would be motivated by those same consequences. BPI's argument is not rational. Collateral consequences, under *Munsingwear*, are a strong reason for vacatur, not evidence of an improper purpose. 340 U.S. at 41; *Omega Patents*, 13 F.4th at 1369–70.

Even if BPI is asserting "improper purpose" in the Rule 11 sense, that standard asks whether a filing was presented "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1); *see also* Fed. R. Civ. P. 11(b)(2); *Anderson*, 353 F.3d at 915–16 (reversing sanctions where there was only "scant on-point" authority concerning the challenged argument). BPI cannot show these circumstances given that ThermoLife's Motion will result in no prejudice to BPI and did not warrant any action by BPI.

BPI devotes substantial attention to a recent, unrelated Ninth Circuit opinion involving separate litigation between the parties and asserts that the present Motion "illustrates the same pattern" discussed there. Opp'n 12–13. That partially split decision is unrelated to the issues presented by the Motion.

## V. Conclusion

For these reasons, Defendants respectfully request that the Court grant the Motion.

Respectfully submitted, this 28th day of September 2026.

*/s/ Edward M. Mullins*
Edward M. Mullins (FBN 863920)
Reed Smith LLP
200 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
Telephone: 786-747-0200
Facsimile: 786-747-0299
Email: emullins@reedsmith.com

and

Matthew J. Dowd (*pro hac vice*)
Robert J. Scheffel (*pro hac vice*)
Dowd Scheffel PLLC
1717 Pennsylvania Avenue NW
Suite 1025
Washington, D.C. 20006
Tel: (202) 559-9175
mdowd@dowdscheffel.com
rscheffel@dowdscheffel.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 28, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record.

*/s/ Edward M. Mullins*
Edward M. Mullins