**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

BPI SPORTS, LLC,

Plaintiff,

vs.

THERMOLIFE INTERNATIONAL, LLC, MUSCLE BEACH NUTRITION, LLC and RONALD L. KRAMER,

Defendants.

**CASE NO.: 0:19-cv-60505-SMITH-STRAUSS**

**BPI SPORTS, LLC'S MOTION FOR SANCTIONS**

Plaintiff, BPI Sports, LLC ("BPI"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C § 1927 and the Court's inherent powers, hereby requests that this Court enter an Order sanctioning Defendants ThermoLife International, LLC, Muscle Beach Nutrition, LLC, Ronald L. Kramer (collectively, Defendants), and their attorneys, and in support thereof, respectfully states as follows.

## I. INTRODUCTION

Defendants' Motion Under Rule 60(b)(6) To Vacate Portions of Order of July 14, 2021 (D.E. 462, "Motion") is sanctionable at least because (1) it was filed for an improper purpose; (2) the legal contentions are not warranted by existing law and constitute frivolous arguments; and (3) the factual contentions lack evidentiary support and directly contradict the Orders of this Court.

Significantly, this Court previously ruled that all Defendants committed fraud for which sanctions were warranted. D.E. 252 ("Sanctions Order"). This ruling and all associated findings were affirmed by the Court of Appeals for the Federal Circuit. Motion, Exhibit 1 ("Sanctions Order Affirmed"). Well over a year later, Defendants filed the ill-timed and ill-conceived Motion seeking relief under Fed.R.Civ.P. 60(b)(6) for a "vacatur of limited findings." Motion, p. 1. In a transparent effort to unwind the factual findings in the Sanctions Order, the Motion relies on its own subjective briefing to provide a stale narrative about the License Agreement that has already been soundly rejected by this Court. Next, the Motion contends that eviscerating sections of the Sanctions Order constitutes nothing more than a "routine step" because "[t]he Federal Circuit's ruling rendered moot this Court's findings with respect to Defendants' purported fabrication of evidence." *Id.*

Not only does this conclusion contradict the appellate decision itself, the Motion relies on a misleading interpretation of the opinion as the sole justification. Namely, a significant sentence was truncated and a crucial expression modified in order to triumphantly declare that the Federal Circuit "assum[ed] Defendants *did not* fabricate the License Agreement." *Id*. The sentence actually reads: "But, ***even assuming*** Appellants did not fabricate the License Agreement, the district court rested its Sanctions Order on additional, sufficient findings." *Id*., Exhibit 1, p. 11 (emphasis added).

This blatant rewriting, followed by the subjective reading of this passage, defies credulity. In the correct version, the Federal Circuit merely assumed, *for argument's sake*, that *even if* the license was not fabricated, other grounds existed "sufficient to support a bad faith determination." *Id*. The Court employed this approach based on the applicable standard of review, *i.e.*, whether the findings were clearly erroneous, or whether there was an abuse of discretion. There is no factual, legal, or common sense support for Defendants' position that, in so doing, *all grounds other than those considered in the alternative*—including that the license agreement *was fabricated*—were selectively nullified. A comparison of the Federal Circuit opinion to the Motion reveals that the Court expressly relied on some of the same findings Defendants are now requesting to be stricken.

The legal theory on which the Motion relies is substantively meritless. According to the Motion, *United States v. Munsingwear*, 340 U.S. 36 (1950) renders findings in the Sanctions Order moot in light of Defendants' manufactured interpretation. Motion, pp. 7-8. *Munsingwear* is not remotely applicable because the mootness doctrine is only applicable (and vacatur only available) when an independent change in circumstances moots an issue while it is *pending on appeal*.

Defendants' claim that their arguments were not evaluated on appeal is equally frivolous. The Court noted that "Appellants argue that they did not 'fabricate[]' the License Agreement for use in the litigation below." Motion, Exhibit 1, p. 11. The Court later confirmed that "[w]e have considered the parties' remaining arguments and find them unpersuasive." *Id*., p. 12. The Court affirmed and denied any rehearings, including *en banc*. Motion, Exhibits 4, 5. The U.S. Supreme Court denied *cert*. *Id*., Exhibits 6, 7. Defendants are not entitled to any further appellate review.

The balance of the Motion demonstrates that it is untimely and filed for an improper purpose. This is manifested, *inter alia*, through the admission that recent litigation activity has heightened the importance of vacating the limited portions of the Sanctions Order, as reflected in the declaration signed under oath by Defendant, Ronald L. Kramer D.E. 462-1, "Kramer Decl."

There, Kramer sponsors the flawed theory that statements in the Sanctions Order "have been rendered moot by the Federal Circuit's opinion" and claims that they "continue to cause harm to my companies and me." *Id.*, ¶¶3, 5. The harm flows from their mere "existence" which allows parties to truthfully inform other tribunals about Defendants' fraudulent litigation behavior. *Id.* Naturally, it is these exact same statements that Defendants suddenly contend were not relied on, are moot and should be stricken. As described below, Defendant's pattern of asserting meritless litigation positions warrants sanctions under Rule 11, § 1927 and the Court's inherent powers.

## II. RELEVANT AUTHORITY

### A. Federal Rule of Civil Procedure 11

Federal Rule of Civil Procedure 11 ("Rule 11") provides a remedy in the form of sanctions against parties, and their counsel, who engage in frivolous litigation and assert baseless claims.

Rule 11 provides, in relevant part:

(a) Signature. Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) Sanctions.

> (1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction

> on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.
>
> * * *
>
> (4) *Nature of a Sanction*. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.
>
> (5) Limitations on Monetary Sanctions. The court must not impose a monetary sanction: (A) against a represented party for violating Rule 11(b)(2)…

Rule 11 governs "every pleading, written motion, and other papers." Fed. R. Civ. P. 11; *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, 2025 WL 643208, at *4 (S.D. Fla. Feb. 25, 2025), *appeal granted in part*, 2025 WL 2800463 (S.D. Fla. Sept. 26, 2025). Any representation made to a federal court through such means is addressed by Rule 11(b), in which litigants are made aware of the level of professionalism and veracity that is expected of them. *Id.* For instance, Rule 11(b) states that when presenting a document to the court, "an attorney…certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: it is not being presented for any improper purpose." *Id.*

"[T]he goal of Rule 11 sanctions is to 'reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.'" *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 921 (11th Cir. 2016) (quoting *Massengale v. Ray,* 267 F.3d 1298, 1302 (11th Cir. 2001)). A legal claim is frivolous if no reasonably competent attorney could conclude that it has any reasonable chance of success or is a reasonable argument to change existing law. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (citing *Jones v. Int'l Riding Helmets, Ltd.,* 49 F.3d 692, 694 (11th Cir. 1995)); *Davis v. Carl,* 906 F.2d 533, 538 (11th Cir. 1990) (noting that legal claims are frivolous when they ignore established law). A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis because it is supported by no evidence, or only by "patently frivolous" evidence. *Davis,* 906 F.2d at 535–37.

The test employed to determine whether to impose sanctions is twofold: "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Diaz*, 643 F. App'x at 921 (quoting *Baker,* 158

F.3d 516, 524 (11th Cir. 1998); *Worldwide Primates* at 1254. An objective standard of reasonableness governs both inquiries. *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998); *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987). "Sanctions are warranted when the claimant exhibits a 'deliberate indifference to obvious facts." *Baker*, 158 F.3d at 524.

**B. 28 U.S.C. § 1927**

Under 28 U.S.C. § 1927, "[a]ny attorney…who so multiplies the proceeding in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001); *Macort v. Prem, Inc.*, 208 Fed. Appx. 781 (11th Cir. 2006). The term "unreasonably" connotes that the district court must compare the attorney's conduct against the conduct of a "reasonable" attorney and make a judgment about whether the conduct was acceptable according to some objective standard. *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1239-1240 (11th Cir. 2007). The term "vexatiously" means "without reasonable or probable cause or excuse; harassing; annoying" and similarly requires an evaluation of the attorney's objective conduct. *Id.* at 1240 (citing Black's Law Dictionary 1596 (8th ed. 2004)).

Trial courts have broad discretion in ruling on sanctions under § 1927. *Peterson v. BMI Refractories*, 124 F.3d 1386, 1390 (11th Cir. 1997); *Schwartz v. Millon Air., Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). The purpose of § 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them. *Kapco Mfg. Co., v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989); *McIntosh v. Hilton Grand Vacations, Inc.*, 2025 WL 5241428, at *5 (M.D. Fla. June 25, 2025) (citing *Dzwonkowski v. Dzwonkowski*, 2008 WL 2163916, at *21 (S.D. Ala. May 16, 2008)).

In *Macort*, the Eleventh Circuit went on to rule that: "[Section 1927] was designed to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith…A determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Id.*, 785-786; *see also*, *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1320 (11th Cir. 2002) (defining bad faith under the court's inherent power). If the attorney's misconduct meets this standard, the district court may order the attorney to pay the "costs, expenses, and attorneys' fees reasonably incurred" because of the attorney's misconduct—that is,

the excess costs that the attorney's multiplication of proceedings has added to the cost of the litigation. *Amlong* at 1242 (citing *Peterson* at 1396) (explaining that sanctions under § 1927 "must bear a financial nexus to the excess proceedings").

**C. The Court's Inherent Powers**

Federal courts possess the inherent power to sanction parties and attorneys who conduct litigation in bad faith who perpetrate a fraud on the court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-51 (1991); *Vargas v. Peltz*, 901 F. Supp. 1572, 1581-82 (S.D. Fla. 1995). "The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Bad faith exists when the court finds that a fraud has been practiced upon it, "the very temple of justice has been defiled," or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation or hampers the enforcement of a court order. *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (citing *Chambers*, 501 U.S. at 46). The imposition of sanctions under the inherent powers doctrine serves the dual role of "vindicating judicial authority" and providing redress for the litigants who bear the brunt of bad faith acts. *Chambers*, 501 U.S. at 46.

"[T]he inherent powers doctrine is most often invoked where a party commits perjury or destroys or doctors evidence." *Qantum Communs. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007); *Vargas*, 901 F. Supp. at 1574-82 (finding actions were part of an "unconscionable scheme" to defraud the court); *McDowell v. Seaboard Farms of Athens, Inc.*, 1996 WL 684140, at *8-10 (M.D. Fla. Nov. 4, 1996) (dismissing claims based on fabricated evidence and false testimony). When considering sanctions, a district court may consider all of the circumstances surrounding the violation, including parties' misconduct in related cases. *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1417-18 (5th Cir. 1994) (affirming sanctions where district court mentioned collateral proceedings); *Johnson v. Comm'r of Internal Revenue*, 289 F.3d 452, 456-57 (7th Cir. 2002). The need for sanctions is heightened where the scheme goes to the pivotal or "linchpin" issue in the case. *Vargas* at 1582. Courts have discretion under the inherent powers doctrine "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45.

## III. ARGUMENT

### A. The Factual Contentions In The Motion Lack Evidentiary Support

#### 1. The Background Section Contradicts Previous Orders Of This Court

Despite the fact that the Motion presumes "the Court is well aware of the facts and history of this case" and focuses entirely on the alleged consequences of the Federal Circuit decision, the Motion advances "the facts and history of this case" that Defendants claim are the "most pertinent to the present motion." Motion, p. 2-5. The facts and history provided bear no relationship to the grounds for relief, but rather, constitute a stale narrative about the License Agreement that has been repeatedly rejected by this Court. Unsurprisingly, Defendants cite to their own subjective briefing in support. *Id*. A non-exhaustive list of representations advanced in the Motion that cannot be sustained in light of this Court's earlier rulings is set forth in Exhibit 1.

"Litigants have an obligation to reconsider and revise their positions when they are no longer viable." *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, 2025 WL 643208, at *4 (S.D. Fla. Feb. 25, 2025), *sanctions affirmed in part*, 2025 WL 2800463 (S.D. Fla. Sept. 26, 2025). Courts in this District have repeatedly recognized the continuing obligation of practicing lawyers to ensure that their representations remain supportable throughout each filing in a case. *Mittenthal v. Florida Panthers Hockey Club, Ltd.*, 472 F. Supp. 3d 1211, 1221 (S.D. Fla. 2020) ("[Rule 11] obligation[s] continue[ ] throughout the pendency of the litigation."); *Deer v. Saltzman, Tanis, Pittell, Levin & Jacobson, Inc.*, 2011 WL 1526829, at *5–6 (S.D. Fla. Apr. 1, 2011) (sanctioning a party under Rule 11 where the party failed to timely take corrective action as to certain counts of an amended complaint when aware that certain of her claims were untenable); *In re BankAtlantic Bancorp, Inc. Securities Litig.*, 851 F. Supp. 2d 1299, 1311–314 (S.D. Fla. Aug. 3, 2011) (imposing Rule 11 sanctions where counsel failed to "conduct his own independent analysis of the facts and law which form the basis of a pleading or motion") (citing *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1277 (3d Cir. 1994)). Defendants' intransigent adherence to outdated and rejected factual assertions and conclusions is in direct violation of Rule 11(b)(3). *MSPA* at *4 (litigant conduct remained sanctionable because of "the misrepresentation it continued to advance to the Court").

#### 2. The License Agreement Was Relevant During Trial

The Motion alleges that the "License Agreement was not relevant during trial." Motion, p. 5. The License Agreement was produced during discovery by Defendants ThermoLife (and Muscle

Beach Nutrition). Motion, p. 4. The terms purportedly concerned the purchase of raw ingredients from ThermoLife to be incorporated into the product at issue, CRTN-3. *Id*. at 3. The document was represented, albeit falsely, by Defendants as defining the obligations between ThermoLife and Muscle Beach Nutrition, which were the signatories. *Id*. Magistrate Judge Valle found that "the license was a disputed issue in the case" and reiterated that it was "a very important part of this litigation." D.E. 226, p. 8. When Defendants falsely asserted the License Agreement was irrelevant during discovery, Judge Valle found it was "disingenuous for Defendants to argue that the License Agreement was irrelevant when the parties disputed the relationship between the corporate entities." *Id*., p. 13. The License Agreement was moved into evidence and used by BPI on cross examination. Motion, p. 6, fn. 3. Defendants' criticism that the License Agreement was only referenced as an "attempt at tarnishing Mr. Kramer's credibility" is yet another disingenuous argument. When Kramer elected to testify, he put his own credibility into issue, which is never irrelevant. It is axiomatic that "one goal of effective cross-examination is to impeach the credibility of opposing witnesses." *United States v. Lindstrom*, 698 F.2d 1154, 1160 (11th Cir. 1983).

**3. Defendants' Interpretation Of The Appellate Opinion Is Frivolous**

**a. The Relevant Appellate History**

The Report and Recommendation ("R&R) recommending that BPI's motion for sanctions be granted, in part, issued on February 24, 2021. D.E. 226. The R&R found the presence of clear and convincing evidence that Defendant "Kramer fabricated a written agreement that did not exist prior to this lawsuit, and initially tried to pass it off as legitimate." *Id*. at 15. The Sanctions Order issued on July 14, 2021. D.E. 252. It adopted the findings of the R&R that Kramer "knowingly fabricated a written document" and after BPI "identified suspicious circumstances relating to the fabricated document, Defendants sought to prevent discovery of their fraud." *Id*. at pp. 6, 8.

Following pre- and post-trial motion practice by the Defendants relating to this issue, an initial Notice of Appeal (citing the Sanctions Order) was filed on October 12, 2022. D.E. 420. A second Notice of Appeal was filed by Defendants on March 10, 2023 following the denial of a Rule 60 motion (which also challenged the Sanctions Order). D.E. 439.

Defendants filed their [Corrected] Opening Brief to the Federal Circuit on June 29, 2023. Motion, Exhibit 2. Defendants dedicated ten (10) pages of their appeal brief to challenging the sanctions, including the argument that "[t]he court's sanction decision rests on the erroneous conclusion that the license agreement was 'fabricated' 'for use in the Ligation' with the intent to

advance ThermoLife's claims or defenses." *Id.*, pp. 73-74. BPI filed its Responsive Brief on September 6, 2023. D.E. 469, Exhibit 2. BPI dedicated sixteen (16) pages to refuting Defendants' arguments, including defending this Court's ruling that Kramer fabricated the License Agreement in bad faith. *Id.*, pp. 26-36.

The Federal Circuit opinion issued on June 16, 2025. Motion, Exhibit 1. The Court expressly recognized Defendants' position that the Sanctions Order was based on an erroneous view of the evidence, including the specific argument that they did not fabricate the License Agreement for use in the litigation. *Id.*, p. 11. In response the Court held:

> ***But, even assuming Appellants did not fabricate the License Agreement, the district court rested its Sanctions Order on additional, sufficient findings***. The district court found that Appellants (1) withheld information surrounding the circumstances of the License Agreement until compelled to release this information and (2) attempted to prevent discovery of the circumstances surrounding the creation of the License Agreement. J.A. 16–17 (finding that Mr. Kramer "initially tried to pass" the License Agreement "off as legitimate to advance his case" and "impeded the presentation of [BPI's] case"); J.A. 17 ("During discovery, *after compelled to do so by the Court*, Defendants disclosed the metadata associated with the License Agreement[.]" (emphasis added)); *id.* (noting that Appellants "tried to prevent discovery of the circumstances surrounding the License Agreement" by offering to indemnify and hold MBN harmless if the court maintained the existing pretrial deadlines).

*Id*. Ultimately, travelling under an abuse of discretion standard, the Court held that the "findings are not clearly erroneous and are sufficient to support a bad faith determination." *Id*. The Court therefore found "***no error*** in the district court's sanction of attorneys' fees." *Id.* (emphasis added). In the Conclusion, the Court stated that "[w]e have considered the parties' remaining arguments and find them unpersuasive." *Id*. at 12. Accordingly, the Sanctions Order was affirmed in full. *Id.*; *see also*, Judgment dated June 16, 2025, D.E. 469, Exhibit 3 ("Sanctions Order Affirmed").

On July 30, 2025, Defendants filed a Combined Petition for Panel Rehearing and Hearing En Banc. Motion, Exhibit 4. In the Petition, Defendants advised the Federal Circuit that the decision should be "***corrected*** to hold that there was no clear and convincing evidence of a fabrication that amounted to a fraud on the court." *Id.*, p. 20. Defendants went so far as to provide a blackline version of the proposed amendment which read: "But, ~~even assuming~~ while we agree that Appellants did not fabricate the License Agreement…" *Id*. The Petition made no mention of the U.S. Supreme Court's decision in *United States v. Munsingwear*, 340 U.S. 36 (1950), much less the mootness doctrine. The Petition was denied on September 2, 2025. Motion, Exhibit 5.

On January 15, 2026, Defendants filed a Petition for a Writ of Certiorari. Motion, Exhibit 6. In its summary of the Federal Circuit's decision, Defendants falsely alleged that "the Court did not affirm any finding of evidence fabrication or any purported 'fraud on the court'[1]—both findings that were critical to the district court's inherent-powers invocation." *Id.*, p. 8. Defendants also asserted, for the first time, that "[t]he panel instead specifically 'assum[ed] [Defendants] did not fabricate the License Agreement.'" Defendants did not mention *Munsingwear* or mootness. The Cert Petition was denied on March 23, 2026. Motion, Exhibit 7. Defendants acknowledge that they "took all possible steps to appeal the findings in the Sanctions Order." Motion, p. 10.

**b. Defendants Deceptively Modified The Appellate Opinion**

Notwithstanding the background outlined above, the Motion represents to the Court:

> ***Additionally, the appeals court affirmed the Sanctions Order. In so doing, the Federal Circuit did not affirm that the License Agreement was fabricated. Instead, the Federal Circuit specifically "assum[ed]," presumably in Defendants' appeal, that Defendants "did not fabricate the License Agreement."***

Motion, p. 6 (emphasis added). This is a complete misrepresentation. The only way to reach these twisted conclusions is to truncate the actual sentence in the opinion and modify the phrase "even assuming" to "assum[ed]" in order to manufacture a declarative expression. Defendants were well aware that this is not how the passage read, much less what it meant, because they already tried to change the meaning through the proposed amendment: "But, ~~even assuming~~ while we agree that Appellants did not fabricate the License Agreement." Motion, Exhibit 4, p. 20.

Equally glaring is Defendants' misrepresentation that in *affirming* the Sanctions Order in which no clear error or abuse of discretion was identified the Federal Circuit (1) did not affirm the factual findings—*i.e.*, ***did find error*** by assuming the License Agreement was not fabricated; and (2) did so based on the alleged persuasiveness of Defendants' appellate brief (which contradicts the findings in the Sanctions Order). *Id.* The latter is being used to drive the egregiously false narrative that Defendants' arguments on appeal in connection with the License Agreement *were blessed by the Federal Circuit*, which in turn, requires dramatic vacatur of this Court's findings.

[1] Defendants' contention that the Federal Circuit did not affirm any "fraud on the court" cannot be reconciled with the Court's determination that the district court's findings are "sufficient to support a bad faith determination" in which the Court cited *Chambers*, 501 U.S. at 46 (noting that bad faith may exist where a "***fraud has been practiced upon [the court]***, or that the very temple of justice has been defiled"). Motion, Exhibit 1, p. 11.

The Motion also reads the manufactured sentence in the appellate opinion out of context. Defendants do not deny that the opinion refers to other bad faith actions, including: (1) Defendants withheld information surrounding the circumstances of the License Agreement until compelled to release this information; and (2) Defendants attempted to prevent discovery of the circumstances surrounding the creation of the License Agreement. Motion, p. 6 and Exhibit 1, p. 11. According to the Motion, such reliance further establishes that the Federal Circuit did not rest its finding on "evidence of fabrication," but rather "Defendants' actions in withholding and preventing discovery about the License Agreement"—*a/k/a* the ***cover-up***. However, the fabrication of the License Agreement and the cover up are not mutually exclusive since there would be no reason to withhold and prevent discovery of the License Agreement if it was authentic.

The next sentence in the opinion references aspects of the Sanctions Order detailing how Kramer "***initially tried to pass***" the License Agreement "***off as legitimate*** to advance his case." Motion, Exhibit 1, p. 11 (emphasis added). This is an implicit, if not express acknowledgement that the License Agreement ***was not legitimate***. The next sentence refers to another aspect of the cover-up, namely, how Defendants refused to produce the metadata associated with the License Agreement until "*compelled to do so by the Court*." *Id*. (emphasis in original). Again, the Federal Circuit would not have cited this finding if it was operating under the assumption that the metadata did not support a fabrication. Similar reasoning applies to efforts to "prevent discovery of the circumstances surrounding the License Agreement by offering to indemnify and hold MBN harmless if the court maintained the existing pretrial deadlines." *Id*. The opinion proceeds to cite *Chambers* for the proposition that "bad faith may exist where a 'fraud has been practiced upon [the court]…'" *Id*. If the Federal Circuit actually assumed, as the Motion contends, that the License Agreement was not fabricated, Defendants' withholding and prevention of discovery would not be characterized as bad faith, fraudulent behavior, much less an attempt to ***pass it off as legitimate***.

**c. The Motion Seeks To Strike Findings The Federal Circuit Relied On**

Because there is congruency between Defendants' fabrication of the License Agreement and the other findings relied on, Defendants' request for vacatur actually *encompasses* some of the findings the Federal Circuit held to be "not clearly erroneous" and "sufficient to support a bad faith determination." Motion, p. 15-16. This is shown in a chart juxtaposing Defendants' requests for vacatur with the portions of the opinion which Defendants do not dispute in Exhibit 2.

**B. The Legal Contentions Are Not Warranted by Existing Law**

**1. The Application Of The Mootness Doctrine Is Frivolous**

The Motion relies heavily on *Munsingwear* to allege that portions of the Sanctions Order were rendered moot under the false premise that the Federal Circuit "assumed Defendants did not fabricate the License Agreement." According to the Motion, "when a case or controversy becomes moot on appeal, 'the standard disposition in federal cases' is to 'vacate the judgement below and remand with a direction to dismiss.'" Motion, p. 7 (citing *Alvarez v. Smith*, 558 U.S. 87 (2009)). It is meritless to suggest that this precept applies, however, because there is no authority to support the absurd position that a constroversy because moot based on a misleading interpretation of both a crucial sentence in an appellate opinion and the appellate decision itself.

Rather, *Munsingwear* addresses what to do with a lower court decision when the case becomes moot while an appeal is pending before a higher court. *Munsingwear*, 340 U.S. at 36-41. In *Munsingwear*, the case was mooted because a regulated commodity was decontrolled. *Id*. The Supreme Court held that, where such intervening circumstances moot an issue and thus prevent appellate review of the underlying decision, the decision below should ordinarily be vacated. *Id*. This decision, as well as the related authority cited in the Motion, is grossly off-point because vacatur is only appropriate when a change in circumstances moots and issue ***while an appeal was pending***—separate and apart from the result of the appeal itself.[2] Here, there are no intervening circumstances that justify vacatur, or even make *Munsingwear* remotely applicable.

Defendants contend that portions of the Sanctions Order should be vacated because it should not have to "acquiesce" to a ruling that can no longer be challenged on appeal. Motion, p. 9 (citing *U.S. Bancorp*, 513 U.S. at 25). However, because the issue of fabrication was ***not mooted***, nothing evaded review, and such grounds cannot be used to justify vacatur. To the extent there is no longer any opportunity to appeal, it is not based on mootness, but the fact that Defendants' appeals have simply been exhausted. In summary, *Munsingwear* and its progeny are inapplicable because (i) the Sanctions Order is not pending on review; (ii) there have been no independent intervening circumstances; and (iii) appellate review has not been prevented.

---

[2] The inapplicability of the mootness cases cited in the Motion is addressed in D.E. 469, fn. 2.

**2. There Are No Legitimate Grounds To Invoke Rule 60(b)(6)**

The Motion concedes that relief under Rule 60(b)(6) is an "extraordinary remedy" and a movant must establish "extraordinary circumstances" warranting relief. Motion, p. 7 (citing *Arthur v. Thomas*, 739 F.3d 611 (11th Cir. 2014)); *BLOM Bank SAL v. Honickman*, 605 U.S. 204 (2025); *Klapprott v. United States*, 335 U.S. 601, 614-15 (1949)). The "justification for relief [must be] so compelling that the district court is ***required*** to grant the motion." *Id*. (citing *Cuffy v. Sec'y, Dep't of Corr.*, No. 18-62463-CIV, 2023 WL 5487500, at *1 (S.D. Fla. July 5, 2023) (quoting *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012)) (emphasis added). Given that Rule 60(b)(6) is such an extraordinary remedy mere "disagreement with the Court's ruling is an insufficient basis for reconsideration of a prior order." *Cuffy* at *1 (quoting *Martes v. Sacco*, 2011 WL 13272347, at *1 (S.D. Fla. Apr. 7, 2011)). A Rule 60(b)(6) motion is therefore "not a vehicle for rehashing arguments the Court has already rejected or for attempting to refute the basis of the Court's earlier decision." *Martes v. Sacco*, 2011 WL 13272347, at *1 (S.D. Fla. Apr. 7, 2011) (quoting *Lamar Advertising of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 490 (M.D. Fla. 1999)).

The Motion is just the latest in a series of failing attempts to challenge the Sanctions Order. These have included: Objections to the Report and Recommendation [D.E. 229, denied by issuance of Sanctions Order, D.E. 252]; Motion to Reconsider [D.E. 323, denied by trial initiation, D.E. 324]; Motion Under Rule 60(b) [D.E. 433, denied by Order, D.E. 438]; Opening and Reply Briefs of Appellants [D.E. 28 and 41, Sanctions Order Affirmed]; Petition for Panel Rehearing [D.E. 73, denied, D.E. 75]; Petition for *Writ of Certiorari* [D.E. 78, denied, D.E. 79].

Defendants' desperation in having the terms of the Sanctions Order revised has led to the advancement of untimely, *post-hoc* legal positions that lack any substantive merit. BPI is not aware of any precedent—nor does the Motion to provide any—for the proposition that language in an appellate opinion that has been deliberately modified and misinterpreted by a party constitutes "extraordinary circumstances" justifying the vacating of findings of a district court order under Rule 60(b)(6), particularly where the appellate decision *affirmed the order*. Despite the Motion's constant repetition that this invented situation presents a "classic example" of the type of dispute that is vacated under the mootness doctrine, the doctrine is inapplicable and an example cannot be "classic" if it never occurred previously and is wholly manufactured in bad faith. Defendants' assertion of the mootness doctrine based on a manufactured "assumption" violates Rule 11(b)(2).

**3. The Motion Is Untimely Under Fed.R.Civ.P. 60(c)**

Motions under Rule 60(b)(6) must be filed within a "reasonable time ... after the entry of the judgment or order." *Ramsey v. Walker*, 304 F. App'x 827, 828 (11th Cir. 2008) (quoting Fed.R.Civ.P. 60(c)(1)). Defendants seek relief from the Sanctions Order issued July 14, 2021. D.E. 252. Defendants already brought a motion under Rule 60(b) on October 25, 2022, asking this Court to vacate the same order. D.E. 433. The Court denied this motion as untimely because under Rule 60(c), "a motion under Rule 60(b) must be made within a reasonable time and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." D.E. 438. Under Rule 60(b)(1), the Court further found that "Defendants Motion is thus untimely: the portion of the Motion that seeks relief from the Court's July 14, 2021 Order is brought over a year after the entry of that Order." *Id*. Although Defendants are now moving under Rule 60(b)(6), the Motion has hardly been filed within a "reasonable time" because it has been over five (5) years since the entry of the Sanctions Order. Even if the relevant date is the issuance of the Federal Circuit opinion on June 16, 2025 (which Defendants contend caused the need for vacatur), the Motion was still filed over a year later.

Although the Motion alleges that the denial of its Petition for Certiorari is the triggering event under Rule 60(c), the petition is used both as a sword and a shield. Motion, p 16. One the one hand, Defendants allege that they had no choice but to wait for the Supreme Court's decision before filing its Motion. Motion, p. 16. Defendants went so far as to rely on the premise that "[w]hen seeking to vacate an earlier district court decision rendered moot by a later appeal, a party will be constrained by the time elapsed due to the time required for appellate review." Motion, p 17. On the other hand, Defendants allege that it "could not seek review of the evidence-fabrication issue" before the Supreme Court "because it was not decided by the Federal Circuit." Motion, p. 11. If Defendants truly believed it could not address the fabrication findings at the Supreme Court, there was no reason to delay seeking review by this Court. Defendants cannot have it both ways, but either way, they did not file the Motion within a reasonable time. Even assuming, *arguendo*, that the Petition for Certiorari was relevant to the issue of delay, Defendants still waited four months after the denial to file the Motion.

**C. The Motion Was Filed For An Improper Purpose**

Perhaps the height of irony is the portion of the Motion claiming that vacatur would resolve

unfairness, further justice and serve the public interest. Motion, p. 11-15. It is worth nothing that one or more of Defendants have been sanctioned and/or forced to pay attorneys' fees and costs in multiple lawsuits across the country. Nevertheless, the Motion, relying on the Kramer Declaration, complains about the damage to Defendants' reputation in new litigations. Motion, pp. 11-12 (citing Kramer Decl., ¶¶12, 25). The "unfairness" apparently stems from opposing parties "weaponizing" this Court's findings—which is to say they are simply repeating the truth of the findings. It is self-evident that Kramer's complaints about the Sanctions Order form an insufficient basis for vacatur under Rule 60(b)(6). Although the Motion claims that this Court's "fabricated evidence finding" is a "classic example of the type of dispute that is properly vacated upon the straightforward application of the *Munsingwear* doctrine," the doctrine was not designed to provide Defendants another bite at the apple because Kramer does not care for the "real world consequences."

The "interests of justice" do not "warrant limited vacatur," particularly when the only basis is that ThermoLife and Muscle Beach are ongoing businesses, have patents, hold licenses and offer apparel and accessories. Motion, pp. 14-15. To the extent the findings in the Sanctions Order have "imposed a cloud" over Defendants, it is their own behavior that is responsible for the bad weather. Nor would public interest be served by allowing Defendants' litigation behavior to be sanitized. Although the Motion concedes that "the public interest favors preservation of upheld judgments and findings," Defendants do not believe this precept applies to affirmed orders of this Court. *Id*.

What becomes increasingly clear from the arguments presented, Kramer's declaration, the false assumptions and the inapplicability of *Munsingwear*, is that the Motion was filed under Rule 60(b)(6) for an improper purpose. Kramer states the sanctions findings are troubling, detrimental and damaging to his businesses based on cases filed in 2024-2025; a post published in August, 2025; and a future trial. Kramer Decl., ¶¶5, 12-13, 23-26. The Motion was not pursued until over a year after the Federal Circuit opinion issued on June 16, 2025 and five months after the U.S. Supreme Court denied cert on March 23, 2026. It stands to reason that as the Sanctions Order was cited more frequently a retrofitted argument was created to attack its findings. This would explain the delay, the weak merits, the need to rewrite the appellate opinion and the "coincidence" that the most damaging findings are the same findings Defendants now claim are moot and require vacatur. Defendants' efforts to avoid the ***legitimate*** and foreseeable consequences of the Sanctions Order, regardless of the inaccuracy of factual representations, or legal arguments, violates Rule 11(b)(1).

**D. Defendants Pursued Meritless Litigation Strategies Here And Elsewhere**

"In determining whether a legal claim or factual contention is objectively frivolous for Rule 11 purposes, the Court may consider whether the litigant or his counsel has a history of bringing unmeritorious litigation." *Collar v. Abalux, Inc.*, 2018 WL 3328682, *14 (S.D. Fla. July 5, 2018) (citing *Bilal v. Driver*, 251 F.3d 1346, 1350 (11th Cir. 2001), *cert. denied*, 534 U.S. 1044 (2001) (noting that district court "was all too familiar with Plaintiff's repetitive and trifling litigation tactics")); *see also*, *Petrano v. Nationwide Mut. Fire Ins. Co.*, 2013 WL 1325201, at *6 (N.D. Fla. Feb. 4, 2013) (same). It is therefore appropriate to consider Defendants' prior litigations and their tactics, including other cases assessing sanctions or attorneys' fees and costs against Defendants.

The Court need only consider Defendants' bad faith behavior in this case to see a pattern. Defendants fabricated a document, then sought to prevent discovery of their fraud. D.E. 252, pp. 6, 8. Now Defendants are attempting to vacate these findings in the Sanctions Order on frivolous grounds. Such sanctionable conduct is not an isolated incident. ThermoLife is a notorious patent troll that pursues infringement litigation to either extract nuisance settlements or sell ingredients. Tr. 2, 61:13-16; D.E. 143, Exhibit 2 (*Lex Machina*); Tr. 2, 61:4-62:3. As established at trial in this case, ThermoLife once filed 135 cases based on a particular patent estate, 123 of which were initiated in a single year (2013). Tr. 4, 91:8-93:9; Trial Exhibit 39.

ThermoLife sued sixty (60) companies in the Southern District of California in a single suit, including BPI, only to have the district court invalidate the claims of four patents, enter judgment against ThermoLife and award attorneys' fees in the amount of over 1.3 million dollars. *ThermoLife Int'l, LLC v. Myogenix Corp.*, 2017 WL 1235766 (S.D. Cal. Apr. 4, 2017), *aff'd sub nom.*, *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347 (Fed. Cir. 2019); Tr. 4, 93:10-16; 99:20-100:13. In affirming an award of attorneys' fees, the Ninth Circuit noted the findings as follows:

> Plaintiffs' "prefiling investigation was severely lacking, thus resulting in ***frivolous claims*** and the ***objective unreasonableness*** of certain infringement contentions"; plaintiffs' "***motivation was seemingly to extract nuisance-value settlements from a large number of defendants***"; and "awarding fees here will advance compensation- and deterrence-oriented goals." *Id.* at *8. Under the totality of the circumstances, the court ruled, "this case is exceptional," justifying a fee award.

In 2018-2019, ThermoLife filed eight (8) lawsuits in the District of Arizona, all of which were dismissed on similar grounds. *ThermoLife Int'l, LLC v. BPI Sports, LLC*, 2026 WL 2409839, fn. 1 (9th Cir. Aug. 18, 2026) (listing cases). One of them was *ThermoLife Int'l LLC v. Am. Fitness*

*Wholesalers LLC*, 2019 WL 3840988 (D. Ariz. Aug. 15, 2019) in which ThermoLife was required to pay the attorneys' fees relating to defedant's second motion to dismiss. According to the Ninth Circuit, by failing to correct the deficiencies identified by the district court:

> ThermoLife proceeded unreasonably in the litigation by filing its Amended Complaint, and as the district court concluded, had no reasonable or legal basis to believe in success on the merits of its claims.

*ThermoLife Int'l, LLC v. Am. Fitness Wholesalers, L.L.C.*, 831 F. App'x 325, 326 (9th Cir. 2020).

Another case was against BPI, *ThermoLife International, LLC v. BPI Sports, LLC*, Case No. 2:18-cv-04663-PHX-SPL (D. Ariz.) ("Arizona Action"). The Arizona Action is significant because ThermoLife and Muscle Beach Nutrition subsequently filed *ThermoLife International, LLC, et al. v. BPI Sports, LLC*, Case No.: 0:20-cv-61373-RAR (S.D. Fla.) (J. Ruiz), [D.E. 1.]—which was the Arizona Action—in a blatant attempt to forum shop, avoid the negative result of *Am. Fitness*, and gain leverage in this case. After attempting to reassign the new filing to this Court, it was transferred back to Arizona, assigned Case No. CV-20-02091-PHX-SPL ("Second Arizona Action") and received the dismissal, with prejudice, it so richly deserved. D.E. 29, 47.

After the district court granted BPI's motion to dismiss the Second Arizona Action, BPI moved for attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a). In granting the motion, the district court determined the Arizona Cases were "exceptional" because ThermoLife engaged in strategic maneuvering that suggested forum shopping and asserted meritless claims against BPI. Second Arizona Action, D.E. 71. On August 18, 2026, the Ninth Circuit Court of Appeals affirmed. The Court cited the other frivolous lawsuits containing nearly identical allegations, noting the various dismissals, and characterized the district court's findings as follows:

> ThermoLife's claims were ***frivolous, vexatious, and unreasonable*** because ThermoLife had ***no reasonable or legal basis to believe that its claims would succeed***. The district court noted that its dismissal of ThermoLife's claims was "merely the latest in a series of decisions in this District—all occurring during the course of ThermoLife's litigation with BPI—dismissing unfair competition and false advertising claims brought by ThermoLife against other defendants for the exact same reason. The district court determined that "[t]here is a difference between a zealous and passionate pursuit of claims that a party reasonably believes have merit, and a vexatious and harassing pursuit of claims that a party has repeatedly filed against the same types of defendants only to see those claims repeatedly dismissed for having the same deficiencies."

*ThermoLife Int'l, LLC v. BPI Sports, LLC*, 2026 WL 2409839, *8 (9th Cir. Aug. 18, 2026) (emphasis added). In affirming the district court's award in the amount of $454,339, the Ninth

Circuit concluded that ThermoLife's persistence in litigating its claims against BPI in light of repeated dismissals of the same claims "***illustrated a pattern of pursuing a meritless litigation strategy***." *Id*. at *4-5 (emphasis added).

**E. Relief Against All Parties And Counsel Relating To The Motion**

The Motion is meritless and further illustrates a continued pattern of bad faith litigation strategy. Sanctions are warranted under Rule 11, 28 U.S.C § 1927 and the Court's inherent powers.

**1. Rule 11**

With respect to Rule 11, the Motion is objectively frivolous and the individuals who signed the associated documents were aware the grounds were frivolous. Attorney Edward M. Mullins of Reed Smith LLP signed the Motion and filed it with the Court using CM/ECF system. Motion, p. 18. Mr. Mullins has been counsel of record in the case since February 22, 2020, signed the first Rule 60 motion [D.E. 433] and handled the argument during the hearing on BPI's motion for sanctions before Judge Valle. D.E. 192. Attorneys Matthew J. Dowd and Robert J. Scheffel of the law firm Dowd Scheffel PLLC appear on the signature block and have been counsel of record since July 19, 2021 (five days after entry of the Sanctions Order). *Id*., p. 19. Mr. Dowd signed both the Certification detailing the meet and confer with BPI's counsel and a personal Declaration submitted "in support of" and "in connection with" the Motion. D.E. 462-2 ("Dowd Decl."), caption and ¶2. Mr. Dowd further submitted the Federal Circuit opinion in *BPI Sports, LLC v. ThermoLife International, LLC*, 2025 WL 1683234 (Fed. Cir. June 16, 2025) which he argued on behalf of Defendants before the Federal Circuit. Dowd Decl., ¶3 (citing Exhibit 1, *see* cover page). Mr. Dowd also served as counsel to ThermoLife and Muscle Beach Nutrition in the Second Arizona Action where he signed the oppositions to BPI's attorneys' fees motion and the accounting thereof. Second Arizona Action. D.E. 67, 73. Mr. Dowd was also responsible for the appeal to the Ninth Circuit which held that ThermoLife's claims were frivolous, vexatious and unreasonable. *ThermoLife Int'l, LLC v. BPI Sports, LLC*, 2026 WL 2409839, *8 (9th Cir. Aug. 18, 2026).

The Kramer Declaration is also subject to Rule 11 and clearly violated it. "Rule 11 applies to all papers filed in a suit." *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1421 (11th Cir. 1996); Rule 11(c)(1) ("the court may impose an appropriate sanction on any attorney, law firm, ***or party*** that violated the rule or is responsible for the violation") (emphasis added); *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533 (1991) (paper signed by represented

party satisfies the certification requirement); *Johnson v. 27th Avenue Caraf, Inc.*, 9 F.4th 1300, 1315 (11th Cir. 2021) (not improper for the district court to impose Rule 11 sanctions against plaintiff merely because he was the client and not the attorney).

Kramer provides the improper purpose for filing the Motion in violation of Rule 11(b)(1) and sponsored the false premise in violation of Rule 11(b)(3). Although sanctions are not available against him under Rule 11(b)(2), he advances the frivolous position that the findings of license fabrication in the Sanctions Order are "moot" based on a *factual* misinterpretation of the Federal Circuit opinion. Kramer Decl., ¶3. He claims "the appeals court did not rely on the findings when affirming the sanctions decision" while alleging he is "unable to challenge those findings." *Id*., ¶4. Finally, he attempts to escape personal liability by claiming that the "Federal Circuit affirmed only the bases of disputes about producing requested discovery" which were "controlled by counsel." *Id*., ¶24. Where a party such as Kramer knowingly makes factual misrepresentations, or serves as the "mastermind" behind frivolous positions, sanctions against the parties are appropriate. *Johnson* at 1315 (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1118 (11th Cir. 2001)), *abrogated on other grounds*, recognized by *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 fn. 10 (11th Cir. 2018).[3]

The Court has discretion to impose sanctions and determine the appropriate type. Fed. R. Civ. P. 11(c)(1); *see also*, Rule 11, Advisory Committee Note, 1993 Amendment. Clearly, the prior sanctions imposed, both here and elsewhere, have not served as an adequate deterrent for Defendants. Thus, BPI requests relief under Rule 11(c)(4) in the form of: (1) attorneys' fees and costs incurred by BPI since the entry of the Sanctions Order, or in the alternative, those associated with Defendants' challenges to the Sanctions Order; (2) a penalty paid to the Court in an amount to be determined; (3) terminating sanctions to dismiss Defendants' pending motions and preclude further filings; (4) revocation of the *pro hac vice* admissions of Mr. Dowd and Mr. Scheffel; and (5) attorneys' fees and costs associated with the preparation and filing of the instant motion.[4]

---

[3] Kramer excelled at both. He serves as the President, Chief Executive Officer and standard bearer for ThermoLife. Kramer Decl., ¶1. The never-say-die approach, regardless of the factual or legal circumstances, is personified by his catch phrase: "ThermoLife or death. We play for keeps." Tr., 4:99:8-10. Kramer is the only motivating force behind ThermoLife's meritless litigation activities, which includes weaponizing the court system and using public threats, intimidation and ridicule as tactics. D.E. 143, Motion for Sanctions, pp. 2-3 and footnotes. 2, 3 (Exhibit 2) and 22.

[4] *In Re: Brican America LLC*, 2012 WL 12864984, *2 (S.D. Florida, March 29, 2012) ("After reviewing these materials and speaking with Magistrate Judge Simonton, the Court informed

**2. 28 U.S.C § 1927**

Section 1927's purpose is to deter frivolous litigation and abusive practices by attorneys. *Roadway Express v. Piper*, 447 U.S. 752, 762 (1980). To impose sanctions under this statute: (1) the attorney must engage in unreasonable and vexatious conduct; (2) that conduct must multiply the proceedings; and (3) the amount of the sanction must bear a "financial nexus to the excess proceedings." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). Conditions (1) and (2) are met based on the reasons set forth above. With respect to (3), BPI respectfully requests, at a minimum, an award of attorneys' fees and costs associated with the defense of the Motion.

**3. The Court's Inherent Powers**

Courts have inherent power to levy sanctions against litigants for abuse of the judicial system even if procedural rules also exist that sanction the same conduct. *Chambers*, 501 U.S. at 49. When considering sanctions, a district court may consider all of the circumstances surrounding the violation, including parties' misconduct in related cases. *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1417-18 (5th Cir. 1994). To the extent the Court declines to award any of the relief outlined above under the identified rules, BPI respectfully requests that the relief be granted under the Court's inherent powers.

**F. Request For Deferral Of The Amount Of Attorneys' Fees And Costs**

BPI requests deferral until after the Court has ruled on BPI's entitlement to relief regarding this motion for BPI to apply for a particular amount. Fed.R. Civ.P. 54(d)(2)(B) (allows for a court to consider local rules and alter time for the filing of fees); S.D. Fla. L.R. 7.3(a) (mechanism for disputes relating to fees and costs). The parties can better prepare the records in support of any requested amount and/or narrow the application following a ruling by the Court.

## IV. CONCLUSION

In view of the foregoing, BPI requests that the motion for sanctions be granted.

---

counsel that the conduct engaged in by counsel…was unacceptable, dishonest and so lacking in professionalism that a real question has been raised whether counsel should be permanently barred from appearing before the District Court for the Southern District of Florida.").

October 7, 2026

Respectfully submitted,

*Gregory L. Hillyer*
HILLYER LEGAL, PLLC
Gregory L. Hillyer
Fla. Bar No. 682489
Email: ghillyer@hillyerlegal.com
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015-2052
Telephone: 202-686-2884
Facsimile: 202-686-2877

*Attorneys for Plaintiff BPI Sports, LLC*

**CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that pursuant to Federal Rule of Civil Procedure 11(c)(2), a copy of this Motion was served on counsel for Defendants, Matthew J. Dowd and Edward M. Mullins, via email on September 11, 2026. Two minor revisions were made on page fourteen of the filed version to address inadvertent counting errors (six (6) to five (5) and five to four). A copy of the cover letter accompanying the Motion is attached hereto as Exhibit 3. The Motion to Vacate [D.E. 462] was not withdrawn within twenty-one (21) days of service.

*s/ Gregory L. Hillyer*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of this Motion was served on counsel filed via CM/ECF on October 7, 2026 and served on counsel of record.

*s/ Gregory L. Hillyer*