**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| BPI SPORTS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>THERMOLIFE INTERNATIONAL, LLC,<br>MUSCLE BEACH NUTRITION, LLC,<br>and<br>RONALD L. KRAMER.<br><br>*Defendants*. | **CASE NO. 0:19-cv-60505-SMITH** |

**DEFENDANTS THERMOLIFE INTERNATIONAL, LLC'S, MUSCLE BEACH NUTRITION'S AND RONALD L. KRAMER'S OPPOSITION TO BPI SPORTS' MOTION FOR SANCTIONS**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

TABLE OF EXHIBITS ........ vii

I. Introduction ........ 1

II. Relevant Factual and Procedural Background ........ 2

- A. The Narrow Sanctions Affirmance and Defendants' *Munsingwear* Motion ........ 2
- B. BPI Serves a Sanctions Motion that Rehashes Its *Munsingwear* Opposition ........ 2
- C. Defendants Serve Their Thirty-Page Letter Explaining Why BPI's Draft Sanctions Motion is Meritless ........ 3
- D. BPI Files Its Sanctions Motion without Addressing a Single Point Raised in Defendants' Letter ........ 4

III. Argument ........ 4

- A. Applicable Legal Standards ........ 4
- B. BPI's Decision to Withhold Defendants' Thirty-Page Letter from the Court's Attention is, at a Minimum, Reason Enough to Deny BPI's Sanctions Motion ........ 6
- C. The *Munsingwear* Motion Does Not Violate Rule 11(b)(1) ........ 7
- D. The *Munsingwear* Motion Does Not Violate Rule 11(b)(3) ........ 10
  1. BPI cites no cases that foreclose Defendants' *Munsingwear* motion ........ 10
  2. BPI's Rule 11 motion is largely a rehash of its opposition ........ 11
  3. BPI misunderstands the "even assuming" phrase ........ 12
  4. Rule 60(b)(6) is the proper avenue for seeking *Munsingwear* relief ........ 13
  5. BPI does not address whether the *Munsingwear* motion is a nonfrivolous request to extend the law ........ 14
- E. The Motion for Sanctions Under 28 U.S.C. § 1927 is Meritless ........ 15
- F. The Motion for Sanctions Under Inherent Authority is Meritless ........ 15
- G. BPI's Pattern of Conduct Raises Questions About BPI's Motivation ........ 16
- H. BPI's Demanded Relief is Frivolous ........ 18

IV. Fees for Opposing the Sanctions Motion ........ 19

V. Request for Hearing ........ 20

VI. Conclusion ........ 20

## TABLE OF AUTHORITIES

### Cases

*American Games, Inc. v. Trade Products, Inc.*,
142 F.3d 1164 (9th Cir. 1998) .......... 13

*Amlong & Amlong, P.A. v. Denny's, Inc.*,
500 F.3d 1230 (11th Cir. 2007) .......... 5

*Anderson v. Smithfield Foods, Inc.*,
353 F.3d 912 (11th Cir. 2003) .......... 11

*Arch Insurance Co. v. A3 Development, LLC*,
No. 23-23524-CIV, 2024 WL 4564769 (S.D. Fla. Aug. 19, 2024) .......... 5, 10

*Avirgan v. Hull*,
932 F.2d 1572 (11th Cir. 1991) .......... 5

*Baker v. Alderman*,
158 F.3d 516 (11th Cir. 1998) .......... 5

*Barnes v. Dalton*,
158 F.3d 1212 (11th Cir. 1998) .......... 5

*BPI Sports, LLC v. ThermoLife International, LLC*,
Nos. 2023-1068, -1112, -1625, 2025 WL 1683234 (Fed. Cir. June 16, 2025) .......... 1, 2

*Byrne v. Nezhat*,
261 F.3d 1075 (11th Cir. 2001) .......... 6

*Carr v. Tillery*,
591 F.3d 909 (7th Cir. 2010) .......... 7

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .......... 5

*City of Riviera Beach v. Lozman*,
672 F. App'x 892 (11th Cir. 2016) .......... 11

*Coats v. Pierre*,
890 F.2d 728 (5th Cir. 1990) .......... 8

*Cohen v. Virginia Electric & Power Co.*,
788 F.2d 247 (4th Cir. 1986) .......... 9

*Collins v. Daniels*,
916 F.3d 1302 (10th Cir. 2019) .......... 14

*Crocs, Inc. v. Effervescent, Inc.*,
278 F. Supp. 3d 1182 (D. Colo. 2017) ..... 14

*Davis v. Carl*,
906 F.2d 533 (11th Cir. 1990) ..... 12, 14

*Doe v. Martucci*,
No. 20-CV-02331 (PMH), 2024 WL 5118505 (S.D.N.Y. Dec. 16, 2024) ..... 10

*Emergency Recovery, Inc. v. Hufnagle*,
No. 8:19-CV-329-T-24JSS, 2019 WL 9089594 (M.D. Fla. June 12, 2019) ..... 5, 20

*General Trading Inc. v. Yale Materials Handling Corp.*,
119 F.3d 1485 (11th Cir. 1997) ..... 8

*Global Van Lines, Inc. v. Global Van Lines, Inc.*,
No. 05-61410 CIV, 2006 WL 8431578 (S.D. Fla. June 6, 2006) ..... 18

*Golden Eagle Distributing Corp. v. Burroughs Corp.*,
801 F.2d 1531 (9th Cir. 1986) ..... 15

*Green Development Corp. S.A. de C.V. v. Zamora*,
No. 15-21594-MC, 2016 WL 2745844 (S.D. Fla. May 10, 2016) ..... 6

*Gulisano v. Burlington, Inc.*,
34 F.4th 935 (11th Cir. 2022) ..... 5

*Hyde v. Irish*,
962 F.3d 1306 (11th Cir. 2020) ..... 20

*In re Kunstler*,
914 F.2d 505 (4th Cir. 1990) ..... 8, 9

*Industrial Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*,
141 F.3d 1434 (11th Cir. 1998) ..... 7

*Jennings v. Stephens*,
574 U.S. 271 (2015) ..... 7

*Johnson v. 27th Avenue Caraf, Inc.*,
9 F.4th 1300 (11th Cir. 2021) ..... 5, 19

*Jones v. International Riding Helmets, Ltd.*,
49 F.3d 692 (11th Cir. 1995) ..... 8

*Jorgenson v. County of Volusia*,
846 F.2d 1350 (11th Cir. 1988) ..... 7

*Kara Holding Corp. v. Getty Petroleum Marketing, Inc.*,
No. 99 Civ. 0275 (RWS), 2004 WL 1811427 (S.D.N.Y. Aug. 12, 2004)................................ 11

*Lima v. Deutsche Bank National Trust Co.*,
No. CV 12-00509 SOM-RLP, 2013 WL 12142572 (D. Haw. July 29, 2013) ......................... 10

*Malgeri v. Vitamins Because LLC*,
No. 19-22702-CIV, 2022 WL 17593133 (S.D. Fla. Sept. 30, 2022)....................................... 12

*MSPA Claims 1, LLC v. Liberty Mutual Fire Insurance Co.*,
No. 17-22539-CV, 2025 WL 643208 (S.D. Fla. Feb. 25, 2025),
sanctions affirmed in part, 2025 WL 2800463 (S.D. Fla. Sept. 26, 2025) ................................. 4

*On Time Aviation, Inc. v. Bombardier Capital Inc.*,
570 F. Supp. 2d 328 (D. Conn. 2008)........................................................................................ 10

*Operating Engineers Pension Trust v. A-C Co.*,
859 F.2d 1336 (9th Cir. 1988) .................................................................................................. 14

*Parnell v. Florida Department of Corrections*,
181 F.4th 1209 (11th Cir. 2026) ................................................................................................. 4

*Peer v. Lewis*,
606 F.3d 1306 (11th Cir. 2010) ............................................................................................. 5, 8

*Pelletier v. Zweifel*,
921 F.2d 1465 (11th Cir. 1991) ............................................................................................. 7, 8

*Pierce v. Commercial Warehouse*,
142 F.R.D. 687 (M.D. Fla. 1992) ........................................................................................... 6, 7

*Plantation Open MRI, LLC v. Infinity Auto Insurance Co.*,
818 F. App'x 891 (11th Cir. 2020) ............................................................................................ 18

*Predator International, Inc. v. Gamo Outdoor USA, Inc.*,
793 F.3d 1177 (10th Cir. 2015) ................................................................................................ 15

*Smith v. Psychiatric Solutions, Inc.*,
750 F.3d 1253 (11th Cir. 2014) ................................................................................................ 19

*Spolter v. Suntrust Bank*,
403 F. App'x 387 (11th Cir. 2010) .............................................................................................. 8

*Squitieri v. Nocco*,
No. 8:19-cv-0906-KKM-AAS, 2022 WL 1136885 (M.D. Fla. Apr. 18, 2022) ........................ 8

*Thompson v. RelationServe Media, Inc.*,
610 F.3d 628 (11th Cir. 2010) ................................................................................................ 7, 8

*Townsend v. Holman Consulting Corp.*,
929 F.2d 1358 (9th Cir. 1990) (en banc) .......... 8

*Townsend v. McDonnell*,
No. CV1810011PSGJCX, 2020 WL 13582792 (C.D. Cal. June 30, 2020) .......... 14

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*,
513 U.S. 18 (1994) .......... 13

*United States v. Munsingwear, Inc.*,
340 U.S. 36 (1950) .......... *passim*

*Valero Terrestrial Corp. v. Paige*,
211 F.3d 112 (4th Cir. 2000) .......... 13

*Vanliner Insurance Co. v. DerMargosian*,
No. 3:12-CV-5074-D, 2014 WL 1632181 (N.D. Tex. Apr. 24, 2014) .......... 20

*Whitehead v. Food Max of Mississippi, Inc.*,
332 F.3d 796 (5th Cir. 2003) .......... 8

*Wendelberger v. Deutsche Lufthansa AG*,
No. 18-CV-01055-PJH, 2018 WL 2387858 (N.D. Cal. May 25, 2018) .......... 15

*Zinman v. L.A. Fitness International LLC*,
No. 21-CV-20315, 2021 WL 2530271 (S.D. Fla. June 21, 2021) .......... 18

**Statutes**

28 U.S.C. § 1927 .......... 3, 5, 15, 20

**Rules**

Federal Rule of Bankruptcy Procedure 9011 .......... 8

Federal Rule of Civil Procedure 11 .......... *passim*

Federal Rule of Civil Procedure 11(b)(1) .......... 7, 8, 9

Federal Rule of Civil Procedure 11(b)(2) .......... 3, 19

Federal Rule of Civil Procedure 11(b)(3) .......... 10, 14

Federal Rule of Civil Procedure 11(c)(2) .......... 19, 20

Federal Rule of Civil Procedure 11(c)(4) .......... 18, 19

Federal Rule of Civil Procedure 11(c)(5)(A) .......... 19

Federal Rule of Civil Procedure 30(b)(6) ........................................................................ 16

Federal Rule of Civil Procedure 60 .................................................................. 2, 10, 11, 14

Federal Rule of Civil Procedure 60(b)........................................................................ 3, 13

Federal Rule of Civil Procedure 60(b)(6) ........................................................... 1, 2, 3, 13

Florida Rule of Professional Conduct 4-3.3(a)(1) ........................................................... 6

Florida Rule of Professional Conduct 4-3.3(a)(3) ........................................................... 6

Model Rule of Professional Conduct 3.3(a)(2)................................................................. 7

**Other Authorities**

Federal Rule of Civil Procedure 11 advisory committee's note to the 1993 amendment .. 7, 12, 18

Rules Regulating the Florida Bar, Rule 4-3.3 comment (2026) .................................................. 6

## TABLE OF EXHIBITS[1]

| Exhibit # | Description |
|---|---|
| 1 | Defendants' Rule 11 Response Letter (Oct. 2, 2026) |
| 2 | Excerpts of Transcript of the Deposition of Derek Ettinger (Apr. 24, 2020) |
| 3 | Excerpts of Transcript of Trial Day One (Oct. 15, 2021) (D.E. 355) |
| 4 | Excerpts of Redacted Transcript of Trial Day Four (Oct. 20, 2021) (D.E. 358) |
| 5 | Excerpts of Trial Transcript (Nov. 13, 2025), *United States v. Wheat*, Criminal Action No. 1:17-CR-0229-AT-1 (N.D. Ga. filed Mar. 17, 2026) (D.E. 867) |
| 6 | *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, No. 17-22539-CV, 2025 WL 643208 (S.D. Fla. Feb. 25, 2025) |
| 7 | *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, No. 17-22539-CV, 2025 WL 2800463 (S.D. Fla. Sept. 26, 2025) |
| 8 | Search History, Westlaw (accessed Oct. 19, 2026) |
| 9 | Search Results, Google (accessed Oct. 20, 2026) |
| 10 | Patent Trolls, Electronic Frontier Foundation (accessed Oct. 20, 2026) https://www.eff.org/issues/resources-patent-troll-victims |
| 11 | Home Page, ThermoLife (accessed Oct. 20, 2026), https://www.thermolife.com/ |
| 12 | Official Form 204, *In re BPI Sports, LLC*, No. 23-17463-SMG (Bankr. S.D. Fla. filed Sept. 18, 2023) (D.E. 3) |
| 13 | Table of Inconsistencies in Derek Ettinger's Testimony (D.E. 454-4). |
| 14 | Firm Biography of Matthew J. Dowd, Dowd Scheffel PLLC (accessed Oct. 21, 2026), https://www.dowdscheffel.com/matthew-j-dowd |

[1] For evidence that was previously presented to the Court and is in the record, the present motion largely cites the relevant docket entries. If helpful to the Court, Defendants can refile the cited documents.

| | |
|---|---|
| 15 | Firm Biography of Robert J. Scheffel, Dowd Scheffel PLLC (accessed Oct. 21, 2026), https://www.dowdscheffel.com/robert-j-scheffel |
| 16 | Firm Biography of Ed Mullins, Reed Smith LLP (accessed Oct. 21, 2026), https://www.reedsmith.com/our-people/ed-mullins/ |
| 17 | Adobe Acrobat Compare Report for D.E. 469 and D.E. 473 |
| 18 | Email from G. Hillyer (June 24, 2026) |
| **Exhibits Cited from this Case's Docket** | |
| D.E.196 | Plaintiff BPI Sports, LLC'S Opposition to Defendants' Motion For Summary Judgment |
| D.E.260 | Motion Requesting Permission to Present the Trial Testimony of Dr. Steve Bannister Remotely by Video Conference (Aug. 3, 2021) |
| D.E.263 | Defendant's Opposition to Plaintiff's Motion to Present Remote Trial Testimony [D.E. 260] (Aug. 5, 2021) |
| D.E.265 | Reply in Support of Motion Requesting Permission to Present the Trial Testimony of Dr. Steve Bannister Remotely by Video Conference (Aug. 8, 2021) |
| D.E.272 | PAPERLESS ORDER Consistent with the Court's Orders issued during the telephonic hearing held on August 10, 2021 (Aug. 11, 2021) |
| D.E.277 | Motion for Updated Financial Production from Muscle Beach Nutrition LLC and ThermoLife International, LLC (Aug. 19, 2021) |
| D.E.295 | Defendant's Motion to Compel Plaintiff's Counsel to Meet and Confer (Oct. 4, 2021) |
| D.E.304 | PAPERLESS ORDER Consistent with the Courts orders issued during Calendar Call on October 5, 2021(Oct. 6, 2021) |
| D.E.321 | Defendant's Motion to Compel BPI Sports, LLC to Make Its Chairman, Derek Ettinger, Available to Testify at Trial, or in the Alternative to Preclude BPI Testimony on Information Identified Only for Mr. Ettinger (Oct. 14, 2021) |
| D.E.321-1 | Exhibit 1 – BPI Sports, LLC's Rule 26(a)(1) Initial Disclosures (Oct. 14, 2021) |

| | |
|---|---|
| D.E.321-12 | [Proposed] Order Granting Defendant's Motion to Compel BPI Sports, LLC to Make Its Chairman, Derek Ettinger, Available to Testify at Trial (Oct. 14, 2021) |
| D.E.361 | Defendants ThermoLife International, LLC's, Muscle Beach Nutrition's and Ronald L. Kramer's Renewed Motion for Judgement as a Matter of Law Under Rule 50(b) (Nov. 22, 2021) |
| D.E.364 | Defendants' Unopposed Motion for Leave to File Renewed Motion for Judgement as a Matter of Law Under Seal (Nov. 29, 2021) |
| D.E.386 | Plaintiff BPI Sports, LLC's Motion for Attorneys' Fees (Dec. 23, 2021) |
| D.E.423 | Plaintiff BPI Sports, LLC's Motion for Attorneys' Fees (Oct. 20, 2022) |
| D.E.433 | Defendants ThermoLife International, LLC's Muscle Beach Nutrition's and Ronald L. Kramer's Motion for Relief Under Rule 60(b) (Oct. 25, 2022) |
| D.E.448 | Defendants ThermoLife International, LLC's, Muscle Beach Nutrition, LLC's and Ronald L. Kramer's Second Renewed Motion for Attorney's Fees and Sanctions (Sept. 23, 2025) |
| D.E.448-2 | Exhibits 21–47 from Defendants ThermoLife International, LLC's, Muscle Beach Nutrition, LLC's and Ronald L. Kramer's Second Renewed Motion for Attorney's Fees and Sanctions (Sept. 23, 2025) |
| D.E.448-6 | Exhibit 102–110 from Defendants ThermoLife International, LLC's, Muscle Beach Nutrition, LLC's and Ronald L. Kramer's Second Renewed Motion for Attorney's Fees and Sanctions (Sept. 23, 2025) |
| D.E.452-10 | Exhibit 86–90 from BPI Sports, LLC's Opposition To Defendants' Second Renewed Motion For Attorneys' Fees And Sanctions (Oct. 10, 2025) |
| D.E.454 | Defendants ThermoLife International, LLC's, Muscle Beach Nutrition, LLC's and Ronald L. Kramer's Reply in Support of Their Second Renewed Motion for Attorney's Fees and Sanctions (Oct. 14, 2025) |
| D.E.462 | Defendants ThermoLife International, LLC's Muscle Beach Nutrition's and Ronald L. Kramer's Motion Under Rule 60(b)(6) to Vacate Portions of Order of July 14, 2021 (July 31, 2026) |

| | |
|---|---|
| D.E.462-1 | Declaration of Ronald Kramer in Support of Motion Under Rule 60(b)(6) to Vacate Portions of the Order of July 14, 2021 (July 31, 2026) |
| D.E.465 | PAPERLESS ORDER denying without prejudice 448 Motion for Attorney Fees (Aug. 10, 2026) |
| D.E.469 | BPI Sports, LLC's Opposition to Defendants' Motion Under Rule 60(b)(6) (Aug. 28, 2026) |
| D.E.472 | Defendants ThermoLife International, LLC's, Muscle Beach Nutrition, LLC's and Ronald L. Kramer's Reply in Support of Their Motion Under Rule 60(b)(6) to Vacate Portions of Order of July 14, 2021 (Sept. 28, 2026) |
| D.E.472-1 | Exhibit 2 (Sept. 28, 2026) |
| D.E.473 | BPI Sports, LLC'S Motion for Sanctions (Oct. 7, 2026) |

Defendants ThermoLife International, LLC ("ThermoLife"), Muscle Beach Nutrition LLC ("MBN"), and Ronald L. Kramer (collectively "Defendants") file this Opposition to BPI Sports, LLC's Motion for Sanctions (D.E. 473).

## I. Introduction

After years of litigation and a lengthy appeal, Defendants established what they repeatedly told BPI years ago: BPI's suit was meritless. *E.g.*, D.E. 361 at 15 ("Because this evidence is undisputed, no reasonable jury could find that the CRTN-3 advertising about 'increase vasodilation' was literally false."); Ex. 3 at 29 ("BPI's evidence also establishes that the CRTN-3's 'increase vasodilation' statement is true and not literally false."). The Federal Circuit held, based on "BPI's own evidence," that "no reasonable jury could have concluded that CRTN-3's statement of 'increase vasodilation' was literally false." *BPI Sports, LLC v. ThermoLife Int'l, LLC*, Nos. 2023-1068, -1625, -1112, 2025 WL 1683234, at *4 (Fed. Cir. June 16, 2025). Accordingly, Defendants have fully prevailed. Having lost its case on the merits, BPI now has filed a completely meritless motion for sanctions against a single motion upon which the Court has not yet addressed and that is a completely reasonable motion that is not negated by the facts or the law.

There were two issues left. One is the motion for fees that Defendants intend to refile once the *Munsingwear* motion is resolved. *See* D.E. 465 (denying fees without prejudice and instruction to file 30 days after the *Munsingwear* motion is resolved). The second is the *Munsingwear* motion itself. The Federal Circuit affirmed the sanctions order, but on much narrower grounds than the district court's ruling. Specifically, the Federal Circuit did not affirm the finding that Mr. Kramer fabricated evidence. The court's ruling used common phrasing, *i.e.*, "even assuming," indicating that holding was not predicated on the underlying fabrication finding.

Given the narrow affirmance, Defendants undertook an entirely reasonable step of seeking narrow relief pursuant to Rule 60(b)(6) by asking the Court to vacate the limited findings about the alleged License Agreement fabrication. D.E. 462. Defendants' request leaves BPI's monetary-sanctions award intact and seeks only equitable relief from findings that the Federal Circuit did not adopt. BPI thus would not be prejudiced if the Rule 60(b)(6) motion were granted.

BPI has now added a third, unnecessary issue by filing an unwarranted sanctions motion. BPI uses its sanctions motion as an improper vehicle to reargue its *Munsingwear* opposition. That is not a proper purpose under Rule 11. Moreover, it filed its sanctions motion without addressing a single point in Defendants' thirty-page letter responding to BPI's draft sanctions motion. Worse

yet, BPI chose not to disclose Defendants' detailed letter to the Court when it filed the sanctions motion, yet it inexplicably demands attorney's fees going back to 2021 and other sweeping sanctions—merely because of Defendants' narrow request for equitable relief that BPI does not deny will not result in any prejudice to BPI. For these and other reasons, the sanctions motion should be denied.

## II. Relevant Factual and Procedural Background

The facts and history of this case have been summarized elsewhere. *See, e.g.,* D.E. 364; D.E. 433; D.E. 448. BPI's sanctions motion stems from Defendants' Rule 60 *Munsingwear* motion, which also sets forth relevant facts.

### A. The Narrow Sanctions Affirmance and Defendants' *Munsingwear* Motion

On June 16, 2025, the Federal Circuit reversed the judgment on BPI's false-advertising and unfair-competition claims, making Defendants the prevailing party on all issues. *BPI Sports,* 2025 WL 1683234, at *3–4. Addressing sanctions, the court stated: "But, *even assuming* Appellants did not fabricate the License Agreement, the district court rested its Sanctions Order on additional, sufficient findings." *Id.* at *5 (emphasis added). Accordingly, without deciding whether Defendants fabricated evidence, the Federal Circuit upheld the sanctions based on discovery tactics employed by Defendants' prior counsel Gregory Collins.

On July 31, 2026, after the Supreme Court denied certiorari, Defendants filed a Rule 60 motion seeking limited vacatur of the sanctions decision through application of the *Munsingwear* doctrine. D.E. 462 at 6. The motion expressly states: "To be clear, Defendants do not seek to vacate or modify the sanction imposed against Defendants, including the monetary sanctions." *Id.* at 1. Instead, Defendants requested vacatur of specific subsidiary findings concerning the purported fabrication of the License Agreement, explaining that those findings did not receive a merits determination on appeal but continue to be invoked against Defendants in unrelated litigation and public commentary. *Id.* at 11–16.

### B. BPI Serves a Draft Sanctions Motion that Rehashes Its *Munsingwear* Opposition

On August 28, BPI filed a twenty-page opposition that contained a panoply of contentions, arguing that Defendants misrepresented the record and appellate opinion, improperly invoked *Munsingwear* and Rule 60(b)(6), and filed an untimely motion for an improper purpose. D.E. 469. BPI's draft motion failed, however, to cite any authority in support that *Munsingwear* did not apply. Then, before Defendants' *Munsingwear* reply, on September 11, 2026, BPI served its draft

sanctions motion and demanded withdrawal of the *Munsingwear* motion. D.E. 472-1. The draft motion recast BPI's *Munsingwear* opposition as supposed grounds for sanctions under Rule 11, § 1927, and the Court's inherent authority. D.E. 472-1 at 1–3, 7–15. About half of BPI's draft sanctions motion was copied verbatim from its *Munsingwear* opposition.

### C. Defendants Serve Their Thirty-Page Letter Explaining Why BPI's Draft Sanctions Motion is Meritless

On October 2, Defendants responded to BPI's draft sanctions motion with a thirty-page letter (including the attachment) explaining why every point in BPI's draft sanctions motion was meritless. Ex. 1. Defendants explained that BPI's interpretation of "even assuming" was incorrect because "[t]he phrase is an oft-used indicator that the court is not deciding the issue that follows the phrase." *Id.* at 7. Defendants cited numerous Supreme Court and appellate cases demonstrating that usage. *Id.* Defendants also cited Supreme Court and appellate authority refuting BPI's argument about Rule 60(b) as a procedural vehicle for equitable vacatur. *Id.* at 9.

Defendants' letter further explained that Defendants' *Munsingwear* motion was, "at a minimum, a protected argument for extending existing law." *Id.* at 4 (citing Rule 11(b)(2)'s express protection of "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"). Defendants' letter emphasized that BPI's draft sanctions motion failed to address "*Munsingwear*'s central equitable premise that a party should not be burdened by an adverse determination that later becomes unavailable for merits review." *Id.* Defendants further explained that the requested relief would not deprive BPI of its sanctions award because, "[e]ven if the Court granted every aspect of the requested relief, BPI would retain the full benefit of the monetary sanctions award." *Id.* at 11. BPI's opposition to the Rule 60(b)(6) motion reveals itself as an opportunistic vehicle to file, in turn, a meritless sanctions motion in an aggressive effort to recoup the fees in a case that it lost.

Defendants also refuted BPI's reliance on its two table exhibits that cropped excerpts from Defendants' *Munsingwear* motion. *Id.* at 5–7.[2] For example, the first exhibit lacked the "necessary context" about the License Agreement's production, as it was in response to an RFP, not an interrogatory. *Id.* at 5–6. Defendants also explained—as they had done earlier—that Mr. Kramer created the agreement "to memorialize in writing the oral agreement that was reached between Muscle Beach and ThermoLife" and that Jeremy DeLuca's sworn testimony contradicted BPI's

[2] BPI's motion and exhibit contains multiple instances of incorrect quotations. *See infra*.

assertion that the writing did not reflect the parties' actual terms. *Id.* BPI's second table, as Defendants noted, showed nothing but "merely juxtapose[d] the vacatur requests with the portions of the Federal Circuit's opinion, largely in parentheticals, describing this Court's findings." *Id.* at 7. The court's description of a disputed finding "is in no way an adoption of that finding." *Id.*

Defendants' letter also refuted the other issues raised by BPI's draft sanctions motion. It explained that BPI's "outrageous demand" for all fees and costs since the Sanctions Order in October 2021 "suggests an alternative motivation" behind the draft sanctions motion. *Id.* at 10. Defendants explained how the draft sanctions motion failed to consider the distinct requirements for § 1927 and inherent-authority sanctions. *Id.* at 13–15. Defendants' fourteen-page attachment detailed how BPI's cited cases provided no support for its motion. *Id.* at 17–30.

### D. BPI Files Its Sanctions Motion without Addressing a Single Point Raised in Defendants' Letter

Five days later, without addressing a single point in Defendants' letter, BPI filed its sanctions motion. D.E. 473. BPI did not change or modify a single argument, despite the numerous cited cases and detailed explanations in Defendants' letter.

Troublingly, BPI's motion relies on a fabricated quotation of this Court. BPI cites *MSPA Claims 1, LLC v. Liberty Mutual Fire Insurance Co.,* No. 17-22539-CV, 2025 WL 643208, at *4 (S.D. Fla. Feb. 25, 2025), *sanctions aff'd in part*, 2025 WL 2800463 (S.D. Fla. Sept. 26, 2025), as purportedly stating: "Litigants have an obligation to reconsider and revise their positions when they are no longer viable." D.E. 473 at 7. That sentence is not in either decision. Dowd Decl. ¶¶ 4–8. It appears to be a possibly hallucinated quotation. *Cf. Parnell v. Florida Dep't of Corr.*, 181 F.4th 1209, 1212 (11th Cir. 2026) (recognizing "a well-publicized problem of attorneys citing hallucinated authorities" and imposing sanctions at the appellate level for the citation of non-existent cases and the inclusion of non-existent quotations from opinions and striking portions of reply brief).[3]

## III. Argument

### A. Applicable Legal Standards

Sanctions can be imposed under Rule 11 if the pleading or motion "(1) has no reasonable

[3] BPI's sanctions motion contains several additional incorrect quotations of Defendants' *Munsingwear* motion. Dowd Decl. ¶¶ 9–23. These errors were in the draft motion and remained in the sanctions motion as filed, despite BPI noting that it did make "[t]wo minor revisions" to correct counting errors on page fourteen, changing "six (6) to five (5) and five to four." *Id.*

factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1314 (11th Cir. 2021) (internal quotation marks omitted); *accord Gulisano v. Burlington, Inc.*, 34 F.4th 935, 941 (11th Cir. 2022). The two-step test to determine whether to impose Rule 11 sanctions requires the district court to determine "(1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). Notably, "the purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression." *Id.* "All doubts regarding whether Rule 11 has been violated should be resolved in favor of the signer of the paper," and "[t]hus, the burden of proof as to whether the signer [h]as violated Rule 11 is on the Rule 11 movant." *Arch Ins. Co. v. A3 Dev., LLC*, No. 23-23524-CIV, 2024 WL 4564769, at *4 (S.D. Fla. Aug. 19, 2024) (quoting *Emergency Recovery, Inc. v. Hufnagle*, No. 8:19-CV-329-T-24JSS, 2019 WL 9089594, at *1 (M.D. Fla. June 12, 2019)).

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007). In determining whether to impose § 1927 sanctions, the Eleventh Circuit applies a three-part test requiring (1) the attorney "engage in 'unreasonable and vexatious' conduct," (2) "that 'unreasonable and vexatious' conduct must be conduct that 'multiplies the proceedings,'" and (3) "the dollar amount of the sanction must bear a financial nexus to the excess proceedings." *Id.* at 1239. To constitute unreasonable and vexatious conduct, the attorney's conduct must be "so egregious that it is 'tantamount to bad faith.'" *Id.* (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)).

A court must find bad faith to apply inherent-power sanctions. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). The standard for finding bad faith for inherent power sanctions "is at least as high as the threshold of bad faith conduct for sanctions under § 1927." *Amlong*, 500 F.3d at 1252. "Generally, if appropriate sanctions can be imposed under provisions such as Rule 11, courts should not exercise their inherent power." *Peer v. Lewis*, 606 F.3d 1306, 1315 (11th Cir. 2010); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). If the Court lacks any statute or rule to apply appropriate sanctions, however, "the court may safely rely on its

inherent power" to sanction bad faith conduct in the course of litigation. *Chambers*, 501 U.S. at 50.

**B. BPI's Decision to Withhold Defendants' Thirty-Page Letter from the Court's Attention is, at a Minimum, Reason Enough to Deny the Sanctions Motion**

BPI's decision to withhold Defendants' response letter raises serious concerns about BPI's conduct. BPI's withholding of that evidence cuts against basic duties of candor to the Court. Defendants' thirty-page response letter laid out in detail why BPI's sanctions accusations are unfounded. Ex. 1. Yet BPI chose not to include Defendants' response letter as an exhibit when it filed its sanctions motion, and it chose not to address a single point raised in the letter.

First, a party seeking judicial relief is obligated to present all critical evidence to the Court. "A lawyer must not misstate the law, fail to disclose adverse authority not disclosed by his opponent of which he knows or should know, or omit facts critical to the application of the rule of law relied on." *Green Dev. Corp. S.A. De C.V. v. Zamora*, No. 15-21594-MC, 2016 WL 2745844, at *4 (S.D. Fla. May 10, 2016) (quoting *Pierce v. Commercial Warehouse*, 142 F.R.D. 687, 690–91 (M.D. Fla. 1992)). Florida Rule of Professional Conduct 4-3.3(a)(1) prohibits knowingly making false statements of fact or law and requires correction of a lawyer's prior false statements of material fact or law. "There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation." R. Regulating Fla. Bar 4-3.3 cmt. (2026).

Counsel's duty of candor is not satisfied by leaving the opposing party to supply the missing information. *See Byrne v. Nezhat*, 261 F.3d 1075, 1117 n.83 (11th Cir. 2001) (explaining that "[t]he canons of ethics" require attorneys to bring directly before the Court "all those conditions and circumstances which are relevant in a given case" (quotation omitted)). Here, BPI cannot justify its omission of Defendants' rebuttal letter by waiting for Defendants to correct BPI's incorrect statements and omissions.

Defendants' letter identified specific record evidence refuting BPI's assertions of sanctionable conduct. For example, Defendants individually addressed each component of BPI's two exhibits served with the draft sanctions motion and provided record evidence supporting the factual statements challenged by BPI and explained that the statements related to the reasonably disputed issues on appeal. *Id.* at 5–7. Defendants' letter included a fourteen-page attachment addressing about three dozen cases cited in BPI's draft sanctions motion, and the attachment explained how none of the cases support BPI's motion. *Id.* at 18–30.

Second, an attorney is obligated to disclose contrary case law to the Court. Florida Bar

Rule 4-3.3(a)(3) requires that a lawyer not knowingly "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client." *See also* Model Rule of Professional Conduct 3.3(a)(2); *Jorgenson v. Cnty. of Volusia*, 846 F.2d 1350, 1352 (11th Cir. 1988) (affirming sanctions and observing that "appellants are not redeemed by the fact that opposing counsel *subsequently* cited the controlling precedent").

BPI's motion chose to ignore the caselaw in Defendants' rebuttal letter, which confirms the reasonableness of Defendants' *Munsingwear* motion. For example, Defendants identified numerous Supreme Court and appellate cases confirming Defendants' reading of the Federal Circuit's "even assuming" language. Ex. 1 at 8. BPI's motion neither addresses nor acknowledges this caselaw. BPI similarly ignores Defendants' identified caselaw distinguishing between affirming a judgment and adopting specific grounds supporting the overall judgment. *See id*. at 4 (citing *Jennings v. Stephens*, 574 U.S. 271, 278–79 (2015)).

Ultimately, a sanctions movant must satisfy the same obligations of reasonable inquiry and candor that it invokes against its opponent. "[T]he filing of a motion for sanctions is itself subject to the requirements of the rule." Fed. R. Civ. P. 11 advisory committee's note (1993). Defendants' letter identified specific evidence, controlling legal principles, and explanations rebutting BPI's draft sanctions motion. Yet BPI ignored the letter and failed to apprise the Court of it. BPI's motion should be denied because, at a minimum, it chose to ignore Defendants' detailed response.

**C. The *Munsingwear* Motion Does Not Violate Rule 11(b)(1)**

Defendants' *Munsingwear* motion was not filed for an improper purpose and therefore does not violate Rule 11(b)(1). To the contrary, the *Munsingwear* motion was filed for the legitimate goal of seeking redress on specific factual findings left unaffirmed on appeal.

The improper-purpose prong "examine[s] the circumstantial evidence at hand and ask[s], objectively, whether an ordinary person standing in the party's or counsel's shoes would have prosecuted the claim." *Pelletier v. Zweifel*, 921 F.2d 1465, 1515 (11th Cir. 1991). An improper purpose can be "inferred from circumstantial evidence." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010). As the Eleventh Circuit has explained, an attorney's improper purpose can be inferred from "'excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings.'" *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1448 (11th Cir.1998) (quoting *Pierce*, 142 F.R.D. at 690-91). "A 'motive to harass' can also be inferred from an attorney's filing of factually or legally frivolous claims." *Thompson*, 610

F.3d at 666 (citing *Carr v. Tillery*, 591 F.3d 909, 919-20 (7th Cir. 2010)).

For the improper-purpose prong, "frivolity alone is not enough to warrant sanctions under Rule 11." *Squitieri v. Nocco*, No. 8:19-cv-0906-KKM-AAS, 2022 WL 1136885, at *2 (M.D. Fla. Apr. 18, 2022). It also must be proven that the "person who signed the pleadings should have been aware that they were frivolous." *Peer*, 606 F.3d at 1311 (quotations omitted); *see Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995) (asking whether the attorney "would have been aware" that the filing was frivolous "had he made a reasonable inquiry"). The frivolousness inquiry is objective, but a court determines whether a paper was filed for an improper purpose through "a subjective analysis." *Thompson*, 610 F.3d at 639; *Spolter v. Suntrust Bank*, 403 F. App'x 387, 391 (11th Cir. 2010) (per curiam) (concluding that, despite the appellant's claims, the court "believe[d the appellant's] actions were done in bad faith and for an improper purpose"); *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1502 (11th Cir. 1997) (explaining that Bankruptcy Rule 9011—the bankruptcy equivalent of Rule 11—"requires a subjective inquiry" into whether the proceeding was "interposed for an improper purpose").

At least one court has noted that the "improper purpose" inquiry is "a subjective analysis that will likely require testimony." *Thompson*, 610 F.3d at 639; *see also In re Kunstler*, 914 F.2d 505, 520 (4th Cir. 1990) ("When there are issues of credibility, disputed questions of fact, and rational explanations of purpose given, an evidentiary hearing may well be necessary to resolve the issues. This is particularly true when large sanctions are being considered on the ground of improper purpose as well as failure to comply with the first two prongs of Rule 11.").[4]

Courts have affirmed a Rule 11(b)(1) violation in the face of egregious conduct not present here. "Filing otherwise legitimate documents that use abusive language toward opposing counsel could also violate the rule." *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 805 (5th Cir. 2003) (citing *Coats v. Pierre*, 890 F.2d 728, 734 (5th Cir. 1990)). "[F]iling a valid pleading or

---

[4] Authorities describe the improper-purpose inquiry in both subjective and objective terms. *Compare Thompson*, 610 F.3d at 639 (describing "a subjective analysis that will likely require testimony"), *with Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc) ("The standard governing both inquiries is objective."). The Eleventh Circuit also instructs that, "[w]here, as here, we have no direct evidence of the party's and counsel's state of mind, we must examine the circumstantial evidence at hand and ask, objectively, whether an ordinary person standing in the party's or counsel's shoes would have prosecuted the claim." *Pelletier*, 921 F.2d at 1515. The Court need not resolve any possible difference in the subjective-versus-objective inquiry because BPI's accusation fails under either analysis.

motion without a sincere intent to pursue it" can also be an improper purpose. *Id.* (citing *Cohen v. Virginia Elec. & Power Co.*, 788 F.2d 247 (4th Cir. 1986)).

Notably, BPI's motion identifies no reasonable evidence of improper purpose. To begin with, "a court must ignore evidence of the injured party's subjective beliefs and look for more objective evidence of the signer's purpose." *In re Kunstler*, 914 F.2d 505, 519 (4th Cir. 1990) ("There is some paradox involved in this analysis, because it is appropriate to consider the signer's subjective beliefs to determine the signer's purpose in filing suit."). BPI's general subjective complaints about the *Munsingwear* motion—which it did not even have to oppose—are not evidence of an improper purpose.

Here, the complete evidence offers no basis to conclude or even infer that the *Munsingwear* motion was filed with an improper purpose. Defendants are not relitigating the sanctions ruling; they accept the sanctions judgment, along with the monetary penalty, and ask only for minor relief that follows from the *Munsingwear* doctrine and which will have no effect on BPI.

Indeed, BPI fails to explain how any improper purpose can be inferred by filing a motion that BPI did not have to oppose. As Defendants repeatedly have explained—and as BPI has not refuted—granting the *Munsingwear* motion will have no impact on BPI's legal rights in this case. *See* D.E. 462 at 15; D.E. 472 at 10; Ex. 1 at 11–12. The motion does not ask for the sanctions judgment to be changed in any way. Nor does the motion ask for any modification of the monetary sanction. In other words, BPI has nothing taken from it and nothing imposed on it. The *Munsingwear* motion therefore cannot be intended to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

BPI's apparently primary basis for its improper-purpose argument is a rehash of its merits arguments about the *Munsingwear* motion. *See* Mot. 14–15. Its one-page-and-one-line section on improper purpose recycles arguments from its opposition about supposed "weak merits." It contends that "the 'interests of justice' do not 'warrant limited vacatur.'" Mot. 15. It blames Defendants for "the bad weather." *Id.* And it contends that the *Munsingwear* doctrine "was not designed to provide Defendants another bite at the apple." *Id.* *Even assuming* that those contentions are correct, none of them establishes an improper purpose. *See* Dowd Decl. ¶¶ 53–57.

BPI pivots to Mr. Kramer's declaration and somehow tries to use his unrebutted, sworn declaration as evidence of improper purpose. *See* Mot. 19. Beyond the motion's lack of substance, Defendants' supporting declaration provides further confirmation that Defendants and their

counsel did not file the *Munsingwear* motion for an improper purpose. *See* Dowd Decl. ¶¶ 4–61. In all, the record evidence confirms Defendants' genuine request to the Court to apply the *Munsingwear* doctrine to narrow findings left unresolved on appeal and in a manner that does not adversely affect BPI in this case in order to stop the misuse in other cases of the unaffirmed factual findings. The Court may deny the motion, but even that denial would not mean that the motion was filed for an improper purpose.

### D. The *Munsingwear* Motion Does Not Violate Rule 11(b)(3)

BPI fails to show that the *Munsingwear* motion violates Rule 11(b)(3). BPI does not cite a single case that precludes Defendants' requested relief. For that and other reasons, there is no violation of Rule 11(b)(3).

#### 1. BPI cites no cases that foreclose Defendants' *Munsingwear* motion

BPI's failure to cite a single case foreclosing Defendants' *Munsingwear* motion is fatal to its sanctions motion. Even after being twice notified of this deficiency, *see* D.E. 472 at 7–8, Ex. 1 at 10–11, BPI cites no decision foreclosing the limited application of *Munsingwear* that Defendants seek, much less any authority establishing that their position is objectively frivolous.

It is well accepted that a Rule 11 violation does not lie when a moving party fails to identify precedent foreclosing the allegedly sanctionable argument. *See, e.g.*, *Arch Ins. Co.,* 2024 WL 4564769, at *4 (denying sanctions where "Defendants have pointed the Court to no authority (i.e., Defendants have not carried their burden) in which a court has held this cause of action to be 'objectively baseless' in similar circumstances"); *Doe v. Martucci*, No. 20-CV-02331 (PMH), 2024 WL 5118505, at *11 (S.D.N.Y. Dec. 16, 2024) ("[S]anctions motions that fail to show that the purportedly frivolous arguments are foreclosed by binding precedent, and instead 'merely recast the[ir] opposition arguments into a Rule 11–esque form,' are manifestly improper." (quoting *On Time Aviation, Inc. v. Bombardier Cap. Inc.*, 570 F. Supp. 2d 328, 332 (D. Conn. 2008))); *Lima v. Deutsche Bank Nat'l Tr. Co.*, No. CV 12-00509 SOM-RLP, 2013 WL 12142572, at *5 (D. Haw. July 29, 2013) (denying sanctions where "there does not appear to be any case law or other authority that squarely foreclosed Plaintiffs' claims").

On this critical issue, BPI largely relies on a footnote referencing its Rule 60 opposition, but BPI's *Munsingwear* opposition is equally devoid of controlling precedent. D.E. 473 at 12. Defendants' reply and letter explain in detail how none of these cases foreclose Defendants' *Munsingwear* motion. D.E. 472 at 5–7, Ex. 1 at 4. Without establishing this proposition, BPI cannot

demonstrate that Defendants' legal argument is in any way contrary to any controlling precedent. Merely identifying differences between this case and prior vacatur decisions does not establish that the caselaw prohibits the requested application of *Munsingwear*.

At most, BPI could show that the *Munsingwear* doctrine is unsettled on the specific facts here, but the Eleventh Circuit expressly has rejected sanctions where the absence of on-point authority leaves room for reasonable legal argument. *City of Riviera Beach v. Lozman*, 672 F. App'x 892, 898 (11th Cir. 2016) ("Because the law was unsettled, the City's position was not objectively frivolous, and the district court did not abuse its discretion by refusing to award Rule 11 sanctions on that basis."); *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915–16 (11th Cir. 2003) (affirming dismissal but reversing sanctions because there was "scant on-point authority" and could not "conclude that only an unreasonable lawyer would have made these claims").

In sum, BPI's motion fails at its most basic level, much as its false-advertising case failed. BPI offers no precedent foreclosing Defendants' *Munsingwear* motion, and therefore BPI cannot meet its considerable burden of identifying sanctionable conduct.

**2. BPI's Rule 11 motion is largely a rehash of its opposition**

BPI cannot transform its *Munsingwear* opposition into a basis for sanctions merely by repeating its opposition arguments, but that is precisely what BPI is doing. If BPI truly believed the Rule 60 motion to be lacking all merit such as to be sanctionable, then it simply could have filed a one-page response stating that it took no position. BPI instead briefed the issue, albeit unconvincingly, across twenty pages. It cannot properly use a sanctions motion to buttress its flawed opposition. *See On Time Aviation*, 570 F. Supp. 2d at 332 ("To submit full briefing in opposition to a summary judgment motion and then submit the same grounds as supporting a separate Rule 11 motion is patently unreasonable: one opposition is both sufficient and all a party is entitled to."). Yet, that is precisely what BPI does here.

Defendants have refuted BPI's recycled arguments in their reply in support of the *Munsingwear* motion, as well as their letter. *See* D.E. 472; Ex. 1 at 4. BPI's mere repetition of disputed arguments about the merits of the *Munsingwear* motion does not establish a Rule 11 violation and should be disregarded. *Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*, No. 99 Civ. 0275 (RWS), 2004 WL 1811427, at *22 (S.D.N.Y. Aug. 12, 2004) (disregarding arguments in a Rule 11 motion that pertained to the merits of a summary judgment motion).

In a hodgepodge manner, BPI claims that the factual contentions in the *Munsingwear*

motion lack evidentiary support. Mot. 7-11. BPI claims that the background section of the *Munsingwear* motion "contradicts previous orders of this Court" and argues that it presents a "stale narrative." This is just more opposition to the motion, dressed up as an improper sanctions argument. And BPI cites its "Exhibit 1," without acknowledging its multiple incorrect quotations.

BPI recycles its arguments about the purported relevancy of the License Agreement, Mot. 7-8, without once addressing Defendants' counterargument presented in their reply, *see* D.E. 472 at 5. And BPI regurgitates its unsupported assertions about the "even assuming" phrase, somehow claiming that Defendants "deceptively modified the appellate opinion." Mot. 8-11.

Even assuming BPI's arguments had merit, Rule 11 does not authorize sanctions merely because a party disputes its opponent's arguments. But this is precisely what BPI seeks. "Rule 11 is intended to deter claims with no factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990). "[F]actually groundless" allegations meriting the imposition of sanctions arise in situations where "plaintiffs offer[] no evidence to support their allegations." *Malgeri v. Vitamins Because LLC*, No. 19-22702-CIV, 2022 WL 17593133, at *1 (S.D. Fla. Sept. 30, 2022) (quoting *Davis*, 906 F.2d at 536). Further, the Advisory Committee expressly cautions: "Nor should Rule 11 motions be prepared to emphasize the merits of a party's position." Fed. R. Civ. P. 11 advisory committee's note (1993). BPI therefore must definitively establish a violation of Rule 11, not merely repeat its reasons for opposing vacatur.

Defendants' *Munsingwear* motion presents a reasoned request for equitable relief, not a sanctionable refusal to accept an adverse result. It relies on the Federal Circuit's exact language, identifies the specific findings challenged, supplies evidence of continuing collateral consequences, and expressly preserves BPI's monetary sanctions award. DE 462 at 1, 6, 11–16. BPI disagree with Defendants' argument, but that disagreement does not provide BPI with a basis for filing its ill-supported and poorly reasoned sanctions motion.

**3. BPI misunderstands the "even assuming" phrase**

BPI's sanctions motion is premised on BPI's fundamental misunderstanding of the phrase "even assuming," and BPI's misunderstanding is not a basis to sanction Defendants. In its motion, BPI does not cite a single case to support its interpretation of the "even assuming" phrase. Worse, BPI does not once confront Defendants' detailed explanation of why BPI is misreading the Federal Circuit's decision. *See* Mot. 9–10; Ex. 1 at 7–9. The use of the phrase "even assuming" has been

used multiple times by the Supreme Court and other appellate courts to show that the issue following that phrase is explicitly not being decided. *See id.* BPI simply ignores all the case law that Defendants provided in their response letter. That tactic is par for the course for BPI and its counsel—make serious accusations and allegations without any factual or legal support and then ignore contrary evidence and precedent. That improper tactic was at the root of BPI's false-advertising case against Defendants, which was eventually undone by BPI's own evidence, which BPI and its counsel ignored.

As explained in Defendants' reply brief and letter, under either wording, the meaning is the same: the court assumed a premise without deciding whether it was true. D.E. 472 at 2–3; Ex. 1 at 7–8. Indeed, BPI describes the assumption as being "for argument's sake," which also confirms that the court is *not* making a factual determination. D.E. 469 at 2; D.E. 473 at 2. The point is not that the Federal Circuit affirmatively found that no fabrication occurred, but that it affirmed without deciding that question. The plain language confirms this assumption.

**4. Rule 60(b)(6) is the proper avenue for seeking *Munsingwear* relief**

BPI asserts that there are "[n]o [l]egitimate [g]rounds" for invoking Rule 60(b)(6) to seek equitable vacatur. Mot. 13. But as Defendants explained in their letter, that assertion finds no support in any applicable caselaw and is directly contradicted by Supreme Court and appellate precedent. *See* Ex. 1 at 8.

The Supreme Court and appellate courts repeatedly have recognized Rule 60(b) as the mechanism through which a district court may consider equitable vacatur. Ex. 1 at 9. In *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994), the Court stated that, "even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for vacatur of a district-court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b)." *See also Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121 (4th Cir. 2000) (holding that the equitable considerations governing "appellate vacatur for mootness are also relevant to, and likewise largely determinative of, a district court's vacatur decision for mootness under Rule 60(b)(6)"); *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168 (9th Cir. 1998) (explaining that "Rule 60 provides the basis for a district courts' vacation of judgments when the equities so demand"). Rarely has there been a clearer directive about the procedural path for achieving vacatur.

These plain statements of law directly contradict BPI's assertion that there are "[n]o [l]egitimate [g]rounds" for invoking Rule 60(b)(6) to seek equitable vacatur. Mot. 13. Whether the Court ultimately adopts ThermoLife's application of *Munsingwear* is a question of the merits, and BPI does not cite a single case that precludes that application of *Munsingwear* in the context of a Rule 60 motion. Nor could it cite any such case law. In the end, BPI's unreasonable arguments fly in the face of conflicting Supreme Court and appellate precedent. *Cf. Collins v. Daniels*, 916 F.3d 1302, 1321 (10th Cir. 2019) (upholding Rule 11 sanctions where "Plaintiffs' standing arguments ignored controlling precedent"); *Davis*, 906 F.2d at 538 (noting that legal claims are frivolous when they ignore established law). In the end, without citing a single decision, let alone controlling authority, negating the Rule 60 motion, it is completely inappropriate for BPI to claim that the *Munsingwear* motion is frivolous.

As to the sanctions motion's "timing" argument, Mot. 14, that too is recycled from BPI's opposition, *see* D.E. 469 at 13-14. Defendants' *Munsingwear* reply rebutted BPI's argument on that point. *See* D.E. 472 at 8-9 (Defendants explaining how "BPI miscalculates the time elapsed from its triggering events"). BPI simply repeats—almost verbatim—its timeliness argument from its *Munsingwear* opposition. *See* Ex. 17; Dowd Decl. ¶ 58. BPI has thus conceded Defendants' unrebutted explanation.[5]

#### 5. BPI does not address whether the *Munsingwear* motion is a nonfrivolous request to extend the law

BPI overlooks a key aspect of Rule 11(b)(3): Whether the *Munsingwear* motion is a "nonfrivolous argument for extending . . . existing law." Fed. R. Civ. P. 11(b)(3). BPI ignores Rule 11's express exception of reasonable arguments to extend existing law. Thus, even if Defendants' requested relief extends *Munsingwear* beyond its typical application, BPI's Rule 11 motion must establish why that proposed extension is frivolous, which it does not. *See Townsend v. McDonnell*, No. CV1810011PSGJCX, 2020 WL 13582792, at *3 (C.D. Cal. June 30, 2020) (observing that the "simple fact that an attorney's legal theory failed to persuade the district court 'does not demonstrate that [counsel] lacked the requisite good faith in attempting to advance the law'" (quoting *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988))); *Crocs, Inc. v. Effervescent, Inc.*, 278 F. Supp. 3d 1182, 1190 (D. Colo. 2017) (explaining that even if "a claim is

[5] For its timing argument, BPI did not even bother to correct an obvious typographical error from its *Munsingwear* opposition. *Compare* D.E. 469 at 14 ("***One*** the one hand . . . ") (emphasis added), *with* D.E. 473 at 14 (same).

legally inadequate, it does not warrant sanctions so long as Dawgs can present a 'nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law''' (quoting *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015))).

Moreover, "Rule 11 'does not require that counsel differentiate between a position which is supported by existing law and one that would extend it.'" *Wendelberger v. Deutsche Lufthansa AG*, No. 18-CV-01055-PJH, 2018 WL 2387858, at *3 (N.D. Cal. May 25, 2018) (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1539 (9th Cir. 1986)).

Defendants' proposed application rests on *Munsingwear*'s central equitable premise that a party should not be burdened by an adverse determination that later becomes unavailable for review. Defendants ask the Court to apply that principle to specific findings the Federal Circuit did not adopt when affirming on other grounds, but that continue "spawning . . . legal consequences" after Defendants exhausted appellate review. D.E. 472 at 1; Ex. 1 at 4. BPI may dispute whether these circumstances support vacatur, but it does not explain why applying *Munsingwear*'s equitable protection to the circumstances is an argument that no reasonable attorney could advance.

**E. The Motion for Sanctions Under 28 U.S.C. § 1927 is Meritless**

BPI's reliance on § 1927 is equally meritless. BPI offers no separate analysis under § 1927, which requires a finding that the attorney's conduct is "so egregious that it is 'tantamount to bad faith.'" *Amlong*, 500 F.3d at 1239. No part of BPI's motion identifies how the filing of the *Munsingwear* motion constitutes bad faith. BPI fails to identify any relevant case law that supports their contention that Defendants' motion constituted bad faith. Nor does BPI provide any evidence to indicate that the filing constituted bad faith. The only discussion of finding bad faith in BPI's motion are those related to Defendants' purported fabrication of the license agreement during discovery and the subsequent appeal, which has no bearing on the present filing of the *Munsingwear* motion. *See* Mot. 9-11. BPI vaguely references "reasons set forth above" in its § 1927 section, but as explained thoroughly above, Defendants' motion is not frivolous, is well reasoned, and is not made in bad faith. Therefore, there is no basis for sanctions under § 1927.

**F. The Motion for Sanctions Under Inherent Authority is Meritless**

BPI's request for sanctions pursuant to the Court's inherent authority is similarly meritless. A court is required to find bad faith to impose sanctions under inherent authority. *Barnes*, 158 F.3d at 1214. Furthermore, the standard for applying inherent power sanctions "is at least as high as the threshold of bad faith conduct for sanctions under § 1927." *Amlong*, 500 F.3d at 1252.

Again, BPI makes no separate argument about how Defendants' motion constitutes bad faith. BPI does not apply the bad-faith standard to any of the facts. Nor does it apply any relevant case law. Rather than making a reasoned argument, BPI only states that "a district court may consider all of the circumstances surrounding the violation." Mot. 6. That generic statement does not identify specific facts that support inherent-powers sanctions.

**G. BPI's Pattern of Conduct Raises Questions About BPI's Motivation**

BPI's reckless sanctions motion warrants further examination of BPI's motivation in filing it. This most recent filing continues BPI's pattern of unreasonableness, particularly because BPI's lawsuit never should have been filed. Defendants do not wish to repeat arguments made elsewhere, but, at base, the Court's inherent authority is rooted in equity. *Chambers*, 501 U.S. at 44 (noting the "historic power of equity" in the context of inherent authority); *In re Levander*, 180 F.3d 1114, 1118 (9th Cir. 1999) ("This inherent power . . . is based on equity[.]").

First, BPI reaches into its same bag of tricks by again seeking the "revocation of the pro hac vice admissions of Mr. Dowd and Mr. Scheffel." This is not the first time BPI counsel has made this improper threat. Dowd Decl. ¶ 39; D.E. 448-2 at 23 (responding to ThermoLife's identification of BPI's "vexatious and unreasonable litigation conduct" by stating: "if this behavior continues, we will move to have your pro hac vice admission revoked"). There is no basis for the Court to do so.

Second, during trial, BPI played games with its key financial witness, Derek Ettinger. BPI, through its counsel, obstructed Defendants' efforts to secure trial testimony from Mr. Ettinger, was its founder, chairman, and sole Rule 30(b)(6) witness. Dowd Decl. ¶¶ 28–32; *see* D.E. 321; D.E. 321-1–321-12. In short, Defendants rightfully wanted to have the jury hear from Mr. Ettinger (given BPI's specious damages theory), but BPI declined to produce him voluntarily. Dowd Decl. ¶ 28. BPI counsel even represented that he lacked authority to accept service of the trial subpoena, and BPI subsequently asserted that it "has no control over Mr. Ettinger." *Id.* at 2, 5. Defendants had to make multiple attempts to serve Mr. Ettinger (during trial), and even that was not successful. Dowd Decl. ¶ 29. BPI eventually counsel produced Mr. Ettinger for trial, but only after the Court warned that, if BPI did not make Mr. Ettinger available, the Court would "limit Mr. Mackenzie's testimony consistent to what Mr. Ettinger would testify to." Ex. 3 (Tr. 1:62:18–21).

When Mr. Ettinger did finally testify, his testimony materially conflicted with his deposition testimony as BPI's Rule 30(b)(6) corporate designee. For instance, at his deposition on April

24, 2020, Mr. Ettinger accepted he is intimate knowledgeable with BPI's financials: "If it has to do with financials, yes, very into the financials." Ex. 2 (Ettinger Dep. Tr. 47:4–5). That knowledge somehow disappeared when forced to testify at trial, where he did an about face, claiming that, "as chairman, I have very little knowledge about BPI financials." Ex. 4 (Tr. 4:16:25–17:2, 17:22–23).

More shockingly, after trial, Mr. Ettinger's intimate knowledge about BPI's financials "re-appeared"—when convenient for BPI. In 2023, Mr. Ettinger signed key financial documents supporting BPI's bankruptcy petition. Dowd Decl. ¶¶ 33–35. He swore under oath that, without qualification, "[a]s a Manager on the Board of Managers of the Parent Company, I have personal knowledge of [BPI's] books and records, and [BPI's] financial and operational affairs." D.E. 448-6 at 42. To date, BPI has not justified Mr. Ettinger's disappearing and reappearing financial knowledge.

Third, and relatedly, BPI advanced a wholly untenable lost-profits damages theory. BPI was seeking lost-profit damages equivalent to many multiples of the total sales of the only product accused of being false advertised, Muscle Beach Nutrition's CRTN-3 product. Dowd Decl. ¶ 37. That theory did not make sense, as BPI never reasonably explained why BPI's own lost profits were attributable to such minimal sales of the only product accused of false advertising.

Fourth, the unreasonableness of BPI and its counsel are illustrated by an early incident where BPI's counsel refused to accommodate an emergency request after a member of Defendants' new trial firm tested positive for COVID-19. *See* Dowd Decl. ¶ 36. This emergency occurred while the COVID-19 pandemic was imposing significant restrictions in portions of the country, including Washington, D.C., where Defendants' then-new trial counsel is located. BPI counsel simply ignored counsel's multiple email requests, forcing Defendants to file an emergency motion, which the Court quickly granted. *See id.*; D.E. 272.

That lack of courtesy was a recurring theme, with BPI's counsel routinely invoking unsupported, hyperbolic rhetoric that was largely unsupported by citations to the record evidence or precedent (which it continues with its present sanctions motion). *See* Dowd Decl. ¶¶ 38–39. For instance, in August 2021, BPI accused Defendants' then-new counsel of writing "revisionist history, half-truths, and other nonsense" and complained that "new counsel would receive the magnificent gift of additional trial preparation time." D.E. 265 at 2.

Fifth, Mr. Hillyer's apparent contingency-based engagement with BPI may be a (or the) driving force behind not only the present sanctions motion but also the entire litigation. As detailed

elsewhere, in 2023, BPI's bankruptcy filing identified Hillyer Legal PLLC as holding a "contingent" "legal" claim for $189,862.88. D.E. 448-6, Ex. 103 at 1. Neither BPI nor Mr. Hillyer has denied that Hillyer Legal was engaged on a contingency basis when filing the present suit. Dowd Decl. ¶ 40. After all, during his deposition in 2020, when asked why BPI filed suit, Mr. Ettinger explained that "I'd have to consult with counsel [*i.e.*, Mr. Hillyer] and find out the reason why" because "[i]t's just that my attorney, Mr. Hillyer, made all the claims." Ex. 2 (Ettinger Dep. Tr. 10:21–12:20).

Finally, if Mr. Hillyer is the decisionmaker behind BPI's sanctions motion and the lawsuit, then it could signal improprieties with BPI's outrageous demands, including seeking years' worth of past attorney's fees. Defendants identified some of these concerns in their letter responding to BPI's draft sanctions motion. *See* Ex. 1 at 12. For example, BPI's desire to file the sanctions motion may be driven in part by counsel's relationship with Hi-Tech Pharmaceuticals, a company that is accused of infringing several of ThermoLife's patents. *See* Ex. 5. If so, that could be deemed an improper purpose behind BPI's sanctions motion. BPI notably neither refutes nor addresses those concerns, and thus they remain.

**H. BPI's Demanded Relief is Frivolous**

BPI's demanded relief is frivolous on numerous levels, and the egregiousness of BPI's demanded relief suggests ulterior motives behind its motion. By making this point, Defendants in no way suggest the motion has any merit but only to show how the Rule 11 motion itself is frivolous. "Rule 11 motions should not 'be prepared to emphasize the merits of a party's position ... [or] to intimidate an adversary into withdrawing contentions that are fairly debatable.'" *Zinman v. L.A. Fitness Int'l LLC*, No. 21-CV-20315, 2021 WL 2530271, at *9 (S.D. Fla. June 21, 2021) (quoting Fed. R. Civ. P. 11 advisory committee notes to 1993 amendment); *see Plantation Open MRI, LLC v. Infinity Auto Ins. Co.*, 818 F. App'x 891, 892 (11th Cir. 2020) (affirming an award of fees "for *knowingly* or *recklessly* filing a completely frivolous motion for sanctions"); *Glob. Van Lines, Inc. v. Glob. Van Lines, Inc.*, No. 05-61410 CIV, 2006 WL 8431578, at *3 (S.D. Fla. June 6, 2006) (warning the defendants and their counsel to "be more circumspect in bringing a Rule 11 motion in the future, lest they be subject to Rule 11 sanctions themselves").

For instance, Rule 11(c)(4) provides that a sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Yet BPI seeks all "attorneys' fees and costs incurred by BPI since the entry of the Sanctions Order"—*i.e.*, fees

and costs for over five years since the Sanctions Order was entered on July 14, 2021. D.E. 473 at 14. This egregious request notably would include all fees and costs for the five-day trial in October 2021. BPI's sanctions motion cites no authority to support such an outrageous demand. *See id.* Nor does it address the application of Rule 11(c)(4).

The outrageousness of BPI's monetary demands suggests that BPI's motion is a poorly veiled effort to obtain an award of attorney's fees even though BPI can no longer seek fees under the applicable fee-shifting provisions because it is not in fact the prevailing party; BPI is the losing party. As the record shows, BPI filed a motion for fees and costs on December 23, 2021, D.E. 386, and renewed that motion on October 20, 2022, D.E. 423. When the Federal Circuit reversed, ThermoLife became the prevailing party, and BPI had no basis to seek attorney's fees. BPI properly did not renew its fees motion after that point because it fully lost on the merits.

But now, BPI attempts to use its sanctions motion to recover all fees and costs since July 2021—before the trial on the merits. BPI offers no legal authority to support its demand for years of fees based on a motion filed only two-and-a-half months ago. That demand is frivolous.

BPI's other requested sanctions are equally untethered to the alleged violation. Specifically, BPI astoundingly seeks an undisclosed penalty paid to the court, terminating sanctions for unrelated pending motions, a bar on future filings, and the revocation of pro hac vice admissions. As is par for the course, BPI provides no support for such excessive requests.

The Rule 11 Motion also does not address how any requested monetary sanction complies with Rule 11(c)(5)(A). To the extent that BPI seeks monetary sanctions against Defendants under Rule 11(b)(2), such a request is specifically precluded by Rule 11(c)(5)(A), which prohibits a monetary sanction "against a represented party for violating Rule 11(b)(2)." BPI cites *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300 (11th Cir. 2021), but that case does not support BPI's flawed draft motion. There, the sanctioned plaintiff was the "mastermind" of the scheme, and he personally provided direct instructions to remove specific language from a draft, personally made "misrepresentations" to the court, and shared in a "50-50 split" in the legal fees obtained by his attorney in settlements for frivolous lawsuits. *Id.* at 1315. *Johnson* is inapplicable here.

## IV. Fees for Opposing the Sanctions Motion

"If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). "In other words, the 'motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions.'" *Plantation*

*Open MRI*, 818 F. App'x at 893 (quoting *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1260 (11th Cir. 2014) (citation omitted)). Thus, "when a party files a Rule 11 motion for an improper purpose, the court may award fees to the target of the motion." *Smith*, 750 F.3d at 1260.

Pursuant to Rule 11(c)(2), Defendants request their reasonable attorney's fees and expenses incurred in opposing BPI's sanctions motion (the amount to be determined based on separate briefing). "[A] party seeking reasonable expenses pursuant to Rule 11(c)(2) is not required to comply with the procedural requirements of Rule 11(c)(2)," *i.e.*, the filing of a separate document and compliance with the safe harbor provision. *See Vanliner Ins. Co. v. DerMargosian*, No. 3:12-CV-5074-D, 2014 WL 1632181, at *1–2 (N.D. Tex. Apr. 24, 2014) (awarding fees for opposing an amended sanctions motion that was "devoid of any good-faith arguments").

An award is warranted for several reasons. BPI filed its sanctions motion in the face of Defendants' detailed letter explaining the meritlessness and multiple flaws in BPI's draft sanctions motion. BPI ignored the entire thirty-page explanation. BPI improperly treats Defendants' amply supported legal arguments as sanctionable misconduct. Defendants should not bear the expense of defending against BPI's flawed motion riddled with errors and misquotations carried over from BPI's *Munsingwear* opposition and its draft motion. While there is no merit in BPI's sanctions motion, any motion that seeks to impose sanctions on counsel and clients must be taken seriously and must be opposed in full. For this reason, courts have authority to grant fees and costs to a party that successfully opposes a sanctions motion. *See Emergency Recovery*, 2019 WL 9089594, at *2 (denying sanctions and permitting the successful opposing parties to seek attorney's fees at the conclusion of the litigation).

## V. Request for Hearing

Finally, if the Court does not consider the present opposition and accompanying exhibits sufficient to deny the motion, Defendants request a hearing. BPI's motion makes serious accusations against experienced counsel who have diligently researched the legal and factual issues. Dowd Decl. ¶¶ 59-61. The motion seeks sanctions under § 1927 and inherent authority, which consider subjective intent. *See Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). BPI's sanctions motion is meritless, particularly given its numerous errors and failure to address Defendants' responsive letter. Even so, the Court may benefit from additional testimonial evidence at a hearing.

## VI. Conclusion

For the foregoing reasons, the motion should be denied.

Respectfully submitted, this 21st day of October 2026.

*<u>/s/ Edward M. Mullins</u>*
Edward M. Mullins (FBN 863920)
Reed Smith LLP
200 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
Telephone: 786-747-0200
Facsimile: 786-747-0299
Email: emullins@reedsmith.com

and

Matthew J. Dowd (*pro hac vice*)
Robert J. Scheffel (*pro hac vice*)
Dowd Scheffel PLLC
1717 Pennsylvania Avenue NW
Suite 1025
Washington, D.C. 20006
Tel: (202) 559-9175
mdowd@dowdscheffel.com
rscheffel@dowdscheffel.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 21, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record.

*/s/ Edward M. Mullins*
Edward M. Mullins