# Exhibit 1

DOWD
SCHEFFEL
PLLC

1717 Pennsylvania Avenue, NW
Suite 1025
Washington, D.C. 20006
(202) 559-9175
https://www.dowdscheffel.com

*Via Electronic Mail*

**October 2, 2026**

Gregory L. Hillyer
Hillyer Legal, PLLC
5335 Wisconsin Avenue, NW
Washington, D.C. 20015
ghillyer@hillyerlegal.com

Re: *BPI Sports, LLC v. ThermoLife International, LLC*, No. 0:19-cv-60505-RS (S.D. Fla.)

Dear Greg:

We write in response to BPI's Rule 11 letter and its draft Rule 11 motion ("Draft Motion" or "Draft Rule 11 Motion"), served on September 11, 2026.

In short, the accusations made in your letter appear to be a revival of your typical, improper practice of threatening sanctions at the drop of the hat. Your letter fails to meaningfully engage with relevant case law, and it is bereft of any legal support for your numerous flawed positions. In order to avoid wasting the court's and our client's time, we ask that you and your client reconsider your apparent desire to file the motion that itself likely warrants an inquiry into whether it complies with Rule 11. *See, e.g.*, Rule 11(c)(3) ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."); *see also Harrison Prosthetic Cradle Inc. v. Roe Dental Lab'y*, 608 F. Supp. 3d 541, 550 (N.D. Ohio 2022) ("Threatening sanctions casually or as a matter of course has no place among officers of the court—again, except in the most egregious cases and, then, only as a last resort.").

BPI's actions here lead to reasonable questions about its motives. Ultimately, BPI has no stake in the pending Rule 60 motion. If the motion were granted, it would have no effect on BPI's legal status. BPI therefore has no legitimate standing to dispute the Rule 60 motion, and even less of a basis to serve or file a Rule 11 motion. BPI's Draft Motion appears to be an example of the "tit-for-tat squabbles and accusations that [do] nothing but waste the

Court's time." *Dahdouh v. Road Runner Moving & Storage Inc.*, No. 20-CV-61936, 2021 WL 2400189, at *1 (S.D. Fla. June 11, 2021).

If BPI truly believed the Rule 60 motion to be without merit, then it simply could have filed a one-page response stating that it took no position. It instead briefed the issue, albeit unconvincingly, for no discernible purpose. The Rule 60 motion was filed in good faith in an attempt to remedy what ThermoLife deems to be an injustice—an unreviewable and inaccurate finding that it fabricated evidence. The fabrication finding was not affirmed by the Federal Circuit, and it is an appropriate subject of ThermoLife's Rule 60 motion. As shown by our reply, BPI's own response completely misstates the Federal Circuit's reasoning in a vain attempt to support this unwarranted sanctions threat.

In the end, the Rule 60 motion has been fully briefed. The Court will either grant it or deny it. What is completely inappropriate is for BPI to misstate the Federal Circuit's reasoning and then threaten sanctions under Rule 11 and other provisions after it has filed its response.

**I. Rule 11 Generally**

Rule 11 imposes upon the signer of every paper filed with a court certain obligations to ensure that the paper complies with the applicable ethical standards. Rule 11 requires that the paper be signed by "at least one attorney of record."

> (a) Signature. Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

Fed. R. Civ. P. 11(a); *see also Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1298 (Fed. Cir. 2014).

As relevant here, by filing a motion, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the motion "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Additionally, the attorney certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

Rule 11 measures the objective reasonableness of a filing based on what was "'reasonable[] under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). The Eleventh Circuit requires a two-step inquiry when assessing whether a filing satisfies Rule 11: "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Id.*

A court's rejection of an argument on the merits thus does not establish that the argument was sanctionable as presented, as Rule 11 expressly protects "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2); *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915–16 (11th Cir. 2003) ("First, there is scant on-point authority to guide the reasonable lawyer to the conclusion that, with the RICO claims in the Second Amended Complaint, he either had no reasonable chance of success or was advancing an unreasonable argument to change existing law. Though we have concluded that the Second Amended Complaint does not state viable RICO claims, we are unable to conclude that only an unreasonable lawyer would have made these claims.").

An allegation that a motion was presented for an improper purpose requires proof that the motion was presented to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

"But frivolity alone is not enough to warrant sanctions under Rule 11." *Squitieri v. Nocco*, No. 8:19-cv-0906-KKM-AAS, 2022 WL 1136885, at *2 (M.D. Fla. Apr. 18, 2022). It must also be proven that the "person who signed the pleadings should have been aware that they were frivolous." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (quotations omitted); *see Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995) (asking whether the attorney "would have been aware" that the filing was frivolous "had he made a reasonable inquiry"). The frivolousness inquiry is objective, but a court determines whether a paper was filed for an improper purpose through "a subjective analysis." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 639 (11th Cir. 2010); *Spolter v. Suntrust Bank*, 403 F. App'x 387, 391 (11th Cir. 2010) (per curiam) (concluding that, despite the appellant's claims, the court "believe[d the appellant's] actions were done in bad faith and for an improper purpose"); *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1502 (11th Cir. 1997) (explaining that Bankruptcy Rule 9011—the bankruptcy equivalent of Rule 11—"requires a subjective inquiry" into whether the proceeding was "interposed for an improper purpose").

At least one court has noted that the "improper purpose" inquiry is "a subjective analysis that will likely require testimony." *Thompson*, 610 F.3d at 639; *see also In re Kunstler*, 914 F.2d 505, 520 (4th Cir. 1990) ("When there are issues of credibility, disputed questions of fact, and rational explanations of purpose given, an evidentiary hearing may well be necessary to resolve the issues. This is particularly true when large sanctions are being considered on the ground of improper purpose as well as failure to comply with the first two prongs of Rule 11.").

## II. The Frivolousness of BPI's Draft Rule 11 Motion

The Draft Rule 11 Motion lacks merit for multiple reasons. In fact, the Draft Rule 11 Motion is itself so meritless that the filing of such a deficient, legally flawed document would not comport with the requirements of Rule 11. *See, e.g.*, *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1351 (S.D. Fla. 2025) ("On its own initiative, a court can impose an appropriate sanction on an attorney who violates Rule 11(b)." (citing Fed. R. Civ. P. 11(c)(1), (3))).

### A. BPI's Rule 11 Arguments about *Munsingwear* are Repeated Verbatim from BPI's Opposition

BPI's proposed sanctions motion merely reproduces, often verbatim, BPI's unpersuasive opposition to the Rule 60 motion and simply puts a "sanctions motion" title to it. Both documents state that "Munsingwear addresses what to do with a lower court decision when the case becomes moot while an appeal is pending before a higher court" and that vacatur is "only appropriate when a change in circumstances moots [an] issue while an appeal was pending—separate and apart from the result of the appeal itself." *Compare* Draft Mot. 12 *with* D.E. 469 at 10. Here, BPI cites only its Rule 60 opposition, *see* Draft Mot. 12 n.2, in which BPI did not identify a single case precluding ThermoLife's requested *Munsingwear* relief, D.E. 469 at 10–11 n.2. Repeating the same flawed arguments, particularly without any legal support, does not create evidence of a Rule 11 violation.

BPI's continued inability to identify any authority that precludes ThermoLife's requested *Munsingwear* relief confirms that the Rule 60 motion is entirely reasonable and, at a minimum, a protected argument for extending existing law. Rule 11(b)(2) expressly protects legal contentions supported by "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." In *Anderson*, 353 F.3d at 915–16, the Eleventh Circuit reversed sanctions where there was "scant on-point authority" on the issue and the court was "unable to conclude that only an unreasonable lawyer would have made these claims," even though the court had affirmed dismissal of those claims. Here, BPI still has not cited a decision holding that *Munsingwear* categorically precludes relief where an appellate disposition can be the basis for rendering a factual finding moot and unavailable for merits review. ThermoLife's Rule 60 motion asks the court to apply *Munsingwear* in a manner entirely consistent with the fundamental purpose of the *Munsingwear* doctrine.

Most importantly, the Draft Motion does not address *Munsingwear*'s central equitable premise that a party should not be burdened by an adverse determination that later becomes unavailable for merits review. That is precisely the injustice presented here that BPI does not engage with. ThermoLife has explained that *Munsingwear* is an equitable doctrine, D.E. 462 at 8–9, yet BPI never explains why equity should still permit an unreviewed finding to continue "spawning any legal consequences" after Defendants pursued every available avenue of review.

Additionally, if the now-mooted findings were being disputed in the context of a different case, applying the traditional test for collateral estoppel, the now-mooted fabrication findings would not receive issue-preclusive effect in a later litigation. When an appellate court affirms on an alternative ground, "issue preclusion no longer attaches to the ground on which the trial court decided the case, and instead attaches to the alternative ground on which the appellate court affirmed the judgment." *Jennings v. Stephens*, 574 U.S. 271, 278–79 (2015); *see also Khan v. U.S. Citizenship & Immigr. Servs.*, 781 F. App'x 977, 978 (11th Cir. 2019). Of course, this again does not mean, as ThermoLife has made clear, that ThermoLife is asking for any modification of the final conclusion on sanctions or the monetary sanction imposed. Instead, the narrowness of the Federal Circuit's ruling precludes a party from relying on the fabrication findings as having preclusive effect. Under normal circumstances, that should be enough, but BPI's misreading of the opinion here and its misplaced arguments in its opposition and its Draft Rule 11 Motion underscore the need for clarification via application of the *Munsingwear* doctrine.

As for BPI's Exhibit 1, the selected comparisons underscore the reasons why *Munsingwear* relief is appropriate. Each excerpt from the Rule 60 motion identifies a factual finding that was not decided on appeal before the Federal Circuit and that was not necessary for the court's narrow affirmance. For ease of reference, we refer to the excerpts based on the nine rows in the table in Exhibit 1 (referenced as "Rows 1-9").

**Row 1.** The excerpts in Row 1 go to the heart of what was left undecided by the Federal Circuit, *i.e.*, whether the License Agreement was fabricated or whether it was a good-faith effort to memorialize an earlier implied or oral patent license. Additionally, the excerpts from the court rulings include numerous assertions that are either legally incorrect or factually disputed and were never resolved on appeal.

For instance, the court stated that there is a "stark contrast between his purported 'memorialization' and that accepted by courts as legitimate in other intellectual property cases." D.E. 226 at 13. But that assertion is unsupported. The type of memorialization produced by ThermoLife is indeed typical. *See, e.g., MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1219 (11th Cir. 2020) (holding that a "nunc pro tunc assignment filed before" the action's filing date "with an effective assignment date before the action" is sufficient for standing); *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) ("This court has adopted the reasoning of those courts which have held that a copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio."); *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998). Throughout this litigation, BPI never has disputed that *MSP Recovery Claims*, *Imperial Residential Design,* and *Mas-Hamilton Group* support ThermoLife's contentions. *See, e.g.*, BPI Opp'n to Rule 60 Motion, D.E. 434 (failing to respond to citations to *MSP Recovery Claims*, *Imperial Residential Design,* and *Mas-Hamilton Group* on pages 18 and 19 of ThermoLife's Rule 60 motion); BPI Opp'n to Rule 60 *Munsingwear* Motion, D.E. 469 (failing to respond to citations to *MSP Recovery Claims*, *Imperial Residential Design,* and *Mas-Hamilton Group* on pages 13 and 14 of ThermoLife's Rule 60 *Munsingwear* motion); BPI Response Brief, *BPI Sports, LLC v. ThermoLife Int'l, LLC*, Nos. 2023-1068, -1112, -1625 (Fed. Cir. Sept. 6, 2023) (D.E. 35) (failing to respond to citations to *Imperial Residential Design* and *Mas-Hamilton Group* on page 76 of ThermoLife's Opening Brief).

Exhibit 1 also includes the following: "If no written license existed, then Defendant Kramer could have explained that an oral or implied license had existed, as he tried to convince the Court during the hearing." D.E. 226 at 15. That statement ignores the undisputed fact that Mr. Kramer did do precisely what the court said he should have done. When asked to do so, in response to BPI's interrogatory, ThermoLife provided a detailed explanation about the genesis of the License Agreement. ThermoLife explained that "Mr. Kramer created the Purchase and License Agreement between Muscle Beach Nutrition, LLC and ThermoLife International, LLC to memorialize in writing the oral agreement that was reached between Muscle Beach and ThermoLife." D.E. 143, Ex. 15 at 2. ThermoLife further explained that "[u]sing another purchase and license agreement from the same time period of early 2017 as a template, Mr. Kramer made the necessary edits to the document." *Id.* at 2-3. To date, BPI never has claimed that the interrogatory answer was in anway inaccurate or incomplete.

Missing as necessary context is that the production of the License Agreement was in response to an RFP, not an interrogatory. Thus, in March 2020, ThermoLife, through its former counsel, produced the document as a memorialization of the existing oral agreement.

When producing the document, ThermoLife had no reason to add any further context because BPI's RFP did not ask for more. Only later (on April 3, 2020) did BPI serve an interrogatory that asked for details about the preparation of the document.

Additionally, the contention that the RFP asked for ThermoLife to produce only "existing licenses" is not accurate. Rather, the document was produced in response to BPI's request for "[a]ll licenses to the ThermoLife patents, including licenses with any of the third parties named (or the associated products listed) on http://www.no3-t.com/patents/." D.E. 62-2 at 11. There was no instruction that the documents produced would only be "existing" documents.

**Row 2.** BPI does not and cannot dispute the factual accuracy of the motion excerpt in Row 2. It reads as follows: "Mr. Kramer even explained that he used 'one of Defendants' other license agreements in a Microsoft Word document' as a template to accurately capture the terms of ThermoLife's agreements from March 2017." Although Magistrate Judge Valle asserted that the "License Agreement did not reflect the actual terms purportedly governing the relationship between ThermoLife and Muscle Beach," this assertion is directly refuted by the uncontroverted sworn testimony of Muscle Beach Nutrition's former co-owner, Jeremy DeLuca. *See* D.E. 151, Ex. D at 1-2 (explaining his understanding that "Muscle Beach Nutrition, LLC would pay ThermoLife its typical market price" for the patented technology); *see also* D.E. 143, Ex. 15 at 2-3 (interrogatory response detailing how "Muscle Beach Nutrition would eventually pay ThermoLife for the raw materials that it provided once the company was [financially able to do so]").

**Row 3.** The third row of Exhibit 1 includes only the following: "The License Agreement was Not Relevant During Trial." Again, BPI has yet to explain how the License Agreement was probative of any claim or defense presented to the jury. That is all the more reason why the Rule 60 Motion was appropriate.

**Row 4.** The fourth row of Exhibit 1 includes only the following: "The only instance where BPI referenced the License Agreement during trial was its attempt at tarnishing Mr. Kramer's credibility . . . ." Yet, BPI fails to dispute this statement. BPI thus seemingly agrees with that statement, so it is unclear how BPI can rely on that factually accurate statement as a basis for its Draft Rule 11 Motion. D.E. 469 at 4 ("When Kramer elected to testify, he put his own credibility into issue, which is never irrelevant.").

**Row 5.** Row 5 contains two sentences excerpted from the Rule 60 motion, and both sentences are factually accurate.

First, "Defendants fully complied and produced all responsive discovery." This statement is completely accurate. BPI never has identified any discovery that was not produced with respect to the License Agreement.

"As part of its discovery responses, ThermoLife produced the License Agreement." Again, this statement is true, and BPI does not and cannot dispute it.

**Row 6.** Row 6 has two sentences, neither of which shows anything inaccurate about ThermoLife's Rule 60 motion.

"At this time, BPI had not served any discovery requests seeking information about the details surrounding any license agreement between ThermoLife and MBN."

One the second sentence, based on the discovery, ThermoLife was "obligated only to produce the requested documents."

**Row 7.** The statements in Row 7 relate to BPI's subsequent discovery request after ThermoLife produced the License Agreement. Again, each of the quoted sentences is factually accurate, and BPI does not contend otherwise.

**Row 8.** Row 8 contains only the following: "BPI did not contend that Defendants' responses were incomplete or misleading." Again, BPI never has contended that any of ThermoLife's discovery responses is incomplete or misleading. Instead, BPI argued that the License Agreement that was produced is a "fabrication." Of course, that accusation is the factual question that was left unresolved on appeal.

**Row 9.** For Row 9, BPI misunderstands the relevance of the sentences quoted from the motion. It does so by quoting a portion of the hearing transcript out of context and by failing to understand the Federal Circuit's affirmance. The two points relied upon by the Federal Circuit in affirming cover the same conduct that Judge Valle deemed to be in dispute and for which the parties were reasonably justified in opposing.

BPI's Exhibit 2 exactly reproduced the comparison chart from BPI's opposition to the Rule 60 motion that ThermoLife explained "merely juxtaposes the vacatur requests with the portions of the Federal Circuit's opinion, largely in parentheticals, describing this Court's findings." D.E. 472 at 5. The Federal Circuit did not affirm a finding when it simply summarized the district court's finding that "Mr. Kramer 'initially tried to pass' the License Agreement 'off as legit-imate to advance his case.'" The Federal Circuit's observation is in no way an adoption of that finding and is the exact finding that was disputed but not resolved on appeal. Similarly, the Federal Circuit's parenthetical that *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), held that "bad faith may exist where a 'fraud has been practiced upon [the court], or that the very temple of justice has been defiled'" is not a finding that ThermoLife practiced fraud upon the court by fabricating evidence.

Ultimately, and more importantly, the Draft Rule 11 Motion rests on a misunderstanding of the use of the phrase "even assuming." The phrase is an oft-used indicator that the court is not deciding the issue that follows the phrase. The Supreme Court has used it on multiple occasions across the years. *See, e.g.*, *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2407 (2024) ("Even assuming that the less stringent form of First Amendment review applies, Texas's law does not pass."); *Kerry v. Din*, 576 U.S. 86, 102 (2015) ("The Court need not decide that issue, for this Court's precedents instruct that, even assuming she has such an interest, the Government satisfied due process when it notified Din's husband that his visa was denied under the immigration statute's terrorism bar, § 1182(a)(3)(B)."); *Herrera v. Collins*, 506 U.S. 390, 430 (1993) (Blackmun, J., dissenting) (recognizing certain "[d]iscussion, of course, is dictum because the Court assumes, 'for the sake of argument in deciding this case'"); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 272–73 (1990) ("Even assuming such aliens would be entitled to Fourth Amendment protections, their situation is different from respondent's."); *Board of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91–92 (1978) ("Even assuming that the courts can review under such a standard an academic decision of a public

educational institution, we agree with the District Court that no showing of arbitrariness or capriciousness has been made in this case.").

Following the Supreme Court's lead, appellate courts use the phrase (along with equivalents thereof) with some regularity. *Shandler v. Off. of Pers. Mgmt.*, No. 2024-2323, 2026 WL 1599313, at *1 (Fed. Cir. June 4, 2026) ("But even assuming the latter, we determine that Mr. Shandler has failed to establish any sufficient basis for equitable tolling."); *Wang v. U.S. Postal Serv.*, No. 25-5301, 2026 WL 1700468, at *1 (D.C. Cir. June 4, 2026) ("Sovereign immunity bars appellant's claims based on appellee the U.S. Postal Service's alleged failure to deliver mail, even assuming that the Postal Service acted intentionally."); *Arrington v. Miami Dade Cnty. Pub. Sch. Dist.*, No. 25-13636, 2026 WL 1552129, at *2 (11th Cir. June 2, 2026) ("But even assuming Arrington could show excusable neglect based on these circumstances, neither the district court nor we can fashion an equitable exception to the jurisdictional time requirements."). Appellate courts also have recognized that any such assumption is mere dicta, and not an authoritative finding. *See, e.g.*, *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 330 (5th Cir. 2022) ("Because that case merely assumed, for the sake of argument, that such jurisdiction existed, its discussion is dicta."); *Othi v. Holder*, 734 F.3d 259, 265 n.3 (4th Cir. 2013) ("A point of law merely assumed in an opinion, not discussed, is not authoritative." (quoting *In re Stegall*, 865 F.2d 140, 142 (7th Cir. 1989))); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1275 n.26 (11th Cir. 2004) (observing that the lower court "merely assumed, and did not decide that the litigation privilege did not apply to settlement negotiations").

In more traditional writing, the Latin term *arguendo* is used in the place of or together with "even assuming" and similar wording. *See* Arguendo, Black's Law Dictionary 107 (6th ed. 1990) ("A statement or observation made by a judge or attorney as a matter of argument or hypothetical illustration, is said to be made *arguendo*."); *see also United States v. Rahimi*, 61 F.4th 443, 458 (5th Cir. 2023) ("It is unclear how long New Hampshire's 'going armed' law preserved its forfeiture provision, but assuming arguendo it persisted longer than the others, one outlier is not enough 'to show a tradition of public carry regulation.'" (quoting *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2142 (2022))); *see also Rest. L. Ctr. v. City of New York*, 90 F.4th 101, 114 (2d Cir. 2024) (observing that "Plaintiffs mistakenly rely on one line of dicta," in which the issue was merely "assum[ed], arguendo"); *Mazuka v. Rice Twp. Police Dep't*, 655 F. App'x 892, 898, 898 n.2 (3d Cir. 2016) (Smith, J., concurring) (observing that the Third Circuit has "never held that an affirmative defense is a relevant consideration in the probable cause analysis" and noting that the previous case "merely assumed arguendo that an affirmative defense was an appropriate consideration").

ThermoLife's reply in support of its Rule 60 motion explains how it is BPI that is mischaracterizing the Federal Circuit's decision. In sum, the basic premise of BPI's Rule 60 opposition and of its Draft Rule 11 Motion rests on an incorrect understanding of the phrase "even assuming."

### B. Rule 60(b)(6) is the Proper Avenue for Seeking *Munsingwear* Relief

BPI asserts that there are "[n]o [l]egitimate [g]rounds" for invoking Rule 60(b)(6) to seek equitable vacatur. Draft Mot. 13. That assertion not only is unsupported by any applicable case-law citation, but it directly contradicts Supreme Court and appellate precedent.

The Supreme Court has specifically identified Rule 60(b) as the mechanism through which a district court may consider equitable vacatur. In *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994), the Court stated that "even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for vacatur of a district-court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b)." Rarely has there been a clearer directive about the procedural path for achieving vacatur.

Numerous courts of appeals likewise have recognized that district courts may decide mootness-based vacatur requests under Rule 60(b)(6). *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121 (4th Cir. 2000) holds that the equitable considerations governing "appellate vacatur for mootness are also relevant to, and likewise largely determinative of, a district court's vacatur decision for mootness under Rule 60(b)(6)." *Am. Games, Inc. v. Trade Prods.*, Inc., 142 F.3d 1164, 1168 (9th Cir. 1998), similarly explains that "Rule 60 provides the basis for a district courts' vacation of judgments when the equities so demand."

These plain statements of law directly contradict BPI's assertion that there are "[n]o [l]egitimate [g]rounds" for invoking Rule 60(b)(6) to seek equitable vacatur. Draft Mot. 13. Whether the court ultimately adopts ThermoLife's application of *Munsingwear* is a question of the merits, and BPI does not cite a single case that precludes that application of Munsingwear in the context of a Rule 60 motion. Nor could it cite any such case law. In the end, offering such an unsupported legal contention that directly conflicts with Supreme Court and appellate precedent is not reasonable. *Cf. Collins v. Daniels*, 916 F.3d 1302, 1321 (10th Cir. 2019) (upholding Rule 11 sanctions where "Plaintiffs' standing arguments ignored controlling precedent"); *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990) (noting that legal claims are frivolous when they ignore established law). In the end, without citing a single decision, let alone controlling authority, negating the Rule 60 motion, it is completely inappropriate for BPI to claim that it is a frivolous motion.

**C. The Rule 60 Motion Was Not Filed for an Improper Purpose**

The Rule 60 motion was filed for the legitimate purpose of preventing ongoing collateral consequences from findings that are now moot. The motion's purpose tracks the objectives set forth in *Munsingwear* itself, which instructs courts to take appropriate action "to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." 340 U.S. at 40–41. *U.S. Bancorp* similarly explains that a party who seeks review but is "frustrated by the vagaries of circumstance" should not "in fairness be forced to acquiesce in the judgment." 513 U.S. at 25. BPI's acknowledgment that third parties increasingly have cited the challenged findings confirms the exact collateral consequences that the Rule 60 Motion is intended to remedy.

As with its opposition to the Rule 60 motion, BPI again offers no evidence to support its position that ThermoLife's request is in any way motivated by an improper purpose. Instead, BPI's only support for its serious allegations is that "it stands to reason" that ThermoLife's actions were improper. D.E. 469 at 12; Draft Mot. 15. BPI's speculation about Defendants' motivation, without a shred of evidentiary support, is not evidence of the subjective intent required by Rule 11(b)(1). *See Thompson*, 610 F.3d at 639 (observing that this inquiry is a "subjective analysis that will likely require testimony"); *United States v. Jose*,

131 F.3d 1325, 1328 (9th Cir. 1997) (finding that a party making "only a bald assertion that he 'feel[s] that the underlying reason for this motion'" is an improper purpose, "did not come close to meeting his burden").

Nor could BPI offer any evidence that the Rule 60 motion was intended to harass BPI, delay any proceeding, or needlessly increase litigation costs, because the Rule 60 motion was incapable of doing so. BPI was under no obligation to respond to ThermoLife's Rule 60 motion as ThermoLife's requested relief would have no effect on BPI if granted. Any delay or increase to litigation costs on BPI is solely a result of BPI's own choice to engage in an unnecessary dispute.

Likewise, BPI again offers no caselaw citations to establish that ThermoLife's efforts to apply *Munsingwear* here can be assumed to be motivated by an improper purpose. ThermoLife's Munsingwear request is, at a minimum, a request to extend or modify existing law. "[T]he exercise of one's legal rights to have a dispute resolved in federal court is not an abuse of the judicial process" and is not an improper purpose. *Indianapolis Colts v. Mayor & City Council of Baltimore*, 775 F.2d 177, 182 (7th Cir. 1985).

The timing of the Rule 60 motion confirms its stated purpose rather than BPI's accusation of bad faith. Defendants pursued appellate review through rehearing and certiorari, and they filed the motion approximately four months after the Supreme Court denied certiorari.

**D. BPI's Demanded Relief Itself is Frivolous**

BPI's demanded relief is frivolous on numerous levels. In fact, the demanded relief is so meritless that it suggests an alternative motivation behind the Draft Rule 11 Motion. Indeed, it seeks relief that is not permitted by the authorities under which BPI seeks such relief.

Rule 11(c)(4) provides that a sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Yet BPI seeks all "attorneys' fees and costs incurred by BPI since the entry of the Sanctions Order"—*i.e.*, fees and costs for over five years since the Sanctions Order was entered on July 14, 2021. This egregious request would notably include all fees and costs for the five-day trial in October 2021. The Draft Rule 11 Motion cites no authority to support such an outrageous demand. Nor does the Draft Rule 11 Motion address the application of Rule 11(c)(4) and its imposition of limits on applied sanctions. In addition, it obviously would be inappropriate to award any fees for anything other than BPI's response to the Rule 60 motion.

BPI's demand for all fees and costs since July 14, 2021, suggests that the Draft Rule 11 Motion is a poorly veiled tactic to revive BPI's now-withdrawn and mooted fees motion in this case. As you know, BPI filed a motion for fees and costs on December 23, 2021, D.E. 386, and renewed that motion on October 20, 2022, D.E. 423. When the Federal Circuit reversed the ruling on ThermoLife's JMOL motion, D.E. 446, ThermoLife became the prevailing party, and BPI lost its only argument for attorney's fees. Accordingly, BPI properly did not renew its motion for fees because only ThermoLife is the prevailing party.

BPI's other requested sanctions are equally untethered to the alleged violation. Specifically, BPI astoundingly seeks an undisclosed penalty paid to the court, terminating

sanctions for unrelated pending motions, a bar on future filings, and the revocation of *pro hac vice* admissions. As is par for the course, BPI provides no support for such excessive requests.

The Draft Rule 11 Motion also does not address how any requested monetary sanction complies with Rule 11(c)(5)(A). To the extent that BPI seeks monetary sanctions against Defendants under Rule 11(b)(2), such a request is specifically precluded by Rule 11(c)(5)(A), which prohibits a monetary sanction "against a represented party for violating Rule 11(b)(2)." BPI cites *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300 (11th Cir. 2021), but that case does not support BPI's flawed draft motion. There, the sanctioned plaintiff was the "mastermind" of the scheme, and he personally provided direct instructions to remove specific language from a draft, personally made "misrepresentations" to the court, and shared in a "50-50 split" in the legal fees obtained by his attorney in settlements for frivolous lawsuits. *Id.* at 1315. Accordingly, *Johnson* is inapplicable to the facts here.[1]

**E. BPI Has No Interest in Contesting the Rule 60 Motion**

There can be no doubt that BPI lacks any vested interest in the outcome of ThermoLife's Rule 60 motion. BPI appears to lack standing to dispute the requested relief. Even if BPI does have standing, it is plain that granting ThermoLife's narrow motion will not have any direct impact on BPI, and thus BPI has no apparent reason to object to the motion.

"Standing requires: (1) an injury in fact; (2) traceability; and (3) redressability." *Intellectual Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 813 (Fed. Cir. 2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). BPI has not provided any explanation on how it can meet any of the three requirements. Indeed, granting ThermoLife's motion would not result in any injury in fact to BPI.

Moreover, BPI does not dispute that granting the Rule 60 motion will have zero direct impact on BPI. Defendants requested vacatur of narrow specific factual findings that have no impact on the sanctions award and leave the remaining findings undisturbed. Even if the Court granted every aspect of the requested relief, BPI would retain the full benefit of the monetary sanctions award.

BPI had no obligation or duty to file a response to the motion. BPI certainly was not required to file a sanctions motion merely because ThermoLife advanced a good-faith request for limited equitable relief under *Munsingwear*. BPI thus voluntarily has chosen to undertake unnecessary legal work. Any expenses attributable to BPI's voluntary litigation choices cannot be a basis for seeking sanctions, and BPI's voluntary decision to file an unnecessary opposition does not qualify as sanctionable multiplication of the proceedings by ThermoLife or its counsel.

BPI's voluntary expenditures cannot and do not amount to prejudice and cannot be used to manufacture a basis for recovering fees. Rule 11(c)(4) permits recovery only of expenses "directly resulting from the violation," and the filing of a nonfrivolous motion that

[1] If anything, *Johnson* suggests that an inquiry may be warranted into the contingent relationship between BPI and its counsel and whether BPI counsel is the driving force behind its flawed Draft Rule 11 Motion. *See infra*.

would not disturb BPI's award supplies no such violation. Indeed, BPI's Draft Rule 11 Motion seeks to reward escalation rather than deter abusive litigation conduct as Rule 11 is intended to do. *See* Fed. R. Civ. P. 11(c)(4) (providing that a sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated"). Under the Draft Motion's theory, BPI should be rewarded for its unnecessary escalation with an award of fees it chose to incur by opposing a motion that does not directly affect BPI and by pursuing a frivolous sanctions motion. Such a theory has no merit.

**F. Mr. Hillyer's Contingent Interest May Be a Motivating Factor**

Although it is clear that BPI has no vested interest in the outcome of ThermoLife's Rule 60 motion, one possible motivating factor for BPI's opposition—as well as its Draft Rule 11 Motion—is Mr. Hillyer's financial interest in the outcome of this and possibly other litigation. If that were the case, it would make Mr. Hillyer's financial stake in the litigation a relevant issue for discovery.

As ThermoLife explained elsewhere, the bankruptcy proceeding revealed for the first time that BPI retained Mr. Hillyer on a contingency basis. D.E. 448 at 15 ("BPI counsel's conduct is perhaps better understood in light of his recently revealed contingent interest in BPI."); D.E. 448-6, Ex. 103 (identifying "Hillyer Legal PLLC" as "Contingent"); D.E. 454 at 3 ("BPI counsel also does not dispute his contingent interest in BPI—further motivation for him to litigate vexatiously and unreasonably, hoping for a financial windfall.").

In order to avoid further unnecessary disputes before the court, ThermoLife asks that BPI confirm whether its counsel is undertaking the current legal work in this matter on a contingency basis or is being paid on an hourly basis.

**G. The Recent Conviction of Jared Wheat May Be a Motivating Factor**

The blatant laws with the Draft Rule 11 Motion suggest another concern: Jared Wheat's recent conviction and upcoming sentencing as a possible motivating factor.

As you know, Mr. Wheat, along with his company Hi-Tech Pharmaceuticals, Inc., was convicted of wire fraud in November 2025.

> Following a six-week trial, Jared Wheat and his dietary supplement company, Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), were convicted by a federal jury of wire fraud after fabricating documents to deceive customers into believing that the company was certified as compliant with industry manufacturing standards. Hi-Tech, which is headquartered in Norcross, Georgia, was also convicted for laundering millions of dollars in proceeds from the fraudulent scheme.
>
> "After two prior federal felony convictions, Wheat yet again put profits over product quality and consumer safety by forging documents purporting to show that an independent, third-party audit company had certified Hi-Tech as complying with Good Manufacturing Practices. As a result of the defendants' deceit, Hi-Tech received millions of dollars from customers who relied on the fabricated documents," said U.S.

> Attorney Theodore S. Hertzberg. "The defendants' fraudulent scheme was uncovered through years of dedicated investigation and collaboration among law enforcement partners, and the verdict signals that companies that lie will face stern consequences."[2]

As you also know, Mr. Wheat's company Hi-Tech assumed control of BPI through the bankruptcy proceeding. *See, e.g.*, Hi-Tech Pharmaceuticals, *BPI Sports and Hi-Tech Pharmaceuticals Complete First Prepackaged Chapter 5 and Promptly Emerge Positioned for Long-Term Growth*, PR Newswire (Dec. 1, 2023).[3] We also understand that Mr. Wheat has been involved in decision-making for BPI's litigation with ThermoLife. Ex. 2 at 6, *ThermoLife International, LLC v. BPI Sports, LLC*, No. 23-15903 (9th Cir. Sept. 14, 2026) (D.E. 53-3) (Jared Wheat signing a legal representation engagement agreement on behalf of BPI dated January 19, 2024); Ex. 4 at 6, *ThermoLife International, LLC v. BPI Sports, LLC*, No. 23-15903 (9th Cir. Sept. 14, 2026) (D.E. 53-5) (Jared Wheat signing a legal representation engagement agreement on behalf of BPI dated July 8, 2025). From that information, we reasonably understand that Mr. Wheat is likely involved in decision-making in the present case, including with respect to the Draft Rule 11 Motion. If our understanding is not correct, please let us know.

As stated above, Mr. Wheat's company was "convicted for laundering millions of dollars in proceeds from the fraudulent scheme." If the consequences of that criminal activity are in any way a motivating factor behind BPI's opposition to the Rule 60 motion or behind the Draft Rule 11 Motion, such a motivation would be improper, and it would be highly relevant to the correct resolution of BPI's Draft Motion, if filed.

### III. BPI's Repeated Tactic of Improperly Threatening Sanctions

One additional point is worth noting. BPI goes back to its bag of tricks by again seeking the "revocation of the pro hac vice admissions of Mr. Dowd and Mr. Scheffel." This is not the first time BPI counsel has made this threat. D.E. 448-2 at 23 (responding to ThermoLife's identification of BPI's "vexatious and unreasonable litigation conduct" by stating: "if this behavior continues, we will move to have your *pro hac vice* admission revoked"). There is no basis for the Court to do so.

### IV. BPI's Invocation of 28 U.S.C. § 1927 Is Meritless

BPI also invokes 28 U.S.C. § 1927 (as well as the court's inherent authority), but each source of sanctioning authority imposes distinct and demanding standards. The Eleventh Circuit has expressly cautioned against "blurr[ing] the lines between the inherent power standard and the standard used for Rule 11 and § 1927 sanctions" as they are "not governed by the same standard." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218,

---

[2] U.S. Dep't of Justice, *Two-Time Convicted Felon CEO and His Dietary Supplement Company Convicted of $4.7 Million Fraud Scheme* (Nov. 24, 2025), https://www.justice.gov/usao-ndga/pr/two-time-convicted-felon-ceo-and-his-dietary-supplement-company-convicted-47-million.

[3] https://www.prnewswire.com/news-releases/bpi-sports-and-hi-tech-pharmaceuticals-complete-first-prepackaged-chapter-5-and-promptly-emerge-positioned-for-long-term-growth-302002884.html.

1223 n.4 (11th Cir. 2017); *see also J.C. Penney Corp. v. Oxford Mall, LLC*, 100 F.4th 1340, 1349 n.4 (11th Cir. 2024).

As the Eleventh Circuit observed in *Peterson v. BMI Refractories*, 124 F.3d 1386 (11th Cir. 1997), the statute's plain language imposes three essential requirements for an award of sanctions under § 1927:

> First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.*, the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

*Id.* at 1396; *see also Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).

The Eleventh Circuit has "consistently held that an attorney multiplies proceedings 'unreasonably and vexatiously' within the meaning of the statute only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong & Amlong,* 500 F.3d at 1239 (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)); *see also Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) ("'Bad faith' is the touchstone.").

The statute considers whether the action was objectively reckless even if the attorney does not act knowingly and malevolently. In *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993), the Eleventh Circuit held that an attorney's conduct was "tantamount to bad faith" when he concealed evidence "either carelessly or deliberately." *Id.*

The attorney's objective conduct is the focus of the analysis, but the attorney's subjective state of mind can frequently be an "important piece of the calculus" because "a given act is more likely to fall outside the bounds of acceptable conduct and therefore be 'unreasonabl[e] and vexatious[]' if it is done with a malicious purpose or intent." *Amlong & Amlong*, 500 F.3d at 1241. As the Eleventh Circuit explained in *Amlong & Amlong*:

> Thus, an attorney's conduct must be particularly egregious to warrant the imposition of sanctions—the attorney must knowingly or recklessly pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim. If the attorney's misconduct meets this high standard, the district court may order the attorney to pay the "costs, expenses, and attorneys' fees reasonably incurred" because of the attorney's misconduct—that is, the excess costs that the attorney's multiplication of proceedings has added to the cost of the litigation. *See* 28 U.S.C. § 1927; *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997) (explaining that sanctions under § 1927 "must bear a financial nexus to the excess proceedings").

500 F.3d at 1242.

BPI's Draft Motion addresses none of the applicable standards or Eleventh Circuit guidance as applied to the facts of this case. It offers no reasoned basis for its contention that § 1927 was violated.

**V. BPI's Invocation of Inherent Authority is Meritless**

BPI's single paragraph on inherent authority is likewise meritless and frivolous. It does not apply the applicable standard to the present facts and offers no reason why the court should invoke its inherent authority under the circumstances presented by ThermoLife's meritorious Rule 60 motion. To begin with, "[c]ourts should rely on the Federal Rules of Civil Procedure for sanctions before turning to their inherent powers." *ByoPlanet*, 792 F. Supp. 3d at 1351 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)).

A court may exercise this power to sanction a party who has acted in bad faith after making such a finding. *Chambers,* 501 U.S. at 45–46; *see also Purchasing Power*, 851 F.3d at 1223. "The inherent power must be exercised with restraint and discretion." *Purchasing Power*, 851 F.3d at 1225. It is a remedy "for rectifying disobedience, regardless of whether such disobedience interfered with the conduct of the trial." *Id.* Moreover, "in the absence of direct evidence of subjective bad faith, this standard can be met if an attorney's conduct is so egregious that it could only be committed in bad faith." *Id.* at 1224–25.

Here, in its Draft Motion, BPI identifies no direct evidence of subjective bad faith. Nor does BPI identify evidence that shows an attorney's conduct to be so egregious that it could "only be committed in bad faith." In short, the Draft Motion's request to invoke inherent authority cannot be taken seriously, and it should be rejected out of hand if BPI decides to file such a frivolous motion.

**VI. None of BPI's Cited Caselaw Supports Its Contentions for Sanctions**

None of the cases cited in BPI's letter offer any support for BPI's contentions that sanctions are warranted based on ThermoLife's Rule 60 motion. We provide a brief synopsis and explanation why none of the cited cases support BPI's contention in the accompanying attachment. To the extent that any cited case is not explicitly addressed here, it is because those cases are even further afield than the cases detailed in the attachment.

**VII. Conclusion**

We respectfully ask that you fully consider the points raised in this letter. The points are fully responsive to the points raised in the Draft Rule 11 Motion, and this letter should convince any reasonable attorney that the arguments raised in the Draft Rule 11 motion are entirely meritless. To the extent that you have any questions about the points in this letter, we can be available to meet and confer by phone at your convenience.

Sincerely,

Matthew J. Dowd

# Attachment

DOWD SCHEFFEL PLLC

1717 Pennsylvania Avenue, NW
Suite 1025
Washington, D.C. 20006
(202) 559-9175
https://www.dowdscheffel.com

**VI. None of BPI's Cited Caselaw Supports Its Contentions for Sanctions**

None of the cases cited in BPI's letter offer any support for BPI's contentions that sanctions are warranted based on ThermoLife's Rule 60 motion. We provide below a brief synopsis and explanation why none of the cited cases support BPI's contention. To the extent that any cited case is not explicitly addressed here, it is because those cases are even further afield than the cases detailed below.

*Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344 (S.D. Fla. 2005). In this post-trial claims-administration proceeding, Exxon submitted thousands of answers asserting numerous affirmative defenses. The district court described those filings as follows:

> In its Exemplar, Exxon listed fifty-two potential affirmative defenses. It is significant to note that Exxon did not admit in any of the 8,912 answers that it owed one dollar to any claimant, even in those claims as to which it otherwise admits the identity of the claimant as a dealer and the time periods in which the claimant operated an Exxon service station. Leaving aside issues it wished to reserve for further appeal, Exxon defenses ranged from the most trivial of objections, such as misspellings and omitted middle initials, to the assertion, without a stated factual basis, in each answer that every claim "does not invoke a good faith amount in controversy in excess of $50,000." Exxon asserts in every claim as an affirmative defense that the claim may belong to another person without identifying the alternative owner or the good faith basis for this defense. In connection with its set-off-from-voidable-release claim, Exxon's answers even reference a demand for costs and statutory attorney's fees under the laws of the States of Texas, Arizona, and Arkansas regardless of the claimant's store location.

*Id.* at 1360.

The court further found that:

> It is apparent to this Court that the form of Exxon's answer is intentionally structured to confuse, obstruct and delay the expeditious determination of claims" and that Exxon's position papers "purposefully attempted to lead the Special Master, who is new to these proceedings, into error by advocating arguments that it lost at trial and on appeal." The court concluded that Exxon had "in bad faith attempted to make a 'judicial train wreck' of the claims administration process" and imposed sanctions based on "a cynical plan to prolong this litigation.

*Id.*

*Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230 (11th Cir. 2007). This is a discrimination case where the plaintiff had lied under oath during her deposition (which totaled some 1,200 pages), and then her counsel submitted "an unusually long errata sheet—some 63 pages detailing a total of 868 changes to Norelus's deposition testimony." *Id.* at 1235. In view of that, the court ordered that the plaintiff's deposition be reopened. During the second deposition, the plaintiff's conduct was worse.

> Norelus's second deposition spanned three days in September 1996. Her behavior was again erratic and at times inappropriate. Finally, after one particularly insolent answer, the defendants' attorneys adjourned the deposition. On October 16, 1996, at the defendants' request, the district court entered another order specifying that the costs of reopening the deposition were jointly payable by Norelus and her attorneys.

*Id.* at 1236. Even with the conduct, the magistrate judge rejected the request for sanctions. The district court overruled the magistrate judge's ruling, but then the Eleventh Circuit reversed.

> Our holding is simply this: the district court abused its discretion and clearly erred when it squarely rejected the magistrate judge's findings of fact and credibility determinations and substituted its own, without hearing so much as a single witness at a sanctions hearing. We do not mean to imply that it would have been an abuse of discretion for the district court to have imposed sanctions even in the absence of subjective bad faith. That issue is simply not before us today.

*Id.* at 1251.

*Baker v. Alderman*, 158 F.3d 516 (11th Cir. 1998). Here, the Eleventh Circuit affirmed the district court's award of sanctions. Plaintiff filed claims including wrongful discharge and due violations of due process for an alleged termination but had actually resigned from his position when he ran for public office and "took an oath stating that he 'had resigned from any office from which he [was] required to resign pursuant to Section 99.012 Florida Statutes'" *Id.* at 519–20.

The Eleventh Circuit noted the district court's findings that "Baker's counsel was provided notice 'on several occasions that his case had no legal basis and was frivolous' and

concluded that '(a)ny reasonably knowledgeable attorney would know that there is a strong possibility that such response along with a grant of summary judgment in favor of defendant would more than likely trigger a Rule 11 motion.'" *Id.* at 525.

*Barnes v. Dalton*, 158 F.3d 1212 (11th Cir. 1998). Here, the Eleventh Circuit affirmed a finding of bad faith supporting inherent power sanctions. The district court "found that the following constituted bad faith conduct: (1) repeatedly filing a complaint containing claims which plaintiffs' counsel knew or should have known were time-barred; (2) the repeated failure to perfect service upon the defendant coupled with the filing and pursuit of a motion for default in spite of the knowledge that service had not been perfected; (3) repeatedly filing a complaint which did not comply with local rule 23.1; and (4) repeatedly filing a complaint containing claims of pattern and practice and disparate impact racial discrimination without any evidence to support such theories of recovery." *Id.* at 1213–14. On appeal, the plaintiff provided "no explanation" for the second and third district court findings and the Eleventh Circuit noted that the plaintiff "pointed to nothing in the record that was before the district court which convinces us that the court's conclusion was an abuse of discretion." *Id.* at 1214–15.

*Bilal v. Driver*, 251 F.3d 1346 (11th Cir. 2001). Here, "Jamaal Ali Bilal, a pro se prisoner, filed suit, under 42 U.S.C. § 1983, against prison officials." *Id.* at 1347. The appeals court concluded that, "[g]iven the district court's obvious and reasonable doubt of Plaintiff's factual allegations coupled with the minimal likelihood that Plaintiff stated a claim at all, we cannot say that the district court abused its discretion in dismissing Plaintiff's complaint as frivolous." *Id.* at 1350.

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533 (1991). The Supreme Court "h[e]ld today that Rule 11 imposes an objective standard of reasonable inquiry on represented parties who sign papers or pleadings." *Id.* at 554. The Court had "no occasion to determine whether or under what circumstances a nonsigning party may be sanctioned." *Id.*

*Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001)), *abrogated on other grounds, recognized by Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 fn. 10 (11th Cir. 2018). In this medical malpractice action, the Eleventh Circuit reversed Rule 11 sanctions on the plaintiff. The court noted that the district court stated that "'it was the decision of plaintiff's counsel to expand this litigation beyond the scope of that pled by her original attorney in state court'; as such, it is clear that Manov was not involved in the management of her case or the decisions that resulted in the actions the court found improper under Rule 11". *Id.* at 1120. Accordingly, "Manov was not the mastermind behind the frivolous litigation." *Id.*

*Collar v. Abalux, Inc.*, No. 16-20872, 2018 WL 3328682 (S.D. Fla. July 5, 2018). Here the district court found the following to be sanctionable conduct where plaintiffs "submit[ed] a motion referencing charts and graphs and then fail[ed] to advise the Court that these documents are factually incorrect after learning of the errors," "clung to an incorrect legal theory and insisted that the accrual method must be used," and "repeatedly and stridently urged an incorrect legal argument—that the accrual method was mandatory." *Id.* at *22–23.

*Davis v. Carl*, 906 F.2d 533 (11th Cir. 1990). Here, the Eleventh Circuit "agree[d] with appellants" and held "that the district court's imposition of sanctions was improper." *Id.* at 534.

*Diaz v. First Marblehead Corp.*, 643 F. App'x 916 (11th Cir. 2016). In this unpublished case, the Eleventh Circuit affirmed a finding that a claim was meritless and frivolous.

> Yet, here a simple reading of the statute underlying Diaz's claim reveals that the amended complaint employed an objectively frivolous legal theory. Specifically, Diaz's likelihood of success depended on her assertion that AES was a debt collector. Yet, Diaz's factual assertion regarding AES's relationship to the loan makes it clear to anyone who has read the statute that AES was not a debt collector, as the statute defines that term. That is, § 1692a(6) excludes from "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). From the facts alleged in the amended complaint, the debt was clearly not in default at the time AES began servicing it; thus, AES could not be a "debt collector."

*Id.* at 922.

Further, "[t]he magistrate judge's report and recommendation, adopted by the district court, gave as reasons for imposition of Rule 11 sanctions the fact that Turner had pursued, and then abandoned, a similar theory in the earlier Soto case. The R & R concluded that through his litigation of that earlier case, Turner had necessarily been made aware, through the defendant's motion to dismiss, that the text of § 1692a(6) does not support the extension of liability to a loan servicer." *Id.* at 921–22.

*Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987). This en banc case did not rule on the merits of sanctions. Instead, "[t]he court took this case en banc to consider procedures and standards for the imposition of sanctions under Rule 11, Fed. R. Civ. P., as amended in 1983." *Id.* at 1553.

*Dzwonkowski v. Dzwonkowski*, No. 05-0544, 2008 WL 2163916 (S.D. Ala. May 16, 2008). Here the court awarded sanctions under § 1927 for extensive frivolous filings and abusive practices that are not alleged by BPI

> Here, the record reveals that the Original and First Amended complaints, were frivolously filed. *See infra*. Indeed, the Original Complaint was due to be dismissed and the First (and Second) Amended complaints were simply attempts to salvage the federal litigation from dismissal. Likewise, the history of this litigation reveals that Plaintiff's counsel filed numerous frivolous and meritless motions and other papers including: the motion for a hearing on claims one and two (Doc. 13); motion for order to show cause (Doc. 19); motion for a hearing (Doc. 20); motion for sanctions (Docs.31, 39); motion for expungement (Doc. 41); motion for sanctions (Doc. 42); motion for "churning" the federal

> litigation (Doc. 43); and motion for leave to file motion to realign (Doc. 57). And notably, many of these motions were filed after this Court ordered the parties to refrain from filing any more pleadings. (Doc. 38). Although Plaintiff's counsel might have had a good faith basis in law and fact for filing some of Plaintiffs' claims, initially, it became quite clear, very soon after the Complaint was filed, that his claims were frivolous. Plaintiff's claims appear to be an attempt to simply re-litigate the issues surrounding the State Court litigation in this Court. Hence, Defendants commencement of filing motions to dismiss. And Plaintiff's numerous amendments, on the heels of these motions to dismiss, evidence his recasting of his claims in order to avoid an adverse ruling on the merits. Significantly, this Court has already concluded as much. (Doc. 67).

*Id.* at *21.

Given that "lack of merit, alone, is not enough to trigger Section 1927 sanctions," the district court also found: "that Plaintiff's repeated amendments to his Original complaint exhibited 'dilatory motive' and a 'moving target' approach to this federal litigation, 'interfered with this Court's interest' in addressing the merits of his claims and rendering a final determination, and 'wasted' this Court's time." *Id.*

*In Re: Brican America LLC*, No. 10-md-02183, 2012 WL 12864984 (S.D. Florida, March 29, 2012). Here, following the granting of a motion to compel, the district court noted that "Magistrate Judge Simonton found 'the lack of candor by [counsel for] NCMIC concerning the completeness of its prior production [ ] disturbing[.]' Order, p. 6 [DE-280]. This Court too was disturbed and independently reviewed the file in question as well as counsel for NCMIC's representations in pleadings and open court concerning the contents of that file." That fact pattern is not relevant to BPI's Draft Motion.

*Johnson v. 27th Avenue Caraf, Inc.*, 9 F.4th 1300 (11th Cir. 2021). This case has no applicability to ThermoLife's case.

> This consolidated appeal asks us to review the time-consuming and detailed inquiry undertaken by the District Court into the actions of a litigant who filed lawsuits purporting to advance disability rights. As a result of his investigation, the judge came to believe that the overriding purpose of these disability lawsuits was to collect payments in an unethical fee-sharing arrangement between the litigant and the lawyer who represented him. Specifically, this is the appeal from two lawsuits filed by Alexander Johnson against gas station owners in the Southern District of Florida. Mr. Johnson is hearing impaired and filed a two-count complaint against 27th Avenue Caraf, Inc., d/b/a Caraf Oil, asserting that it failed to provide closed captioning or a similar capability that would allow him to comprehend the television media features on gasoline pumps. Mr. Johnson alleged that this failure to provide access to the hearing impaired violated Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") as well as the Florida Civil Rights Act, Fla. Stat. § 760.08 ("FCRA"). Less

> than a week after filing his suit against Caraf Oil, Mr. Johnson filed a nearly identical two-count complaint against Ocaris Management Group Inc., d/b/a U-Gas East Flagler, raising the same allegations. We refer to Mr. Johnson's case against 27th Avenue Caraf as "Caraf" and to his case against Ocaris Management Group as "Ocaris."
>
> These were not Mr. Johnson's only cases. Indeed, there were 26 identical cases brought by Johnson in the Southern District of Florida against gas station owners located throughout Miami-Dade and Broward counties. They all complained of the failure to provide closed captions in the videos that played at gas pumps, and Scott Dinin represented Mr. Johnson in each of these 26 cases. After holding hearings and reviewing documents relating to the 26 cases, the District Court found that Mr. Johnson and Mr. Dinin were running an illicit joint enterprise, consisting of filing frivolous claims, knowingly misrepresenting the time they counted as billable, making misrepresentations to the court, and improperly sharing attorney's fees. The District Court imposed sanctions against both Mr. Johnson and Mr. Dinin, including monetary penalties, community service, and an injunction prohibiting them from filing future ADA claims without approval.
>
> Mr. Johnson and Mr. Dinin both appealed. After careful consideration, and with the benefit of oral argument, we conclude Mr. Dinin lacks standing and dismiss his appeal for lack of subject matter jurisdiction. As for Mr. Johnson, we affirm the sanctions imposed against him in full.

*Id.* at 1306-07.

*Johnson v. Comm'r of Internal Revenue*, 289 F.3d 452 (7th Cir. 2002). In this case, Judge Posner started the Seventh Circuit's opinion with a synopsis that shows why the case has no applicability here.

> Attorney Joe Alfred Izen, Jr., has appeared in the United States Tax Court in many cases since the early 1980s. A number of them, including the recently decided *Muhich v. Commissioner*, 238 F.3d 860 (7th Cir.2001), involve the same script: the IRS determines a deficiency arising from the use of sham trusts established for the taxpayer by a promoter; the taxpayer petitions for redetermination of the deficiency; Izen appears for the taxpayer; the case drags on, with the taxpayer sometimes resisting discovery; the court usually finds the taxpayer's arguments frivolous and either threatens or imposes sanctions. *Oelze v. Commissioner*, 723 F.2d 1162 (5th Cir.1983) (per curiam); *Watson v. Commissioner*, 690 F.2d 429 (5th Cir.1982) (per curiam); *Muhich v. Commissioner*, 77 T.C.M (CCH) 2143 (1999), aff'd, 238 F.3d 860 (7th Cir.2001); *Ripley v. Commissioner*, 53 T.C.M. (CCH) 262 (1987); *Dixon v. Commissioner*, 79 T.C.M. (CCH) 1803, 1810 (2000).

*Id.* at 454.

*Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692 (11th Cir. 1995). This case was a products liability case. The plaintiff brought the case based on a helmet that was manufactured in 1985 but the defendant "IRH was not incorporated until 1986" and thus "could not have manufactured the helmet." *Id.* at 693. The sanctions were based on a deficient pre-suit investigation. The plaintiff's attorney asserted that "his pre-filing investigation was 'superlative.'" *Id.* In addition, the plaintiff never responded to the defendant's summary-judgment motion. *Id.* at 696. The appeals court provided the following summary.

> The district court, however, found that Roseman did not actually believe that the helmet was manufactured in 1986 when he signed the complaint. In support of its findings, the district court noted that Roseman never sought discoverable information for helmets manufactured that year. The court also found that a reasonable investigation, such as reviewing IRH's certificate of incorporation, would have shown that IRH was not a proper party if the helmet was made before 1986. In its findings, the district court concluded that Rule 11 obligated counsel to conduct a reasonable inquiry as to whether IRH was a proper party, that counsel failed to conduct such an inquiry, and that sanctions were mandatory under the circumstances.

*Id.* (footnote omitted).

*Kapco Mfg. Co., v. C & O Enterprises, Inc.*, 886 F.2d 1485 (7th Cir. 1989). For this per curiam decision, a short excerpt highlights the lack of relevance to the present case.

> Following the settlement pretrial conference, Kapco and [plaintiff's counsel] Friedman refused to cooperate with defendants' counsel in drafting the settlement agreement and consent judgment. Instead, less than two months later Kapco returned to court alleging that the defendants had breached the settlement agreement. Kapco sought an order reinstating the case, an order declaring that the defendants had breached the agreement, and an order restraining or enjoining the defendants from further breach of the agreement. Judge Bua, who handled the matter in Judge Rovner's absence, ruled that the dispute between the parties did not warrant reinstatement of the case or injunctive relief at that time and stated that the matter could be resolved by a motion to enforce the settlement agreement. He therefore refused to reinstate the case and ordered the parties to submit a consent judgment as previously ordered. Judge Bua stated that, in the event the parties failed to comply with this order, the transcript of the pretrial conference would serve as the final settlement agreement. Judge Bua ordered the defendants to provide Kapco with an accounting of their sales relative to the dispute and instructed Kapco that after receiving this accounting it could submit a motion for summary judgment on the issue of damages. Kapco was also instructed that with leave of court it could engage in appropriate discovery to ensure compliance with the settlement agreement. *Kapco Mfg. Co. v. C & O Enters., Inc.*, 605 F. Supp. 253, 257 (N.D. Ill. 1985).

> Despite these instructions by the district court, Kapco failed to cooperate with the defendants in submitting a consent judgment, failed to seek enforcement of the settlement agreement, and failed to bring a motion for summary judgment on the issue of damages caused by the purported breach. Instead, Kapco filed objections to the defendants' accountings (which the district court later determined were frivolous), filed a motion to take discovery from nonparties (which the district court later determined sought information not relevant to the dispute), and filed a motion for reconsideration of the order denying reinstatement of the case (which the district court summarily denied). In ruling on these motions, the district court again noted the failure of the parties to submit a final settlement agreement and therefore ordered that the transcript of the pretrial conference would serve as the final settlement agreement.

*Id.* at 1489.

*Macort v. Prem, Inc.*, 208 Fed. Appx. 781 (11th Cir. 2006). In this non-precedential case, the Eleventh Circuit upheld a denial of sanctions. During the plaintiff's deposition, it became clear that she lacked standing. The defendant moved to dismiss and sought fees and sanctions, asserting that counsel had failed to conduct a sufficient pre-suit investigation. The plaintiff's counsel then proposed a joint dismissal, but the defendant declined because it wanted its own fee and sanctions motion considered.

The Eleventh Circuit held: "Budget's failure to give Macort the twenty-one day safe harbor period forecloses Rule 11 sanctions for the initial filing of a frivolous suit. As a result, we can consider only whether § 1927 sanctions are merited by conduct following the initial filing of this suit." *Id.* at *4.

The Eleventh Circuit affirmed the denial of § 1927 sanctions given that "Budget cannot show that Macort's counsel improperly multiplied the proceedings. Prior to Budget's appeal, this was a fairly small, simple case with only a complaint, initial disclosures, and limited discovery. As soon as Macort's lawyers were convinced that she lacked standing, they sought dismissal. Macort's attorneys did not file voluminous or multiple pleadings, and they filed only one lawsuit by Macort against Budget. None of the asserted additional facts changes that." *Id.* at *5.

*Massengale v. Ray*, 267 F.3d 1298 (11th Cir. 2001). In this per curiam decision, the issue "of first impression in any circuit" was "whether a pro se litigant may be awarded attorneys' fees as sanctions under Federal Rule of Civil Procedure 11." *Id.* at 1299. That has no application here, as ThermoLife is represented by well-regarded counsel.

*McDowell v. Seaboard Farms of Athens, Inc.*, No. 95-609, 1996 WL 684140 (M.D. Fla. Nov. 4, 1996). Here, the district court awarded inherent power sanctions for fabricating evidence and "perjury by Plaintiff during his depositions." *Id.* at *9. McDowell is thus inapplicable as BPI's draft motion is not seeking sanctions for any similar conduct, and the fabrication issue in this matter was disputed and ultimately mooted on appeal.

*McIntosh v. Hilton Grand Vacations, Inc.*, No. 6:25-cv-487, 2025 WL 5241428 (M.D. Fla. June 25, 2025). Here, the district court did not award sanctions. In this case, the "Defendant asserts that Plaintiffs and their counsel, Stephanie Parsons of the Timeshare Law Firm, knew that Plaintiffs' claims were subject to arbitration because, according to Defendant, this case is nearly identical to numerous other cases that her firm has filed against timeshare developers (including the Defendant) in the past few months, with many such cases filed in the Middle District of Florida, where courts have compelled arbitration or the parties stipulated to compel arbitration." *Id.* at *4.

But the court noted several deficiencies with the sanctions motion. The court noted that the filing of a complaint "may not be sanctioned pursuant to § 1927" because § 1927 "only applies to unnecessary filings after the lawsuit has begun." *Id.* at *5. Further, "to the extent Defendant seeks sanctions against Plaintiffs Roy McIntosh and Jacqueline McIntosh, '§ 1927 authorizes sanctions against only a lawyer, not a party.'" *Id.*

Next, "[t]o the extent Defendant seeks sanctions against Plaintiffs' counsel, Stephanie Parsons, Defendant has failed to demonstrate that Ms. Parsons engaged in the kind of unreasonable, vexatious conduct that would warrant sanctions under § 1927 in this present case. Other than filing the initial complaint, which Defendant removed to this Court (Doc. 1) on March 19, 2025, Ms. Parsons did not file any other pleadings in this action by the time Defendant filed its Motion to Arbitrate Claims (Doc. 11) on March 26, 2025." *Id.*

Lastly, "Defendant's motion also fails to provide an adequate basis or sufficient evidence of unreasonable and vexatious conduct by Ms. Parsons intended to multiply the proceedings. To be sure, courts have denied motions seeking sanctions under § 1927, where the motion did not demonstrate that an attorney's unreasonable and vexatious conduct intended to multiply the proceedings by drawing out discovery requests or utilizing litigation tactics that unnecessarily delayed resolution of the case." *Id.* at *6.

*McMahan v. Toto*, 256 F.3d 1120 (11th Cir. 2001). Here, the appeals court ruled that "the district court did not abuse its discretion in declining to award sanctions" but "erred in awarding attorney's fees pursuant to the offer of judgment statute." *Id.* at 1123. As with other cases, this holding does not support BPI's argument.

*MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, No. 17-22539, 2025 WL 643208 (S.D. Fla. Feb. 25, 2025), appeal granted in part, 2025 WL 2800463 (S.D. Fla. Sept. 26, 2025). Here, a party was sanctioned for failing to withdraw claims after "the Eleventh Circuit issued a very clear, controlling analysis of the specific issue that was pending here." *Id.* at *4. The court noted that "Assuming Plaintiff's initial non-compliance with section 627.736(10) was truly a result of counsel's reasonable belief that the statute was preempted, Plaintiff is still duty-bound to monitor intervening, new case law after filing its initial complaint, all in order to ensure that its Rule 11 obligations were being met." *Id.*

*Peterson v. BMI Refractories*, 124 F.3d 1386 (11th Cir. 1997). Here, the Eleventh Circuit rejected the imposition of sanctions. Id. at 1388 ("Finally, we hold that despite lamentable lapses in professional courtesy, plaintiffs' counsel did not unreasonably and vexatiously multiply the proceedings in this case within the meaning of 28 U.S.C. § 1927, which is a prerequisite for the imposition of sanctions under that provision."). Thus, it offers no support for BPI's motion.

*Petrano v. Nationwide Mut. Fire Ins. Co.*, No. 1:12–cv–86, 2013 WL 1325201 (N.D. Fla. Feb. 4, 2013). The case began with a complaint asserting seventeen counts against thirteen defendants. The report and recommendation described the pleading as follows:

> The original complaint spanned more than 139 pages, and inappropriately linked together many unrelated claims against unrelated defendants, including claims of discrimination under the Americans with Disabilities Act, Plaintiffs' dispute with an insurer over an automobile accident, and a land dispute related to an easement. The Court described the complaint as "a classic example of a shotgun pleading," and directed Plaintiffs 'to file an amended complaint in compliance with Rule 8 of the Federal Rules of Civil Procedure and limited to one—and only one—occurrence, which raises a federal claim."

*Id.* at *1.

The plaintiffs then filed a 226-page amended complaint asserting at least seventeen claims against fifty-seven named defendants and one hundred John Doe defendants. The report stated:

> These claims appeared to arise from decades of unrelated incidents of perceived discrimination, and ranged from Plaintiff Mary Day-Petrano's rejection from the California Bar, to anonymous "Autism bullying" on Plaintiff Mary Day-Petrano's Facebook page, to the apparent foreclosure on Plaintiffs' property. Far from filing a complaint which was "limited to one—and only one—occurrence, which raises a federal claim," as the Court's order directed, Plaintiffs proceeded in the other direction altogether.

*Id.*

*Qantum Communs. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249 (S.D. Fla. 2007). Here, the district court imposed sanctions based on egregious conduct not relevant to ThermoLife's Rule 60 motion.

> Plaintiff argues that there is clear and convincing evidence that Defendant Hale lied under oath regarding communications between Star and Cumulus about the purchase of WTKE. See (D.E. No. 117 at 4; Transcript for Hearing on Motion for Summary Judgment and Sanctions at 12:1-9; 34:6-16). This Court agrees.

*Id.* at 1270.

"Defendants failed to produce key 'smoking-gun' documents during discovery." *Id.* at 1272. BPI has never claimed that the License Agreement was a "smoking gun" document.

Additionally, the defendants "filed a bad-faith bankruptcy petition in order to avoid this litigation." *Id.* at 1274.

In short, the facts of *Qantum Communications* are radically different than the present case, and the district court offers no support to BPI.

*Schwartz v. Millon Air., Inc.*, 341 F.3d 1220 (11th Cir. 2003). Here, the appeals court reversed the district court's imposition of sanctions under 28 U.S.C. § 1927 and Fla. Stat. § 57. A brief inspection of the facts shows that the *Schwartz* case is very different than ThermoLife's case.

> The record fails to support that Appellants' conduct in this case was tantamount to bad faith to warrant sanctions under 28 U.S.C. § 1927. No one contends that Appellants were actually aware of the fraud in this case. Instead, the district court imposed sanctions based upon Appellants' failure to investigate more thoroughly their clients' claims.
>
> This case involves special circumstances. It involves great distances across international borders. It also involves foreign languages and foreign cultures. And it involves medical records and a great many clients. Taking these uncommon circumstances into consideration, we cannot conclude that Appellants acted much (if at all) outside of the range of reasonable conduct by relying upon the representations of Briones, the duly licensed Ecuadorian counsel who referred the cases to them.

*Id.* at 1226.

*Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306 (11th Cir. 2002). In this per curiam decision, the Eleventh Circuit affirmed "the district court's decision to sanction her for submitting documents that contained remarks, deemed abusive and offensive by the court, that were directed at counsel for Defendant Tenneco Packaging Company ('Tenneco')." *Id.* at 1308. The appeals court "conclude[d] that an attorney who submits documents to the district court that contain *ad hominem* attacks directed at opposing counsel is subject to sanction under the court's inherent power to oversee attorneys practicing before it." *Id.* As should be apparent, that case has no relevance to BPI's Draft Rule 11 Motion.

One excerpt from the opinion demonstrates the lack of relevance.

> Another document filed by Munson that contained *ad hominem* attacks was the Declaration of Beatrice Mercer, which was attached as an exhibit to the Plaintiff's Amended Supplement. In the declaration, Mercer disclosed a conversation she had with Munson and Matthew Williams following the morning session of Williams's deposition that had been conducted by opposing counsel. Mercer stated generally that, during their conversation, Williams had told her about opposing counsel's "racist conduct," Mercer Decl. at 2 (R4-104 Exh. A), and she asserted that Williams had told her that opposing counsel's "behavior and mannerism[s] indicated that he hated 'blacks,'" *id.* at 3. Furthermore, Mercer related that Williams commented to her that opposing counsel looked "pretty silly" and that he was willing to "'kick his ass'" if opposing counsel "did anything" to Munson. *Id.* Mercer's

> declaration, in fact, contained a racist comment: Mercer remarked therein that, during her conversation with Munson and Williams, Munson told her opposing counsel "had no authority over her and [that] she was unimpressed with him or his race." *Id.*

*Id.* at 1313 (footnotes omitted).

*Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414 (5th Cir. 1994). This case illustrates an unreasonable and vexatious Rule 60(b) motion, and the case's findings plainly differentiate it from ThermoLife's reasonable motion.

> 1) There is nothing whatsoever in the record evidencing a lack of appearance of impartiality of the judge.
>
> 2) This case was tried to a jury. During voir dire there was no questioning as to club membership by defense counsel, nor has there ever been questioning as to club membership before this Court.
>
> 3) The Motions were blatantly untimely, filed almost a year after final amended judgment was entered. Defendants' pleadings that the judge's club membership was "secret" and discovered only in July of 1993 was at the least patently disingenuous. The judge's Boston Club membership has been of public record since 1984, readily discoverable by anyone who can read.
>
> 4) Furthermore, since the rendering of the jury verdict and the amended judgment in this case, defense counsel has badgered the Court with these various motions without basis in fact or law, in an attempt to intimidate the Court and retard the progress of the litigation. Significantly, so far two defendants in this case have filed for reorganization in bankruptcy court since entering the amended judgment.
>
> 5) The Court interprets defendants' filing of The Motions to be a scurrilous variation on a weak form of advocacy: wait until the case is lost and post-trial motions are denied, then proceed to question the impartiality of the Court, almost a year after the amended judgment is rendered, with allegedly "newly discovered" information, in fact available to the public for years. Moreover, defendants were not satisfied with an attempt to impugn the integrity of the Court, but elected to malign by innuendo the character and professionalism of two attorneys unrelated to the trial of this case.

*Id.* at 1417 n.6.

*Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418 (11th Cir. 1996).

> In December 1993, Plaintiff Archie Turner sued Defendant Sungard Business Systems, Inc. ("Sungard") for race discrimination under Title

> VII of the Civil Rights Act of 1964. Turner alleged that Sungard passed him over for a promotion and filled the vacant position with a white employee. Richard Meelheim initially represented Turner in this matter.
>
> On 22 March 1994, the court granted Meelheim's motion to withdraw. The district court later found that Meelheim withdrew from the case "after plaintiff informed him that, regardless of his advice, the plaintiff desired to pursue the matter through other representation."
>
> Henry Penick filed a notice of appearance for Turner on 28 December 1994. The district court held a pretrial conference on 27 January 1995. Sungard moved for summary judgment the same day. At the pretrial conference, Penick told the court that he had evidence to support Plaintiff's claim that the job at issue had been filled by a white employee. On 17 February 1995, Sungard filed a supplemental motion for summary judgment.[1] Plaintiff neither responded to Sungard's motion for summary judgment nor appeared at oral argument. On 27 March 1995, the district court granted Sungard's summary judgment motion on the grounds that Turner had made out no prima facie case of race discrimination, finding that the position sought by Turner was doubtlessly still vacant.
>
> Sungard then moved for sanctions. The district court issued a show cause order to Turner, Meelheim and Penick. Only Meelheim filed a response to the show cause order. Meelheim indicated that he filed the action after conversations with Turner and another former employee of Sungard had convinced him that there was evidence to form a reasonable belief that a white male had effectively received a promotion that was denied to Turner.
>
> The district court heard the matter of fees and sanctions on 28 April 1995. Because Meelheim made some investigation of Turner's claim and withdrew when he learned Turner's claim was meritless, the district court imposed no sanctions against him. The district court issued an order awarding $10,000.00 against Turner representing reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and $6,255.00 against Penick as a sanction for prosecuting Turner's frivolous action. Turner and Penick appeal.

*Id.* at 1420–21.

*Vargas v. Peltz*, 901 F. Supp. 1572 (S.D. Fla. 1995). Here, a case was dismissed due to fabrication of evidence directly relevant to the "central issue in this case." *Id.* at 1581.

> Plaintiff here attempted, by fraudulent means, to "enhance" her case through the introduction of fabricated women's panties and through fictionalized testimony concerning how she supposedly received the panties. Plaintiff "fabricated" the panties evidence and the story that

> Peltz gave them to her while she worked for Elliot Management in an effort to deceive the Court, Peltz, Elliot Management, and eventually, the trier of fact. Plaintiff fabricated the panties' evidence "in bad faith and with improper purpose in a manner which jeopardizes the integrity of the judicial system.

*Id*. at 1580.

The district court already decided the issue of sanctions for the alleged fabrication by ThermoLife, which is the focus of the Rule 60 motion after the disputed fabrication finding was mooted on appeal.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252 (11th Cir. 1996). This case dealt with the failure to conduct a sufficient prefiling suit, which is not at issue here. Plus, the sanctioned attorney argued as follows:

> Bass argues, however, that he was under no obligation to conduct an independent investigation of the facts underlying Worldwide's claim before filing suit, and that he could rely on representations made to him by his long-time client, Block. We disagree, and hold that, under Rule 11, an attorney must make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit.

*Id*. at 1255.