**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

BPI SPORTS, LLC,

Plaintiff,

vs.

THERMOLIFE INTERNATIONAL, LLC, MUSCLE BEACH NUTRITION, LLC and RONALD L. KRAMER,

Defendants.

**CASE NO.: 0:19-cv-60505-SMITH-STRAUSS**

**REPLY IN SUPPORT OF BPI SPORTS, LLC'S MOTION FOR SANCTIONS**

Plaintiff, BPI Sports, LLC ("BPI"), by and through its undersigned counsel, hereby submits this Reply in Support of its Motion for Sanctions (D.E. 473, "Motion"), and in support thereof, respectfully states as follows.

## I. ARGUMENT

Defendants have engaged in numerous litigation tactics emblematic of the behavior that led to the Motion in the first place. On September 22, 2026, counsel for BPI served the Motion on counsel for Defendants pursuant to Rule 11(c)(2). Under this provision, BPI was required to wait twenty-one (21) days before filing the Motion to provide Defendants with an opportunity to withdraw or correct the Motion Under Rule 60(b)(6) to Vacate [D.E. 462, "Motion to Vacate"].

On October 2, 2026—the twenty-first day—counsel for Defendants served a thirty-one (31) page letter memorandum riddled with superfluous arguments, including a fourteen (14) page "attachment" of case law treatment. This eleventh-hour correspondence was deliberately designed to force BPI into the untenable position of having to wait to file the Motion in order to engage in wasteful external briefing, or risk being accused by Defendants of failing to respond to its voluminous, subjective surplusage. Since (1) Rule 11 stipulates that the version served must be the version filed; (2) Defendants had the opportunity to advance any arguments in an opposition; and (3) BPI had the opportunity to respond to any record arguments in a reply, BPI filed the Motion.

As predicated, Defendants now attempt to weaponize the letter by contending that BPI's refusal to engage in their gamesmanship provides sufficient grounds to deny the Motion. In turn,

the letter is sponsored by the Declaration of Matthew Dowd which similarly advances irrelevant facts and arguments that extend well beyond any reasonable scope of the Rule 11 Motion itself.

A simple comparison of the letter and the declaration, on the one hand, to the Opposition, on the other, reveals that these external documents contain a host of issues and positions that are either not contained in the Opposition at all, or at best, are improperly incorporated by reference. BPI urges the Court to see through this charade and strike both the letter and the declaration as strategic maneuvers to shift blame, place BPI and its counsel in a negative light at all costs, to say nothing of constituting egregious efforts to exceed the page limits embodied in the Local Rules.

**A. Defendants' Opposition Violates The Page Limitations Under The Local Rules**

Defendants' Opposition is a transparent attempt to circumvent the applicable page limits. An opposing memorandum of law shall not exceed twenty (20) pages. L.R. 7.1(c)(2). Although the Opposition brief is under the limit, it is accompanied by the Declaration of Matthew Dowd [D.E. 474-1, "Dowd Decl."] and his letter [D.E. 474-2, "Letter"] which add a total of fifty (50) pages of supplemental briefing. The Opposition repeatedly incorporates by reference the Dowd Declaration which is used to supplement various arguments. For example, the Opposition cites paragraphs 4-61 (*i.e.*, all the substantive portions) to advance the argument that "Defendants and their counsel did not file the *Munsingwear* motion for an improper purpose." Opp., p. 9-10 (citing Dowd Decl. ¶¶4-61). Thus, the Declaration serves as a gross expansion of the Opposition, including additional allegations, interpretations and arguments that are not even found in the brief.

Likewise, the Opposition refers to the Letter in support of even further positions, and as such, constitutes another blatant effort to exceed the twenty-page limitation. Nothing could reflect this effort more than the Opposition seeking to incorporate the "fourteen-page attachment [to the Letter] addressing about three dozen cases in BPI's sanctions motion." Opp., p. 6. Defendants had a full and fair opportunity to address the case law cited in the Motion in its Opposition. Instead, Defendants have incorporated an additional fourteen pages of its interpretation of the cited cases.

Courts in this District have observed that such incorporation-by-reference "serves only to circumvent the Local Rules and lead the Court through a paper maze of filings." *Murdock v. Am. Mar. Off. Union Nat'l Exec. Bd.*, 2022 WL 18024476, at *2 (S.D. Fla. July 13, 2022) (Scola, J.); *see also Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1253 (M.D. Fla. 2012) (Dalton, J.) ("[I]ncorporation by reference is improper, and it foists upon the Court the burden of sifting through irrelevant materials to find the materials referenced while

permitting the movant to circumvent this Court's page limit requirement."), *aff'd*, 505 F. App'x 928 (11th Cir. 2013). Under this authority, the Dowd Declaration and the Letter should be stricken.

**B. Defendants' Letter Requires No Treatment By BPI**

Notwithstanding the fact that BPI had no obligation to respond to the Letter, Defendants allege that BPI should have disclosed it in connection with the Motion. Defendants' argument is misplaced for a variety of reasons. Federal Rule of Civil Procedure 11(c)(2) provides that a motion must be served under Fed. R. Civ. P. 5, but it must not be filed or be presented to the Court if the challenged paper is withdrawn or appropriately corrected within twenty-one days after service. Defendants purposely served the Letter on BPI twenty-one days after service of the Motion, but did not withdraw its Motion to Vacate. BPI therefore filed the Motion in the same form in which it was served. Any argument that BPI was obligated to include or address the Letter in its Motion, suggests that any time a party serves a Rule 11 motion it must edit and re-serve a new version of the motion until no more letters are received. This frustrates the purpose of serving the same version of the motion to be filed, but serves Defendants' transparent purposes of gaining a *de facto* extension and attempting to lure BPI into wasteful extrajudicial briefing.

**C. The Motion To Vacate Violates Rule 11(b)(1) In Light Of the Evidence**

Defendants allege that the Motion to Vacate was not filed for an improper purpose, yet the entire section designed to support this premise actually supports BPI's positions. Opp., p. 7-10. As Defendants aptly point out, an improper purpose can be "inferred from circumstantial evidence." Opp., p. 7 (citing *Thompson v. RelationServe Media, Inc.,* 610 F.3d 628, 665 (11th Cir. 2010)). Defendants acknowledge that an attorney's improper purpose can be inferred from "'excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings.'" Opp., p. 7 (citing *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1448 (11th Cir.1998) (quoting *Pierce v. Commercial Warehouse*, 142 F.R.D. at 690-91 (M.D. Fla. 1992)). The endless attacks on the Sanctions Order, the delay in filing the Motion to Vacate, its weak merits, the need to rewrite the appellate opinion, the inapplicability of the *Munsingwear* authority, the fact that the most damaging findings in the Sanctions Order are the same findings that are suddenly moot and require vacatur, coupled with Defendants' pattern and practice of pursuing meritless litigation strategy, are all indicative of an improper purpose in violation of Rule 11(b)(1).

### D. The Motion To Vacate Violates Rule 11(b)(3)

#### 1. Defendants Admit The Cases They Relied On Do Not Apply Here

Defendants criticize BPI for not identifying a case that precludes reliance on *Munsingwear*. To the extent BPI has failed in this regard it is because no court has been presented with a situation so disconnected from the actual circumstances under which *Munsingwear* has been applied.

Defendants have taken a rather bizarre approach to identifying authority in support of its position on the mootness doctrine. In the Motion to Vacate, Defendants cited a laundry list of cases in support of the position that "[t]he Eleventh Circuit has applied *Munsingwear* when vacating district court decisions where the case has become moot on appeal by no fault of the losing party." Motion to Vacate, p. 8. In BPI's opposition to the Motion to Vacate [D.E. 469, "BPI Opp."], all of this authority was convingingly distinguished on the basis that vacatur is only appropriate when a change in circumstances moots an issue while an appeal was pending—separate and apart from the result of the appeal itself. BPI Opp., p. 10, fn. 2.

In their reply in support of the Motion to Vacate [D.E. 472, "Reply"], Defendants inaccurately referred to these cases as "BPI's cited authorities" claiming that none of them set out a "categorical rule." Defendants proceeded to note that this authority is inapplicable here:

> [t]he cases collected in [BPI's] footnote finding mootness describe circumstances in which mootness resulted from settlement, graduation, cancellation of a contract, or other external events. *Id.* at 10 n.2. But providing examples of circumstances warranting vacatur does not establish that those circumstances constitute the exclusive universe in which equitable relief is available.

Reply, p. 6. Defendants apparently failed to realize that the distinguished cases were their own. The end result is that the same authority Defendants cited as controlling, and demonstrating that vacatur is necessary in the present situation, is so off-point that it does not prohibit vacatur.

#### 2. BPI's Rule 11 Motion Logically Includes Its Opposition Arguments

Defendants allege that BPI is not permitted to incorporate arguments from its Opposition to establish any Rule 11 violations. Opp., p. 11. As a threshold matter, the authority relied on by Defendants is procedurally distinguishable because it is all in the context of summary judgment where concerns were raised about using a Rule 11 motion "to test the legal sufficiency or efficacy of allegations in the pleadings." *On Time Aviation, Inc. v. Bombardier Capital Inc.*, 570 F.Supp.2d 328, 331-2 (2008); *see Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*, 2004 WL 1811427, at *22 (S.D.N.Y. Aug. 12, 2004) (same). Moreover, based on Defendants' erroneous factual history,

the inapplicability of the cited legal authority and the improper purpose behind the filing itself, BPI necessarily addressed issues falling within the ambit of Rule 11(b)(1)-(3). This does not mean that the current Motion is an attempt to emphasize the merits of BPI's Opposition because the Motion was made separately and describes "the specific conduct that allegedly violates Rule 11(b)." Rule 11(c)(2). Indeed, BPI did precisely what Defendants contend is required: "definitely establish a violation of Rule 11." Opp., p. 12. Nor would the Court's denial of the Motion to Vacate be tantamount to deciding in favor of BPI on its Rule 11 Motion because the latter constitues a ruling on a collateral issue: whether the judicial process was abused. *CTC Imports & Exports v. Nigerian Petroleum Corp.,* 951 F.2d 573, 579 (3d Cir. 1991) (considering Rule 11 separately).

**3. Defendants' Treatment Of The "Even Assuming" Phrase Is Frivolous**

In another demonstration of total irony, the same Defendants who modified and misapplied the phrase "even assuming" now allege that BPI fundamentally misunderstands it. Opp., pp. 12-13. Defendants proceed to criticize BPI for not providing "a single case" then go on to state that it "has been used multiple times by the Supreme Court and other appellate courts…" *Id*. Although Defendants repeatedly allege that simply by virtue of the use of the expression the issue of fabrication was never decided, it was decided by this Court and subsequently affirmed on appeal.

**4. Rule 60(b)(6) Is Not A Free Pass for Frivolous Arguments**

Defendants misquote the Motion in an attempt to prove that BPI took the position that there are no legitimate grounds to seek vacatur pursuant to Rule 60(b)(6). Opp., p. 13 (citing Motion, p. 13). BPI never asserted that vacatur can never be sought under Rule 60(b)(6), but rather asserted that since Defendants invented a false premise, no "extraordinary circumstances" could exist under this rule, namely, where a party deliberately modifies and misapplies an appellate decision to seek vacatur when the appellate decision actually affirmed the district court order. Motion, p. 13.

**5. BPI Addressed Why *Munsingwear* Is Not An Extension Of The Law**

According to the Opposition, BPI overlooked the potential that Defendants' application of *Munsingwear* is an extension of existing law. Opp., p. 14. BPI did not overlook anything. Such an extension has to be a "non-frivolous argument." Rule 11(b)(3). The Motion outlines precisely why the mootness doctrine is "not remotely applicable" and why Defendants' attempts to apply it are "frivolous" because, *inter alia*, (i) the appellate opinion was deliberately misinterpreted: (ii) the Sanctions Order was not pending during appellate review; (iii) there have been no independent

intervening circumstances; and (iv) appellate review has not been frustrated, much less prevented.

**E. Relief Under 28 U.S.C. § 1927 is Warranted**

Sanctions under § 1927 are appropriate because by virtue of filing the Motion to Vacate, Defendants and their counsel multiplied these proceedings unreasonably and vexatiously (without probable cause). *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1240 (11th Cir. 2007). The appellate decision affirmed the Sanctions Order in full. Defendants' appellate rights are exhausted. There was no basis for Defendants to seek any further relief from the Sanctions Order under Rule 60 or otherwise. Defendants nevertheless did so, without sufficient factual or legal basis, for an improper purpose, which qualifies as abuse of the judicial process tantamount to bad faith. Under *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 7850786 (11th Cir. 2006), a finding of bad faith is warranted where, as here, an attorney knowingly or recklessly pursues a frivolous claim. The Motion provides irrefutable evidence that Defendants have a pattern and practice of doing so.

**F. Sanctions Under Inherent Authority is Warranted**

For the same reasons set forth in the Motion (and above), this Court can use its inherent authority to issue sanctions against under the circumstances. Bad faith exists when the court finds that a fraud has been practiced upon it, the temple of justice has been defiled, or where a party or attorney knowingly or recklessly raises a frivolous argument, or *hampers the enforcement of a court order*. *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (emphasis added) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).

**G. BPI's Demanded Relief Is Both Permissible And Warranted**

BPI's request for relief is guided by the statutory and other judicial authority, including without limitation, the text of Rule 11 itself. Needless to say, a district court has broad discretion under Rule 11, § 1927 and inherent authority to determine the type and amount of sanction. *In re: Engle Cases*, 283 F.Supp.3d 1174 (M.D. Fla. 2021). Rule 11 permits the imposition of measures to deter repetition of the same or similar conduct, including monetary and non-monetary directives. Rule 11(c)(4). As established in the Motion, Defendants have engaged in similar bad faith conduct is this case and other cases throughout the country. Thus, the relief being requested is appropriate in light of the fact that prior sanctions have not deterred the conduct of Defendants or their counsel.

Defendants cite no legal authority for their bald assertion that BPI's monetary demands are "outrageous" and remain reticent regarding ThermoLife's past litigation behaviors. Opp., p. 19. Although Defendants claim the Motion does not specify how the relief complies with Rule

11(c)(5)(A), the Motion does not seek relief against any parties under this provision and the issue may be addressed in subsequent briefing regarding the specific relief requested. Motion, p. 20.

Finally, Defendants contend that *Johnson v. 27th Ave. Caraf, Inc*. 9 F.4th 1300 (11th Cir. 2021) is off-point because there the plaintiff was the mastermind, provided direct instructions and made misrepresentations to the court. Opp., p. 19. It is difficult to imagine a piece of authority being more on point. Kramer is the President, Chief Executive Officer and person most responsible for ThermoLife. Kramer Decl., ¶1. During deposition, he testified that he has ultimate decision making authority. Kramer Depo, 30:22-24. He was responsible for the fraudulent behavior that led to the Sanctions Order in the first place, including signing a document he himself fabricated. He executed a declaration in support of the Motion to Vacate in which he expressed his understanding that (i) findings in the Sanctions Order are moot; and (ii) the Federal Circuit affirmed only on the bases of discovery disputes, both of which are false. Kramer Decl., D.E. 462-1, ¶¶3, 24.

## II. REQUEST FOR HEARING

BPI does not object to Defendants' request for a hearing with live testimony by Defendants and their counsel, to include cross-examination by BPI's counsel.

## III. CONCLUSION

In view of the foregoing, BPI requests that the motion for sanctions be granted.

October 28, 2026

Respectfully submitted,

*Gregory L. Hillyer*
HILLYER LEGAL, PLLC
Gregory L. Hillyer
Fla. Bar No. 682489
Email: ghillyer@hillyerlegal.com
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015-2052
Telephone: 202-686-2884
Facsimile: 202-686-2877

*Attorneys for Plaintiff BPI Sports, LLC*

*s/ Gregory L. Hillyer*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of this Reply was filed via CM/ECF on October 28, 2026 and served on counsel of record.

*s/ Gregory L. Hillyer*